LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com
JOSEPH C. LIBURT (STATE BAR NO. 155507)
jliburt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

KATE JUVINALL (STATE BAR NO. 315659)
kjuvinall@orrick.com
PAUL RODRIGUEZ (STATE BAR NO. 307139)
prodriguez@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA  90071
Telephone:     +1 213 629 2020
Facsimile:     +1 213 612 2499

Attorneys for Defendant
KIRKLAND & ELLIS LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOYA KOVALENKO,<br><br>                    Plaintiff,<br><br>          v.<br><br>KIRKLAND & ELLIS LLP, MICHAEL DE VRIES, MICHAEL W. DEVRIES, P.C., ADAM ALPER, ADAM R. ALPER, P.C., AKSHAY DEORAS, AKSHAY S. DEORAS, P.C., LESLIE SCHMIDT, LESLIE M. SCHMIDT, P.C., AND MARK FAHEY,<br><br>                    Defendants. | Case No. 4:22-CV-05990-HSG<br><br>**KIRKLAND & ELLIS LLP'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       March 30, 2023<br>Time:       2:00 p.m.<br>Dept:       2<br>Judge:      Hon. Haywood S. Gilliam |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .......................................................................................................... 1

II. ISSUES TO BE DECIDED ......................................................................................... 2

III. RELEVANT FACTUAL ALLEGATIONS ................................................................ 3

    A.  Plaintiff's Brief Employment Was Only With Kirkland ........................................ 3

    B.  Plaintiff's Many Performance Issues .................................................................... 4

    C.  Kirkland Discharges Plaintiff for Failing to Meet Performance Standards ............ 5

    D.  The Individual Defendants and Their Tax P.C.s Were Not Plaintiff's
        Employer ............................................................................................................. 6

    E.  Plaintiff's Alleged Discrimination, Harassment, and Retaliation .......................... 7

IV. THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS ................. 9

    A.  Legal Standard for Motion to Dismiss .................................................................. 9

    B.  Plaintiff's Third and Seventh Claims Under the San Francisco Municipal
        Police Code are Preempted .................................................................................. 9

    C.  Plaintiff's Eighth Claim for Sex-Based Harassment Under Title VII Fails .......... 10

    D.  Plaintiff's Tenth Claim for Defamation Fails ...................................................... 12

        1.  Any Purportedly Defamatory Statements Are Nonactionable
            Statements of Opinion ............................................................................ 12

        2.  Any Purportedly Defamatory Statements Are Privileged ........................ 14

    E.  Plaintiff's Eleventh Claim for IIED Fails on Multiple Grounds .......................... 16

        1.  Plaintiff Has Not Pled "Extreme and Outrageous" Conduct ................... 16

        2.  Plaintiff Has Not Properly Pled Severe or Extreme Emotional
            Distress ................................................................................................... 17

    F.  Plaintiff's Twelfth Claim for NIED Fails for Multiple Reasons .......................... 18

        1.  Plaintiff's NIED Claim is Preempted by Workers' Compensation .......... 18

        2.  Plaintiff's NIED Claim Fails Because It Is Based on Intentional
            Actions ................................................................................................... 18

        3.  Kirkland Did Not Owe Plaintiff a Duty of Care ..................................... 19

    G.  Plaintiff Has Not Plausibly Pled Punitive Damages ............................................ 19

V.  CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcorn v. Anbro Eng'g, Inc.*,
   2 Cal.3d 493 (1970) ................................................................................................. 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................... *passim*

*Barnes-Perrilliat v. S. of Mkt. Health Ctr.*,
   No. 20-cv-02368-LB, 2020 WL 7428319 (N.D. Cal. Dec. 19, 2020) ................................... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... *passim*

*Christensen v. Superior Ct.*,
   54 Cal.3d 868 (1991) ................................................................................................ 19

*Cohen v. Chau*,
   No. 19-cv-03936, 2019 WL 6655392 (C.D. Cal. July 23, 2019) .......................................... 19

*Cole v. Fair Oaks Fire Prot. Dist.*,
   43 Cal.3d 148 (1987) ........................................................................................... 16, 18

*Cuenca v. Safeway S.F. Emps. Fed. Credit Union*,
   180 Cal. App. 3d 985 (1986) ....................................................................................... 15

*Dallah & Dallah, Inc. v. State Farm Gen. Ins. Co.*,
   No. 21-cv-01348, 2022 WL 2784391 (C.D. Cal. Apr. 20, 2022) ......................................... 19

*Deaile v. Gen. Tel. Co. of Cal.*,
   40 Cal. App. 3d 841 (1974) .................................................................................... 14, 15

*Delaney v. Superior Fast Freight*,
   14 Cal. App. 4th 590 (1993) ....................................................................................... 10

*Dipaola v. JPMorgan Chase Bank*,
   No. C 11-2605 SI, 2011 WL 3501756 (N.D. Cal. Aug. 10, 2011) ........................................ 20

*Edwards v. U.S. Fid. & Guar. Co.*,
   848 F.Supp. 1460 (N.D. Cal. 1994) .............................................................................. 18

*Eisenberg v. Alameda Newspapers, Inc.*,
   74 Cal. App. 4th 1359 (1999) ...................................................................................... 14

*Ellison v. Brady*,
   924 F.2d 872 (9th Cir. 1991) ....................................................................................... 10

ii

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ................................................................................................. 10, 11, 12

*Ferlauto v. Hamsher*,
    74 Cal. App. 4th 1394 (1999) .................................................................................................. 13

*Fermino v. Fedco, Inc.*,
    7 Cal.4th 701 (1994) .................................................................................................. 18

*Fowler v. Varian Assocs.*,
    196 Cal. App. 3d 34 (1987)................................................................................................. 16

*Gathenji v. Autozoners, LLC*,
    703 F. Supp. 2d 1017 (E.D. Cal. 2010)................................................................................. 10

*Gould v. Md. Sound Indus., Inc.*,
    31 Cal. App. 4th 1137 (1995) .................................................................................................. 13

*Haley v. Cohen & Steers Cap. Mgmt., Inc.*,
    871 F. Supp. 2d 944 (N.D. Cal. 2012) ............................................................................ 13, 17

*Hatfield v. DaVita Healthcare Partners, Inc.*,
    No. C 13-5206 SBA, 2015 WL 106632 (N.D. Cal. Jan. 7, 2015) ......................................... 18

*Hughes v. Pair*,
    46 Cal.4th 1035 (2009) ................................................................................................ 16

*Jackson v. Mills Corp.*,
    No. C-07-00662 EDL, 2007 WL 2705215 (N.D. Cal. Sept. 14, 2007) ................................. 14

*Janken v. GM Hughes Elec.*,
    46 Cal. App. 4th 55 (1996).............................................................................................. 16, 17

*Jaramillo v. Food 4 Less Madera*,
    No. 10-cv-1283 LJO, 2010 WL 4746170 (E.D. Cal. Nov. 16, 2010).................................... 13

*Jensen v. Hewlett-Packard Co.*,
    14 Cal. App. 4th 958 (1993)........................................................................................ 12, 13, 14

*Kacludis v. GTE Sprint Commc'ns Corp.*,
    806 F. Supp. 866 (N.D. Cal. 1992) ................................................................................. 14, 16

*Kelley v. Corr. Corp. of Am.*,
    750 F. Supp. 2d 1132 (E.D. Cal. 2010).......................................................................... 19, 20

*Kelly v. Gen. Tel. Co.*,
    136 Cal. App. 3d 278 (1982)................................................................................................. 14

*Kelly-Zurian v. Wohl Shoe Co.*,
    22 Cal. App. 4th 397 (1994).................................................................................................. 10

*King v. United Parcel Serv., Inc.*,
    152 Cal. App. 4th 426 (2007)..................................................................................... 14

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)...................................................................................... 4

*Kortan v. Cal. Youth Auth.*,
    217 F.3d 1104 (9th Cir. 2000)..................................................................................... 11

*Landucci v. State Farm Ins. Co.*,
    65 F. Supp. 3d 694 (N.D. Cal. 2014) .......................................................................... 17

*Lee v. S. of Mkt. Health Ctr.*,
    No. 19-CV-06482-LB, 2020 WL 2219032 (N.D. Cal. May 7, 2020)................................... 17

*Macy's Cal., Inc. v. Superior Ct.*,
    41 Cal. App. 4th 744 (1995)....................................................................................... 19

*Manatt v. Bank of Am., NA*,
    339 F.3d 792 (9th Cir. 2003)...................................................................................... 11

*Marsili v. Baker Places*,
    No. 03-cv-4491, 2003 WL 27396373 (N.D. Cal. Nov. 24, 2003) ......................................... 10

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)...................................................................................... 9

*Miklosy v. Regents of the Univ. of Cal.*,
    44 Cal.4th 876 (2008) .............................................................................................. 16

*Nelson v. County of Sacramento*,
    926 F. Supp. 2d 1159 (E.D. Cal. 2013)......................................................................... 18

*Opperwall v. State Farm Fire & Cas. Co.*,
    No. 17-cv-07083-YGR, 2018 WL 1243085 (N.D. Cal. Mar. 9, 2018).................................. 20

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal.4th 965 (1993) ................................................................................................ 19

*Pruitt v. Genentech, Inc.*,
    No. 2:17-cv-00822-JAM-AC, 2017 WL 3641783 (E.D. Cal. Aug. 24, 2017) ................ 15, 16

*Robomatic, Inc. v. Vetco Offshore*,
    225 Cal. App. 3d 270 (1990)..................................................................................... 14

*Rudwall v. Blackrock, Inc.*,
    No. C06-2992 MHP, 2006 WL 3462792 (N.D. Cal. Nov. 30, 2006), *aff'd*, 289
    F. App'x 240 (9th Cir. 2008) .......................................................................... 12, 14, 15

*Schaffer v. GTE, Inc.*,
    40 F. App'x 552 (9th Cir. 2002) ................................................................. 18

*SKWS Enters., Inc. v. Levonchuck*,
    No. 17-cv-3327, 2018 WL 11351584 (C.D. Cal. Apr. 2, 2018) ........................ 19

*Soares v. California*,
    No. 2:16-00128 WBS EFB, 2016 WL 3519411 (E.D. Cal. June 27, 2016) .................. 11, 12

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
    922 F. Supp. 299 (C.D. Cal. 1996) ................................................................. 9

*Taus v. Loftus*,
    40 Cal.4th 683 (2007) ................................................................. 12

*Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*,
    222 Cal. App. 4th 819 (2013) ................................................................. 16

*Walker v. Boeing Corp.*,
    218 F. Supp. 2d 1177 (C.D. Cal. 2002) ................................................................. 15

*Washington v. Lowe's HIW Inc.*,
    75 F. Supp. 3d 1240 (N.D. Cal. 2014) ................................................................. 11

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ................................................................. 9

*Yau v. Santa Margarita Ford, Inc.*,
    229 Cal. App. 4th 144 (2014) ................................................................. 16

*Yurick v. Superior Ct.*,
    209 Cal. App. 3d 1116 (1989) ................................................................. 16

**Statutes**

Cal. Civ. Code § 3294(a) ................................................................. 20

Cal. Civ. Code § 3294(b) ................................................................. 20

Cal. Civ. Code § 3294(c) ................................................................. 20

Cal. Civil Code § 47(c) ................................................................. 14

Cal. Gov't Code § 12993(c) ................................................................. 10

Cal. Lab. Code § 3600 ................................................................. 18

Cal. Lab. Code § 3602 ................................................................. 18

S.F., Cal., Police Code art. 33, § 3301 ................................................................. 10

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ................................................................................ 1, 3, 9, 14

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE THAT at 2:00 p.m. on March 30, 2023, or as soon thereafter as counsel may be heard, in Courtroom 2 of this Court, 1301 Clay Street, Oakland, California 94612, before the Honorable Haywood S. Gilliam, Defendant Kirkland & Ellis LLP ("Kirkland" or "the Firm") will and hereby does move this Court for an Order dismissing certain claims for relief Plaintiff Zoya Kovalenko's Complaint asserts against Kirkland on the ground that the Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete pleadings and records on file herein, any matters of which the Court may or must take judicial notice, and such other evidence and arguments as may be presented at the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The factual allegations sprinkled amidst the conclusory ramblings of Zoya Kovalenko's 130-page complaint confirm the defects in and implausibility of her claims.

Plaintiff alleges the following key facts. When she interviewed with Kirkland, interviewers praised her qualifications as "impressive" and one, whom she now sues personally, stated that he was "very pleased with Plaintiff's interview and with her candidacy." She received an offer and, after the firm agreed to change a compensation term at her request, she accepted the offer and began working for Kirkland in November of 2020.

Plaintiff performed work for the firm for seven months (accounting for the paid bar leave, onboarding and training time the firm provided, *etc.*). Her assignments included work on patent and related cases and ITC investigations. She was asked to assist in a patent trial, and, after flying to Texas, worked on witness examinations, demonstrative exhibits, and other trial assignments.

In her first review cycle, four male and female partners evaluated her as having severe performance problems, which Plaintiff summarizes as labelling her as "woefully deficient in every facet of practicing law." The criticisms addressed significant writing and judgment issues,

communication concerns, including problems following instructions or taking instructions to an extreme, and time management and dependability problems. She admits that, consistent with that time management criticism, partners cut significant hours she worked from client bills. Kirkland terminated her employment in September 2021 and offered a severance package that she refused. She then reviewed the specific performance evaluations the partners submitted and, clearly angered at the criticism and her termination, filed administrative charges with the EEOC and DFEH. She filed this lawsuit on October 12, 2022.

Iqbal and Twombly instruct that allegations, particularly those of the conclusory and hyperbolic nature here, are reviewed carefully to determine whether the theories they espouse are plausible. The plausible explanation on the facts alleged here is that the Firm was pleased to hire Plaintiff, who appeared to be qualified for the role for which the Firm hired her, but discovered very quickly that she did not come close to having the skillset to perform her duties. What is *not* plausible is that after investing in hiring and training Plaintiff, compensating her at a significant salary (including for onboarding and bar leave periods), and assigning her to cases, the partners reacted to what she describes as consistently outstanding performance by terminating her and cutting her hours on client bills.

Not surprisingly therefore, Plaintiff's specific pleadings of her claims are woefully deficient as outlined below.

## II.   ISSUES TO BE DECIDED

1. Should the Court dismiss Plaintiff's claims under the San Francisco Municipal Police Code (Counts 3 and 7) because, as this Court has previously held, the claims are preempted by California's Fair Employment and Housing Act?

2. Should the Court dismiss Plaintiff's Title VII Sex Harassment claim (Count 8) because her allegations are premised on allegations that state nonactionable run-of-the-mill personnel management actions that do not constitute harassment as a matter of law, and she has not pled facts showing severe or pervasive conduct?

3. Should the Court Dismiss Plaintiff's Defamation claim (Count 10) because the alleged defamatory statements are opinions based on evaluation of Plaintiff's performance, not statements

1   of fact, and are privileged statements?

2       4.  Should the Court Dismiss Plaintiff's Intentional Infliction of Emotional Distress claim

3   ("IIED") (Count 11) because she has not pled sufficient facts showing "extreme and outrageous"

4   conduct or that she suffered severe emotional distress?

5       5.  Should the Court dismiss Plaintiff's Negligent Infliction of Emotional Distress claim

6   ("NIED") (Count 12) because it is preempted by California's Worker's Compensation Act, is based

7   on nonactionable personnel management, and is based on purported duties her employer Kirkland

8   did not owe her as a matter of law?

9       6.  Should the Court dismiss Plaintiff's punitive damages claim because Plaintiff does not

10  plead facts supporting oppression, fraud, or malice under *Twombly* and *Iqbal*?

## III.   RELEVANT FACTUAL ALLEGATIONS[1]

12      Kirkland is an international law firm and limited liability partnership (LLP). Compl. ¶20.

13  Plaintiff worked for Kirkland for approximately 10 months—from November 16, 2020 until her

14  termination on September 28, 2021. *Id.* ¶8. She performed work for only approximately seven of

15  those months after accounting for her bar leave, onboarding, and training. *Id.* ¶75.

### A.   Plaintiff's Brief Employment Was Only With Kirkland

17      In September 2020, Plaintiff interviewed for an associate position with several partners and

18  associates, including Defendants De Vries, Alper, and Deoras. *Id.* ¶9. She alleges that De Vries,

19  Alper, and Brandon Brown (Kirkland's co-chair of the Recruiting Committee in San Francisco)

20  praised her qualifications as "impressive" and that De Vries stated that he was "very pleased with

21  Plaintiff's interview and with her candidacy." *Id.*

22      On September 15, 2020, Kirkland offered Plaintiff a position in its San Francisco office as

23  an associate in the firm's Intellectual Property group. *Id.* ¶¶10, 65. The next day, on September 16,

24  2020, Plaintiff received Kirkland's offer letter, setting out the terms for her at-will employment

25  with Kirkland. *Id.* ¶66. Based on Plaintiff's request, Kirkland revised her offer letter to annualize

26  her hours for the 2021 bonus period. *Id.* ¶67. On September 23, 2020, Plaintiff signed and returned

---

[1] Kirkland treats Plaintiff's factual allegations as true for purposes of this motion to the extent required by Rule 12(b)(6), but vehemently denies all allegations of wrongdoing in the Complaint.

1  the revised offer letter, thereby "accept[ing] Kirkland's offer" of employment. Compl. ¶10.

2      Plaintiff's first day of employment with Kirkland was November 16, 2020. *Id.* Kirkland

3  allowed Plaintiff, after starting her employment, to take a paid leave to study for the California Bar

4  Exam from January 2021 to approximately March 2021. *Id.* ¶¶75, 77, 108.

5      **B.**    **Plaintiff's Many Performance Issues**

6      During her time at Kirkland, Plaintiff's assignments included working on patent and related

7  cases, assisting with an ITC investigation, and assisting in a patent trial in Texas where she worked

8  on witness examinations, demonstrative exhibits, and other trial assignments. *See id.* ¶¶76-78, 88-

9  91, 100-03, 108-18, 145-51, 163-72.

10     As Plaintiff pleads, and as Plaintiff's first and only performance evaluation confirms, four

11 male and female partners evaluated her as having severe performance issues. Among other things,

12 partners were concerned with Plaintiff's refusal or inability to comply with instructions as well as

13 issues with dependability, judgment, communication, and poor and untimely work quality:

14     • **Criticisms about writing and judgment issues**: Deoras wrote that Plaintiff's

15        "writing, analysis, and judgment is not up to her class year, and as a result, she puts

16        the team in a difficult position when her work needs to be redone" (*id.* ¶103, 116

17        n.23; *see also* Request for Judicial Notice ("RJN"), Ex. A, at 2);[2] Plaintiff "often

18        provides" work "that needs significant reworking" (RJN, Ex. A, at 2); and Plaintiff's

19        "judgment in deciding which arguments to include and prioritize needed

20        improvement" (*id.*). Schmidt wrote that the "only work [Plaintiff] did . . . was not

21        even usable." Compl. ¶122; RJN, Ex. A, at 4. Fahey wrote that "[s]he needs to

22        continue to develop her judgement." Compl. ¶116 n.30; RJN, Ex. A, at 3. De Vries

23        wrote that "the examination outline she worked on was incomplete and somewhat

24        late. . . . I had to go back to simply preparing a (separate) outline myself." Compl.

25        ¶126; RJN, Ex. A, at 1.

26

27  [2] As discussed more fully in Defendants' Request for Judicial Notice, Kirkland incorporates several
    documents by reference that Plaintiff relies on in her Complaint. Generally, allegations that rely on
28  documents outside the complaint incorporate those documents by reference. *See Knievel v. ESPN*,
    393 F.3d 1068, 1076 (9th Cir. 2005).

- **Criticisms about communication issues**: Fahey wrote that Plaintiff "needed to be supervised with all discussions with the third parties" because she "had issues following instructions or taking instructions to an extreme." Compl. ¶158; RJN, Ex. A, at 3. Deoras stated that "[Plaintiff's] communications with third-parties required considerable oversight" and she needed to "significantly improve . . . her communication skills with others . . . outside the firm." Compl. ¶158; RJN, Ex. A, at 2.

- **Criticisms about time management problems and dependability**: Deoras wrote that Plaintiff "struggles to meet deadlines" and that her "time management skills also need significant development . . . she is often unable to complete her assignments in an appropriate amount of time" (Compl. ¶90, n.21; RJN, Ex. A, at 2); that "her inability to meet deadlines and her effective disappearance for large portions of the trial caused a number of issues for the rest of the team, who had to pick up work Zoya had not completed" (Compl. ¶139, n.38; RJN, Ex. A, at 2); and that "every citation and factual and legal assertion needed to be double checked" (Compl. ¶190 n.57; RJN, Ex. A, at 2). Schmidt wrote that Plaintiff disappeared during trial and Schmidt would "not see her for days at the trial site," and that partners were required to "cut a substantial amount of her time." Compl. ¶217; RJN, Ex. A, at 3-4. Fahey wrote that Plaintiff "needs to work on time management and dependability of work product" and that she "tends to keep unusual hours which makes it very difficult for her to provided consistent work product." Compl. ¶85 n.16; RJN, Ex. A, at 3.

Based on these criticisms, Kirkland's Associate Review Committee rated Plaintiff's performance a five—the worst possible rating. Compl. ¶¶192, 200. As Plaintiff acknowledges, a rating of five results in immediate termination. *Id.*

**C.**   **Kirkland Discharges Plaintiff for Failing to Meet Performance Standards**

On September 28, 2021, Deoras, on behalf of Kirkland, informed Plaintiff that her employment was terminated due to her performance issues. *Id.* ¶¶15-16, 203. Kirkland offered

1   Plaintiff a severance package that included an amount equal to four months of pay, which Plaintiff

2   rejected. *Id.* ¶¶16-17; RJN, Ex. C.

3       Plaintiff was allowed to review the specific criticisms the partners submitted on October 11,

4   2021 (Compl. ¶¶206-07), and, angered by the criticism, Plaintiff filed administrative charges with

5   the EEOC and DFEH on February 11, 2022 (*id.* ¶37). This lawsuit followed on October 12, 2022.

6       In defiance of the law requiring most of her claims to be filed only against employers with

7   minimum numbers of employees, Plaintiff sues not only against her actual employer, Kirkland, but

8   also five partners with whom she worked.

9       **D.       The Individual Defendants and Their Tax P.C.s Were Not Plaintiff's Employer**

10      Plaintiff admits that Kirkland interviewed her, offered her employment, hired her,

11  onboarded her, trained her, and ultimately terminated her employment. Compl. ¶¶8-10, 67, 75, 233;

12  RJN, Ex. B. Plaintiff also acknowledges that Kirkland paid her directly, provided her new-hire and

13  termination paperwork (including a W-2 tax form), and was allegedly responsible for delaying her

14  unemployment benefits. *Id.* ¶¶61, 233-34, 250(b); RJN, Ex. D.

15      Despite these admissions that make clear Kirkland was her employer, Plaintiff picks five of

16  her supervisors—equity partners Deoras, De Vries, Alper, Schmidt, and non-equity partner Fahey

17  (referred to herein as the "Individual Defendants"), and four of their respective one-person tax

18  corporations (i.e., the P.C. Defendants)—and alleges they too were her employers. With the

19  exception of Fahey, these Individual Defendants are partners within Kirkland's limited liability

20  partnership structure.[3] *See* Compl. ¶¶22-34. Plaintiff worked with and was supervised by these as

21  well as other partners not named as defendants, including Barbara Barath, Ryan Kane, and others;

22  the partners assigned work to, directly supervised, and evaluated Plaintiff's work. *Id.* ¶¶15, 24, 27,

23  69, 78, 89-91, 108, 149, 250(b)-(c).

24      Like most equity partners at Kirkland, Deoras, De Vries, Alper, and Schmidt each formed

25  their respective P.C. to reduce tax and other liability. *Id.* ¶¶21, 242, 250(g) n.69.[4]  Each of them is

26

---

27  [3] Fahey, a non equity partner who did not have a tax LLC, is an in-house counsel and no longer employed with Kirkland. Compl. ¶34.

28  [4] Plaintiff does not allege that Fahey ever created a P.C. (and in fact he did not). *Id.*

the sole member and owner of their respective P.C. Compl. ¶¶23, 26, 29, 32, 240.

Plaintiff spends 25 pages of her Complaint spouting implausible allegations that these Individual Defendants and the P.C. Defendants formed an integrated enterprise with Kirkland and/or jointly employed her. *Id.* ¶¶240-300. As argued in the motions to dismiss of each Individual Defendant, the Individual Defendants and P.C. Defendants were not Plaintiff's employer—Kirkland was her employer.

### E.   Plaintiff's Alleged Discrimination, Harassment, and Retaliation

Plaintiff alleges that Kirkland discriminated against Plaintiff because she is a woman, but her allegations mainly relate to either performance concerns or standard workplace dynamics—not gender. Plaintiff alleges Kirkland (largely via one or more of the Individual Defendants) subjected her to the following conduct during her employment:

- **Assigning Work**: assigning Plaintiff either *too much* or *too little* work (all Individual Defendants);[5] assigning Plaintiff work at the last minute or during time she planned to take off or travel (Deoras, Fahey, Schmidt and Alper);[6] and assigning Plaintiff ministerial tasks not assigned to male associates (Deoras, De Vries, Schmidt).[7]

- **Supervising/Managing**: writing off Plaintiff's billable time (Fahey, De Vries, Alper);[8] giving Plaintiff inconsistent work instructions and/or unnecessary work assignments (Fahey);[9] allowing another associate to use Plaintiff's work on a POPR (Patent Owner Preliminary Response) as a template (Deoras);[10] not inviting Plaintiff to join on a chartered flight home after trial, so Plaintiff had to take a commercial flight (De Vries, Alper, Deoras);[11] and excluding Plaintiff from attending closing arguments but allowing a male associate to attend (Schmidt).[12]

- **Reviewing Work Performance**: providing long, false, and/or incomplete performance evaluations (Deoras, Fahey, Schmidt, De Vries);[13] and not including share partners on

---

[5] Compl. ¶¶123-28, 142-44, 152-53, 158-72, 175, 180-81.

[6] Deoras (*id.* ¶¶80, 107-08, 146, 149-50, 160 n.48, 187); Fahey (*id.* ¶¶79-80, 84 -85, 146, 165, 160 n.48); Schmidt (*id.* ¶160); Alper (*id.* ¶80).

[7] Deoras (*id.* ¶ 166 n.49); De Vries (*id.* ¶119 n.31); Schmidt (*id.* ¶119).

[8] *Id.* ¶217.

[9] *Id.* ¶¶152-53.

[10] *Id.* ¶¶93, 98.

[11] *Id.* ¶129.

[12] *Id.* ¶122 n.34.

[13] Deoras (*id.* ¶¶82, 87, 88, 90 n.21, 94, 98, 103 n.23, 107, 139 n.38, 147, 158, 169 n.50, 171 n.52, 173, 188, 190 n.57, 193, 196-97, 207, 209-10, 210 n.61, 211-13, 217); Fahey (*id.* ¶¶82, 85 n.16, 116 n.30, 140, 152 n.42, 158, 173, 207, 211, 250(f)); Schmidt (*id.* ¶¶ 88, 122, 138, 139, 146 n.41, 193, 196-99, 210, 214, 216-17); De Vries (*id.* ¶¶88, 103 n.24, 115 n.28, 126-28, 196-99, 210).

emails complimenting Plaintiff's work (Fahey).[14]

- **Setting Compensation**: compensating Plaintiff less than male associates (Alper).[15]

Plaintiff also makes allegations of "harassment" against Schmidt, none of which, even assuming *arguendo* true (they are not), would support a harassment claim: Schmidt (1) commented that she did not like working on an all-female damages team and preferred working with male experts, (2) asked Plaintiff to order food for others, (3) made "disparaging comments" about a female associate's work to Plaintiff, and (4) commented to a trial expert and the expert's assistant, allegedly about Plaintiff, that "now I'm stuck with this" after a different associate left the trial team. *See id.* ¶¶117-20.

Plaintiff alleges that, on April 29, 2021, she complained to Deoras and Schmidt about "Defendants' Unlawful Employment Practices" during a call Deoras and Schmidt initiated to "debrief" with Plaintiff, in which they asked about her change in demeanor at trial and if Plaintiff was okay. *See id.* ¶¶131-41. Plaintiff alleges that, on July 23, 2021, she complained again to Deoras about "Defendants' Unlawful Employment Practices," primarily her workload. *See id.* ¶¶178-80.

A significant portion of Plaintiff's allegations relate to her performance evaluation, which specified Plaintiff's performance shortcomings as a Kirkland associate. *See id.* ¶¶191-202, 208-29; *see also id.* ¶¶ 85 n.16, 116 n.30, 152 n.42, 158, 170 n.51 (allegedly defamatory statements made by Fahey); *id.* ¶¶90 n.21, 103 n.23, 139, 158, 171 n.52, 190 n.57, 211, 213 (allegedly defamatory statements made by Deoras); *id.* ¶115 n.28 (allegedly defamatory statements made by De Vries); ¶¶122, 146 n.41, 217 (allegedly defamatory statements made by Schmidt);[16] *see also* RJN, Ex. A.

Based on these allegations, Plaintiff asserts 12 causes of action: (1) Sex Discrimination in violation of Title VII; (2) Sex Discrimination in violation of FEHA; (3) Sex Discrimination in violation of San Francisco Municipal Police Code; (4) Sex Discrimination in violation of Federal Equal Pay Act ("EPA"); (5) Retaliation in violation of Title VII; (6) Retaliation in violation of

---

[14] *Id.* ¶¶29, 85 n.15.

[15] *Id.* ¶294.

[16] As Alper and Alper P.C.'s Motion to Dismiss argues, Plaintiff does not allege that Alper made any specific defamatory statements about her in the performance evaluation or otherwise. *Id.* ¶¶196-97, 207. Indeed, Alper did not write an evaluation of Plaintiff. *See* RJN, Ex. A.

FEHA; (7) Retaliation in violation of San Francisco Municipal Police Code; (8) Sex Harassment in violation of Title VII; (9) FEHA Failure to Prevent Discrimination and Retaliation; (10) Defamation; (11) IIED); and (12) NIED. With the exception of Plaintiff's fourth cause of action under the Federal EPA—which is asserted only against Kirkland, Adam Alper, and Adam R. Alper, P.C.—Plaintiff asserts all other causes of actions against all Defendants.

## IV.  THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS

### A.  Legal Standard for Motion to Dismiss

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face"); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pursuant to *Twombly* and *Iqbal*, the Court first sets aside any "conclusory statements" or "[t]hreadbare recitals of the elements" (*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)), as well as "unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *See Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (citing *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). The Court then determines if the complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). If plaintiff's allegations do not bring her "claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.  Plaintiff's Third and Seventh Claims Under the San Francisco Municipal Police Code are Preempted

Plaintiff's Third and Seventh Causes of Action allege that Defendants discriminated and retaliated against her in violation of San Francisco's Municipal Police Code ("Code"). *See* Compl.

¶¶319-24, 338-42. The Code's express purpose is to eliminate discrimination in employment. S.F., Cal., Police Code art. 33, § 3301 ("It is the policy of the City and County of San Francisco to eliminate discrimination . . . ."). The FEHA, however, preempts local anti-discrimination ordinances that serve the same purpose it does. *Delaney v. Superior Fast Freight*, 14 Cal. App. 4th 590, 596-98 (1993) (local ordinance preempted; it "has the same purpose as the FEHA, to outlaw discrimination in employment"); Cal. Gov't Code § 12993(c) ("it is the intention of the Legislature to occupy the field of regulation of discrimination in employment . . . encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment . . . by any city, city and county, county, or other political subdivision of the state"). Not surprisingly therefore, as this Court has held, claims under the Code are preempted. *Marsili v. Baker Places*, No. 03-cv-4491, 2003 WL 27396373, at *3-4 (N.D. Cal. Nov. 24, 2003) (dismissing San Francisco Code claim as preempted by FEHA). Thus, Plaintiff's Third and Seventh Causes of Action must be dismissed with prejudice.

**C.**     **Plaintiff's Eighth Claim for Sex-Based Harassment Under Title VII Fails**

Personnel management actions, such as "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support . . . deciding who will be laid off" do not come within the meaning of harassment under Title VII. *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017, 1033 (E.D. Cal. 2010) (citations omitted). Harassment, unlike discrimination, consists of actions *outside the scope* of job duties which are *unnecessary* to business and personnel management. *Id.*

To state a claim for sex-based harassment, Plaintiff must allege that (1) she was subjected to sex-based verbal or physical conduct; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991). To meet this standard, Plaintiff must plead facts establishing that her workplace was "permeated with discriminatory intimidation, ridicule and insult" which was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 409 (1994); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788

(1998) ("conduct must be extreme to amount to a change in the terms and conditions of employment"). The "severe or pervasive" standard is necessary to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 ("[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'"). Thus, "offhand comments, and isolated incidents (unless extremely serious)" are insufficient to state a harassment claim. *See id.*; *see also Manatt v. Bank of Am., NA*, 339 F.3d 792, 798-99 (9th Cir. 2003) (finding no hostile work environment where employee overheard "offhand comments" and "racially insensitive humor" by coworkers and supervisor, and where comments were directed at plaintiff on "only a couple of occasions").

Here, the harassment section of Plaintiff's Complaint fails to plead any facts. And her gender-based allegations elsewhere in the Complaint relate solely to personnel management actions that do not constitute harassment as a matter of law. *See* Compl. ¶¶343-50. Instead of slurs, jokes, insults, and other conduct that potentially can be harassment, Plaintiff's allegations focus on criticisms about her job assignments, Kirkland's supervision and management, performance feedback and reviews Plaintiff received, and her compensation (*see* Section III.E, *supra*). Such allegations cannot form the basis for a harassment claim. *See Washington v. Lowe's HIW Inc*., 75 F. Supp. 3d 1240, 1251 (N.D. Cal. 2014) (dismissing Title VII and FEHA sex-harassment claims where plaintiff's allegations involved only ordinary workplace annoyances that are not actionable and isolated comments that were not sufficiently pervasive).

The only allegations Plaintiff may contend not to be performance and business management are Schmidt's alleged (false) comments about a female associate and female experts on a single occasion. *See* Compl. ¶¶117-20; *see also* Section III.E, *supra*. But these vague and isolated comments, even if not performance related, are neither severe nor pervasive enough to support a harassment claim. *Soares v. California*, No. 2:16-00128 WBS EFB, 2016 WL 3519411, at *3-4 (E.D. Cal. June 27, 2016) (dismissing Title VII and FEHA harassment claims where conduct involved "personnel management actions" such as "discipline, *negative comments about former female judges*, overly scrutinized work that was inconsistent with [plaintiff's] actual work,

1   undeservedly poor performance evaluations, and 'weekly tests and work tallies'" (emphasis

2   added)); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110-11 (9th Cir. 2000) (no hostile

3   environment where supervisor referred to females as "castrating bitches," "Madonna," or "Regina"

4   in front of plaintiff and called plaintiff "Medea"); *Soares*, 2016 WL 3519411, at *3-4 (dismissing

5   harassment claims where plaintiff alleged that male judge made negative comments about female

6   judge); *Faragher*, 524 U.S. at 788 ("offhand comments . . . and isolated incidents (unless extremely

7   serious) will not amount to discriminatory changes in the terms and conditions of employment").

8       **D.    Plaintiff's Tenth Claim for Defamation Fails**

9       Defamation requires (1) a publication about an individual, (2) that is false, (3) defamatory,

10  (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Taus v. Loftus*,

11  40 Cal.4th 683, 720 (2007). Plaintiff's defamation claim fails because the allegedly defamatory

12  statements are opinions, not statements of fact, and are privileged.

13      **1.    Any Purportedly Defamatory Statements Are Nonactionable**
              **Statements of Opinion**
14

15      Absent exceptional circumstances not present here, defamation claims cannot be premised

16  on negative performance evaluations. In *Jensen v. Hewlett-Packard* the court expressed "strong

17  judicial disfavor for libel suits based on communications in employment performance reviews,"

18  reasoning that "evaluations serve the important business purpose of documenting the employer's

19  hiring, promotion, discipline and firing practices." 14 Cal. App. 4th 958, 964 (1993). The *Jensen*

20  court held that unless "an employer's performance evaluation falsely accuses an employee of

21  criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal

22  characteristics or behavior, it cannot support a cause of action for libel." *Id.* at 965 (internal citation

23  omitted). This rule applies "even when the employer's perceptions about the employee's efforts,

24  attitude, performance, potential or worth to the enterprise are objectively wrong and cannot be

25  supported by reference to concrete, provable facts." *Id.* This Court agrees, holding that "[e]ven if

26  the performance review statements contain factual assertions . . . the assertions do not rise to the

27  level of defamation given California's special treatment of employee evaluations." *Rudwall v.*

28  *Blackrock, Inc.*, No. C06-2992 MHP, 2006 WL 3462792, at *5 (N.D. Cal. Nov. 30, 2006) ("except

1    in egregious circumstances . . . the courts are not the proper venue for an employee to challenge

2    [her] employment evaluation"), *aff'd*, 289 F. App'x 240 (9th Cir. 2008).

3           Plaintiff's defamation claim is premised solely on supervisor statements in her performance

4    evaluation (*see* Compl. ¶¶208-18, 357-61), including statements about Plaintiff's need to work on

5    time management and communication skills, deficiencies in her judgment, and the dependability

6    of her work quality. *See id.* ¶¶85, 90, 103, 103 n.23, 115 n.28, 116 n.30, 139, 153, 171 n.52, 211,

7    213, 217; *see also* RJN, Ex. A. These statements, an unremarkable assessment about the

8    performance of a law firm associate who is not meeting expectations, are precisely the types of

9    statements of opinion courts hold not to be actionable. *See Jensen*, 14 Cal. App. 4th at 966

10   (statements that employee "had been the subject of some third party complaints, was not carrying

11   his weight, had a negative attitude in dealing with others, evidenced a lack of direction in his project

12   activities and was unwilling to take responsibility for the projects he oversaw" were nonactionable

13   statements of opinion);[17] *see also Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1153-54

14   (1995) (statement of "poor performance" in job assignment opinion and not actionable defamation);

15   *Jaramillo v. Food 4 Less Madera*, No. 10-cv-1283 LJO, 2010 WL 4746170, at *8, *9 (E.D. Cal.

16   Nov. 16, 2010) (dismissing claim; statement that plaintiff was "an unreliable employee who did not

17   adhere to Defendant's attendance policy" was nonactionable opinion); *Haley v. Cohen & Steers

18   Cap. Mgmt., Inc.*, 871 F. Supp. 2d 944, 961 (N.D. Cal. 2012) (supervisor's statements in

19   performance review accusing plaintiff of being "lazy," "not qualified," and "not long for the firm,"

20   did not support defamation claim; review did not make accusations of criminal conduct or

21   fundamental lack of integrity, dishonesty, or reprehensible personal characteristics/behavior);

22
23   ──────────────
     [17] In *Jensen*, the court considered and rejected the plaintiff's claim that statements in his
     performance evaluation were "defamatory." The statements fell into three general categories: (1)
24   those rating plaintiff's performance as "good," "acceptable," or "unacceptable;" (2) statements
     about areas in which the plaintiff needed to improve (such as statements to the effect that he needed
     "to work on reestablishing 'healthy, constructive' relationships with third parties, peers and
25   . . . managers," that he needed "to learn the technical aspects of a project," that he needed "to work
     on becoming a 'competent resource person,'" and that he needed "to complete steps to help
26   establish himself as a productive company team player"); and (3) statements about the plaintiff's
     attitude toward his job responsibilities and his coworkers (such as he was not "pulling his weight,"
27   he had "'weak' knowledge of project management and process control," he "showed 'lack of
     direction, inflexibility and lack of dependability,'" and that he "was the subject of a 'tremendous
28   amount of negative feedback'"). *Jensen*, 14 Cal. App. 4th at 971 n.12, n.13, and n.14. The court
     held that all of these statements were non-actionable opinion.

*Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1402 (1999) ("Courts should be reluctant to hold comments concerning the abilities of an individual actionable"). Whether a communication was a statement of fact or of opinion is a question of law to be decided by the court. *Eisenberg v. Alameda Newspapers, Inc*., 74 Cal. App. 4th 1359, 1383 (1999).

Despite Plaintiff's efforts to conflate performance criticisms with accusations of incompetence, nothing accuses Plaintiff of incompetence or "criminal conduct, lack of integrity, dishonesty . . . or reprehensible personal characteristics or behavior." *Jensen*, 14 Cal. App. 4th at 965; *see also* RJN, Ex. A. Accordingly, Plaintiff has failed to state a defamation claim.

### 2.    Any Purportedly Defamatory Statements Are Privileged

California courts have long held privileged under the common interest privilege of Civil Code section 47(c) internal employer communications concerning the performance or termination reasons of an employee. *See, e.g.*, *Deaile v. Gen. Tel. Co. of Cal.*, 40 Cal. App. 3d 841, 846-47 (1974) (communications about employee's termination "reasonably calculated to protect or further a common interest of both the communicator and the recipient" because the information was disseminated to preserve employee morale and job efficiency, and was not malicious); *Rudwall*, 2006 WL 3462792, at *3 (privilege "also applies to communications within a company concerning the job performance" of current employee); *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440 (2007) (internal communications about reasons for employee's termination privileged); *Kelly v. Gen. Tel. Co*., 136 Cal. App. 3d 278, 285 (1982) (same).

To defeat the privilege, a plaintiff must allege specific facts establishing malice. A general allegation will not suffice; plaintiff must allege detailed facts showing each defendant's ill will towards her. *Robomatic, Inc. v. Vetco Offshore*, 225 Cal. App. 3d 270, 276 (1990). Mere allegations that statements are made "with malice" or with "no reason to believe the statements [are] true" are insufficient. *Kacludis v. GTE Sprint Commc'ns Corp.*, 806 F. Supp. 866, 872 (N.D. Cal. 1992) ("[h]aving pled facts giving rise to a presumptive manager's privilege, [plaintiff] bears the burden of defeating that privilege"). Courts thus routinely dismiss defamation claims where plaintiff fails to allege sufficient facts and instead relies on generalized and boilerplate allegations, including this Court. *See, e.g.*, *Jackson v. Mills Corp.*, No. C-07-00662 EDL, 2007 WL 2705215, *3 (N.D. Cal.

1   Sept. 14, 2007) (granting Rule 12(b)(6) motion to dismiss where plaintiff's allegations could not

2   overcome the privilege); *Rudwall*, 2006 WL 3462792, at *3 (granting motion for judgment on

3   pleadings on defamation claim).

4         Here, Plaintiff speculates—without specifics—that her evaluation was "published to and

5   considered by at least around 118 individuals," including members of Kirkland's IP Litigation

6   Associate Review Committee (ARC), Firmwide ARC, Associate Compensation Committee, and

7   Firm Committee. *See* Compl. ¶¶222-23, 226. But as Plaintiff acknowledges, it was standard

8   practice for members of these internal committees to review associate performance evaluations.

9   *Cuenca v. Safeway S.F. Emps. Fed. Credit Union*, 180 Cal. App. 3d 985, 995-96 (1986) (statements

10  made to members of supervisory committee and board of directors privileged: "Communications

11  made in a commercial setting relating to the conduct of an employee have been held to fall squarely

12  within the qualified privilege for communications to interested persons"). Thus, these individuals

13  had a common interest in the subject matter of the evaluation and are subject to the privilege. *See,*

14  *e.g.*, *Deaile*, 40 Cal. App. 3d at 846-47; *Rudwall*, 2006 WL 3462792, at *3. And although Plaintiff

15  speculates that the evaluation was republished to "third parties," including the Attorneys' Liability

16  Assurance Society (*see* Compl. ¶¶223, 225)—based on *information and belief*—these speculations

17  lack the required specificity as to *who* the claimed recipients were or *when* they received the

18  evaluations. *See Pruitt v. Genentech, Inc.*, No. 2:17-cv-00822-JAM-AC, 2017 WL 3641783, at *4

19  (E.D. Cal. Aug. 24, 2017) (allegations made on "information and belief" raised red flag; dismissing

20  for  lack of specificity); *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1192-93 (C.D. Cal. 2002)

21  (plaintiff failed to prove publication of defamatory statements where plaintiff could only present

22  inadmissible hearsay evidence that he had been informed by other sources "through word of mouth"

23  that alleged defamatory statements had been made).

24        Moreover, Plaintiff offers only conclusory and boilerplate malice allegations. *See* Compl.

25  ¶¶219-20 (conclusory allegation that Defendants falsely and maliciously acted with "hatred or ill

26  will"); ¶358 (alleging that Defendants "acted with actual malice in making the statements, because

27  each Defendant knew the statement was false or subjectively entertained serious doubts as to its

28  truth"). A standard practice of Committees reviewing evaluations does not make malice plausible.

1   The Complaint lacks the requisite specific factual allegations evidencing personal hatred or ill-will

2   by Kirkland, or any reason that Kirkland had to injure her; thus she cannot show malice. *See*

3   *Kacludis*, 806 F.Supp. at 872 (allegations that statements made "with malice" or with "no reason

4   to believe the statements were true" are insufficient to show "malice"); *see also Pruitt*, 2017 WL

5   3641783, at *4 (dismissing claim where complaint alleges that defendant "made this statement

6   maliciously, out of hatred or ill will"). Plaintiff has not met her burden of pleading facts sufficient

7   to overcome the privilege.

8              **E.      Plaintiff's Eleventh Claim for IIED Fails on Multiple Grounds**

9          To state a claim for IIED, Plaintiff must plead facts showing: (1) extreme and outrageous

10  conduct by each defendant, (2) intent to cause, or reckless disregard of the probability of causing,

11  distress, (3) severe emotional suffering, and (4) actual and proximate causation. *See Cole v. Fair*

12  *Oaks Fire Prot. Dist.*, 43 Cal.3d 148, 155 n.7 (1987). These requirements "are rigorous, and

13  difficult to satisfy." *Yurick v. Superior Ct.*, 209 Cal. App. 3d 1116, 1129 (1989).

14             **1.      Plaintiff Has Not Pled "Extreme and Outrageous" Conduct**

15         Plaintiff's claim first fails because she does not plead "extreme and outrageous conduct."

16  The conduct at issue must be "so extreme and outrageous as to go beyond all possible bounds of

17  decency . . . and to be regarded as atrocious, and utterly intolerable in a civilized community."

18  *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 499 n.5 (1970). Mere indignities, insults, threats,

19  annoyances, petty oppressions, and the like are not enough. *Hughes v. Pair*, 46 Cal.4th 1035, 1051

20  (2009). Whether the alleged conduct is extreme and outrageous is a question of law; plaintiff must

21  allege with "great specificity" acts so extreme as to exceed all bounds of decency usually tolerated

22  in a civilized community. *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc*., 222 Cal. App. 4th

23  819, 832 (2013); *Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 44 (1987).

24         The actions at issue here—discipline, criticisms, and termination—constitute normal

25  workplace interactions which, even if improperly motivated, do not constitute extreme or

26  outrageous conduct as a matter of law. *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144,

27  161-62 (2014) (upholding demurrer for IIED claim based on conduct "in the normal course of the

28  employer-employee relationship"); *Miklosy v. Regents of the Univ. of Cal.*, 44 Cal.4th 876, 902

(2008) (conduct in normal course of employment relationship cannot give rise to IIED claim); *Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 80 (1996) (rejecting IIED claim based on alleged personnel management: "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination"); *Lee v. S. of Mkt. Health Ctr.*, No. 19-CV-06482-LB, 2020 WL 2219032, at *7 (N.D. Cal. May 7, 2020) (dismissing IIED and NIED claims).

Plaintiff's IIED claim, like those dismissed in the cases above, relies upon disputes over her characterization of personnel management actions. Plaintiff alleges that Kirkland hired her, assigned her work, supervised her in ways with which she disagreed (labelling supervisory instructions "contradictory", "unnecessary", etc.), and criticized her performance in multiple ways. Although Plaintiff alleges in conclusory fashion that Defendants treated other (typically male) attorneys differently, these actions—e.g., assigning Plaintiff work, supervising and managing her performance, critically reviewing her performance, and setting her compensation (*see* Sections III.E and IV.C, *supra*)—are all non-actionable personnel management. And her contentions regarding her termination fall squarely within the personnel management rulings dismissing IIED claims. *See* Compl. ¶365. In other words, Plaintiff's IIED claim is premised on standard personnel actions: assignments, criticisms, a poor performance review, compensation, and resulting termination. As a matter of law, these personnel actions do not amount to outrageous conduct "regarded as atrocious, and utterly intolerable in a civilized society", and fail to state an IIED claim. *Janken*, 46 Cal. App. 4th at 80.

### 2.   Plaintiff Has Not Properly Pled Severe or Extreme Emotional Distress

Plaintiff's IIED claim should also be dismissed because she fails to plead facts showing she suffered "severe or extreme distress." The severe emotional distress necessary to state a claim for IIED is "emotional distress of such substantial quality or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Haley*, 871 F. Supp. 2d at 960 (dismissing IIED claim). Courts dismiss IIED claims even where plaintiffs allege "mental anguish, anxiety, and distress" if the allegations do not show that the alleged distress was so severe that no reasonable person should be expected to endure it. *See Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 711-12 (N.D. Cal. 2014) (dismissing IIED claim when plaintiff alleged defendants "cause[d] her

mental anguish, anxiety, and distress" and she "felt extremely emotionally distressed and pained, fearing for her job and livelihood"); *Nelson v. County of Sacramento*, 926 F. Supp. 2d 1159, 1172 (E.D. Cal. 2013) (dismissing IIED claim; plaintiff failed to plead facts showing why his alleged emotional distress rose to level that "no reasonable [person] . . . should be expected to endure it," where plaintiff alleged "pain, grief, shame, humiliation, embarrassment, anger, disappointment, depression, sleeplessness, anxiety, disappointment, damage to reputation, and worry," because allegations were "conclusory" and lacked "specific facts to show their nature and extent"); *Hatfield v. DaVita Healthcare Partners, Inc.*, No. C 13-5206 SBA, 2015 WL 106632, at *4 (N.D. Cal. Jan. 7, 2015) (accord).

Plaintiff alleges in a conclusory fashion that she "has suffered severe emotion distress," and that her harm includes "pain, bodily ailments, anxiety, humiliation, anger, shame, embarrassment, frustration, and fear." *See* Compl. ¶365. But she pleads no facts supporting these conclusions showing emotional distress of the required substantial or enduring quality.

### F.   Plaintiff's Twelfth Claim for NIED Fails for Multiple Reasons

Plaintiff's NIED claim should be dismissed because: (1) it is preempted by the exclusive remedy of workers' compensation law, (2) it is based on personnel actions that as a matter of law cannot be the basis of an NIED claim, and (3) Plaintiff cannot plausibly plead a duty of care.

#### 1.   Plaintiff's NIED Claim is Preempted by Workers' Compensation

Plaintiff's NIED claim, like other negligence-based torts, is preempted by California's Workers Compensation Act. *See* Lab. Code § 3600, 3602; *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 713-14 (1994) (normal employer actions causing injury do not fall outside scope of exclusivity rule merely by attributing to employer a sinister intention). Negligence torts arising in employment are barred by these exclusive provisions, thus Plaintiff's NIED claim fails as a matter of law. *Schaffer v. GTE, Inc.*, 40 F. App'x 552, 557-58 (9th Cir. 2002) (NIED claim preempted).

#### 2.   Plaintiff's NIED Claim Fails Because It Is Based on Intentional Actions

Plaintiff's NIED claim also fails because it is premised on intentional employment decisions. *See* Compl. ¶369. Personnel decisions like those alleged here cannot be the basis of a negligence-based NIED claim as a matter of law because those decisions are necessarily intentional.

*Cole*, 43 Cal.3d at 160 ("[a]n employer's supervisory conduct is inherently 'intentional'"); *Edwards v. U.S. Fid. & Guar. Co.*, 848 F.Supp. 1460, 1466 (N.D. Cal. 1994) (dismissing NIED claim based on promotions, demotions and criticism of work practice: "where the conduct alleged is intentional, it cannot be used as a basis for a negligent infliction of emotional distress claim").

### 3.   Kirkland Did Not Owe Plaintiff a Duty of Care

NIED "is not an independent tort; rather, it describes the context in which the defendant acts negligently," and "the plaintiff must still plead the traditional elements of negligence, including duty, breach of duty, causation, and damages." *Cohen v. Chau*, No. 19-cv-03936, 2019 WL 6655392, at *6 (C.D. Cal. July 23, 2019) (citing *Christensen v. Superior Ct.*, 54 Cal.3d 868, 884 (1991) and *Macy's Cal., Inc. v. Superior Ct.*, 41 Cal. App. 4th 744, 748 (1995)).

Plaintiff cannot show that the Kirkland owed her a negligence-based duty. "[T]here is no duty to avoid negligently causing emotional distress to another, and . . . damages for emotional distress are recoverable only if the defendant has breached some other duty to the plaintiff." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993). A duty to the plaintiff may be "imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Id.* at 985. Plaintiff asserts she was "owed a duty of care by [Kirkland] to ensure that Plaintiff was not exposed to foreseeable harms." Compl. ¶369. But Plaintiff does not explain where this alleged duty of care came from as to Kirkland, or plead facts supporting a duty. In general, the law does not recognize any duty of care owed by an employer to refrain from negligence in dealing with an employee. *Barnes-Perrilliat v. S. of Mkt. Health Ctr.*, No. 20-cv-02368-LB, 2020 WL 7428319, at *3 (N.D. Cal. Dec. 19, 2020).

Accordingly, Plaintiff's Twelfth claim for NIED fails as a matter of law.

### G.   Plaintiff Has Not Plausibly Pled Punitive Damages

The federal pleading standards set forth in *Twombly* and *Iqbal* govern claims for punitive damages. *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146-47 (E.D. Cal. 2010); *see also Dallah & Dallah, Inc. v. State Farm Gen. Ins. Co.*, No. 21-cv-01348, 2022 WL 2784391, at *4 (C.D. Cal. Apr. 20, 2022) ("The Federal Rules of Civil Procedure govern the pleading requirements for claims for punitive damages claims [sic]. . . . Therefore, the pleading standards set forth in

*Twombly* and *Iqbal* apply to claims for punitive damages") (quoting *SKWS Enters., Inc. v. Levonchuck*, No. 17-cv-3327, 2018 WL 11351584, at *5 (C.D. Cal. Apr. 2, 2018)). Pursuant to those standards, the complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level" (*Twombly*, 550 U.S. at 555), and demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678).

Under California law, a plaintiff may recover punitive damages only if she can show that "the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); *see also id.* § 3294(c) (defining "oppression," "fraud," and "malice"). Allegations are insufficient when the plaintiff asserts "nothing more than conclusory allegations" of oppression, fraud, or malice. *Kelley*, 750 F. Supp. 2d at 1147; *Opperwall v. State Farm Fire & Cas. Co.*, No. 17-cv-07083-YGR, 2018 WL 1243085, at *5 (N.D. Cal. Mar. 9, 2018) (following *Kelley* and dismissing punitive damages claim because "plaintiff does no more than offer legal conclusions couched as factual allegations"); *Dipaola v. JPMorgan Chase Bank*, No. C 11-2605 SI, 2011 WL 3501756, at *6 (N.D. Cal. Aug. 10, 2011) (following *Kelley* and dismissing punitive damages claim).

Plaintiff seeks punitive damages for each of her claims except her Fourth. *See* Compl. ¶¶309, 318, 323, 331, 336, 341, 348, 354, 361, 367, 369, Prayer for Relief, 370(v) and (x). Plaintiff does not, however, plead sufficient facts to support punitive damages. Instead, she alleges with conclusory buzzwords that "Defendants engaged in the acts alleged herein intentionally, willfully, maliciously, fraudulently, and oppressively" and that "Defendants . . . authorized and ratified the acts alleged herein, and acted with advance knowledge and conscious disregard of the protected rights and safety of Plaintiff." *Id.* ¶336. But she fails to allege any specific corresponding facts showing that Kirkland acted maliciously, oppressively, or fraudulently. *See Kelley*, 750 F. Supp. 2d at 1147-48 (plaintiffs "conclusory allegations of 'conscious disregard of [Plaintiff's] rights and . . . intent to vex, injure and annoy" were "nothing more than Plaintiff's bare characterization of Defendant's motives as evil" and "unsupported by allegation of any facts").

Moreover, when a corporate employer is involved, punitive damages may be imposed only if an officer, director or managing agent had advance knowledge of the injury and consciously disregarded the rights or safety of others, authorized, or ratified the wrongful acts, or was personally

1   guilty of oppression, fraud, or malice towards the plaintiff. *See* Cal. Civ. Code § 3294(b). Plaintiff's

2   conclusory allegations that the Defendants (including Kirkland) "authorized and ratified the acts

3   alleged herein" and "acted with advance knowledge and conscious disregard of the protected rights

4   and safety of Plaintiff" merely recites the elements of her request, and are insufficient to support

5   punitive damages.

6          Accordingly, this Court should dismiss Plaintiff's punitive damages claim because her

7   allegations are insufficient to state a punitive damages claim as a matter of law.

8   **V.**     <u>**CONCLUSION**</u>

9          For the reasons set forth above, Kirkland respectfully requests that the Court grant its

10  Motion to Dismiss.

11  Dated: December 16, 2022                    LYNNE C. HERMLE
                                                JOSEPH C. LIBURT
12                                              KATE JUVINALL
                                                PAUL RODRIGUEZ
13                                              Orrick, Herrington & Sutcliffe LLP

14

15                                    By: _____

16                                              LYNNE C. HERMLE
                                                Attorneys for Defendant
17                                              KIRKLAND & ELLIS LLP

18

19

20

21

22

23

24

25

26

27

28

KIRKLAND'S MOTION TO DISMISS
[4:22-CV-05990-HSG]