# EXHIBIT C

# EMPLOYMENT SEPARATION AGREEMENT

This Agreement provides pay and benefits to you for agreeing to the following:

1.      **Parties/Releasees**. The parties to this Agreement are you (the "Employee" or "you") for yourself, your family and anyone acting for you, and Kirkland & Ellis LLP (the "Firm").  The released entities ("Releasees") are the Firm and its related entities, and all of their past and present officers, partners, of counsel, supervisors, employees and anyone else acting for any of them (including without limitation shareholders, employees, officers and directors of professional corporations that are partners or of counsel).

2.      **End of Employment.**  You agree that your employment with the Firm will end on the earlier of: (a) January 31, 2022, (b) the date you accept other employment, (c) the date you are notified by the Firm that your employment has been terminated for cause, or (d) October 5, 2021, if you fail to sign this Agreement by October 5, 2021 ("Termination Date").  Termination for cause may include, but is not limited to, breach by you of this Agreement, your failure to notify the Firm of the acceptance of employment elsewhere, or actions disruptive to the business of the Firm.  You further agree that you will complete and/or transition your current active work as soon as practicable, in consultation with the Firm.  If you sign, and fully comply with this Agreement, you will be considered as having been placed on administrative leave of absence at such time as you have completed and/or fully transitioned your active work (the "Separation Date") through your Termination Date.  Your Separation Date will be your last day of active work with the Firm.  You agree that you will not perform, or offer or agree to perform, any legal services or legal work of any kind, including pro bono or other volunteer work, at any time after the Separation Date and prior to the Termination Date, except as specifically requested by the Firm or with the written consent of the Firm.  You further acknowledge that the Termination Date is later than the Separation Date solely for your benefit and solely to facilitate your efforts to obtain employment elsewhere.

3.      **Release.**  You agree that you hereby release the Releasees from all known and unknown claims of any type to date arising out of anything to do with your employment or the end of your employment.  This means you give up these claims to the fullest extent allowed by law.  They include (without limitation) claims concerning any express or implied employment contracts, covenants or duties; claims for any pay or benefits, including paid/unpaid leave/time off, unequal pay, insurance benefits, frontpay, backpay, or attorney fees; claims for defamation, detrimental reliance, emotional distress, interference with contractual or legal rights, invasion of privacy, loss of consortium, negligence, personal injury, promissory estoppel, public policy violation, termination notice insufficiency, wrongful termination, other action/inaction or any other federal, state, local or common law matters; or claims of discrimination based on age (other than federal law), ancestry, benefit entitlement, color, concerted activity, disability, genetics, income source, leave rights, marital status, military status, national origin, parental status, race, religion, retaliation, sex, sexual harassment, sexual orientation, union activity, veteran status, whistleblower activity or other legally protected status.

*FOR CALIFORNIA EMPLOYEES* :   YOU AGREE THAT YOU HEREBY WAIVE ALL RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH STATES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR

RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

For **Massachusetts Employees:** You waive all claims or rights arising under the Massachusetts Payment of Wages Law, G.L. c.149; the Massachusetts Fair Employment Practices Act, G.L. c.151B; and An Act Relative to Domestic Violence, M.G.L. ch. 149, s. 52E.

For New York Employees residing in New Jersey: This Agreement releases claims under the N.J. Conscientious Employee Protection Act (N.J. Stat. Ann. 34:19-1 et. seq.)

4.    **Release Exclusions.**   You understand that this release excludes any claims which cannot be waived by law, such as for unemployment/worker's compensation.   Nothing in this Agreement in any way limits your right to provide information to or participate in any investigation or proceeding concerning any administrative claim with any government agency under any law that protects such rights, or to file such a claim.  But you give up any money or other personal benefit - directly from the Firm - for any such claim or related litigation, except if prohibited by law.

5.    **Release Enforcement.**  You agree that if you make any claim which you have released and such claim is determined to be barred by this release, or for any other reason you do not win that claim, you will, at the Firm's option (1) pay the Firm's court costs, expenses and reasonable attorney fees in defending against the claim, or (2) repay the Firm everything the Firm gave you for this Agreement, less $100.

6.    **Non-Admission.**  You agree that the Firm's offer of this Agreement and/or any payment under this Agreement are not an admission of any kind that you have any viable claim against the Firm or that the Firm admits to any liability.

7.    **Return of Firm Property.**  You agree that on or before the Separation Date you will return to the Firm all of its property you had or controlled, including confidential information, electronic and other equipment, software and credit cards.  You agree that the Firm's property includes all originals and copies of soft and hard copy documents such as e-mails, facsimiles, handbooks, letters, manuals, memoranda and any other Firm related communications or material.  This includes all such documents related to the Firm and the Firm's clients.  You may elect to keep your Firm-issued mobile device only until the Termination Date, at which time you must return it to the Firm.

8.    **Recording Time.**  You agree that at the time you execute this Agreement you have submitted all of your outstanding time, and will continue to record time pursuant to the Firm's time keeping policies through your Separation Date.

9.    **Personal Account.** You agree that at the time you execute this Agreement you have settled your personal account balance with the Firm.  You agree to promptly reimburse the Firm for any personal charges exceeding $25.00 in aggregate that were not reflected on the most recent personal account statement and that the Firm may withhold any such amounts from your last payment in the event such reimbursement is not made.

10. **Expense Reports.** You agree that at the time you execute this Agreement you have submitted any outstanding expense reports. You acknowledge that after your Separation Date you are not authorized to incur expenses on behalf of the Firm or its clients and agree that the Firm has no obligation to reimburse you for any such expenses, except for Firm-approved mobile data service fees and early termination fees, if any, incurred through your Termination Date.

11. **Confidential Information.** You agree not to disclose or use any confidential Firm information (as defined below) or confidential Client information (as defined below) outside of the Firm. Confidential Firm/Client information is not limited to trade secrets. Confidential Firm information means any non-public information you had access to in your employment which relates to the Firm's business, processes, templates, model forms, clients, consultants, customers, employees and related entities, such as the Firm's finances, earnings, human resources, marketing, management, operations, systems, pricing, research, resources or systems. Confidential Client information means any non-public client names, confidences, communications, advice, documents or materials of any kind. Notwithstanding this provision, the Firm acknowledges that you may contact prospective employers known to you to be Firm clients for the single purpose of seeking employment or employment opportunities. This provision also does not preclude disclosure of names of clients on whose behalf you rendered legal services for the sole and limited purpose of allowing a prospective employer to run necessary conflict checks or to otherwise allow you to comply with professional responsibility and ethical requirements.

12. **Non-Disparagement.** You agree that you will not do, say, or write, anything that disparages, reflects negatively on, or encourages any adverse action against any of the Firm Releasees, their offices, partners, associates or staff, work product, business, clients or services, except as required by law, professional responsibility, or ethical requirements.

13. **Confidentiality.** You agree that the fact of this Agreement and all of its terms will be kept confidential and will not be disclosed by you except to your spouse or domestic partner, your attorney, or other professional advisors retained by you, so long as each such person either has agreed to hold such information confidential or is otherwise bound by a duty to do so.

14. **Transition/Future Cooperation.** You agree that you have participated and until your Termination Date will continue to participate in the timely and orderly transition of your responsibilities, and thereafter to assist the Firm with any client or internal transition matters or inquiries regarding past matters. You also agree to cooperate with the Firm by providing truthful information with regard to any investigations or legal matters concerning anything you know about, subject to payment at the hourly compensation rate in effect at your Separation Date, plus reasonable expenses, for services rendered after your Termination Date.

15. **Other Representations.** You agree that, as of the time you sign this Agreement:

    a.  you have been given all pay, benefits and time off you are due;
    b.  you have not suffered any on-the-job injury for which you have not already filed a claim;

    c.    you were advised in writing, by getting a copy of this Agreement, to consult with an attorney of your choice at your own expense before signing below;

    d.    this Agreement settles all matters and replaces any other written or oral agreements between you and the Firm not specifically included in this Agreement;

    e.    this Agreement can only be modified in a written document signed by you and the Firm;

    f.    this Agreement will be interpreted under the laws of the state where you worked at the end of your active employment, unless superseded by federal law;

    g.    any Firm decision not to enforce this Agreement if you violate it is not a waiver of any future violation;

    h.    you have not been promised anything besides what is in this Agreement;

    i.    you have not been coerced or threatened into signing this Agreement; and

    j.    you are signing this Agreement knowingly and voluntarily.

16.    **Time Periods, Pay, and Benefits.**  You agree that you have been given at least seven (7) days to consider this Agreement.  If you sign this Agreement by October 5, 2021, and abide by its terms, you will continue to receive semi-monthly payments equivalent to your current semi-monthly base compensation rate, minus applicable withholdings, through the earlier of January 31, 2022 or the date your employment has been terminated for cause.  If you are not terminated for cause but leave your employment before January 31, 2022, you will receive any remaining severance from your actual Termination Date through January 31, 2022.  If you sign this Agreement by October 5, 2021, and abide by its terms, you will receive additional benefits limited to the following:

- Continued remote access to the Firm's voicemail and email systems;

- Continued reimbursement of Firm-approved mobile data service fees and early termination fees, if any;

- Maintenance of your professional listing on the Firm's extranet site;

- Continuation of medical, dental, and vision insurance as currently enrolled and at premium rates equal to those applicable to all associates. Rates are subject to increases that may occur from time to time including, but not limited to, those typically effective at the beginning of a new plan year;

- Three (3) months of outplacement services to be completed within six (6) months of the date of this Agreement.

The above pay and benefits will be available to you until the Termination Date, except for remote access to the Firm's voicemail and email systems and professional listing, which may be discontinued in the event it is determined that you have failed to comply with the terms of this agreement, Kirkland's policies or procedures, or have otherwise engaged in conduct inconsistent

4

with continued remote access. Failure to sign this Agreement by October 5, 2021, will result in the Firm's immediate discontinuation of all of the pay and benefits enumerated above in this paragraph.

Date Agreement Given to Employee:  September 28, 2021

PLEASE RETURN (by mail, email, or interoffice packet) TO:

Ben Schneider
FW Compliance Specialist
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654

Zoya Kovalenko
_____
(Signature)

_____
(Date)