1
2
3
4                         UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    ZOYA KOVALENKO,                          Case No. 22-cv-05990-HSG

8                   Plaintiff,                **ORDER DENYING IN PART AND**
                                              **GRANTING IN PART MOTIONS TO**
9            v.                               **DISMISS, DENYING MOTIONS TO**
                                              **STRIKE, AND DENYING IN PART**
10   KIRKLAND & ELLIS LLP, et al.,            **AND GRANTING IN PART MOTION**
                                              **TO SEAL**
11                  Defendants.
                                              Re: Dkt. Nos. 24, 30, 31, 34, 35, 36, 37, 38,
12                                            53

13          Before the Court are Defendants' motions to dismiss and motions to strike, as well as a

14   renewed administrative motion to seal.  The Court **DENIES** the anti-SLAPP motion, Dkt. No. 38,

15   and **DENIES** the motion to strike, Dkt. No. 37.  The Court **GRANTS IN PART** and **DENIES IN**

16   **PART** the motions to dismiss.  *See* Dkt. Nos. 24, 30–31, 34–36.  The Court **DENIES IN PART**

17   and **GRANTS IN PART** the motion to seal.  Dkt. No. 53.

18   **I.    BACKGROUND**

19          Plaintiff Zoya Kovalenko brings this sex discrimination case against her former employer

20   Kirkland & Ellis LLP, as well as various firm partners.  *See* Dkt. No. 1 ("Compl.") ¶¶ 1–5, 20–34.

21   Plaintiff alleges that Defendants fired her in retaliation for complaining of sex-based

22   discrimination she experienced and observed at the law firm.  *Id.* ¶¶ 7–19.

23           Plaintiff worked as an intellectual property litigation associate based out of Defendant's

24   San Francisco office from November 2020 to September 2021.  *Id.* ¶ 8.  Plaintiff alleges she

25   experienced and observed "an obvious disparity in treatment relative to male associates" with

26   respect to workload, benefits and pay, support and assistance on assignments, accessibility to

27   partners, and respect for time off.  *Id.* ¶ 12, 68–74.  For example, Plaintiff alleges that:

28          • Defendants offered her a lower salary than male comparators.  *Id.* ¶¶ 65–74.

United States District Court
Northern District of California

United States District Court
Northern District of California

- Defendants repeatedly assigned Plaintiff work during scheduled vacation time but did not do the same to male associates to her knowledge. *Id.* ¶¶ 78–80, 85, 85 n.14, 159–61. This included reassigning work to Plaintiff during her vacation time to ensure another male associate would not be disturbed during his vacation time. *Id.* ¶¶ 80, 159.

- During two weeks Plaintiff served on a trial team, a partner made comments about disliking working with female teams, made disparaging comments about Plaintiff, and asked her to order food or do ministerial tasks that male associates were not asked to complete to Plaintiff's knowledge. *Id.* ¶¶ 113, 117–20, 128.

- Defendants gave Plaintiff a heavier workload than male comparators. *Id.* ¶¶ 143–44, 162. For example, Plaintiff received non-trial work in the leadup to trial, which other associates described as "highly abnormal." *Id.* ¶¶ 112, 122–24, 128. Male comparators stated that Plaintiff's workload was "extreme or unreasonable relative to their customary workload." *Id.* ¶ 144.

- After trial, male partners invited a male associate to join them on a charter flight home while sending Plaintiff and another female associate home in economy seating on commercial flights. Plaintiff was told not to tell anyone. *Id.* ¶¶ 129–30.

- Plaintiff observed "alarmingly high turnover of female associates" in the IP litigation group, noting that at least seven left during her ten-month tenure, in contrast to one male associate. *Id.* ¶ 13.

Plaintiff alleges that she complained to Defendants on multiple occasions about how she was treated compared to male associates working on the same matters. *Id.* ¶¶ 14, 131–38, 144, 178–80. According to Plaintiff, things got worse after she complained, with an escalation in condensed, competing deadlines without support. *Id.* ¶¶ 141–43. Plaintiff alleges that male associates commented that her workload was extreme and unreasonable compared to their own. *Id.* ¶ 144. When Plaintiff complained again, Defendants allegedly froze her out of work altogether and stopped providing positive feedback. *Id.* ¶¶ 144, 181.

In September 2021, Defendant Deoras allegedly fired Plaintiff at what was supposed to be her first performance review, saying only that Plaintiff had "not contributed to her matters at either the substantive or commitment level that is expected of an associate." *Id.* ¶¶ 15, 203. Plaintiff alleges that she was in "total shock" because she had received only positive feedback and had not been notified of any performance issues before then. *Id.* ¶¶ 15, 203–26. Plaintiff asserts that she regularly received high praise, that partners used her work in successful filings, and that she performed excellently in her time at the firm. *Id.* ¶¶ 11, 75. According to Plaintiff, when she

first complained of discriminatory conduct, Defendant Deoras reassured her that she had no performance issues and that "the intention was for her to grow with Kirkland." *Id.* ¶¶ 137–38.

The month after her termination, Plaintiff allegedly had a phone call in which a Kirkland representative read her performance "evaluations" that were directly at odds with the real-time feedback she received. *Id.* ¶¶ 206–13. Plaintiff asserts the evaluations, which she was not given access to until after being fired, departed significantly from Defendant's standard evaluation process. *See id.* ¶¶ 191–202. For example, Plaintiff states one non-share partner who wrote an evaluation told Plaintiff that he had been instructed to criticize her work. *Id.* ¶¶ 194, 215. She asserts she was not given a chance to remediate performance issues during a typical probationary period. *Id.* ¶ 200. Plaintiff alleges that Defendants intentionally withheld these evaluations at the time she was fired in an attempt to get her to sign a severance package that would have required her to waive her legal claims. *Id.* ¶¶ 16–17, 205. In sum, Plaintiff asserts that these negative evaluations were fabricated and intended to serve as a post-hoc, pretextual justification for her termination. *Id.* ¶¶ 19, 140, 147, 182–86, 200, 208–21.

To support Plaintiff's allegation that the performance issues were pretextual, she describes in detail the work she did and the positive feedback she received, and points to numerous instances where male associates made errors or submitted subpar work and are still employed. *See, e.g.*, *id.* ¶¶ 75–103, 108–11, 115–16, 154–58. Plaintiff describes a repeating pattern of being assigned disproportionate work with significant obstacles, then receiving excellent feedback, only to learn that her post-firing evaluations contradicted the comments she'd received. *See, e.g.*, *id.* ¶¶ 145–47, 162–73. Plaintiff also asserts that Defendants continued to punish her after she was fired. *Id.* ¶¶ 233–34. For example, she applied for benefits with the D.C. Office of Employment Services, but Defendants told the office Plaintiff never worked at the firm, and also failed to provide Plaintiff her W-2 form. *Id.*

Plaintiff brings causes of action for sex discrimination in violation of Title VII, the California Fair Employment and Housing Act ("FEHA"), the San Francisco Ordinance, and the federal Equal Pay Act; retaliation in violation of Title VII, FEHA, and the San Francisco Ordinance; sex harassment constituting hostile work environment in violation of Title VII; failure

to prevent discrimination and retaliation in violation of FEHA; defamation, and intentional and negligent infliction of emotional distress. *Id.* ¶¶ 2–6, 301–69.

## II.   ANTI-SLAPP MOTION

Defendant Kirkland & Ellis LLP moves to strike certain allegations under California's Anti-SLAPP statute and requests fees in connection with the motion. *See* Dkt. No. 38.[1]

Under California's anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. P. Code § 425.16(b)(1).  The statute was enacted to curtail lawsuits that were "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances."  *Id.* § 425.16(a).  Because "it is in the public interest to encourage continued participation in matters of public significance, and [because] this participation should not be chilled through abuse of the judicial process," the anti-SLAPP statute is to be construed broadly.  *Id.*

California courts generally apply a two-step process for analyzing an anti-SLAPP motion. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010).  Under the first prong, the moving party must make "a threshold showing . . . . that the act or acts of which the plaintiff complains were taken 'in furtherance of the right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002) (quoting Cal. Civ. P. Code § 425.16(b)(1)).  If the moving party meets its threshold showing, then the burden shifts to the non-moving party to show a probability of prevailing on the claim.  *See Hilton*, 599 F.3d at 903.

Additionally, "a claim may be struck only if the . . . activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is

---

[1] For ease of reference, the Court refers to the PDF pages rather than the documents' internal pagination unless otherwise noted.

United States District Court
Northern District of California

United States District Court
Northern District of California

asserted." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1014 (Cal. 2021) (quoting *Park v. Bd. of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1060 (Cal. 2017); *see also Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190 (9th Cir. 2017) (finding plaintiff's claim did not arise from protected activity "because it was not the specific wrongful act that gives rise to his claim"). The question is whether the challenged allegations "supply a necessary element" of a claim. *Bonni*, 11 Cal. 5th at 1016. At the first step, it is the moving defendant who "must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them." *Id.* at 1010. "Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Id.* at 1013 (citation and quotations omitted).

Here, Defendant Kirkland challenges allegations related to three asserted protected acts: Kirkland's response to Plaintiff's unemployment claim after she was fired, Defendants' filings in a patent case, and communications with Defendants' counsel regarding Plaintiff's filings.[2] *See* Dkt. No. 38 at 8–10. Plaintiff responds that Defendant Kirkland has not met its burden to show that the activities form the basis of any specific claim. *See* Dkt. No. 77 at 9. Assuming without deciding that the challenged activities are protected, the Court agrees with Plaintiff that her claims do not arise out of any of the identified conduct. *See, e.g.*, *Park*, 2 Cal. 5th at 1065–66 (finding that a dean's comments supplied "evidence of animus," which did not "convert the statements themselves into the basis for liability" for a discrimination claim).

Starting with Plaintiff's allegations regarding unemployment benefits, Defendant asserts that these allegations underlie Plaintiff's retaliation claim. Dkt. No. 78 at 9–10. Although Plaintiff does use the word "retaliation" in the paragraph discussing her application for benefits, Compl. ¶ 233, Plaintiff has stated explicitly that she is not attempting to bring a separate claim for retaliation based on this conduct. *See* Dkt. No. 77 at 19 (quoting Compl. ¶ 190). She states the allegations were included only as "factual context" showing Defendants' efforts to "increase the

---

[2] Defendant Kirkland does not seek to strike allegations related to Plaintiff's federal claims. *See* Dkt. No. 78 at 7 n.1.

financial pressure on Plaintiff to drop her claims." *Id.*; *see also id.* ¶ 328 (stating retaliation claims are based on the adverse employment action of "discharge").  Given this concession that Plaintiff is not attempting to recover for Defendants' alleged failure to provide information to the benefits office, the Court will not strike the allegations.  *See Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 54 Cal. App. 5th 738, 754 (2020) ("If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.").

Next, Defendant Kirkland identifies the litigation correspondence from Kirkland's counsel as underlying Plaintiff's defamation, retaliation, and discrimination claims.  *See* Dkt. No. 78 at 13. But Plaintiff clearly is not bringing suit based on communications from Defense counsel. Plaintiff's complaint makes clear that her defamation cause of action *in its entirety* is based solely on Defendants' statements in their evaluations.  *See* Compl. ¶¶ 357–61 ("Defendants published statements in their 'evaluations' regarding Plaintiff, each of which was false, defamatory, unprivileged, and had a natural tendency to injure because each concerned Plaintiff's profession and practice and/or caused special damage.").  The footnote Defendant relies on, while loosely using the word "defame," states only that outside counsel repeated an alleged lie in a letter to Plaintiff.[3]  *See* Compl. ¶ 170 n. 51.  As to the retaliation and discrimination claims, again the "specific wrongful act" Plaintiff challenges is her termination, not communications from defense counsel.  At most, the allegations in the challenged paragraphs may serve as evidence that the reason for termination was pretextual.  *See* Compl. ¶¶ 19, 182 (noting that the communications strayed from "Defendants' repeated, original rationale for firing Plaintiff"); *Park*, 2 Cal. 5th at 1065–66 ("The dean's alleged comments may supply evidence of animus, but that does not convert the statements themselves into the basis for liability.").

Finally, Defendant states that the IPR activities also underlie the claims for defamation, discrimination, and retaliation.  Plaintiff alleges that Defendant edited her outline for a filed patent

---

[3] Plaintiff explicitly states that the challenged paragraphs do not relate to her defamation claim. See Dkt. No. 77 at 20.

owner response to "cloak their reliance" on her work.  Compl. ¶ 190.  Again, nothing in the complaint indicates that Plaintiff is attempting to recover for this conduct, which is instead provided for context and to support her allegation that Defendants were happy with her work while she was employed.  In other words, these allegations constitute "evidence of liability or a step leading to some different act for which liability is asserted."  *See Bonni*, 11 Cal. 5th at 1014.

The Court finds that the challenged activities do not form the basis of any of Plaintiff's claims and **DENIES** Defendant's Anti-SLAPP motion.[4]

### III.    MOTION TO STRIKE

Defendants also collectively move to strike specific paragraphs of Plaintiff's complaint under Federal Rule of Procedure 12(f).[5]  Dkt. No. 37.  Specifically, Defendants ask the court to strike Plaintiff's request for equitable relief, special damages, and attorneys' fees; and a footnote it calls "scandalous."[6]  *Id.* at 5–6.

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are "regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice."  *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*, No. 09-CV-03557-JSW, 2010 WL 370333, at *2 (N.D. Cal. Jan. 25,

---

[4] Plaintiff objected to a declaration submitted with Defendant Kirkland's reply in support of the anti-SLAPP motion.  *See* Dkt. No. 79.  The objection is **OVERRULED AS MOOT** because the declaration was not relevant to the Court's analysis of the Anti-SLAPP motion, as the Court did not need to decide whether Plaintiff has a probability of prevailing given Defendant's threshold failure to meet its burden.

[5] Plaintiff challenges Defendants' motion to strike as untimely because it was filed after the motions to dismiss.  *See* Dkt. No. 62 at 8–9.  A motion to strike must be made "before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."  Fed. R. Civ. P. 12(f)(2).  Without deciding whether a motion to dismiss constitutes a response under Rule 12(f), the Court will consider the motion to strike because it was filed on the same day as most of the Defendants' motions to dismiss.  Further, even if the Court rejected the motion to strike as untimely, it would "on its own" strike the street addresses of the individual defendants.  *See* Fed. R. Civ. P. 12(f)(1).

[6] Defendants also ask to strike the individual Defendants' home addresses.  The home addresses are the subject of an administrative motion to seal, addressed below.  Plaintiff did not oppose the request to redact the addresses.  *See* Dkt. No. 58 at 2 n.1 ("Plaintiff does not oppose the request to redact the home addresses of certain Defendants.").  Because the Court will grant Defendants' request to redact the home addresses, the Court **DENIES AS MOOT** the request to strike them.

United States District Court
Northern District of California

2010).  Motions to strike "should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit."  *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-CV-00226-YGR, 2015 WL 511175, at *1 (N.D. Cal. Feb. 6, 2015).

Here, as to the requests for relief, Defendants clearly are attempting to challenge the substantive sufficiency of Plaintiff's allegations.  Use of a Rule 12(f) motion for this purpose is improper.  *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–76 (9th Cir. 2010) ("Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.").  And although the allegations in the challenged footnote are personal and may be distasteful, it cannot be said that they have "no logical connection" to Plaintiff's case.[7]

The Court thus **DENIES** the motion to strike.

## IV.    MOTIONS TO DISMISS

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the

---

[7] Defendants ask that the Court strike Plaintiff's declaration filed with her opposition to the motion to strike.  *See* Dkt. No. 70 at 8–9.  The request is **DENIED AS MOOT** because the Court's analysis was based on the face of the complaint and the declaration was not relevant.

1 complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

2 *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,

3 courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

4 fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

5 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

6      Even if the court concludes that a 12(b)(6) motion should be granted, the "court should

7 grant leave to amend even if no request to amend the pleading was made, unless it determines that

8 the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

9 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

10     **B.**    **Discussion**

11      Defendants bring six different motions to dismiss with overlapping arguments, asserting

12 numerous bases for dismissal.[8] *See* Dkt. Nos. 24, 30, 31, 34, 35, 36.[9] Although the Court agrees

13 with Defendants on several points, the Court ultimately concludes that many of these questions are

14 appropriately resolved at summary judgment or trial.

15     **i.**    **FEHA Preemption of San Francisco Police Code**

16      First, Defendants argue that California's FEHA preempts Plaintiff's claims for

17 discrimination and retaliation under the San Francisco Ordinance. *See* S.F. Police Code art. 33

18 § 3310 *et seq.* FEHA states "it is the intention of the Legislature to occupy the field of regulation

19

20 [8] Defendants request judicial notice of Plaintiff's performance evaluations, employment offer letter, severance agreement, and payroll documents. *See* Dkt. No. 29. Plaintiff opposes the

21 request. Dkt. No. 68. The Court **GRANTS** the request as to the performance evaluations because the statements in those documents form the basis of Plaintiff's defamation claim. *See Khoja v.*

22 *Orexigen Therapeutics*, 899 F.3d 988, 1002 (9th Cir. 2018). The Court **DENIES** the request as to the remaining documents. These documents are not "referred to extensively" and do not form the

23 basis of any of plaintiff's claims. Consideration of these documents would be more appropriate at the summary judgment stage. *See M.O.R.E., LLC v. U.S.*, No. 12-cv-03609-JST, 2015 WL

24 5093621, at *3 (N.D. Cal. Aug. 28, 2015) ("The incorporation by reference doctrine 'is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants

25 license to ignore the distinction between motions to dismiss and motions for summary judgement.'" (quoting *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998))).

26 [9] Plaintiff objects to Defendants' attempt to incorporate by reference arguments made by co-

27 defendants. *See, e.g.*, Dkt. No. 65 at 34–35. Given Defendants' repeated statement that their arguments are "complete and self-contained and are specifically and distinctively raised in the

28 motion," and that the "additional material . . . is not necessary to resolution of the Motion[s]," the Court will consider only the arguments raised in each motion. *See, e.g.*, Dkt. No. 74 at 19.

United States District Court
Northern District of California

of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state[.]"  Cal. Gov't Code § 12993(c).

Plaintiff relies on two cases where courts found no preemption because FEHA did not, at that time, cover the specific type of discrimination at issue (i.e., age discrimination and refusal to rent to Section 8 recipients).  *See Rental Hous. Assn. of N. Alameda Cnty. v. City of Oakland*, 171 Cal. App. 4th 741, 761–62 & n.15 (Cal. Ct. App. 2009); *City & Cnty. of San Francisco v. Post*, 22 Cal. App. 5th 121, 131 (Cal. Ct. App. 2018).  As courts have noted, the field of exclusivity is limited to "those acts of discrimination that FEHA itself regulates."  *Post*, 22 Cal. App. 5th at 131. But Plaintiff's claims are for sex discrimination and retaliation in employment, which are squarely covered by FEHA.  *See* Compl. ¶¶ 319–24, 338–42; Cal. Gov't Code § 12940(a), (h); *see also Post*, 22 Cal. App. 5th at 132 ("Although narrow, this field of exclusivity acts to prevent cities and counties from enforcing their own laws regarding the kinds of discrimination in housing and employment that FEHA addresses.").

The Court thus finds Plaintiff's S.F. Police Code claims are preempted by FEHA and **DISMISSES** causes of action 3 and 7 without leave to amend.

### ii.   Individual Liability for Firm Partners Under Title VII and FEHA

Plaintiff named several individual firm partners as Defendants.[10]  The individual defendants argue that they are not "employers" under Title VII and FEHA because these statutes do not provide for individual liability.  *See, e.g.*, Dkt. No. 36 at 13–25.

The Ninth Circuit has held that Title VII does not allow for individual liability.  *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993) (finding previous holding "that individual defendants cannot be held liable for damages under Title VII is good law").  The *Miller* court reasoned that the "agent" language was included only to incorporate *respondeat superior* liability.  *Id.* at 587.  The court further reasoned that because Congress limited liability to

---

[10] Plaintiff also named the individual partners' professional corporations.

employers with fifteen or more employees[11] to avoid "burden[ing] small entities with the costs associated with litigating discrimination claims," it was "inconceivable that Congress intended to allow civil liability to run against individual employees."[12]  *Id.*  FEHA similarly does not allow for individual liability for discrimination, retaliation, or failure to prevent violations.[13]  *See Minor*, 182 F. Supp. 3d at 986–87 (citing *Reno v. Baird*, 18 Cal. 4th 640, 663 (Cal. 1998)); *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1164 (2008) ("*Reno*'s rationale for not holding individuals personally liable for discrimination applies equally to retaliation."); *Agosto v. Altec, Inc.*, No. CV152405FMOMANX, 2015 WL 13908080, at *6 (C.D. Cal. July 23, 2015) ("California law does not allow plaintiffs to assert claims for failing to prevent harassment against any individual defendant . . . .").

The Court is not aware of any in-circuit authority that would allow Plaintiff to bring her claims against individual law firm partners.  *See Richardson v. Bonanza Casino*, 141 F.3d 1178 (9th Cir. 1998) ("As an employee *and shareholder* . . . [defendant] cannot be individually liable for [] Title VII violations." (emphasis added)).  Plaintiff's cited out-of-circuit cases do not apply the holding of *Miller* and, while sometimes finding that partners are more like employers than employees in other contexts, do not address the question of whether an individual partner can be liable under Title VII.[14]  *See, e.g.*, Dkt. No. 66 at 13–15.  Conversely, out-of-circuit cases finding

---

[11] An "employer" under Title VII is "a person . . . who has fifteen or more employees . . . and any agent of such a person . . . ."  See 42 U.S.C. § 2000e(b).  Similarly, an "employer" under FEHA is "any person regularly employing five or more persons, or any person acting as an agent of an employer . . . ."  Cal. Gov't Code § 12926.

[12] Although *Miller* specifically addressed a suit against individual *employees*, courts have repeatedly noted that its holding prohibits suits against individuals.  *See Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) ("The circuit has ruled that individuals may not be sued for damages under . . . Title VII of the Civil Rights Act of 1964."); *Minor v. Fedex Off. & Print Servs., Inc.*, 182 F. Supp. 3d 966, 985–86 (N.D. Cal. 2016) ("The Ninth Circuit held that the same reasoning applied to the ADA and thus, as with Title VII, individuals are not 'employers' under the ADA.  Accordingly, Freitas may not be personally liable as an 'employer' . . . .").

[13] FEHA does, however, allow for individual liability for harassment claims.  *See* Cal. Gov't Code § 12940(j)(3) ("An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee . . . .").

[14] For example, *Burke v. Friedman*, 556 F.2d 867, 870 (7th Cir. 1977), addressed whether partners counted as "employees" for the purpose of meeting Title VII's 15-employee requirement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    that law firm partners cannot be individually liable are aligned with *Miller* and generally track its

2    reasoning.  *See, e.g.*, *Yaba v. Cadwalader, Wickersham & Taft*, 896 F. Supp. 352, 353 (S.D.N.Y.

3    1995) (finding "[t]he fact that defendant [] is a partner of the defendant employer does not alter the

4    analysis" that "[i]ndividual liability is inconsistent with the language and remedial framework of

5    Title VII"); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 882 F. Supp. 1529, 1532 (E.D. Pa.

6    1995) (adopting the reasoning of *Miller* and finding law firm partner not liable under Title VII).

7           Plaintiff asserts that the individual defendants are "employers."  But Plaintiff cannot use

8    the integrated enterprise test or joint employer test to circumvent the prohibition on individual

9    liability.  First, the integrated enterprise test "is relevant when a plaintiff alleges that her direct

10   employer has committed discriminatory conduct but the direct employer cannot be held liable

11   under Title VII because it has fewer than fifteen employees."  *DaOro v. Eskaton*, No. 2:11-CV-

12   0960-KJM-JFM, 2013 WL 789120, at *4 (E.D. Cal. Mar. 1, 2013); *see also Drottz v. Park

13   Electrochemical Corp.*, No. CV 11-1596-PHX-JAT, 2012 WL 1344729, at *3 (D. Ariz. Apr. 18,

14   2012) ("[W]hen there is no dispute that at least one defendant qualifies as an employer under Title

15   VII, the integrated enterprise test is wholly inapplicable.").  There is no dispute that Kirkland is an

16   "employer" for purposes of Title VII liability, and thus the integrated enterprise theory is

17   inapplicable.  The integrated enterprise theory likewise is not applicable under FEHA on the facts

18   of this case.  *Caldrone v. Circle K Stores, Inc.*, No. EDCV 21-749-GW-KKX, 2021 WL 6496746,

19   at *5–6 (C.D. Cal. Aug. 2, 2021) (noting that the integrated employer test only applies to parent

20   and subsidiary corporate relationships under FEHA).  Second, the joint employer test is applied

21   where "otherwise separate entities each exercise some control over an employee."  *DaOro*, 2013

22   WL 789120, at *6.  Here, the firm partners clearly are not separate entities from Kirkland.  *See id.*

23          The Court finds that the law firm partners and their P.C.s are not "employers" under Title

24   VII or FEHA.  Thus, the Court **DISMISSES** the individual defendants from causes of action one,

25   two, five, six, eight, and nine.[15]

26

27   _____

28   [15] The FEHA claims against Defendant Fahey fail for the additional reason that FEHA does not
     apply extraterritorially.  *See* Dkt. No. 36 at 33.  Defendant Fahey is not a resident of California,
     and Plaintiff does not allege that any of Fahey's alleged tortious conduct occurred in California.

### iii.   Harassment/Hostile Work Environment Under Title VII

To state a prima facia case for a hostile work environment claim under Title VII, Plaintiff must allege that "(1) the defendants subjected her to verbal or physical conduct based on her [sex]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).

Defendants argue that Plaintiff's harassment allegations are all based on personnel management decisions that cannot form the basis of a harassment claim. *See* Dkt. No. 24 at 17–19.  Defendants rely on a rule from a California Supreme Court Case interpreting FEHA. *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709 (Cal. 2009)).  But even if the Court applied that caselaw to Plaintiff's Title VII claim, those cases hold that "official employment actions" *can* support a harassment claim where they "communicate a hostile message" to employees, which "occurs when the actions establish a widespread pattern of bias." *See Croft v. GTT Commc'ns, Inc.*, No. 21-CV-01083-EMC, 2021 WL 1847816, at *6 (N.D. Cal. May 10, 2021) (quoting *Roby*, 47 Cal. 4th at 709).  For example, rejecting the same argument Defendants make here, one court in this district concluded that the Plaintiff had "at least colorably allege[d] that [defendant], by excessively monitoring, micromanaging, and criticizing Plaintiff but not her male co-workers, engaged in discriminatory actions based on her gender in order to send a message to the work force that female employees were not valued." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 704–05 (N.D. Cal. 2014); *see also Rico v. Jones Lang LaSalle Americas, Inc.*, No. CV 14-1322-GHK (JEMx), 2014 WL 1512190, at *2–3 (C.D. Cal. April 16, 2014) (finding plaintiff's allegations of negative performance review, criticism, and demeaning comments, "taken together, suggest at least a possibility that [a supervisor] engaged in a pattern of harassing conduct").

Similarly, Plaintiff alleges a "widespread pattern" of behavior that communicated a hostile message: in Plaintiff's words, that Defendants were "more than happy to use women and to leave

---

*See Dodd–Owens v. Kyphon, Inc.*, No. C 06–3988, 2007 WL 420191, at *3 (N.D.Cal. Feb. 5, 2007) (dismissing FEHA claim for failure to state that the alleged tortious conduct took place in California).  Plaintiff did not respond to this argument.

them behind." Compl. ¶ 130. Taking Plaintiff's allegations as true, she essentially alleges that Defendants consistently gave male associates preferential treatment at her own expense, such that her work life was unmanageable. Offering numerous specific examples, Plaintiff alleges that she was treated differently than her male coworkers throughout her time at Kirkland and observed an "obvious hierarchy between male and female associates." *See, e.g.*, Compl. ¶ 130.[16] Whether these allegations will ultimately support a hostile work environment claim is a factual question properly answered at a later stage. *See Young v. Buttigieg*, No. 19-CV-01411-JCS, 2021 WL 981305, at *11 (N.D. Cal. Mar. 16, 2021) (finding challenge to the severity and pervasiveness of the alleged conduct was better evaluated on a full evidentiary record); *Haro v. Therm-X of California, Inc.*, No. 15-CV-02123-JCS, 2015 WL 5121251, at *6 (N.D. Cal. Aug. 28, 2015) (finding defendant's arguments "about the severity or pervasiveness of the alleged harassment . . . are better addressed as questions of fact").

At this stage, the Court cannot say as a matter of law that a reasonable woman in Plaintiff's position "would not consider the terms and conditions of her employment altered" by Defendants' conduct. *See Corrales v. Chase Bankcard Serv., Inc.*, 128 F. App'x 598, 599 (9th Cir. 2005). Plaintiff has plausibly alleged that the work environment made it "more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Sharp v. S&S Activewear*, L.L.C., 69 F.4th 974, 978 (9th Cir. 2023) (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). The Court **DENIES** the motion to dismiss on this basis.

//

//

---

[16] *See also* Compl. ¶¶ 65–67 (offering lower salary); 80, 84–85 (assigning additional work before scheduled vacation); 85 n.14 (Defendants "had a habit of dumping last-minute assignments on [female associate] . . . but not on male associates"); 117–18 (stating Defendant did not like working on an all-female damages team and said "now I'm stuck with this"); 119 (asking Plaintiff to order food and do administrative tasks), 120 (stating Defendant did not like working with female experts and disparaging a female associate's work); 121 (complimenting male associates but not female associates); 122 (requiring Plaintiff to work on non-trial matters); 123–28 (assigning Plaintiff disproportionate work); 129–30 (inviting male associates on private charter flight); 142–44, 166 (male associates noted her workload was "extreme or unreasonable" relative to theirs); 159–62 (offloading work from male associate who wanted to take a vacation to Plaintiff during hers); 15, 19, 140, 147, 182–86, 200, 203, 208–21 (fabricating performance reviews and terminating Plaintiff).

United States District Court
Northern District of California

iv.   **Defamation**

Defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) (citation omitted).  Plaintiff's defamation claim is based on the purported evaluations that were read to her after she was fired.  Compl. ¶¶ 357–61.  Defendants argue that the evaluations cannot support a defamation claim because they are statements of opinion and privileged.  Dkt. No. 24 at 19–23.  Plaintiff responds that the evaluations (1) contain factual content; (2) are not true "evaluations"; and (3) accuse her of "abject incompetence," which makes them actionable.  Dkt. No. 60 at 16–23.

As an initial matter, the Court agrees that Plaintiff has not adequately alleged a defamation claim against Defendant Alper.  *See* Dkt. No. 34 at 32.  Defendant Alper did not submit an evaluation of Plaintiff, which is the sole basis for her defamation claim.  In her opposition, she argues that Defendant Alper republished defamatory statements.  But none of Plaintiffs' cited portions of her complaint allege republication by Defendant Alper.  *See* Dkt. No. 65 at 30–31.

However, the Court finds that Plaintiff has adequately alleged a defamation claim against the remaining defendants and finds Defendants' arguments are properly addressed at a later stage.

a.  **Performance Evaluations**

Under California law, defamation claims cannot be based on a performance review unless it "falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, incompetence or reprehensible personal characteristics or behavior."  *See Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 965 (1993).

Here, although the statements appear in what were represented to be performance evaluations, the statements could, in context, be found to suggest that Plaintiff lacked the inherent competence to do her job.  *See Kim v. Yoon*, No. 21-CV-04454-SVK, 2021 WL 4442664, at *3 (N.D. Cal. Sept. 28, 2021) (reserving the question of whether statements "fall into an exception to the general rule that defamation cannot be based on performance reviews" for a later stage where plaintiff argued statements "spoke directly to [his] competence"); *Webber v. Nike USA, Inc.*, No. 12-CV-00974 BEN WVG, 2012 WL 4845549, at *6 (S.D. Cal. Oct. 9, 2012) (reasoning in part

that statement made in the context of explaining to plaintiff why he was fired "could be found to suggest" that he "lacked the inherent competence, qualification, capability, or fitness to do his job."). Plaintiff asserts that the evaluations were used as the factual basis for her termination and that she was not given a chance to address any of the purported performance issues. *Id.* ¶ 200. She also alleges that the evaluations conveyed an unequivocal message that "Plaintiff was deplorably deficient in every component of practicing law, failed to contribute at all during her time at the Firm, and was nothing more than a burden and liability due to her utter incompetence." Compl. ¶ 14.

The statements in the evaluation support this characterization. For example, the evaluation concluded that Plaintiff had "not contributed to her matters at either the substantive or commitment level that is expected of an associate" and "should promptly pursue outside employment." *See* 29-2 at 6. It included blanket statements that Plaintiff "does not produce usable work product," that partners "had to rewrite everything she wrote," and that she "needed to be supervised with all discussions with the third parties." *Id.* at 4–6. It notes that Defendants Schmidt and Akshay "decided that she will not attend the hearing in the case because of her poor performance," that she was "not up to [] expectations for someone much junior to her year," and that her preparation was "extremely poor." *Id.* Although not every single statement in the evaluation explicitly accuses Plaintiff of incompetence, the overall message (and numerous statements within it), in context, might be reasonably understood to convey that message. *See Kahn v. Bower*, 232 Cal. App. 3d 1599, 1609 (Cal. Ct. App. 1991) ("[I]n the context of the letter as a whole it might be reasonably understood to convey the meaning that . . . [plaintiff] showed so little ability to perform the duties of her position that her occupancy of it was deleterious to the children in her care . . . .").

And although Defendants are correct that expressions of opinion cannot support a defamation claim, there are statements in the evaluation that "a reasonable fact finder could conclude . . . declare[] or impl[y] a provably false assertion of fact" when considering the totality of the circumstances. *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 156 (2013). For example, the evaluation states that partners had to "had to entirely rewrite everything she wrote,"

1    that she "did not contribute at trial" and disappeared for large portions of it, and that Defendants

2    Schmidt and De Vries met with her to "let her know that her performance was unacceptable." *See*

3    Dkt. No. 29-2.

### b.  Common Interest Privilege

5        Defendants also argue that the statements in the evaluations are protected by the common

6    interest privilege of Civil Code section 47(c).  Dkt. No. 24 at 21–23.  Under that privilege, "an

7    employer's statements to employees regarding the reasons for termination of another employee

8    generally are privileged." *MacKinnon v. Logitech Inc.*, No. 15-CV-05231-TEH, 2016 WL

9    2897661, at *4 (N.D. Cal. May 18, 2016) (quoting *King v. United Parcel Serv., Inc.*, 152 Cal.

10   App. 4th 426, 440 (2007)).  However, a plaintiff may overcome the privilege by showing the

11   statements were made with "actual malice." *Taus*, 40 Cal. 4th at 721.[17]

12       Even assuming Defendants can meet their burden of showing that all of the approximately

13   118 recipients of the evaluations shared a common interest,[18] Plaintiff has alleged actual malice

14   sufficient to overcome the privilege.  In this context, "actual malice" means "the publication was

15   motivated by hatred or ill will" or that the defendant "lacked reasonable ground for belief in the

16   truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Taus*, 40

17   Cal. 4th at 721.  Plaintiff alleges the statements were made in retaliation for her complaints of

18   discrimination, and as part of a concerted effort to create a false basis for her termination.  That is

19   sufficient to establish at the pleading stage either that Defendants acted with ill will toward

20   Plaintiff or lacked a basis for believing the truth of the statements.  *See Johnson v. Wells Fargo &*

21   *Co.*, No. CV 14-06708 MMM JCX, 2014 WL 6475128, at *9 (C.D. Cal. Nov. 19, 2014) (finding

22   allegations that  "the statements were knowingly false, and were made to retaliate against him for

23   reporting . . . illegal conduct, so as to justify his termination" supported actual malice);

---

[17] The common interest privilege applies to "a communication, without malice, to a person
interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to
the person interested as to afford a reasonable ground for supposing the motive for the
communication to be innocent, or (3) who is requested by the person interested to give the
information." Cal. Civ. Code § 47(c).

[18] The Court notes that the assertion that the information was shared as "standard practice," Dkt.
No. 24 at 22, does not in itself establish that every one of the recipients meets the definition of an
"interested party" under the statute as a matter of law.

United States District Court
Northern District of California

*MacKinnon*, 2016 WL 2897661, at \*4 (finding plaintiff adequately alleged that defendants lacked a basis to believe the truth of the statement that he had been fired for performance reasons where his sales numbers were high and he had received emails congratulating him on his excellent work); *Layton v. Terremark N. Am.*, LLC, No. 5:13-CV-03093-PSG, 2014 WL 2538679 (N.D. Cal. June 5, 2014) (finding plaintiff's allegations that defendants made statements in retaliation for his complaints supported actual malice).

In sum, although Defendants' arguments might ultimately prove successful at a later stage, the Court finds that Plaintiff has adequately alleged a claim for defamation.  The Court **DENIES** the motion to dismiss cause of action 10 as to all Defendants except Defendant Alper and **DISMISSES** the defamation claim against him with leave to amend.

### v.    Negligent Infliction of Emotional Distress

Plaintiff's negligent infliction of emotional distress ("NIED") cause of action is based on failure to prevent discrimination, harassment, and retaliation.  *See* Compl. ¶¶ 368–69.  Defendants argue that Plaintiff's NIED claim is preempted by the workers' compensation law.  *See* Dkt. No. 24 at 25.  The Court agrees.[19]

Workers' compensation is the exclusive remedy for an injury resulting "at the worksite, in the normal course of the employer-employee relationship."  *Miklosy v. Regents of the University of California*, 44 Cal. 4th 876, 902 (2008).  However, a plaintiff's emotional distress claim may proceed if the employer's misconduct "exceeds the risk inherent in the employment relationship."[20]  *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754–55 (1992).  For example, courts have found that "neither discrimination nor harassment is a normal incident of employment."  *Tone v. Wal-Mart Stores, Inc.*, No. 14CV2643-LAB DHB, 2015 WL 4658564, at \*2 (S.D. Cal. Aug. 5, 2015) (quoting *Nazir v. United Airlines*, 178 Cal. App. 4th 243, 288 (Cal. Ct. App. 2009));

---

[19] The Court does not reach the remaining arguments that the NIED claim fails because it is based on intentional actions and because Defendants did not owe Plaintiff a duty of care.  See Dkt. No. 24 at 25–26.

[20] There is another exception for "conduct that violates fundamental public policy," which only applies to *Tameny* actions for wrongful termination in violation of public policy.  *See Miklosy*, 44 Cal. 4th 876, 902–03 (2008).

United States District Court
Northern District of California

1    *see also Light v. Dep't. of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (Cal. Ct. App. 2017)

2    (holding that "absent further guidance from our Supreme Court, we are unwilling to abandon the

3    long-standing view that unlawful discrimination and retaliation in violation of FEHA falls outside

4    the compensation bargain").

5            But Plaintiff has not provided persuasive authority that would allow her claim for

6    *negligence* to proceed.  *See Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 713–14 (Cal. 1994) (noting

7    "injuries caused by *employer negligence* . . . are compensated at the normal rate under the

8    workers' compensation system") (emphasis added).  *Schaffer v. GTE, Inc.*, 40 F. App'x 552, 558

9    (9th Cir. 2002) ("[Plaintiff's] negligence claim fails because claims for negligence are within the

10   exclusive remedy provisions of the California Workers' Compensation Act.");  *Grotz v. Kaiser*

11   *Found. Hosps.*, No. C-12-3539 EMC, 2012 WL 5350254, at *10–11 (N.D. Cal. Oct. 29, 2012)

12   (finding negligent infliction of emotional distress claim preempted by workers' compensation);

13   *Howard v. Contra Costa Cnty.*, No. 13-CV-03626 NC, 2014 WL 824218, at *18–19 (N.D. Cal.

14   Feb. 28, 2014) (finding claim for negligent hiring that "placed [plaintiff] in a position to witness a

15   crime and be harassed and retaliated against" was preempted by workers' compensation); *Johnson*

16   *v. Zillow, Inc.*, No. SACV141991DOCDFMX, 2016 WL 11760226, at *3 (C.D. Cal. Mar. 28,

17   2016) (finding claim based on negligence in failing to maintain safe working conditions

18   preempted).

19           The Court finds that Plaintiff's NIED claim for failure to prevent is preempted by

20   California's Workers Compensation Act and **DISMISSES** the NIED claim without leave to

21   amend.

22           **vi.    Intentional Infliction of Emotional Distress**

23           Defendants also argue that Plaintiff's intentional infliction of emotional distress ("IIED")

24   claim fails because she does not allege "extreme and outrageous conduct" or "severe or extreme"

25   emotional distress.  *See* Dkt. No. 24 at 23–24.

26           To state a cause of action for intentional infliction of emotional distress, "the plaintiff must

27   allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or

28   reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

1    severe or extreme emotional distress; (3) and actual and proximate causation of the emotional

2    distress by the defendant's outrageous conduct." *Hailey v. California Physicians' Serv.*, 158 Cal.

3    App. 4th 452, 473–74 (Cal. Ct. App. 2007) (quotation omitted).  The conduct alleged must be "so

4    extreme and outrageous as to go beyond all possible bo[u]nds of decency, and to be regarded as

5    atrocious, and utterly intolerable in a civilized community." *Id.* at 474 (citation and internal

6    quotation marks omitted).

7         In evaluating Defendants' argument that the IIED claim fails as a matter of law, the Court

8    must consider two questions:  (1) is this claim, like the NIED claim, preempted by the Workers

9    Compensation Act?; and (2) if not, has Plaintiff adequately alleged the elements of the claim?

10        On the first question, the California Supreme Court has suggested that even IIED claims

11   are preempted under some circumstances by the Workers Compensation Act.  *See Miklosy*, 44 Cal.

12   4th at 903 (finding that "plaintiffs' causes of action for intentional infliction of emotional

13   distress," which were based on alleged retaliation for whistleblowing, "are barred by the workers'

14   compensation exclusive remedy provisions").  But in contrast to their NIED argument, Defendants

15   do not argue preemption as to the IIED claim, contending only that the claim fails because

16   Plaintiff does not allege "extreme and outrageous conduct" or "severe or extreme" emotional

17   distress. *See* Dkt. No. 24 at 23–24.  The Court finds, based on recent authority from the California

18   Court of Appeal, that Plaintiff's IIED claim is not preempted based on "the long-standing view

19   that unlawful discrimination and retaliation in violation of FEHA falls outside the compensation

20   bargain and therefore claims of intentional infliction of emotional distress based on such

21   discrimination and retaliation are not subject to workers' compensation exclusivity." *Light*, 14

22   Cal. App. 5th at 101.   Accordingly, Plaintiff "may pursue a claim for intentional infliction of

23   emotional distress in the employment context where the conduct at issue violates FEHA and also

24   satisfies the elements of the claim." *Id.*

25        As to the second question, the Court finds that Plaintiff has sufficiently met these pleading

26   requirements at this stage.  Defendants are correct that a "simple pleading of personnel

27   management activity is insufficient to support a claim of intentional infliction of emotional

28   distress, even if improper motivation is alleged." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th

United States District Court
Northern District of California

20

55, 80 (Cal. Ct. App. 1996).  But as the California Court of Appeal confirmed in *Light*, workplace discrimination and retaliation in violation of FEHA *can* support an IIED claim.  Here, Defendants do not move to dismiss the underlying FEHA sex discrimination or retaliation claims as to Kirkland, and the Court finds that the allegations in the Complaint sufficiently plead those violations at this stage.  Plaintiff alleges more than just "personnel management activity."  Instead, she alleges that Defendants *deliberately falsified* performance reviews, going so far as to instruct a fellow reviewer to criticize her, to create a fabricated justification for termination.  While Plaintiff may or may not ultimately be able to prove these allegations, they are enough to survive a motion to dismiss.  *See Light*, 14 Cal. App. 5th at 102 (reversing grant of summary adjudication in favor of supervisor on IIED claim where "a reasonable trier of fact could find [supervisor] ostracized [plaintiff] in the workplace, encouraged [plaintiff] to lie to investigators, pursued [plaintiff] at home and in the office to determine whether [plaintiff] did so, and verbally and physically attacked [plaintiff] after [she] disobeyed," and the trier of fact could conclude this conduct "was extreme and outrageous (especially in light of [supervisor's] supervisory position), taken for purposes of retaliation prohibited by FEHA, and intended to cause [plaintiff] emotional distress"); *see also Webber*, 2012 WL 4845549, at *4 (plaintiff alleged "fabrication of false performance issues," and court found that this type of "deceptive conduct in denying a fundamental right or in violation of a fundamental interest of the employee" may give rise to an IIED claim).  And the question of whether the conduct fell within regular business and management practices is appropriately resolved at a later stage.  *See Light*, 14 Cal. App. 5th at 103 (reversing in part and affirming in part summary adjudication regarding supervisors); *see also Hause v. The Salvation Army*, No. CV-07-5249 CAS CWX, 2007 WL 4219450, at *10 (C.D. Cal. Nov. 27, 2007) ("On these allegations, a reasonable jury could find that plaintiff's alleged mistreatment was not part and parcel of the employment relationship or of the termination thereof and that their conduct was sufficiently attenuated from defendants' regular business and management practices so as to constitute outrageous behavior.").

Defendants' argument to the contrary relies on their contention that *Miklosy*, *Jansen*, and *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 161–62 (Cal. Ct. App. 2014), stand for

United States District Court
Northern District of California

the principle that "[t]he actions at issue here—discipline, criticisms, and termination—constitute normal workplace interactions which, even if improperly motivated, do not constitute extreme or outrageous conduct as a matter of law."  Dkt. No 24 at 16; *see also* Dkt. No. 69 at 17 (contending that *Miklosy* stands for the principle that "when personnel management is the basis for an IIED claim, intent is irrelevant so long as the alleged wrongful conduct 'occurred at the worksite, in the normal course of the employer-employee relationship'").  The Court recognizes that there appears to be something of a split in the California Courts of Appeal on this question.  *Compare Yau*, 229 Cal. App. 4th at 162 (citing *Miklosy* for the principle that "[a]n employer's intentional misconduct in connection with actions that are a normal part of the employment relationship . . . resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance") (citations omitted) *with Light*, 14 Cal. App. 5th at 100 (explaining that "[w]e believe *Yau* reads *Miklosy* too narrowly," and pointing out that "neither *Miklosy* nor the authorities on which it relies considered the much larger body of case law supporting the proposition that conduct in violation of FEHA is not part of the employment relationship or the compensation bargain at the heart of the workers' compensation system").

In a case requiring a federal court to apply California law, the court "must apply the law as it believes the California Supreme Court would apply it."  *Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).  "In the absence of a controlling California Supreme Court decision, the [court] must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids."  *Id.*  To the extent *Yau* and *Light* are inconsistent, the Court finds *Light*'s reasoning more persuasive, and believes that it reflects how the California Supreme Court would rule with respect to whether discrimination and retaliation in violation of FEHA can support an IIED claim.  The Court notes that a number of the cases Defendants cite, *see* Dkt. No. 69 at 17 and n.10, including this Court's earlier ruling in *Rezvan v. Philips Elecs. N. Am. Corp.*, No 15-cv-04767-HSG, 2016 WL 8193160 (N.D. Cal. Dec. 15, 2016), were issued before the *Light* court's detailed analysis of the relevant issue.  And the Court does not find the post-*Light* cases

1   persuasive support for Defendants' position for the reasons already explained, especially since

2   none of them address *Light* at all.[21]

3          Plaintiff has also sufficiently alleged that she suffered severe emotional distress.  Plaintiff

4   alleges that Defendants' conduct led to mental anguish, humiliation, stress, fear, and depression,

5   with physical manifestations including nausea, pain, vomiting, and migraines.  Compl. ¶¶ 235,

6   365.  That is sufficient at the pleading stage.

7          Accordingly, the motion to dismiss the IIED claim, cause of action number 11, is

8   **DENIED**.

9          **vii.    Punitive Damages**

10         Defendants next argue that Plaintiff has not plausibly pled punitive damages.  Dkt. No. 24

11   at 26.  California law allows for punitive damages when "it is proven by clear and convincing

12   evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code

13   § 3294(a).  Malice in this context means "conduct which is intended by the defendant to cause

14   injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and

15   conscious disregard of the rights or safety of others."  *Id.* § 3294(c)(1).  Corporate employer

16   liability for punitive damages is limited to instances where an officer, director, or managing agent

17   has advance knowledge and consciously disregards, authorizes, or ratifies the wrongful conduct.

18   *Id.* § 3294(b).

19         Plaintiff alleges that individual partners coordinated to falsify performance evaluations in

20   retaliation for Plaintiff's complaints of discriminatory conduct.  *See* Compl. ¶¶ 17, 88, 90 n.21, 94,

21   98, 103 n.23, 115, 122, 126, 139, 140, 147, 163, 182, 202, 208–29.  Plaintiff's complaint contains

22   factual allegations that, if proven, could plausibly lead to a finding that Defendants acted with

23   oppression, fraud, or malice.  The Court **DENIES** Defendants' motions to dismiss Plaintiff's

24   request for punitive damages.

25

26   _____

27   [21] The Court does not need to address whether the Ninth Circuit's holding in the 2002
     memorandum disposition in *Schaffer v. GTE, Inc.*, 40 F. App'x 552, 558 (9th Cir. 2002), is
     arguably inconsistent with *Light* and other later decisions by the California courts, because

28   *Schaffer* is not controlling authority.  *See* CTA9 Rule 36-3 (establishing that unpublished Ninth
     Circuit decisions are not precedent).

United States District Court
Northern District of California

### viii.    Personal Jurisdiction over Schmidt Defendants

The Schmidt Defendants argue that the Court does not have personal jurisdiction over them.  *See* Dkt. No. 31 at 13–19.  The Court agrees.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Where a state, like California, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," federal courts ask whether the exercise of jurisdiction over a defendant "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); Cal. Civ. Proc. Code § 410.10 (providing that California's long-arm statute is coextensive with the federal due process clause).  The Due Process Clause requires that the defendant have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-linked." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

The parties do not appear to dispute that there is no general jurisdiction over the Schmidt Defendants, as Leslie Schmidt resides in New York and Schmidt P.C.'s state of incorporation and principal place of business is also New York.  *See* Compl. ¶ 31.

Thus, the only question is whether there is specific jurisdiction.  For intentional tort claims, courts use the "purposeful direction" test. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090–91 (9th Cir. 2023).  "Harm suffered in the forum state is a necessary element in establishing purposeful direction." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017).  But Plaintiff does not allege that Defendants injured her in California.  Plaintiff did not reside in California while working at Kirkland—she alleges that she "intended" to relocate, but never did. *See* Compl. ¶¶ 62–63, 250(a).  Instead, Plaintiff notes that she did work from Washington, D.C., Texas, Florida, and Atlanta.  *See id.*  As alleged, the harm to Plaintiff did not occur in California. Because this lack of forum-state harm is dispositive, the court need not address the remaining

elements.  *See Davis v. Cranfield Aerospace Sols.*, *Ltd.*, 71 F.4th 1154, 1163 (9th Cir. 2023).

Given Plaintiff's admission that she did not reside or do any work while in California, the Court finds it does not have personal jurisdiction over the Schmidt Defendants and **DISMISSES** the Schmidt Defendants from all claims without leave to amend.  *See Sprewell*, 266 F.3d at 988–89 ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts." (citation and quotations omitted)).

### ix.   Equal Pay Act Claims Against Alper Defendants

The Alper Defendants argue that they cannot be liable under the federal Equal Pay Act because they are not "employers."  *See* Dkt. No. 34 at 28.  Plaintiff fails to provide any legal authority in response and instead simply cites the portions of her complaint naming the Alper Defendants as her "employer."  *See* Dkt. No. 65 at 32.  Noting its link to Title VII, out-of-circuit courts have held "the Equal Pay Act does not allow for suits against defendants in their individual capacity."  *See Harris v. City of Harvey*, 992 F. Supp. 1012, 1014 (N.D. Ill. 1998).  Given the lack of any authority to the contrary provided by Plaintiff, the Court finds that the EPA claim cannot proceed against Defendant Alper and **DISMISSES** him from cause of action number 4.

## V.   MOTION TO SEAL

The Court denied Defendant Kirkland's initial motion to redact portions of Plaintiff's complaint, Dkt. No. 23, and Defendant has since filed a renewed motion.  Dkt. No. 53.

Because the complaint is the pleading on which this action is based, the Court applies a "compelling reasons" standard to the motion.  *See, e.g.*, *Space Data Corp. v. Alphabet Inc.*, No. 16-CV-03260-BLF, 2018 WL 10454862, at *2 (N.D. Cal. Aug. 31, 2018).  "[A] strong presumption in favor of access is the starting point."  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quotation omitted).  To overcome this strong presumption, a party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events."  *Id.* at 1178–79 (quotation omitted).  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a

United States District Court
Northern District of California

1  vehicle for improper purposes,' such as the use of records to gratify private spite, promote public

2  scandal, circulate libelous statements, or release trade secrets."  *Id.* at 1179 (quoting *Nixon v.*

3  *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

4      Having reviewed Defendants' offered justifications, the Court continues to believe the

5  information in the complaint is far too generalized to warrant sealing.  Defendants argue that the

6  proposed redacted portions are subject to attorney-client privilege and work product doctrine, and

7  that the allegations about partners and male comparators either reveal "confidential personnel

8  information" or are included for improper reasons.  *See* Dkt. No. 53 at 6–10.  First, the allegations

9  in the complaint related to attorney work are high-level, generalized descriptions.  *See Clarke v.*

10  *Am. Com. Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[T]he identity of the client, the amount

11  of the fee, the identification of payment by case file name, and the general purpose of the work

12  performed are usually not protected from disclosure by the attorney-client privilege."); *see also*

13  *United States v. Rite Aid Corp.,* No. 2:12-CV-1699-KJM-EFB, 2021 WL 1196250, at *8 (E.D.

14  Cal. Mar. 30, 2021) (collecting cases and noting "[s]uch general information does not reveal the

15  specific nature of any potential legal advice sought or rendered on the identified subjects").

16  Second, the allegations related to male comparators and partners are directly relevant to Plaintiff's

17  allegations of sex-based discrimination; that the allegations are unflattering and potentially

18  embarrassing is insufficient.  *See Kamakana*, 447 F.3d at 1179.  The Court finds that Defendant

19  Kirkland's conclusory assertions that the information is confidential and will harm its ability to

20  compete does not outweigh the public's interest in disclosure.

21      The Court grants the motion only as to the individual Defendants' home addresses.  This

22  level of personal detail is unnecessary, but Plaintiff may include the city and state in which

23  Defendants reside.

24      The Court **DENIES IN PART** and **GRANTS IN PART** the motion to redact portions of

25  the complaint.

26  **VI.    CONCLUSION**

27      The Court rules as follows:

28      • The renewed motion to redact is **DENIED IN PART** and **GRANTED IN PART**.   Dkt.

No. 53.  Plaintiff shall file an amended complaint that omits the street addresses of the individual Defendants.  After the amended complaint is filed, the Clerk shall strike and remove the complaint at Dkt. No. 1.

- The ANTI-SLAPP motion to strike is **DENIED**.  Dkt. No. 38.
- The motion to strike under Rule 12(f) is **DENIED**.  Dkt. No. 37.
- The motions to dismiss are **GRANTED IN PART** and **DENIED IN PART** as follows:
  - The Court **DISMISSES** the S.F. Ordinance claims without leave to amend (COA 3 & 7).
  - The Court **DISMISSES** the negligent infliction of emotional distress cause of action (COA 12) as preempted by workers' compensation without leave to amend.
  - The Title VII and FEHA claims against Defendant Kirkland may proceed.  The Court **DISMISSES** the Title VII and FEHA claims as to all other defendants without leave to amend (COA 1, 2, 5, 6, 8, 9).
  - The Court **DISMISSES** the Equal Pay Act claim (COA 4) against Defendant Alper without leave to amend.
  - The Court **DISMISSES** the defamation claim against the Alper Defendants with leave to amend (COA 10).
  - The Court **DISMISSES** the Schmidt Defendants for lack of personal jurisdiction without leave to amend.

Any amended complaint must be filed within 28 days of the date of this order.  The Clerk is directed to terminate Dkt. Nos. 24, 30–31, 34–36.

**IT IS SO ORDERED.**

Dated:  8/23/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge