LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com
JOSEPH C. LIBURT (STATE BAR NO. 155507)
jliburt@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
Facsimile:    +1 650 614 7401

KATE JUVINALL (STATE BAR NO. 315659)
kjuvinall@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA  90071
Telephone:    +1 213 629 2020
Facsimile:    +1 213 612 2499

MARK THOMPSON (Admitted *pro hac vice*)
mthompson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W 52nd Street
New York, NY 10019
Telephone:    +1 212 506 5000
Facsimile:    +1 212 506 5151

Attorneys for Defendants
KIRKLAND & ELLIS LLP, MICHAEL DE VRIES,
MICHAEL W. DE VRIES, P.C., ADAM ALPER,
ADAM R. ALPER, P.C., AKSHAY DEORAS,
AKSHAY S. DEORAS, P.C., AND MARK FAHEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOYA KOVALENKO,<br><br>        Plaintiff,<br><br>    v.<br><br>KIRKLAND & ELLIS LLP, MICHAEL DE VRIES, MICHAEL W. DEVRIES, P.C., ADAM ALPER, ADAM R. ALPER, P.C., AKSHAY DEORAS, AKSHAY S. DEORAS, P.C., AND MARK FAHEY,<br><br>        Defendants. | Case No. 4:22-CV-05990-HSG (TSH)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        January 11, 2024<br>Time:        2:00 p.m.<br>Dept:        2<br>Judge:      Hon. Haywood S. Gilliam |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ISSUES TO BE DECIDED ................................................................................. 3

III.  BACKGROUND ................................................................................................. 4

IV.  THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS ................ 5

    A.    Legal Standard ............................................................................................ 5

    B.    The Statute of Limitations Bars Plaintiff's Defamation Claim............................ 5

    C.    Plaintiff's IIED Claim Is Barred by the Statute of Limitations ............................ 6

    D.    Plaintiff's IIED Claim Against the Individual Defendants Is Preempted by the Workers' Compensation Law.................................................................... 7

    E.    Plaintiff's Claims Against the PC Defendants Fail................................................ 8

    F.    Plaintiff Fails To State An IIED Claim Against the Individual Defendants Because She Has Failed to Allege Specific Facts to Plausibly Plead That Each Defendant Deliberately Falsified Her Performance Review......................... 9

    G.    Plaintiff Fails To State A Defamation Claim Against Mr. De Vries or Michael W. De Vries, P.C.................................................................................. 10

    H.    Plaintiff Fails To State An IIED Claim Against Mr. Alper or Adam R. Alper, P.C. .................................................................................................... 13

    I.    Plaintiff's Title VII and FEHA Retaliation Claims Should Be Dismissed Because Plaintiff Has Failed to Plausibly Allege Protected Activity .................. 14

        1.    The First April 29 Zoom Meeting Was Not Protected Activity............... 14

        2.    The Second April 29 Zoom Meeting Was Not Protected Activity .......... 16

        3.    The July 23, 2021 Call Was Not Protected Activity................................. 16

    J.    Plaintiff's Failure to Prevent Retaliation Claim Fails ........................................ 19

    K.    Plaintiff's EPA Claim Should Be Dismissed .................................................... 19

        1.    Plaintiff's Fails to Plead "Equal Work" ................................................. 19

        2.    Plaintiff's EPA Claim Should Be Dismissed Because She Fails to Plead Plausibly a "Single Establishment".................................................. 21

V.    CONCLUSION ................................................................................................ 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albro v. Spencer*,
    No. 18-cv-01156, 2019 WL 2641667 (E.D. Cal. June 27, 2019) .............................. 15, 16, 17

*Allen v. Bander*,
    No. B263586, 2015 WL 7180732 (Cal. Ct. App. Nov. 16, 2015) .......................................... 7

*Allia v. Target Corp.*,
    No. CIV-A07-4130, 2010 WL 1050043 (D.N.J. Mar. 17, 2010)........................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 5, 20, 23

*Barot v. Embassy of Republic of Zambia*,
    299 F. Supp. 3d 160 (D.D.C. 2018), *aff'd*, 773 F. App'x 6 (D.C. Cir. 2019)........................ 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 5, 15, 17

*Belton v. Borg & Ide Imaging, P.C.*,
    512 F. Supp. 3d 433 (W.D.N.Y. 2021) ........................................................... 10, 13, 17

*Bolanos v. Ne. Ill. Univ.*,
    No. 14 CV 7533, 2017 WL 56632 (N.D. Ill. Jan. 4, 2017)................................................... 18

*Detholoff v. Buchanan*,
    No. CV05-140-PCT-MHM, 2008 WL 4277643 (D. Ariz. Sept. 16, 2008)........................... 20

*Edgington v. County of San Diego*,
    118 Cal. App. 3d 39 (1981)................................................................................................ 6

*EEOC v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014)............................................................................................. 22

*Fellows v. Nat'l Enquirer, Inc.*,
    42 Cal. 3d 234 (1986) .................................................................................................. 1, 7

*Ferroni v. Teamsters, Chauffers & Warehousemen Loc. No. 222*,
    297 F.3d 1146 (10th Cir. 2002)........................................................................................ 20

*Finley v. United Parcel Serv. Inc.*,
    No. 2:16-cv-00055-ROS, 2018 WL 6422082 (D. Ariz. Mar. 30, 2018)
    ................................................................................................................. 3, 15, 16, 17

*Flait v. N. Am. Watch Corp.*,
   3 Cal. App. 4th 467 (1992) ................................................................................................ 14

*GetFugu, Inc. v. Patton Boggs LLP*,
   220 Cal. App. 4th 141 (2013) .......................................................................................... 11

*Goins v. United Parcel Serv. Inc.*,
   No. 21-CV-08722-PJH, 2023 WL 3047388 (N.D. Cal. Apr. 20, 2023) ............................. 23

*Gutierrez v. Kaiser Found. Hosps., Inc.*,
   No. C 11-3428 CW, 2012 WL 5372607 (N.D. Cal. Oct. 30, 2012) ...................... 15, 16, 17

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) .............................................................................................. 5

*Janken v. GM Hughes Elec.*,
   46 Cal. App. 4th 55 (1996) .............................................................................................. 12

*Jensen v. Hewlett-Packard Co.*,
   14 Cal. App. 4th 958 (1993) ............................................................................................ 11

*Johnson v. Soo Line R.R. Co.*,
   No. 17-CV-7828, 2022 WL 540758 (N.D. Ill. Feb. 23, 2022) ................................... 16, 17

*Kasperzyk v. Shetler Sec. Servs., Inc.*,
   No. C-13-3358, 2015 WL 1348503 (N.D. Cal. Mar. 25, 2015) ......................................... 8

*Kendricks v. Westhab, Inc.*,
   163 F. Supp. 2d 263 (S.D.N.Y. 2001) ............................................................................. 17

*Kennedy v. MUFG Union Bank*,
   No. E070775, 2020 WL 218521 (Cal. Ct. App. Jan. 15, 2020) ......................................... 8

*Kurisu v. Svenhard's Swedish Bakery Supplemental Key Mgmt. Ret. Plan*,
   No. 3:21-CV-912-SI, 2022 WL 6733328 (D. Or. Oct. 11, 2022) .................................... 10

*Lanier v. Bd. of Trustees of Univ. of Ala.*,
   No. 2:12-CV-03820-WMA, 2014 WL 657541 (N.D. Ala. Feb. 20, 2014) ........................ 18

*Lieberman v. Fieger*,
   338 F.3d 1076 (9th Cir. 2003) ........................................................................................... 7

*M.F. v. Pac. Pearl Hotel Mgmt. LLC*,
   16 Cal. App. 5th 693 (2017) .............................................................................................. 7

*Maddox v. City of Newark*,
   50 F. Supp. 3d 606 & 623 (D.N.J. 2014) ........................................................................ 17

*McCann v. Veterans Haven*,
    No. 08-cv-5031 JBS JS, 2010 WL 4103669 (D.N.J. Oct. 18, 2010) .................................... 23

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ............................................................................................ 5

*Perales v. Am. Ret. Corp.*,
    No. CIV.A. SA-04-CA-0928, 2005 WL 2367772 (W.D. Tex. Sept. 26, 2005).................... 23

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
    323 F.3d 1185 (9th Cir. 2003).......................................................................................... 14

*Renstrom v. Nash Finch Co.*,
    787 F. Supp. 2d 961 (D. Minn. 2011) ............................................................................... 23

*Rudwall v. Blackrock, Inc.*,
    No. C06-2992 MHP, 2006 WL 3462792 (N.D. Cal. Nov. 30, 2006), *aff'd*, 289
    F. App'x 240 (9th Cir. 2008) ........................................................................................... 11

*Seals v. Marianetti-DesRosiers*,
    No. 21-CV-988, 2022 WL 3153942 (N.D.N.Y. Aug. 8, 2022) ........................................... 15

*Shively v. Bozanich*,
    31 Cal. 4th 1230 (2003) ................................................................................................. 5, 6

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal. App. 4th 523 (2000)............................................................................................... 8

*Stanley v. Univ. of S. Cal.*,
    178 F.3d 1069 (9th Cir. 1999)........................................................................................... 19

*Stocks v. Cmty. Health Intervention & Sickle Cell Agency, Inc.*,
    No. 5:18-CV-372-D, 2019 WL 2241870 (E.D.N.C. May 21, 2019) .................................... 15

*Suckow Borax Mines Consol. v. Borax Consol.*,
    185 F.2d 196 (9th Cir. 1950)............................................................................................... 5

*Tate v. United States*,
    437 F.2d 88 (9th Cir. 1971)................................................................................................. 6

*Thompson v. City of Monrovia*,
    186 Cal. App. 4th 860 (2010)............................................................................................ 19

*Trulsson v. Cnty. of San Joaquin Dist. Atty's Off.*,
    49 F. Supp. 3d 685 (E.D. Cal. 2014).................................................................................. 19

*Vargas v. Vons Cos. Inc.*,
    No. B315167, 2022 WL 17685801 (Cal. Ct. App. Dec. 15, 2022).......................................... 8

DEFENDANTS' MOTION TO DISMISS AMENDED
COMPLAINT [4:22-CV-05990-HSG (TSH)]

*Voellger v. Dignity Health*,
   No. 19-CV-07089-RS, 2020 WL 13505420 (N.D. Cal. July 27, 2020)................................. 8

*WA Sw. 2, LLC v. First Am. Title Ins. Co.*,
   240 Cal. App. 4th 148 (2015)........................................................................................ 6

*Yartzoff v. Thomas*,
   809 F.2d 1371 (9th Cir. 1987)...................................................................................... 14

*Zochlinski v. Regents of Univ. of Cal.*,
   No. 2:10-CV-1824, 2011 WL 590877 (E.D. Cal. Feb. 10, 2011), *aff'd in part,
   rev'd in part on other grounds by* 578 F. App'x 636 (9th Cir. 2014)..................................... 7

*Zwebner v. Coughlin*,
   No. 05-CV-1263, 2005 WL 8173330 (S.D. Cal. Oct. 12, 2005), *aff'd*, No. 05-
   56756, 2007 WL 2141506 (9th Cir. July 26, 2007) ............................................................. 7

**Statutes**

29 U.S.C. § 206(d)(1)................................................................................................... 21

Cal. Civ. Proc. Code § 335.1........................................................................................ 6

Cal. Civ. Proc. Code § 340(c) ...................................................................................... 5

**Other Authorities**

29 C.F.R. § 1620.9(a)................................................................................................... 21

29 C.F.R. § 1620.9(b) ............................................................................................. 21, 22

Federal Rule of Civil Procedure 11 ..................................................................... 9, 12, 16

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 1, 5

### <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO PLAINTIFF:

PLEASE TAKE NOTICE THAT at 2:00 p.m. on January 11, 2024, or as soon thereafter as counsel may be heard, in Courtroom 2 of this Court, 1301 Clay Street, Oakland, California 94612, before the Honorable Haywood S. Gilliam, Defendants Kirkland & Ellis LLP ("Kirkland"), Michael De Vries, Michael W. De Vries, P.C., Adam Alper, Adam R. Alper, P.C., Akshay Deoras, Akshay S. Deoras, P.C., and Mark Fahey (collectively the "Defendants") will and hereby move this Court for an Order dismissing certain claims that Plaintiff Zoya Kovalenko's First Amended Complaint ("FAC") asserts against Defendants because these claims fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the complete pleadings and records on file herein, any matters of which the Court may or must take judicial notice, and such other evidence and arguments as may be presented at the hearing on this Motion.

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   <u>INTRODUCTION</u>

Plaintiff's FAC fails to state a claim as to several claims for relief against various defendants. *First*, the FAC reveals that Plaintiff's defamation claim is barred by the statute of limitations. Plaintiff alleges that she first discovered the content of Defendants' allegedly defamatory statements on October 11, 2021. Thus, assuming *arguendo* the discovery rule applies here, Plaintiff was required to file her complaint within the one-year statute of limitations by October 11, 2022. She did not. She filed her complaint on October 12, 2022 and thus, her defamation claim against all defendants is barred by the statute of limitations.

*Second*, Plaintiff's intentional infliction of emotional distress ("IIED"), which is derivative of her defamation claim, is also barred by California's one-year statute of limitations because: "[w]here the Complaint is based on an offensive statement that is defamatory, plaintiffs have not been allowed to circumvent the statutory limitation by proceeding on a theory other than defamation." *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal. 3d 234, 240 (1986).

*Third*, Plaintiff's IIED claim against Michael De Vries, Michael W. De Vries, P.C., Adam

1    Alper, Adam R. Alper, P.C., Akshay Deoras, Akshay S. Deoras, P.C., and Mark Fahey (the
2    "Individual Defendants") should be dismissed because it is preempted by workers' compensation
3    law. Various courts have held, and this Court appears to agree, that an exception to the general rule
4    of workers' compensation preemption applies where the complaint states a viable FEHA claim
5    against the defendant. This Court's Order dated August 23, 2023 makes clear, however, that no
6    viable FEHA claims exist against the Individual Defendants; thus, the exception does not apply and
7    the IIED claims against them are preempted and should be dismissed.

8         *Fourth*, the FAC contains no plausible allegations of wrongful conduct by Michael W. De
9    Vries, P.C., Adam R. Alper, P.C., and Akshay S. Deoras, P.C. (collectively the "Individual Partner
10   PCs"). Specifically, with respect to her IIED claim, Plaintiff cannot plausibly allege that a corporate
11   entity with a sole purpose of engaging in the practice of law and "other lawful activities" intended
12   to cause her severe distress, or that the PC itself engaged in outrageous behavior that proximately
13   caused severe distress. And with respect to her defamation claim, nowhere in the FAC does Plaintiff
14   plausibly allege why Individual Partner PCs, rather than individual partners, would be evaluating
15   her performance for Kirkland's clients.

16        *Fifth*, the Court should dismiss Plaintiff's IIED claim against each of the Individual
17   Defendants because Plaintiff has failed to allege facts specific to each Individual Defendant to
18   plausibly plead that each "deliberately falsified" his performance review of Plaintiff.

19        *Sixth*, to the extent the Court does not grant reconsideration of its August 23, 2023 Order,
20   the Court should dismiss Plaintiff's defamation claim against Mr. De Vries and Michael W. De
21   Vries, P.C. because Mr. De Vries' review of Plaintiff does not contain provably false assertions or
22   suggest incompetence.

23        *Seventh*, the Court should dismiss the IIED claim against Mr. Alper and Adam R. Alper,
24   P.C. because Mr. Alper did not write a performance review of Plaintiff.

25        *Eighth*, the FAC fails to sufficiently allege that Plaintiff engaged in protected activity; and
26   thus, her remaining retaliation claims against Kirkland pursuant to Title VII and FEHA fail.[1]

27

28   ---
     [1] Plaintiff's retaliation claims against the Individual Defendants were previously dismissed by the
     Court. Order, Dkt. 92 at 11-12.

Specifically, Plaintiff's alleged generalized internal complaints to management about her workload are insufficient to support a retaliation claim because protected activity "must plausibly bear some relation to discrimination on the basis of a protected characteristic" and that "general complaints about the workplace or unfairness are not sufficient." *See Finley v. United Parcel Serv. Inc.*, No. 2:16-cv-00055-ROS, 2018 WL 6422082, at *12 (D. Ariz. Mar. 30, 2018).

*Ninth* and finally, Plaintiff's FAC fails to state a claim for relief under the Equal Pay Act ("EPA") because she has not sufficiently alleged that her alleged comparators performed "equal work" or that such work was performed at a "single establishment." Plaintiff fails to plead the EPA's "equal work" requirement because she has failed to allege that her job and her comparators' jobs had a "common core" of tasks—a close read of the FAC reveals that at most, she has had two, one or no tasks in common with her alleged comparators over the course of her approximately one year of employment. Plaintiff also fails to allege that employees here performed equal work at a distinct physical place of business, which is the general rule for pleading a single establishment under the EPA, or the "unique circumstances" required to support an exception to this general rule.

## II.   <u>ISSUES TO BE DECIDED</u>

1.    Does the statute of limitations bar Plaintiff's defamation claim against Kirkland, Michael De Vries, Michael W. DeVries, P.C., Akshay Deoras, Akshay S. Deoras, P.C. and Mark Fahey?

2.    Does the statute of limitations bar Plaintiff's IIED claim against all Defendants because it is derivative of her defamation claims?

3.    Should the Court dismiss Plaintiff's IIED claim against the Individual Defendants because it is preempted by the workers' compensation law?

4.    Should the Court dismiss the Individual Partner PCs from the case (specifically in connection with the defamation and IIED claims asserted against them) because Plaintiff fails to allege any specific wrongful conduct by them?

5.    Should the Court dismiss Plaintiff's IIED claim against each of the Individual Defendants because Plaintiff has failed to allege facts specific to each Individual Defendant to plausibly plead that each "deliberately falsified" his performance review of Plaintiff?

6.       Should the Court dismiss Plaintiff's defamation claim against Mr. De Vries and Michael W. De Vries, P.C. because Mr. De Vries' review of Plaintiff does not contain provably false assertions or suggest incompetence?

7.       Should the Court dismiss the IIED claim against Mr. Alper and Adam R. Alper, P.C. because Mr. Alper did not write a performance review of Plaintiff?

8.       Should Plaintiff's Title VII and FEHA retaliation claims be dismissed because Plaintiff has failed to plausibly allege protected activity?

9.       Should Plaintiff's EPA claim against Kirkland be dismissed because Plaintiff has failed to plead plausibly the EPA's "equal work" and "single establishment" requirements?

### III.   <u>BACKGROUND</u>

On October 12, 2022, Plaintiff, a former Kirkland IP litigation associate, filed the instant action against the Defendants asserting claims for: (1) sex discrimination in violation of Title VII; (2) sex discrimination in violation of FEHA; (3) sex discrimination in violation of San Francisco Ordinance; (4) sex discrimination in violation of the EPA; (5) retaliation in violation of Title VII; (6) retaliation in violation of FEHA; (7) retaliation in violation of San Francisco Ordinance; (8) sex harassment constituting hostile work environment in violation of Title VII; (9) failure to prevent discrimination and retaliation; (10) defamation; (11) intentional infliction of emotional distress; and (12) negligent infliction of emotional distress. *See* Dkt. 1.

Kirkland moved to dismiss Plaintiff's Complaint on December 16, 2022 (Dkt. 24) and the Individual Defendants and former Defendants Leslie Schmidt and Leslie Schmidt, P.C. each filed a motion to dismiss Plaintiff's Complaint on December 19, 2022 (Dkts. 30, 31, 34-36). On August 23, 2023, the Court granted the motions to dismiss in part, dismissing the majority of the various claims asserted against the Individual Defendants with prejudice, dismissing Plaintiff's claims under the San Francisco Ordinance (claim Nos. 3 and 7) and for negligent infliction of emotional distress (claim No. 12), and dismissing all claims against Leslie Schmidt and Leslie Schmidt, P.C. for lack of personal jurisdiction. The Court held that any amended complaint was required to be filed within 28 days of its Order. Plaintiff filed the FAC on September 20, 2023.

1    **IV.    THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS**

2       **A.    Legal Standard**

3       Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal

4    theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med.*

5    *Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

6    (plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face"); *see also*

7    *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). If plaintiff's allegations do not bring her "claims across the

8    line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

9    "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

10   task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

11   556 U.S. at 679.

12      **B.    The Statute of Limitations Bars Plaintiff's Defamation Claim**

13      Plaintiff's defamation claim against Kirkland, Michael De Vries, Michael W. DeVries,

14   P.C., Akshay Deoras, Akshay S. Deoras, P.C. and Mark Fahey should be dismissed because it is

15   barred by the statute of limitations.[2] "[T]he statute of limitations for defamation . . . requires that

16   an action be filed within one year of accrual of the cause of action." *Shively v. Bozanich*, 31 Cal.

17   4th 1230, 1246-47 (2003); Cal. Civ. Proc. Code § 340(c). "[A] cause of action for defamation

18   accrues at the time the defamatory statement is 'published.'" *Shively*, 31 Cal. 4th at 1247. "[T]he

19   general rule is that publication occurs when the defendant communicates the defamatory statement

20   to a person other than the person being defamed." *Id.*

21      Here, Plaintiff alleges in the FAC that her allegedly defamatory performance evaluations

22   were published on August 16, 2021. FAC ¶ 210.[3] The defamation claim is time-barred because

23   Plaintiff did not file her original Complaint until October 12, 2022, more than one year later.

24

25

26   [2] Where, as here, allegations affirmatively show the complaint is barred by the statute of limitations, the complaint may be dismissed on motion for failure to state a claim. *Suckow Borax Mines Consol.*

27   *v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir. 1950); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

28   [3] Defendants treat Plaintiff's factual allegations as true for purposes of this motion to the extent required by Rule 12(b)(6), but vehemently deny all allegations of wrongdoing in the Complaint.

It appears Plaintiff seeks to invoke the discovery rule to try to save her time-barred defamation claim. Under the "discovery" exception to the general rule, the defamation claim accrues when the plaintiff discovered, or should have discovered, a factual basis for her defamation claim. *Shively*, 31 Cal. 4th at 1248. To invoke the discovery rule, a plaintiff must plead: "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015) (emphasis in original). Plaintiff alleges that "[o]n October 11, 2021, Plaintiff's 'evaluations' were read to her, which is when Plaintiff was informed, for the first time of . . . the fact that each of Defendants Kirkland, Mr. De Vries, Mr. Deoras, Ms. Schmidt,[4] and Mr. Fahey had published without Plaintiff's consent a slew of malicious, defamatory statements regarding Plaintiff's profession with knowledge or reckless disregard of falsity thereof, examples of which are noted throughout this Amended Complaint; and . . . the extremely defamatory content of Defendants' 'evaluations.'" FAC ¶ 194; *see also id*. ¶¶ 193, 214, 215, 304.

Even assuming Plaintiff has properly invoked the discovery rule (which Defendants do not concede), her claims are nevertheless barred by the statute of limitations because her claims would have accrued on October 11, 2021 when she was read her reviews. But, Plaintiff did not file her Complaint until October 12, 2022. Dkt. 1. Thus, her defamation claims are time-barred. *See, e.g.*, *Edgington v. County of San Diego*, 118 Cal. App. 3d 39, 41-43 (1981) (affirming dismissal where plaintiff filed lawsuit one day after limitations period expired); *Tate v. United States*, 437 F.2d 88, 89 (9th Cir. 1971) (affirming dismissal of complaint filed two days late).

### C.    <u>Plaintiff's IIED Claim Is Barred by the Statute of Limitations</u>

Plaintiff's IIED claim against all Defendants should also be dismissed. An independent IIED claim is generally subject to the two year personal injury statute of limitations. Cal. Civ. Proc. Code § 335.1. Here, however, as this Court's Order made clear, Plaintiff's IIED claim is dependent on her defamation claim. Order, Dkt. 92 at 19-21 (holding that Plaintiff's pleading of "deliberately falsified performance reviews" is enough to allege extreme and outrageous conduct for IIED claim). Because her IIED claim is based on her defamation claim, the defamation statute of limitations

---

[4] Ms. Schmidt is no longer a Defendant in this action. Order, Dkt. 92 at 25.

applies: "Where the Complaint is based on an offensive statement that is defamatory, plaintiffs have not been allowed to circumvent the statutory limitation by proceeding on a theory other than defamation." *Fellows*, 42 Cal. 3d at 240 (1986); *Lieberman v. Fieger*, 338 F.3d 1076, 1082 n.3 (9th Cir. 2003) ("Under California law, a plaintiff may not maintain an independent cause of action for the intentional infliction of emotional distress based on the same acts which were insufficient to support a cause of action for defamation."). Because Plaintiff filed her complaint more than one-year after her claim accrued, Plaintiff's IIED claim should also be dismissed as time-barred. *See Zochlinski v. Regents of Univ. of Cal.*, No. 2:10-CV-1824, 2011 WL 590877, at *8 (E.D. Cal. Feb. 10, 2011) (applying one year statute of limitations to IIED claim and dismissing it as untimely when predicated on defamation claim: "Holding otherwise—that is, allowing a defamation claim to be brought in the guise of an IIED claim—would divorce it from the well developed law of defamation with its attendant privileges and defenses"), *aff'd in part, rev'd in part on other grounds by* 578 F. App'x 636 (9th Cir. 2014).[5]

### D.   Plaintiff's IIED Claim Against the Individual Defendants Is Preempted by the Workers' Compensation Law

Plaintiff's IIED claim against the Individual Defendants should also be dismissed for the independent reason that it is preempted by the workers' compensation law. "Generally, the right to recover workers' compensation benefits is the exclusive remedy for an employee against an employer for a workplace injury." *M.F. v. Pac. Pearl Hotel Mgmt. LLC*, 16 Cal. App. 5th 693, 699 (2017). The Court has concluded that an exception to this general rule may apply where the complaint states a viable claim under the FEHA against the defendant. *Id.* at 700; Order, Dkt. 92 at 20. Here, however, the Court has already concluded that the complaint does not state a viable FEHA

---

[5] *Allen v. Bander*, No. B263586, 2015 WL 7180732, at *9 (Cal. Ct. App. Nov. 16, 2015) (dismissing UCL claim based on defamation based on one year statute of limitations: "Allen suggests that his other causes of action may survive even if his defamation claim is barred by the statute of limitations. In particular, he argues that the four-year statute of limitations for unfair competition claims should govern his remaining claims here. This argument fails, however, because all of Allen's causes of action are premised on the same allegedly defamatory conduct."); *Zwebner v. Coughlin*, No. 05-CV-1263 JAH(AJB), 2005 WL 8173330, at *5 (S.D. Cal. Oct. 12, 2005) ("Because plaintiffs' defamation claim is time-barred, plaintiffs' intentional infliction of emotional distress claim, based upon the same factual basis as the defamation claim, also fails as time-barred."), *aff'd*, No. 05-56756, 2007 WL 2141506 (9th Cir. July 26, 2007).

claim against the Individual Defendants. Order, Dkt. 92 at 11-12 (holding that Plaintiff does not and cannot "state[] viable claims . . . under the FEHA" against the Individual Defendants because "FEHA . . . does not allow for individual liability for discrimination, retaliation, or failure to prevent violations."). Thus, the exception to the general rule of workers' compensation preemption (as found by the Court) does not apply to the Individual Defendants and the IIED claim against them should be dismissed for this reason also. *See Voellger v. Dignity Health*, No. 19-CV-07089-RS, 2020 WL 13505420, at *3, *6 (N.D. Cal. July 27, 2020) (terminated plaintiff sued employer and supervisor for FEHA retaliation and IIED; court dismissed FEHA retaliation claim against supervisor because supervisor was not employer; court dismissed IIED claim against supervisor as preempted by workers' compensation).[6]

### E.   Plaintiff's Claims Against the PC Defendants Fail

Plaintiff fails to allege any specific wrongful conduct by the Individual Partner PCs. "[A] corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000). The FAC here nonetheless treats individual Defendants Adam Alper, Michael De Vries, and Akshay Deoras as indistinguishable from their respective professional corporations, even referring to the individual defendants collectively with their PCs as "Mr. Alper," "Mr. De Vries" and "Mr. Deoras." FAC ¶¶ 22, 25, 27.

Plaintiff sues the PCs for defamation and intentional infliction of emotional distress, but the only allegations she makes regarding the PCs is that they are "professional corporation[s] organized

---

[6] *See also Kennedy v. MUFG Union Bank*, No. E070775, 2020 WL 218521, at *12 (Cal. Ct. App. Jan. 15, 2020) (affirming dismissal of IIED claim because plaintiff's underlying FEHA claim was dismissed; "Absent a viable claim under the FEHA or for wrongful termination, the exception to the exclusivity provisions of the worker's compensation law does not exist. Plaintiff was not entitled to independently pursue a claim for intentional infliction of emotional distress in a civil tort action . . . ."); *Vargas v. Vons Cos. Inc.*, No. B315167, 2022 WL 17685801, at *14 (Cal. Ct. App. Dec. 15, 2022) (dismissing IIED claim against one defendant because FEHA claim against it was dismissed: "[P]laintiff's exclusive remedy is the workers' compensation system because, as explained above, plaintiff's claims for sexual harassment, sex- and gender-based discrimination and retaliation against [defendant] fail as a matter of law."); *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3358 EMC/TEH, 2015 WL 1348503, at *12 (N.D. Cal. Mar. 25, 2015) ("Kasperzyk may not pursue an IIED claim predicated on those of his claims which do not survive summary judgment, such as his retaliation claim. If SSS is entitled to summary judgment on the underlying causes of action on which the IIED claim depends, then summary judgment is necessarily proper on the IIED claim.").

1   under the laws of the State of California," which are "named for an attorney who serves as the sole

2   owner, director, and officer of each PC," and whose purpose is "to engage in the profession of [l]aw

3   and any other lawful activities . . . not prohibited to a corporation engaging in such profession by

4   applicable laws and regulation." FAC ¶¶ 20, 21, 24, 26.

5       Plaintiff fails to allege any specific wrongful conduct whatsoever *by the corporations*, much

6   less conduct that supports claims against them for defamation or IIED. With respect to the IIED

7   claim, she cannot plausibly allege that a corporate entity with a sole purpose of engaging in the

8   practice of law and "other lawful activities" intended to cause her severe distress, or that the PC

9   itself engaged in outrageous behavior that proximately caused severe distress.

10      And with respect to the defamation claim, nowhere does Plaintiff plausibly allege that it

11  was the Individual Partner PCs evaluating her performance for Kirkland's clients. On their face,

12  the evaluations are by the individual partners, not the PCs. Dkt. 29-2. Plaintiff does not allege

13  plausibly, nor can she within the confines of Rule 11, that:

14      • she had an employment contract with any PC;

15      • any work she performed for Kirkland was for a client of a PC, rather than for a client

16          of Kirkland;

17      • any PC had any clients at all; and/or

18      • any partner evaluations of her were really from PCs.

19  **F.   Plaintiff Fails To State An IIED Claim Against the Individual Defendants Because She Has Failed to Allege Specific Facts to Plausibly Plead That Each**
20  **Defendant Deliberately Falsified Her Performance Review**

21      As noted above, the Court held that Plaintiff's IIED claim could proceed based on Plaintiff's

22  pleading that "Defendants deliberately falsified performance reviews, going so far as to instruct a

23  fellow reviewer to criticize her, to create a fabricated justification for termination." Order, Dkt. 92

24  at 19-21. But Plaintiff has failed to allege specific facts as to each Individual Defendant to plausibly

25  plead that each "deliberately falsified" his performance review.[7] For example, there are no

26  allegations specific to *Mr. De Vries, Mr. Fahey*, *Mr. Deoras*, **or** *Mr. Alper* that each instructed a

---

[7] In fact, as detailed in Section IV(H) below, with respect to Mr. Alper, Plaintiff cannot allege that he "deliberately falsified" Plaintiff's performance review because he did not submit a review for her.

1    fellow reviewer to criticize her. Her allegation that "Male Non-Share Partner Y told Plaintiff that

2    Defendants [*generally*] had directed him (Male Non-Share Partner Y) to criticize Plaintiff in his

3    'evaluation' of her" (FAC ¶ 22) is improper.[8] Plaintiff cannot lump Defendants Kirkland, Mr. De

4    Vries, Mr. Fahey, Mr. Deoras, and Mr. Alper together with respect to this allegation—she must

5    allege with specificity which Defendant(s) purportedly engaged in the alleged wrongful conduct.

6    See *Kurisu v. Svenhard's Swedish Bakery Supplemental Key Mgmt. Ret. Plan*, No. 3:21-CV-912-

7    SI, 2022 WL 6733328, at *3 (D. Or. Oct. 11, 2022) (collecting cases) ("Allegations are factually

8    deficient when a complaint lumps defendants together and fails to adequately distinguish claims

9    and alleged wrongs among defendants. . . . Plaintiffs must allege more than generic and conclusory

10   allegations demonstrating that 'Defendants' collectively engaged in [misconduct] and allege with

11   at least some degree of specificity the acts which each defendant is alleged to have engaged in

12   which support Plaintiff's claims.") (internal quotation marks omitted).

13   **G.      Plaintiff Fails To State A Defamation Claim Against Mr. De Vries or Michael**
14            **W. De Vries, P.C.**

15          The Court's August 23, 2023 Order ("August 23 Order") on Defendants' various motions

16   to dismiss Plaintiff's initial Complaint declined to dismiss[9] Plaintiff's defamation claim on the

17   ground that the performance evaluations taken collectively stated a defamation claim because

18   statements in those evaluations (1) could imply a "provably false assertion of fact," and (2) could

19   suggest "Plaintiff lacked the inherent competence to do her job." *See* Order, Dkt. 92 at 15-16. The

20   Order appears to address Kirkland's motion to dismiss the defamation claim, but does not

21   distinguish the separate motions of each individual defendant, including Mr. De Vries and Michael

22   W. De Vries, P.C. Applying the Court's rationale, the defamation claim against the De Vries

23   Defendants should be dismissed.

24          ***First***, none of the facts supporting the Order's holding that the evaluations contain factual

25

26   _____

     [8] Another example: there are no specific allegations that Mr. De Vries, Mr. Fahey, or Mr. Alper
27   had knowledge of her alleged complaints, which Plaintiff alleges prompted the "deliberately
     falsified" performance reviews .
     [9] Each Defendant separately sought to dismiss Plaintiff's defamation claims against that Defendant,
28   based on that Defendant's individual review (or non-review) of Plaintiff's performance. Dkts. 24,
     30, 31, 34, 35, 36.

assertions potentially suggesting incompetence come from *Mr. De Vries'* evaluation. *Id.* at 16-17 (citing Akshay Deoras' comments: Plaintiff "disappeared" for trial, and he met with her to "let her know that her performance was unacceptable"; Leslie Schmidt's comment: Plaintiff "did not contribute at trial"; Mark Fahey's comment: partners "had to entirely rewrite everything she wrote"). Also, ***importantly, although the Order states that "Defendants Schmidt and De Vries met with [Plaintiff] to 'let her know that her performance was unacceptable,'" that is not correct.*** *Id.* at 17. That statement comes from ***Mr. Deoras'*** review, and it refers to a conversation that Mr. Deoras and Ms. Schmidt (and ***not Mr. De Vries***) had with Plaintiff, as made clear by Plaintiff's allegations. Dkt. 29-2 at 2-3; FAC ¶ 120. Thus, there is no factual support in the Order or the FAC for the conclusion that Mr. De Vries' evaluation of Plaintiff contained provably false assertions.

Further, even if Mr. De Vries' performance review (copied in full below) did include statements of fact, that is not a ground to deny dismissal. The Order does not address the De Vries Defendants' argument, citing leading California law and Northern District case law affirmed by the Ninth Circuit, that statements of fact ***in performance assessments*** cannot support a defamation claim. *See* De Vries Motion to Dismiss, Dkt. 30 at 22. In *Rudwall v. Blackrock, Inc.*, No. C06-2992 MHP, 2006 WL 3462792, at \*5 (N.D. Cal. Nov. 30, 2006), *aff'd*, 289 F. App'x 240 (9th Cir. 2008), the court recognized that California gives "special treatment" to performance reviews, and because of that special treatment, even "if the performance review statements contain factual assertions . . . the assertions do not rise to the level of defamation." The leading California case that explains this "special treatment" is *Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958 (1993). In *Jensen*, the court held that a statement that the employee "had been the subject of some third party complaints"—a factual assertion—was not actionable. *Id.* at 966. The case the Order cites for the proposition that factual assertions can support a defamation claim, *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 156 (2013), is not an employment case and does not discuss performance evaluations. Order, Dkt. 92 at 16. Thus, it does not consider the "special treatment" performance evaluations receive under California law.

***Second***, none of the facts the Order identifies as suggesting incompetence come from ***Mr. De Vries'*** review. *See* Order, Dkt. 92 at 16 (citing the ***Associate Review Committee (ARC)'s***

comment: "[t]he evaluation concluded that Plaintiff had 'not contributed to her matters at either the substantive or commitment level that is expected of an associate' and 'should promptly pursue outside employment'";[10] **Ms. Schmidt's** comments: "Plaintiff 'does not produce usable work product'" and **Ms. Schmidt and Mr. Deoras** "decided [Plaintiff] will not attend the hearing in the case because of her poor performance"; **Mr. Deoras'** comments: Plaintiff was "not up to [] expectations for someone much junior to her year" and her preparation was "extremely poor"; **Mr. Fahey's** comments: Plaintiff "needed to be supervised with all discussions with third parties" and the partners had to "rewrite everything she wrote"). Nor could anything in Mr. De Vries' evaluation reasonably be construed as suggesting Plaintiff lacked the competence to do her job. It focused on the shortcomings of Plaintiff's performance on *one* specific project, and is balanced with caveats, as emphasized here:

> I only worked directly with Zoya on one matter: a witness examination at the [] trial. I generally did not think that Zola's work on that project was very good. ***We had an initial good discussion about it, but after that, the examination outline she worked on was incomplete and somewhat late. To be fair, I did say it was alright to send me the outline before it was complete***; but given the timing and content of the outline she prepared, I had to go back to simply preparing a (separate) outline myself. ***In addition, it was difficult for me to follow the analysis in the outline. I readily acknowledge that this kind of project is a difficult one for someone who has not done it before,*** but even with that caveat, I think that Zoya could have done a better job on the work.

Dkt. 29-2 at 2 (emphasis added).[11]

**Third**, if a defamation claim based on an extremely balanced evaluation such as this is allowed to proceed, then the "special treatment" that California law affords performance evaluations is a dead letter. If taken to its logical extreme, this would mean that no manager could ever provide any negative comments in a performance review without risking a defamation claim. It would also deter managers from providing honest feedback to their employees impeding such employees' growth and development. *Cf. Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 73-74 (1996) ("Yet it is manifest that if every personnel manager risked losing his or her home, retirement savings, hope of children's college education, etc., whenever he or she made a personnel

---

[10] Plaintiff does not allege in the FAC that Mr. De Vries was a member of the ARC, nor could she do so consistent with Rule 11 obligations. *See generally* FAC.

[11] This is a full recitation of Mr. De Vries' performance evaluation of Plaintiff.

DEFENDANTS' MOTION TO DISMISS AMENDED
COMPLAINT [4:22-CV-05990-HSG (TSH)]

1    management decision, management of industrial enterprises and other economic organizations

2    would be seriously affected. . . . Plaintiffs' theory would place a supervisory employee in a direct

3    conflict of interest with his or her employer every time that supervisory employee was faced with

4    a personnel decision. Every employee owes his or her employer duties of undivided care and

5    loyalty. Plaintiffs' theory, however, would coerce the supervisory employee not to make the

6    optimum lawful decision for the employer." (citations omitted)). Mr. De Vries and Michael W. De

7    Vries, P.C. respectfully request that the Court dismiss the defamation claim as to them.

8        **H.    <u>Plaintiff Fails To State An IIED Claim Against Mr. Alper or Adam R. Alper,
9        P.C.</u>**

10       The August 23 Order held that Plaintiff stated an IIED claim against the Alper Defendants

11   because Plaintiff's pleading of "*deliberately falsified* performance reviews" is enough to allege

12   extreme and outrageous conduct. Order, Dkt. 92 at 19-21. Plaintiff did not amend the IIED claim

13   against the Alper Defendants in the FAC, and, under the Court's rationale in the August 23 Order,

14   dismissal as to the Alper Defendants is warranted.

15       First, as discussed in Section IV(D), above, because the Court dismissed the FEHA claims

16   against the Alper Defendants, Plaintiff's IIED claim against those same defendants is preempted

17   by workers' compensation.

18       Second, under the Court's rationale that Plaintiff sufficiently alleged an IIED claim because

19   she alleged the performance reviews were "deliberately falsified," dismissal of the Alper

20   Defendants is appropriate. The relevant portion of the Order is as follows:

21       Plaintiff alleges more than just "personnel management activity." Instead, she
22       alleges that Defendants *deliberately falsified* performance reviews, going so far as
         to instruct a fellow reviewer to criticize her, to create a fabricated justification for
23       termination. While Plaintiff may or may not ultimately be able to prove these
         allegations, they are enough to survive a motion to dismiss.

24   *Id.* at 21 (emphasis in original).

25       But Mr. Alper **did not write** a performance review of Plaintiff. *See* Order, Dkt. 92 at 15

26   (dismissing defamation claim against Alper Defendants because "Defendant Alper did not submit

27   an evaluation of Plaintiff, which is the sole basis for her defamation claim"). Plaintiff's specific

28   factual allegations against Mr. Alper are sparse, and none assert that Mr. Alper played **any role** in

DEFENDANTS' MOTION TO DISMISS AMENDED
COMPLAINT [4:22-CV-05990-HSG (TSH)]

instructing other reviewers to criticize Plaintiff (*see generally* FAC). For these reasons, the IIED claim against the Alper Defendants should be dismissed.

## I.   Plaintiff's Title VII and FEHA Retaliation Claims Should Be Dismissed Because Plaintiff Has Failed to Plausibly Allege Protected Activity

To state a claim for retaliation under Title VII and FEHA, a plaintiff must allege she engaged in "protected activity." *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987); *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). "Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to oppose an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

Here, Plaintiff alleges that she engaged in protected activity by allegedly complaining about Defendants' "Unlawful Employment Practices" in: (1) a Zoom meeting with Mr. Deoras and Ms. Schmidt on April 29, 2021 ("First April 29 Zoom Meeting"); (2) a separate Zoom meeting with Mr. Deoras later that day ("Second April 29 Zoom Meeting"); and (3) a phone call with Mr. Deoras on July 23, 2021 (the "July 23, 2021 Call"). FAC ¶¶ 119-121; ¶¶ 162-168. As discussed below, none of the alleged complaints that Plaintiff claims she made in those communications were protected activity sufficient to state a retaliation claim.

### 1.   The First April 29 Zoom Meeting Was Not Protected Activity

As to the First April 29 Zoom Meeting, Plaintiff alleges that she complained "about Defendants' Unlawful Employment Practices based on her unfair treatment related to her trial experience."[12] FAC ¶ 119. Specifically, she alleges that in response to Mr. Deoras' question whether she was suffering from a personal issue, "Plaintiff made clear that she was not, and that any change in her demeanor was due to her being subjected to unfair treatment and having to deal with a disproportionate workload at trial." *Id.* ¶ 121. These allegations about the First April 29 Zoom Meeting are insufficient .

---

[12] The FAC defines "Unlawful Employment Practices" as "Defendants' conduct related and/or giving rise to any one or more of the aforementioned claims." FAC ¶ 5.

Plaintiff's allegations that she complained about "unfair treatment related to her trial experience" and "having to deal with a disproportionate workload at trial" are insufficient because protected activity "must plausibly bear some relation to discrimination on the basis of a protected characteristic" and "general complaints about the workplace or unfairness are not sufficient." *See Finley*, 2018 WL 6422082, at *12; *see also Gutierrez v. Kaiser Found. Hosps., Inc*., No. C 11-3428 CW, 2012 WL 5372607, at *6 (N.D. Cal. Oct. 30, 2012) ("[T]o constitute protected activity, [the plaintiff] must have alerted his employer to his belief that discrimination, not merely unfair personnel treatment, had occurred."); *Albro v. Spencer*, No. 18-cv-01156, 2019 WL 2641667, at *9 (E.D. Cal. June 27, 2019) ("Complaining about an "unsupportive" work environment . . . does not constitute protected activity under Title VII."). In addition, Plaintiff's general and conclusory allegation that she complained about "Unlawful Employment Practices" is insufficient because "plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *see also Seals v. Marianetti-DesRosiers*, No. 21-CV-988, 2022 WL 3153942, at *4 (N.D.N.Y. Aug. 8, 2022) (collecting cases) ("The allegations of having complained of 'unlawful discrimination' and a 'hostile work environment' are too conclusory to plausibly allege that Plaintiff engaged in protected activity by opposing an unlawful employment practice."); *Stocks v. Cmty. Health Intervention & Sickle Cell Agency, Inc*., No. 5:18-CV-372-D, 2019 WL 2241870, at *4 (E.D.N.C. May 21, 2019) ("Stocks's conclusory allegations that she complained about sex discrimination to management do not make her retaliation claim plausible.").[13]

While Plaintiff does allege that in the First April 29 Zoom Meeting "she explained that one major obstacle that she had to unfairly contend with was a significant amount of non-trial work while juggling trial work, which, as noted above, was an obstacle that male associates did not face and were unfamiliar with as a general matter" (FAC ¶ 121), it is clear from the way this allegation is worded that Plaintiff did not raise gender discrimination, but instead merely raised having to

---

[13] Plaintiff's pleading heading on page 44 of the FAC that "On April 29, 2021, Plaintiff Reported Defendants' Sex-Based Discrimination and Harassment Constituting a Hostile Work Environment" is insufficient for this same reason.

juggle non-trial and trial work; and is only now in the FAC couching the complaint in terms of gender. Tellingly, Plaintiff does not allege plainly that she complained to Mr. Deoras and Ms. Schmidt that she was being treated differently *because she was a woman* or anything of the sort; this is because she cannot consistent with Rule 11 obligations. *Iqbal* and *Twombly* are designed to root out this type of artful pleading that seeks to hide not having actually made a gender-related complaint. *See Johnson v. Soo Line R.R. Co*., No. 17-CV-7828, 2022 WL 540758, at *14 (N.D. Ill. Feb. 23, 2022) ("[v]ague and obscure complaints do not constitute protected activity"; dismissing retaliation claim because plaintiff did not specify what he said, when he said it, and whether he complained only about general harassment or specifically that others harassed him due to his race or membership in another protected class).

### 2. The Second April 29 Zoom Meeting Was Not Protected Activity

Regarding the Second April 29 Zoom Meeting, the FAC again does not allege that Plaintiff engaged in protected activity. Instead, Plaintiff alleges that she "began the Zoom meeting by continuing to complain about her unfair treatment, particularly with respect to Ms. Schmidt's lies as to whether Plaintiff had been subjected to disparate treatment at trial." FAC ¶ 125. But the FAC confirms that her complaints were about her work on non-trial matters at trial and had nothing do with gender, and thus are not protected activity. *See* FAC ¶ 121 ("Ms. Schmidt falsely claimed that Plaintiff did not work on any non-trial work and that she was unaware of Plaintiff having any non-trial matter work."). As discussed above, complaints of generalized "unfair treatment" are not protected activity. *See Finley*, 2018 WL 6422082, at *12; *Gutierrez*, 2012 WL 5372607, at *6; *Albro*, 2019 WL 2641667, at *9.

### 3. The July 23, 2021 Call Was Not Protected Activity

As to the July 23, 2021 Call, Plaintiff alleges that she: (1) "complained of unfair treatment with respect to workload—i.e., having an inordinately larger workload than male associates, let alone any other associate"; (2) "raised concerns regarding being asked to take on work for male associates (including those who were able to observe their vacation to the detriment of Plaintiff)" and (3) "raised concerns about Defendants' unreasonably reassigning the entire Burden Expert Report with the lack of associate support that Plaintiff had received to date on the report; and that

1   the unreasonable allocation of work was weighing on Plaintiff's ability to get reasonable amounts

2   of rest." FAC ¶ 168.[14]

3          Plaintiff again has not alleged what she actually said to Mr. Deoras and what words she

4   used in the July 23, 2021 Call. Instead, in an obvious attempt to avoid exposing that what she said

5   had nothing to do with gender, Plaintiff tries to artfully plead around the issue. For example, she

6   uses the abbreviation "i.e." to characterize what was said rather than alleging what was actually

7   said. This is insufficient. *Johnson*, 2022 WL 540758, at *14; *Kendricks v. Westhab, Inc*., 163 F.

8   Supp. 2d 263, 271 (S.D.N.Y. 2001) (plaintiff failed to plausibly allege protected activity because

9   he referred to his complaints but "[did] not specify what he said or when he said it").

10         In any event, it is clear that viewed as a whole and in context of the other similar workload-

11  related complaints in April 2021, Plaintiff's alleged complaint in the July 23, 2021 Call was not

12  about gender discrimination at all, but instead about her workload, which is not protected activity.

13  *See Finley*, 2018 WL 6422082, at *12; *Gutierrez*, 2012 WL 5372607, at *6; *Albro*, 2019 WL

14  2641667, at *9; *see also Maddox v. City of Newark*, 50 F. Supp. 3d 606, 615 n.9 & 623 (D.N.J.

15  2014) ("[C]omplaints about workload do not in themselves implicate the protections of the

16  antidiscrimination laws.").

17         Nowhere in the FAC does Plaintiff explicitly state that when she allegedly complained to

18  Mr. Deoras, she made her (alleged) belief known that she was being treated unfairly ***because of***

19  ***her gender***. This is fatal to her claim. *See Gutierrez*, 2012 WL 5372607, at *6 ("[T]o constitute

20  protected activity, [the plaintiff] must have alerted his employer to his belief that discrimination,

21  not merely unfair personnel treatment, had occurred."); *Belton v. Borg & Ide Imaging, P.C*., 512

22  F. Supp. 3d 433, 445 (W.D.N.Y. 2021) (complaint did not constitute protected activity because

23  "[plaintiff] does not allege that when she reported the incident to [CEO], she made her belief

24  known that the incident occurred because of one of her protected characteristics"). That some of

25  the associates Plaintiff allegedly invoked in her workload discussions happened to be male does

26

---

27  [14] Plaintiff's pleading heading on FAC page 61 that "[o]n July 23, 2021, Plaintiff Again Opposed
    Defendants' Unlawful Employment Practices" is insufficient to plead protected activity because

28  "plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels
    and conclusions." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

1   not transform Plaintiff's unprotected workload complaint into a protected gender discrimination

2   complaint. *Cf. Lanier v. Bd. of Trustees of Univ. of Ala.*, No. 2:12-CV-03820-WMA, 2014 WL

3   657541, at *5 (N.D. Ala. Feb. 20, 2014) ("Lanier once verbally complained that she was being set

4   up to fail, somehow in favor of Herndon, but the mere fact that Herndon is white does transmogrify

5   any reference to Herndon into a complaint of racially disparate treatment.").[15] Artfully describing

6   other associates as "male" in the FAC is not the same as, at the time, complaining about differences

7   ***because they are male***.

8       Moreover, Plaintiff's alleged complaint in the July 23, 2021 Call about her workload in

9   comparison to other associates clearly encompassed females. *See* FAC ¶ 168 (alleging she

10  complained she had "an inordinately larger workload than . . . ***any other associate***" (emphasis

11  added)); *id*. ¶ 168, ¶¶ 153-54 (alleging she complained that Defendants unreasonably reassigned

12  the entire Burden Expert Report to her with the lack of associate support, which was originally

13  allegedly assigned to ***a female associate***, Victoria Huang, with associate support). This confirms

14  that Plaintiff's complaint was not about gender discrimination and thus was not protected activity.

15  *Cf. Bolanos v. Ne. Ill. Univ.*, No. 14 CV 7533, 2017 WL 56632, at *15 (N.D. Ill. Jan. 4, 2017)

16  ("Nothing suggests that Bolanos's complaints about lax enforcement of NEIU personnel policy

17  were in reality complaints about sex or race discrimination. Every employee about whom Bolanos

18  complained is, like Bolanos, female, and Bolanos points to no instance in which she complained

19  that other employees got away with rules violations because of race.").[16]

20      Because Plaintiff has failed to plead plausibly that she engaged in protected activity, this

21  Court should dismiss her Title VII and FEHA retaliation claims against Kirkland, the only

22  defendant for which such claims remain.

23

---

24  [15] *See also Allia v. Target Corp.*, No. CIV-A07-4130, 2010 WL 1050043, at *9 (D.N.J. Mar. 17, 2010) ("Simply because Ms. Robinson is black and plaintiff is white does not turn an altercation

25  between co-workers into a racially motivated incident, and it does not turn the reporting of such an altercation into an activity protected by the [New Jersey Law Against Discrimination].").

26  [16] *See also Barot v. Embassy of Republic of Zambia*, 299 F. Supp. 3d 160, 188 n.22 (D.D.C. 2018) (rejecting argument that sending letter was "protected activity" giving rise to retaliation claim

27  because "the 'discrimination' complained of in the letter d[id] not refer to any protected characteristic under Title VII, but rather focuse[d] on plaintiff's belief that she was being treated

28  unfairly in comparison to other employees who ha[d] been subject to discipline"), *aff'd*, 773 F. App'x 6 (D.C. Cir. 2019).

1

**J.      Plaintiff's Failure to Prevent Retaliation Claim Fails**

Plaintiff's failure to prevent discrimination and retaliation claim should be dismissed because it is derivative of her retaliation claim. Plaintiff relies on her retaliation allegations to support her failure to prevent claim: "Kirkland failed to take any action in response to Plaintiff's complaints because of her sex. Kirkland's practice of failing to take any action in response to Plaintiff's complaints was a substantial factor in causing Plaintiff's harm." FAC ¶ 297. Because her FEHA retaliation claim fails as discussed above, so does her claim for failure to prevent. *See Trulsson v. Cnty. of San Joaquin Dist. Atty's Off.*, 49 F. Supp. 3d 685, 694 (E.D. Cal. 2014) ("[T]o establish a claim for failure to prevent retaliation, a plaintiff must first establish the underlying retaliation."); *see also Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 880 (2010) ("employee has no cause of action for a failure to investigate unlawful harassment or retaliation, unless actionable misconduct occurred").

**K.      Plaintiff's EPA Claim Should Be Dismissed**

Plaintiff's EPA claim against Kirkland should be dismissed because: (1) she has failed to plead that she and her alleged comparators performed "equal work"; and (2) she has failed to plead the EPA's "single establishment" requirement.

**1.      Plaintiff's Fails to Plead "Equal Work"**

"In an Equal Pay Act case, the plaintiff has the burden of establishing a prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir. 1999). This does not mean that the jobs need be identical, but rather, that "the jobs to be compared have a 'common core' of tasks." *Id*. at 1074.

Here, Plaintiff identifies five alleged male comparators: Andrew Walter ("Walter") (FAC ¶ 58), Samuel Blake ("Blake") (FAC ¶ 59), Christian Huehns ("Huehns") (FAC ¶ 61), Kyle Calhoun ("Calhoun") (FAC ¶ 60), and Male Associate G (FAC ¶ 62). Plaintiff has failed to plead that she performed work equal to theirs.

As an initial matter, Plaintiff's conclusory allegations that the alleged comparators performed "the same or substantially the same work" (*see, e.g*., FAC ¶¶ 58-62) are the type of

1   "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory

2   statements" that will "not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

3          As to Walter, Plaintiff identifies only two tasks in common—an "assignment concerning

4   claim construction" and deposition scheduling. FAC ¶¶ 85-86, 142. Two tasks in common

5   insufficiently alleges equal work, especially in light of the myriad other tasks for which Plaintiff

6   alleges she was responsible (*see, e.g.*, FAC ¶ 10). *See Detholoff v. Buchanan*, No. CV05-140-PCT-

7   MHM, 2008 WL 4277643, at *6 (D. Ariz. Sept. 16, 2008) ("the overlap of a few duties does not

8   somehow establish that the compared positions are similarly situated" for purposes of the EPA);

9   *see also Ferroni v. Teamsters, Chauffers & Warehousemen Loc. No. 222*, 297 F.3d 1146, 1149

10  (10th Cir. 2002) ("It is not sufficient that some aspects of the two jobs were the same.").

11         As to Blake, Plaintiff alleges only a single common assignment—Plaintiff was to assist Mr.

12  De Vries prepare the cross-examination of the plaintiff's CEO, and Blake was to assist Mr. De

13  Vries with a direct examination of the defendant's CEO. FAC ¶ 112. Even assuming that a cross-

14  exam is the same as a direct exam—it is not—a single task in common insufficiently pleads equal

15  work. *Detholoff*, 2008 WL 4277643, at *6; *Ferroni*, 297 F.3d at 1149. Moreover, Plaintiff alleges

16  that she and Blake performed different tasks—she was allegedly responsible for a ministerial task

17  while he was not (FAC ¶ 108 n.31) and she was assigned non-trial work at trial while he was not

18  (*id*. ¶ 113). This further makes clear that Plaintiff has failed to plead "equal work."

19         As to Huehns, Plaintiff makes clear there was no "common core" of tasks ; she alleges she

20  and Huehns both worked on a single task—a patent owner's preliminary response (POPR). But

21  Huehns' work on the POPR was limited to copying and pasting her work into it. FAC ¶¶ 82-84.

22  Plaintiff also alleges that Huehns directed her to draft a sur-reply, suggesting that he acted in a

23  supervisory capacity over Plaintiff rather than as a peer. *Id.* ¶¶ 79 n.21, 147 n.45.

24         Regarding Calhoun, Plaintiff does not identify ***any*** tasks the two had in common.

25         Finally, as to Male Associate G, who was allegedly a lower class year than Plaintiff, she

26  alleges only that "on at least one occasion he and Plaintiff performed the same or substantially the

27  same work, e.g., due to staffing needs." FAC ¶ 62. More specifically, she alleges that on an "ITC

28  Investigation, Plaintiff and Male Associate G both worked on anticipation and obviousness patent

invalidity defenses and assisted with claim construction. *Id*. Plaintiff contends that Male Associate G never did some of this work. *Id*. ¶ 134. Performing the allegedly same task on "one occasion" "due to staffing needs" does not sufficiently plead equal work.

For all these reasons, Plaintiff has failed to plead plausibly that she and her alleged comparators performed "equal work."

### 2.   Plaintiff's EPA Claim Should Be Dismissed Because She Fails to Plead Plausibly a "Single Establishment"

The EPA requires equal pay for equal work for employees who work in a single "establishment." 29 U.S.C. § 206(d)(1). The term "establishment" "refers to a distinct physical place of business rather than to an entire business or 'enterprise,' which may include several separate places of business." 29 C.F.R. § 1620.9(a). However, "unusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment." 29 C.F.R. § 1620.9(b). Plaintiff recognizes that an "establishment" is a distinct physical place of business, and that only in unusual circumstances can physically separate places of business be treated as one establishment, but fails to sufficient plead either one. FAC ¶ 255.

First, Plaintiff has not pled a distinct physical place of business as a "single establishment." Instead, Plaintiff pleads that "Kirkland's offices" "collectively form one establishment." FAC ¶ 252. Plaintiff pleads that Kirkland's offices are found "in 18 cities, including in San Francisco; Los Angeles; New York; Washington, D.C.; Houston" and internationally. FAC ¶ 19.

Plaintiff also has not alleged that she and her alleged comparators worked in a single "distinct physical place of business." She alleges she was based out of Kirkland's San Francisco office (although she never actually worked for Kirkland in California), but that she worked from Washington D.C., Texas, Georgia and Florida. FAC ¶¶ 7, 51-52, 231. In contrast, she alleges that Walter was based out of Kirkland's New York City office (FAC ¶ 58), Blake was based out of the Los Angeles office (FAC ¶ 59), Huehns was based out of the Chicago office (FAC ¶ 61) and Calhoun and Male Associate G were based out of the San Francisco office (and presumably worked in that physical office, unlike Plaintiff) (FAC ¶¶ 60, 62).

Because Plaintiff has not pled a distinct physical place of business as the "single establishment", she must plausibly plead that "unusual circumstances" exist to overcome the general presumption that physically distinct places of business are considered separate establishments under the EPA. This she also has failed to do.

Applicable regulations provide that "unusual circumstances" may exist where, "[f]or example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions." 29 C.F.R. § 1620.9(b). Plaintiff has not alleged that a "central administrative unit" at Kirkland "hire[d] all employees, set wages, and assign the location of employment" across all of Kirkland's offices in 18 cities. In fact, Plaintiff has not even alleged that a central administrative unit hired, set wages and assigned the location of employment for her alleged comparators. She also has not alleged that employees "frequently interchange work locations" or even that her alleged comparators do. Further, she does not allege that lawyers across all Kirkland offices in 18 cities had "virtually identical daily duties," which were "performed under similar working conductions." Nor can she—not "all lawyers perform the same or similar function(s)." *See EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 257 (2d Cir. 2014). In fact, as detailed above in Section IV(K)(1) Plaintiff has not even pled her alleged comparators had virtually identical daily duties performed under similar working conductions.

In support of her allegation that Kirkland's offices across 18 cities constitute a "single establishment", Plaintiff alleges that: (1) the "offices share a common website and personnel"; (2) "Kirkland is owned and managed by its partners based out of Kirkland's many offices" (3) "[i]ts standing committees (i.e., management committees) are comprised of partners who are based out of different Kirkland offices." FAC ¶ 252. *First*, these allegations are impossibly vague and conclusory. They do not detail, for example, which personnel is shared among which offices, which

partners manage which offices, or who is on the standing committees and out of what offices they are based. Accordingly, Plaintiff's allegations are insufficient. *Iqbal*, 556 U.S. at 678.[17]

*Second*, if these vague and conclusory allegations were sufficient to allege a "single establishment", the "unusual circumstances" exception would swallow the general rule that a single establishment is a distinct physical location. It is not "unusual" for a business with several physical locations to have a single website, common management and ownership, and committees with employees or partners from across locations.[18]

In support of her "single establishment" contention, Plaintiff also makes allegations about *her* interview and the supervision of *her* work by partners based out of the Los Angeles, San Francisco, New York, Chicago, and Salt Lake City offices. *See* FAC ¶ 252. But those allegations say nothing as to the hiring and supervision of attorneys other than Plaintiff. They also say nothing as to Kirkland's offices located in 13 other cities and thus, whether Kirkland's separate and distinct physical locations in 18 cities can be considered a single "establishment" under the EPA.

Because Plaintiff has failed to allege the unusual circumstances required to overcome the general rule that physically distinct places of business are separate establishments, her EPA claim should be dismissed. *See Goins v. United Parcel Serv. Inc.*, No. 21-CV-08722-PJH, 2023 WL 3047388, at *13 (N.D. Cal. Apr. 20, 2023) (granting motion to dismiss EPA claim because "plaintiffs fail to allege sufficient facts showing that the 'unusual circumstances' necessary to consider multiple sites part of the same 'enterprise' are present").[19]

---

[17] *See also McCann v. Veterans Haven*, No. 08-cv-5031 JBS JS, 2010 WL 4103669, at *3 (D.N.J. Oct. 18, 2010) (requiring EPA allegation to be pled with "specific facts").

[18] *Cf. Renstrom v. Nash Finch Co.*, 787 F. Supp. 2d 961, 965 (D. Minn. 2011) ("Far from being 'unusual,' the features to which Renstrom points—a corporation's ultimate oversight over compensation and personnel decisions—are commonplace. If such facts were sufficient to overcome the 'ordinar[y]' and 'well settled' rule that physically distinct locations are different 'establishments' for purposes of the EPA, then just about any corporation with a hierarchical management structure and a functioning human-resources department would find itself defined as a single 'establishment.'").

[19] *See also Renstrom*, 787 F. Supp. 2d at 966 (no single establishment where plaintiff failed to show that defendant "hired employees through a central office and then assigned them to work at various locations based on [its] shifting personnel needs"); *Perales v. Am. Ret. Corp.*, No. CIV.A. SA-04-CA-0928, 2005 WL 2367772, at *5 (W.D. Tex. Sept. 26, 2005) (no single establishment where plaintiff failed to show "that hiring was centralized, that employees at the Corpus Christi and San Antonio networks frequently interchanged work locations, that daily duties and working conditions were virtually identical, or other sufficient evidence to overcome the general rule that physically separate places of business constitute separate establishments").

1

## V.     <u>CONCLUSION</u>

2              For the reasons set forth above, Defendants respectfully request that the Court grant their

3      Motion to Dismiss as to each claim and each Defendant addressed herein.

4      Dated: October 18, 2023                    LYNNE C. HERMLE
                                                   JOSEPH C. LIBURT
5                                                  KATE JUVINALL
                                                   MARK R. THOMPSON
6
                                                   Orrick, Herrington & Sutcliffe LLP
7

8
                                            By:  _____/s/ Joseph C. Liburt_____
9                                                   JOSEPH C. LIBURT
                                                   Attorneys for Defendants
10                                                 KIRKLAND & ELLIS LLP, MICHAEL
                                                   DE VRIES, MICHAEL W. DE VRIES,
11                                                 P.C., ADAM ALPER, ADAM R. ALPER,
                                                   P.C., AKSHAY DEORAS, AKSHAY S.
12                                                 DEORAS, P.C., AND MARK FAHEY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28