UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOYA KOVALENKO,<br><br>    Plaintiff,<br><br>v.<br><br>KIRKLAND & ELLIS LLP, et al.,<br><br>    Defendants. | Case No. 22-cv-05990-HSG (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 113 |

## I. INTRODUCTION

This dispute arises out of Rule 45 subpoenas Defendant Kirkland & Ellis LLP ("K&E") issued to non-parties Fish & Richardson P.C. ("Fish") and Paul Hastings LLP ("Paul Hastings"). Plaintiff Zoya Kovalenko moves for an order quashing the subpoenas in their entirety and for a protective order prohibiting the discovery sought. ECF No. 113. Defendants oppose the motion to quash. ECF No. 122. Plaintiff filed a reply. ECF No. 123. The Court held a telephonic hearing on February 15, 2024, and now issues this order.

## II. BACKGROUND

The case arises out of Kovalenko's employment as an associate at K&E from November 16, 2020, to September 28, 2021. ECF No. 94 at 3. In her First Amended Complaint ("FAC"), Kovalenko alleges sex discrimination, including wrongful termination, under Title VII, the California Fair Employment and Housing Act ("FEHA"), and the Federal Equal Pay Act; retaliation under Title VII and FEHA; sex-based harassment constituting a hostile work environment arising under Title VII; failure to prevent arising under FEHA; intentional infliction of emotional distress; and defamation. *See* ECF No. 94 [FAC]. K&E has not filed an answer to the original complaint or FAC. A motion to dismiss is currently pending before the Court. ECF

No. 102.  On May 5, 2023, prior to serving Plaintiff with any written discovery requests, K&E served Kovalenko with notices of intent to issue subpoenas to two law firms for which Kovalenko had previously worked.  ECF No. 113-1 (Decl. of Zoya Kovalenko) ¶¶ 4, 8, 10; ECF No. 122 at 4.  Kovalenko was employed in Fish's Atlanta office as a summer associate in 2015 and as a patent litigation associate from September 2016 to April 2018; she then worked as an IP litigation associate in Paul Hastings' Washington, D.C., office from May 2018 to November 2020.  ECF No. 122-2 at 3.

On May 15, 2023, Plaintiff wrote to K&E's counsel to object to the subpoenas and to request that they meet and confer.  Kovalenko Decl. ¶ 12; ECF No. 122 at 5.  After meeting and conferring on May 31, 2023, the parties reached an impasse.  Kovalenko Decl. ¶ 13; ECF No. 122 at 5.  K&E served the subpoenas on Fish and Paul Hastings on July 13, 2023.  ECF No. 122 at 5.  The parties submitted a joint discovery letter brief on July 24.  ECF No. 83.  After holding a hearing on July 27, in which Plaintiff advised she intended to move for a protective order and to quash the subpoenas, the Court stayed the subpoenas pending further order of the Court.  ECF No. 88.  K&E served Plaintiff with separate written discovery requests on August 8, 2023.  ECF No. 122-1, Decl. of Kate Juvinall ¶ 10.

The subpoenas to Fish and Paul Hastings each include six identical requests for documents, which fall into three broad categories: 1) personnel, compensation, and benefits documents; 2) medical and disability-related documents; and 3) complaint and investigation files, grievance files, and litigation documents involving Plaintiff.  Kovalenko argues that the subpoenas are unduly burdensome, are an unwarranted fishing expedition and irrelevant to Kovalenko's claims or to any defenses, that they violate her right to privacy under federal law, seek privileged and protected materials, and that K&E served the subpoenas to harass and annoy Kovalenko.  ECF No. 113 at 3–4, 6–7, 16, 20.

There is currently no stipulated protective order in place.  Defendants say they are willing to keep documents produced by Fish and Paul Hastings confidential until the Court enters a stipulated protective order, at which point Plaintiff can designate documents as confidential, subject to challenge by Defendants.  ECF No. 122 at 17 n.17.

2

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  Discovery need not be admissible in evidence to be discoverable.  *Id.*  However, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."  Fed. R. Civ. P. 26 advisory committee notes (2015 amendments).  Thus, there is "a shared responsibility on all the parties to consider the factors bearing on proportionality before propounding discovery requests, issuing responses and objections, or raising discovery disputes before the courts."  *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *2 (N.D. Cal. Feb. 25, 2016); *Goes Int'l, AB v. Dodur Ltd.*, 2016 WL 427369, at *4 (N.D. Cal. Feb. 4, 2016) (citing advisory committee notes for proposition that parties share a "collective responsibility" to consider proportionality and requiring that "[b]oth parties . . . tailor their efforts to the needs of th[e] case").  A court must also limit discovery if it is unreasonably duplicative, or if it can be obtained from a source that is more convenient or less burdensome.  Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) prescribing a discovery method other than the one selected by the party seeking discovery; or (4) limiting the scope of disclosure or discovery to certain matters.  Fed. R. Civ. P. 26(c)(1).

Federal Rule of Civil Procedure 45 governs motions to quash or modify a subpoena, and provides that a court must modify or quash a subpoena that, *inter alia,* "fails to allow a reasonable

time to comply," "requires a person to comply beyond the geographical limits specified in Rule 45(c)," "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i–iv). "On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45[(d)](3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Ow v. United States*, No. 17-0733-SK, 2018 WL 6267839, at *1 (quoting *Chevron Corp. v. Donziger*, No. 12-mc-80237, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013)).[1]

## IV.   DISCUSSION

### A.   Plaintiff has standing to quash the subpoenas served on Fish and Paul Hastings.

"[A] party moving to quash a non-party subpoena has standing when the party has a personal right or privilege in the information sought to be disclosed." *Knoll, Inc. v. Moderno, Inc.*, No. 12-mc-80193-SI, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012); s*ee also, e.g., Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) (collecting cases).

Defendants argue Plaintiff lacks standing to move to quash the subpoenas based on burden or relevance objections. ECF No. 122 at 17. Defendants cite *Botta v. PricewaterhouseCoopers LLP* for the proposition that "[a] party to the litigation . . . cannot object to a non-party subpoena

---

[1] Ordinarily, a motion to quash a subpoena should be brought in the district where compliance is required. *See* Fed. R. Civ. Proc. 45(d)(3)(A). For the Paul Hastings subpoena, that looks to be here. ECF No. 122-3. But for the Fish subpoena, that seems to be the District of Massachusetts. *Id*. Nonetheless, Plaintiff has brought a combined motion to quash both subpoenas under Rule 45 and a motion for a protective order under Rule 26 in this District. ECF No. 113 at 1. K&E has waived any objection to this Court's ruling on the motion to quash under Rule 45 as to the Fish subpoena by failing to assert such an objection. Indeed, far from objecting, K&E affirmatively argued that under Rule 45, "the court issuing" the subpoena (*i.e.*, this Court) may quash it. ECF No. 122 at 6. Regardless, this Court has authority under Rule 26(c) to issue a protective order concerning the subpoenas no matter where compliance is required. *See* Fed. R. Civ. Proc. 26(c)(1) ("A party . . . may move for a protective order in the court where the action is pending . . ."); *Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 131 (D. Mass. 2023) ("this court is not the compliance court," so "it is therefore appropriate to address the subpoena and the parties' arguments under Rule 26(c)"); *Katz v. Liberty Power Corp.*, 2019 WL 957129, *3 (D. Mass. Feb. 27, 2019 ("Although the subpoena at issue requests the production of emails in the District of Columbia and a motion to quash or modify the subpoena would be more properly filed in the United States District Court where performance is required, this Court retains jurisdiction to restrict the scope of discovery and issue protective orders in accordance with Rule 26.") (citations omitted).

on the grounds of relevance or burden where the non-party itself has not objected." *Botta*, 2018 WL 6257459, at *2 (N.D. Cal. Nov. 30, 2018). But both Fish and Paul Hastings have made their own relevance and burden objections, ECF Nos. 113-8 (Paul Hastings' objections to K&E's subpoena), 113-10 (Fish's objections to K&E's subpoena), and Kovalenko clearly has a personal right in the information requested in the subpoenas. *See, e.g.*, *Chamberlain v. Farmington Sav. Bank*, No. 3:06-cv-01437-CFD, 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007) (finding "[t]he plaintiff clearly has a personal right with respect to the information contained in his employment records" and granting motion to quash based on overbreadth and relevance); *see also Villarreal v. Cty. Of Monterey*, No. 16-cv-06672-LHK (SVK), 2017 WL 6271602, at *2–3 (N.D. Cal. Oct. 12, 2017) (granting motion to quash third-party subpoenas and "find[ing] it unnecessary to reach Plaintiffs' argument about whether the subpoena also violate[d] . . . privacy rights" where defendant had failed to demonstrate relevance); *Appel v. Wolf*, Nos. 21-cv-1466-L-BGS, 21-cv-1536-L-BGS, 21-cv-1557-L-BGS, 2021 WL 5234424 (S.D. Cal. Nov. 9, 2021) (granting motion to quash based on relevance and proportionality and declining to reach arguments regarding privacy rights).

**B.    Personnel, compensation and benefits documents**

K&E requested the following personnel, compensation and benefits documents from Fish and Paul Hastings:

> 1. Personnel documents (including but not limited to all documents in a personnel file, such as employment applications, resumes, communications with [Plaintiff], interview notes, applicant evaluations, offer letters, acceptance letters, employment contracts and/or agreements, documents relating to termination of employment, documents relating to change of title, duties, or compensation, transfer of work location, notices of commendation, leaves of absence, wage attachment or garnishment notices, performance appraisals and/or reviews, attendance and absence records, promotion and/or demotion recommendations); and
>
> 4. Compensation documents (including but not limited to documents reflecting [Plaintiff]'s salary, wages, commissions, bonuses, overtime, unemployment benefits, and all other types of compensation, pay stubs, and summaries of compensation); and
>
> 5. Benefits documents (including a description of all benefits and compensation packages available to [Plaintiff], [Plaintiff]'s participation in benefits plans, any records of absences from work for

5

any reason, leaves of absence for medical or other reasons, and records of medical treatment);

"To evaluate privacy objections under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in his or her employment files." *Tierno v. Rite Aid Corp.*, No. 5-cv-2520-TEH, 2008 WL 3287035, *3 (N.D. Cal. July 31, 2008). "'In the context of discovery of confidential information in personnel files, even when such information is directly relevant to litigation, discovery will not be permitted until a balancing of the compelling need for discovery against the fundamental right of privacy determines that disclosure is appropriate.'" *Newell v. County of San Diego*, No. 12-cv-1696, 2013 WL 1932915, *2 (S.D. Cal. May 8, 2013) (quoting *Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan*, 2012 WL 892188, *3 (N.D. Cal. March 14, 2012)).

Defendants offer several reasons why they believe these personnel, compensation, and benefits documents from Kovalenko's former employers are relevant. First, as to personnel files (category 1), K&E contends the documents are directly relevant to Plaintiff's claims that she was given a poor performance review and was terminated due to gender discrimination and retaliation, and to K&E's defenses to those claims. ECF No. 122 at 7. The Court finds this unpersuasive. Plaintiff was terminated ten and half months into her employment with K&E. The proper focus of discovery should be on her performance at K&E, including whether she was treated differently from similarly situated male employees and whether she was harassed or retaliated against. Personnel records from other law firms that were completely unknown to K&E are not evidence of what happened during her time at K&E and played no role in the firm's decision to terminate her. The requested documents are invasive of Plaintiff's privacy and are not directly relevant to this case.

Category 1 is also amazingly broad. Why does K&E need to know if Kovalenko's wages were garnished at Paul Hastings? How is it relevant if she transferred work locations when she was at Fish? What do the offer letters that Fish and Paul Hastings sent her have to do with anything? What is K&E going to do with the interview notes and applicant evaluations that Fish and Paul Hastings have from the time when they hired her? To link these requests to anything

6

relevant requires a great deal of imagination.  Also, please bear in mind that almost no discovery has taken place between the parties.  Nobody has been deposed.  So, if K&E wanted to construct a relevance argument that maybe wage garnishments could be relevant to pre-existing stresses in Plaintiff's life, which could cast doubt about whether K&E's alleged conduct was the cause of Plaintiff's emotional distress, not only does K&E have no idea if her wages were ever garnished, it also has no idea what her emotional distress damages are.  Category 1 is a request for absolutely everything in Plaintiff's post-law school personnel files without any regard for what might be relevant.  *See Lewin v. Nackard Bottling Co.*, 2010 WL 4607402, *1 (D. Ariz. Nov. 4, 2010) ("[D]efendant's request to obtain plaintiff's entire personnel file from five former employers is, on its face, overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  By failing to limit its subpoena to certain categories of documents, we find that defendant is merely trying to engage in a fishing expedition.") (citation omitted).

Even if category 1 were limited to performance reviews, which it is not, it would still be a fishing expedition for evidence whose relevance is speculative at best.  If Plaintiff's performance reviews at Fish and Paul Hastings were uniformly fantastic, or uniformly horrible, that could make her case against K&E marginally stronger or weaker.  But it would still just be marginal.  Plaintiff's performance at Fish and Paul Hastings is not evidence of her performance at K&E, it will not substitute as evidence of that, and her performance at K&E is what matters.  And if her performance reviews at her two prior employers are anything other than uniformly fantastic or horrible, they likely don't show anything relevant at all.  This speculative, and at best marginally relevant evidence, is not good enough to overcome Plaintiff's privacy interests.

Second, and again as to category 1, Defendants contend Plaintiff's personnel documents, particularly those involving Plaintiff's skill and compensation, are relevant to Plaintiff's equal pay claim and to K&E's defenses.  ECF No. 122 at 9.  But Plaintiff's equal pay claim is based on her pay relative to male associates at K&E who graduated law school the same year as Plaintiff.  FAC ¶ 277.  Plaintiff contends, and Defendants do not contest, that K&E never inquired about Plaintiff's prior compensation or salaries during the hiring process and that Plaintiff never disclosed her salary or compensation at any previous employer to K&E.  Kovalenko Decl. ¶ 17;

ECF No. 122 at 9.

Third, Defendants contend the category 1 documents are relevant to Plaintiff's defamation claim and to reputational damage allegations in her discrimination, retaliation, and harassment claims. *Id.* at 9–10. Let's think about that argument for a minute. Fish and Paul Hasting's personnel files are confidential documents that are probably unknown to the vast majority of employees at either firm and likely unknown to anyone outside the firm. Secret documents that very few people know about don't seem like a good place to look for evidence of reputation. Plaintiff alleges that she has been unable to obtain even a single interview at any comparable firm as a result of K&E's defamation. FAC ¶ 211. You know what those law firms that aren't giving her job interviews don't know about? The documents in her Fish and Paul Hastings personnel files! If there is a negative performance review in her Fish or Paul Hastings personnel files, which we don't know, that could reveal that several attorneys at either or both firms had a negative view of her work. The Court supposes that if Plaintiff claimed that K&E's defamation caused her to lose job opportunities specifically at Fish or Paul Hastings, then we would want to know what those firms thought of her. That would be a pretty strange theory of damages, though, since Fish and Paul Hastings would likely form opinions of her based on their actual experiences with her as an employee. Beyond that, how we get from secret personnel files that the firms are refusing to produce in discovery to reputation evidence is hard to discern. Again, this weak showing of relevance fails against the significant invasion of privacy.

Fourth, as to categories 1, 4 and 5, Defendants contend Plaintiff's personnel, compensation and benefits documents are relevant to Plaintiff's claims for "lost wages, loss of benefits, loss of earnings, future lost earnings, [and] lost future earning potential" (*see* FAC ¶¶ 265, 280, 291) and to K&E's anticipated defense that Plaintiff failed to mitigate her alleged wage loss. ECF No. 122 at 10, 13. Defendants fail to explain how Plaintiff's past work for employers *before* she worked for K&E would in any way help determine the extent to which she had attempted to mitigate damages.

The Court agrees that Plaintiff's compensation and benefits at Fish and Paul Hastings are relevant to her claims for lost wages, loss of benefits and loss of earning potential. However,

8

1   K&E has failed to show that it cannot obtain this information from Plaintiff.  Rule 26(b)(2)(C)(i)
2   states that a court "must" limit discovery if it determines that "the discovery sought . . . can be
3   obtained from some other source that is more convenient, less burdensome, or less expensive."
4   This requirement is not satisfied by serving discovery requests on your opponent and then
5   immediately giving up when they object.  The Court will allow K&E to serve a narrowed
6   subpoena on Fish and Paul Hastings for documents showing the compensation and benefits they
7   paid Plaintiff if K&E can show that it made every effort to obtain that information from Plaintiff,
8   including deposing her and bringing any necessary motions to compel, and they were unable to
9   obtain that information.  But as of yet, K&E has not shown there is any need to subpoena a non-
10  party for this information.

11         Fifth, Defendants contend that the compensation and benefits documents (categories 4 and
12  5) are relevant to Plaintiff's claims of pay discrimination and lost wages and K&E's defenses.
13  ECF No. 122 at 12–13.  Defendants argue that if Plaintiff's wages, salary, bonuses, and benefits
14  were similar to those she received at K&E, that would tend to show that she was not discriminated
15  against with respect to those elements of compensation.  ECF No. 122 at 13.  But descriptions of
16  Plaintiff's compensation and benefits with prior employers, whether similar to or different from
17  those she received at K&E, have no relevance to Plaintiff's allegations that "[s]imilarly-situated
18  males" *at K&E* "were treated more favorably."  FAC ¶ 264.

19         Sixth, Defendants argue Plaintiff's compensation and benefits documents (categories 4 and
20  5) are relevant because they would bear on Plaintiff's credibility if they contained information that
21  contradicts representations Plaintiff made to K&E.  ECF No. 122 at 12.  "[B]ut that is the type of
22  fishing expedition discovery that courts consistently deny."  *Lyzer v. Caruso Produce, Inc.*, No.
23  3:17-cv-01335-SB, 2018 WL 11489791, at *3 (D. Or. Oct. 4, 2018) (finding discovery of
24  personnel files from prior employment to attack plaintiff's credibility was an inappropriate
25  "[w]ithout specific allegations of untruthful behavior"); *see also, e.g., Lewin*, 2010 WL 4607402,
26  at *1–2 (quashing as overbroad subpoenas for personnel records directed to plaintiff's former
27  employers and noting that "an attack on plaintiff's credibility by introducing evidence of his
28  character in another employment setting is likely inadmissible propensity evidence under [Fed.

9

Rule of Evidence] 404(a)"); *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST-TSH, 2019 WL 1493354, at *5 (N.D. Cal. Apr. 4, 2019) (finding that discovery of previous employment records to impeach credibility was not "a worthwhile use of discovery."). Defendants argue that unlike the defendant in *Lyzer*, "K&E seeks Plaintiff's former employment records because it doubts the veracity of her allegations regarding her former employment, skillset and reputation upon joining K&E." ECF No. 122 at 14. But a vague assertion that Plaintiff must be lying about her prior work experience is a far cry from "specific allegations" of untruthfulness.

Seventh, K&E argues that the compensation and benefits documents (categories 4 and 5) may show that other factors caused Plaintiff's alleged emotional distress, such as financial or medical stressors. Presumably this relates to category 4's request for documents about "unemployment benefits" and category 5's request for documents about "records of absences from work for any reason, leaves of absence for medical or other reasons, and records of medical treatment." However, this argument is premature and unsupported. As to these documents, K&E is seeking extremely sensitive personal information, so Plaintiff's privacy interests are at their peak. Accordingly, K&E must show that this invasive discovery is justified. Specifically, K&E needs to show that Plaintiff's claim for emotional distress damages is not just garden variety. *See Reiter v. Metro Transp. Auth. of New York*, 2003 WL 22271223, *9 (S.D.N.Y. Sept. 30, 2003) (in garden variety claims, "the evidence usually is limited to the testimony of the plaintiff, who describes the emotional distress in vague or conclusory terms, presents minimal or no evidence of medical treatment, and offers little detail of the duration, severity, or consequences of the condition").

If Plaintiff is going to say that she suffered the usual amount of emotional distress that attends being discriminated and retaliated against and defamed, there is no need to dig through her prior medical records. A prior bout of depression or anxiety from a distressing time at a previous job would not tend to disprove this sort of claim of emotional distress. On the other hand, if Plaintiff testifies to a degree of emotional distress that amounts to or borders on a diagnosed condition and involves medical treatment, then causation might legitimately be in play. *See Hardin*, 2019 WL 1493354, *5 (N.D. Cal. April 4, 2019) (denying a similar request because

"[d]iscovery has made clear that [plaintiff] is not claiming some diagnosed condition with medical treatment – the kind of claim that could be undermined if evidence showed she had that condition for years and therefore it was not caused by the Defendants. Here, she is claiming she talked to her family and took long walks to deal with the distress she suffered from Defendants' conduct – a claim that would not be undermined if similar things happened after being fired from or mistreated at a previous job."). As noted above, K&E has not deposed Plaintiff, nor taken any meaningful party discovery in this action. It has no idea whether Plaintiff's emotional distress claim would justify any of this discovery.

Accordingly, the Court grant's Plaintiff's motion to quash Requests Nos. 1, 4, and 5 in K&E's subpoenas to Fish and Paul Hastings.

## C. Medical documents

Defendants request the following medical-related documents from Fish and Paul Hastings:

> 2. Documents regarding [Plaintiff]'s leaves of absence, medical restrictions, disabilities (whether physical, mental, or otherwise), and medical records affecting employment status; and

This issue is a repeat of the above discussion concerning emotional distress. Before K&E can take invasive discovery into Plaintiff's medical records, it must make an evidentiary showing, with Plaintiff's deposition testimony, that her claim for emotional distress is more than garden variety. The Court acknowledges that paragraph 116 of the FAC alleges that Plaintiff suffered "severe emotional distress." But in the Court's experience, allegations like this are common in employment disputes – few plaintiffs allege that they suffered just a little bit of emotional distress – and after some discovery, these claims often turn out to be for garden variety emotional distress. The Court can sequence discovery, *see* Fed. R. Civ. Proc. 26(d)(3), and does so here. Before K&E can take this invasive non-party discovery, it must depose Plaintiff and show that she is asserting more than garden variety emotional distress.

Accordingly, the Court grants Plaintiff's motion to quash as to Request No. 2.

## D. Complaint and investigatory files and grievance files, and litigation documents involving Plaintiff as a party

Finally, Defendants requested the following documents regarding complaints and

grievances brought by Plaintiff or by others involving Plaintiff, as well as litigation documents involving Plaintiff as a party:

> 3. Non-privileged complaint and investigatory files (including but not limited to legal proceedings involving [Plaintiff] as well as documents relating to complaints filed by and/or against [Plaintiff] with any government agency), and grievance files (including but not limited to informal and formal complaints/grievances by [Plaintiff] as well as informal and formal complaints/grievances by others about [Plaintiff]); and
>
> 6. Non-privileged litigation documents involving [Plaintiff] as a party (including but not limited to any documents relating to legal proceedings involving both [Plaintiff] and you as parties, as well as subpoenas to you from third parties relating to [Plaintiff], but not including work product or privileged communications involving [Plaintiff] undertaken on behalf of your clients).

Defendants contend that their requests for non-privileged complaint and investigatory files, grievance files, and non-privileged litigation documents involving Plaintiff as a party should be allowed "to show that Plaintiff had a habit of making discrimination complaints against employers, especially in response to poor performance evaluations." ECF No. 122 at 12.

These two categories vastly outstrip the supposed theory of relevance. Category 6, for example, includes litigation documents involving Plaintiff as a party. That could include divorce proceedings or personal injury cases, which would have nothing to do with an alleged habit of complaining about discrimination. Category 3 would include EEOC complaints by other employees of Fish or Paul Hastings that involve Plaintiff, as well as, for example, OSHA complaints by Plaintiff concerning unsafe working conditions. These categories seek documents that are invasive of Plaintiff's privacy and the privacy of non-parties, and they are not directly relevant to this case.

Even if categories 3 and 6 were limited to claims of discrimination asserted by Plaintiff against her former employers, and they are not, the requests are still improper. Although evidence need not be admissible to be discoverable, Fed. R. Civ. P. 26(b)(1), this Court has repeatedly quashed subpoenas seeking employment records for similar purposes, reasoning that such information would not lead to the discovery of admissible evidence. *See, e.g.*, *E.E.O.C. v. Serramonte*, 237 F.R.D. 220, 223 (N.D. Cal. 2006) (quashing defendant's subpoena for

information concerning other harassment claims by complainant, and rejecting defendant's argument that it sought the discovery to establish she had a habit of filing such claims: "Work performance with other employers, either before or after the defendant employer, is inadmissible under Rule 404(a) Federal Rules of Evidence"); *Baker v. Santa Clara Univ.*, No. 17-cv-02213-EJD-VKD, 2018 WL 3566868, at *2 (N.D. Cal. July 25, 2018) (holding that prior employment records sought for the purpose of discovering whether plaintiff had "a habit of complaining about coworkers, discrimination, or retaliation" are inadmissible for that purpose under Fed. R. Evid. 404(a) and issuing protective order barring subpoena to former employer).

Discovery into prior claims of discrimination also raises a significant trial within a trial concern. If Plaintiff did assert a claim of discrimination against one of her prior employers, what we could infer from that would seem to depend on what happened. If the claim was baseless, that could undermine her credibility in this case. But if it had merit, it would not undermine her credibility. Thus, even to figure out what inference could be drawn from a prior claim of discrimination, we would have to adjudicate the merits of some other dispute. Going down this rabbit hole is not proportional to the needs of the case.

Plaintiff's motion to quash is therefore granted as to Requests 3 and 6 as well.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Kovalenko's motion to quash, **QUASHES** the subpoenas to Fish and Paul Hastings, and **ISSUES** a protective order barring the requested discovery. The Court **ORDERS** K&E to serve this order on Fish and Paul Hastings and to file a proof of service showing that it has done so.

**IT IS SO ORDERED.**

Dated: February 16, 2024

THOMAS S. HIXSON
United States Magistrate Judge

13