UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZOYA KOVALENKO,

          Plaintiff,

     v.

KIRKLAND & ELLIS LLP, et al.,

          Defendants.

Case No. 22-cv-05990-HSG

**ORDER DENYING MOTION FOR RELIEF FROM PRETRIAL ORDER; DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS; AND DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

Re: Dkt. Nos. 98, 102, 133

Before the Court are Defendants Michael De Vries, Michael W. De Vries, P.C., Adam Alper, and Adam Alper, P.C.'s motion for leave to file motion for reconsideration, Defendants' motion to dismiss Plaintiff's amended complaint, and Defendant Kirkland and Ellis LLP's motion for relief from a non-dispositive pretrial order of a Magistrate Judge. *See* Dkt. Nos. 98, 102, 133. The Court **DENIES** the motion for leave to file a motion for reconsideration, Dkt. No. 98, and **DENIES** the motion for relief, Dkt. No. 133. The Court **DENIES IN PART AND GRANTS IN PART** the motion to dismiss, Dkt. No. 102.

## I.    BACKGROUND

In October 2022, Plaintiff Zoya Kovalenko brought her first complaint against her former employer Kirkland & Ellis LLP ("Kirkland") alleging that Defendants fired her in retaliation for complaining of sex-based discrimination she experienced and observed at the law firm. *See* Dkt. No. 1 ("Compl.")  ¶¶ 1–5, 7–19.  She also named various firm partners and some of their individual professional corporations, including Michael De Vries and Michael W. De Vries, P.C.; Adam Alper and Adam R. Alper, P.C.; Akshay Deoras and Akshay Deoras, P.C.; Leslie Schmidt and Leslie Schmidt, P.C.; and Mark Fahey.  *Id.* ¶¶ 1–5, 20–34.  The complaint brought causes of

1  action for sex discrimination in violation of Title VII, the California Fair Employment and

2  Housing Act ("FEHA"), the San Francisco Ordinance, and the federal Equal Pay Act; retaliation in

3  violation of Title VII, FEHA, and the San Francisco Ordinance; sex harassment constituting

4  hostile work environment in violation of Title VII; failure to prevent discrimination and retaliation

5  in violation of FEHA; defamation, and intentional and negligent infliction of emotional distress

6  ("IIED"). *Id.* ¶¶ 2–6, 301–69.  This Court's prior order on Defendants' motions to dismiss

7  discussed the factual allegations in the complaint in more detail.  *See Kovalenko v. Kirkland &*

8  *Ellis LLP*, No. 22-CV-05990-HSG, 2023 WL 5444728, at *1–3 (N.D. Cal. Aug. 23, 2023)

9  ("Order").

10       Defendants moved to dismiss.  *See* Dkt. Nos. 24, 30, 31, 34, 35, 36.  In August 2023, the

11  Court granted in part and denied in part the motions as follows:

- Dismissed the San Francisco Ordinance claims without leave to amend.  *See* Order at 10.

- Dismissed the negligent infliction of emotional distress cause of action as preempted by workers' compensation without leave to amend. *See id.* at 19.

- Dismissed the Equal Pay Act and defamation claim against Defendant Alper without leave to amend.  *See id.* at 15, 25.

- Dismissed Defendants Leslie Schmidt and Leslie Schmidt, P.C., for lack of personal jurisdiction without leave to amend.  *See id.* at 25.

- Allowed the Title VII and FEHA claims against Kirkland to proceed but dismissed them as to all other Defendants without leave to amend.  *See id.* at 12.

- Allowed the IIED claim to proceed against the remaining Defendants, finding that it was adequately pled and not preempted by workers' compensation.  *See id.* at 22–23.

- Allowed the defamation claim to proceed against the remaining Defendants.  *See id.* at 15–17.

       Plaintiff filed a first amended complaint in September 2023.  Dkt. No. 94.  About a week

later, Defendants Michael De Vries, Michael W. De Vries, P.C., Adam Alper, and Adam R. Alper,

P.C. brought a motion for leave to file a motion for reconsideration regarding aspects of the

Court's order on the motions to dismiss Plaintiff's original complaint.  Dkt. No. 98.  Plaintiff

opposed.  Dkt. No. 101.  Defendants then jointly moved to dismiss Plaintiff's amended complaint

United States District Court
Northern District of California

2

1    in October 2023.  Dkt. No. 102.

2           Meanwhile, the parties began engaging in discovery, and Plaintiff objected to subpoenas

3    Defendant Kirkland served on two former employers of Plaintiff.  Dkt. No. 83 at 1.  This Court

4    referred the discovery issues to Magistrate Judge Thomas Hixson.  *See* Dkt. No. 86.  Plaintiff then

5    brought a motion to quash the subpoenas and for a protective order, Dkt. No. 113, which Judge

6    Hixson granted.  Dkt. No. 128.  Kirkland filed a motion for relief from Judge Hixson's order.  Dkt.

7    No. 133.

8           The Court will first address Defendant Kirkland's motion for relief, then turn to the joint

9    motion to dismiss, before finally addressing Defendant De Vries and Defendant Alper's motion

10   for reconsideration, which repeats arguments made in the motion to dismiss.

11   **II.     MOTION FOR RELIEF**

12          Defendant Kirkland & Ellis LLP ("Kirkland") seeks relief from Magistrate Judge Hixson's

13   February 16, 2024 Order granting Plaintiff's motion to quash subpoenas Kirkland issued to non-

14   parties Fish & Richardson P.C. and Paul Hastings LLP, her former employers, and issuing an

15   order prohibiting the discovery the subpoenas sought.  *See* Dkt. No. 115.  Kirkland asks this Court

16   to reverse Judge Hixson's ruling as to two sets of documents sought from the former employers:

17   (1) personnel documents "showing Plaintiff's work performance, experience, skills, training, and

18   any criticisms/disciplinary action," and (2) documents regarding Plaintiff's leaves of absence and

19   medical records.  *See* Dkt. No. 133 at 1–2.  In considering Defendant's objections to the order, the

20   Court must determine whether Judge Hixson made clearly erroneous factual determinations or

21   reached legal conclusions that were contrary to law.  *See* Fed. R. Civ. P. 72(a).

22          As to the first set of documents, the Court finds it was not clear error or contrary to law for

23   Judge Hixson to determine that such personnel documents implicate Plaintiff's privacy and are not

24   directly relevant to this case.  The Court agrees that Plaintiff's performance at other law firms

25   during the four years prior to her employment at Kirkland is, at best, only marginally relevant to

26   her performance and treatment at Kirkland.  *See* Dkt. No. 115 at 6–8.

27          Regarding the leave of absence and medical records, the Court also finds it was not clear

28   error or contrary to law for Judge Hixson to conclude that Kirkland must make an evidentiary

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1  showing that Plaintiff is claiming more than garden variety emotional distress to justify seeking

2  such extremely sensitive personal information at this early stage.  *See* Dkt. No. 115 at 10–11.  This

3  determination is entirely consistent with this Court's prior ruling that Plaintiff adequately pled

4  severe emotional distress for purposes of her IIED claim, as plaintiffs who sufficiently state their

5  IIED claims may suffer emotional distress at varying degrees of severity.  *See* Order at 23.

6       The Court accordingly **DENIES** Defendant Kirkland's motion for relief from Judge

7  Hixson's pretrial order, Dkt. No. 133.

8  **III.    MOTION TO DISMISS**

9       **A.    Legal Standard**

10       Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

11  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

12  defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

13  granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

14  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

15  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

16  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible

17  on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

18  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

19  the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20       In reviewing the plausibility of a complaint, courts "accept factual allegations in the

21  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

22  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

23  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

24  fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

25  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

26       **B.    Discussion**

27       Plaintiff's first amended complaint remains largely the same as her first and appears to

28  have been amended to remove the dismissed parties and claims.  *See generally* Dkt. No. 94

("FAC"); Dkt. No. 110 ("Opp.") at 11 ("Plaintiff did not add new substantive matter to the FAC, and the claims at issue here (as alleged in the FAC) are substantively identical to the claims in the Complaint."). Defendants nonetheless raise several new grounds for dismissal in their joint motion to dismiss, Dkt. No. 102 ("Mot."). Plaintiff argues that pursuant to Fed. R. Civ. P. 12(g), Defendants' motion should be denied because they have waived their arguments that could have been (but were not) presented in their previous motions to dismiss. Opp. at 2–3. To be clear, the Court is of the view that Defendants could have (and for the most part, should have) raised most, if not all, of these arguments in their prior extensive motions to dismiss. But the tiresome reality is that denying the motion on this ground would result in yet another round of pleading litigation if, as seems likely, Defendants filed Rule 12(c) motions. In that scenario, "the parties would repeat the briefing they have already undertaken, and the Court would have to address the same questions in several months." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318–19 (9th Cir. 2017) (quoting *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F.Supp.2d 1164, 1175 (C.D. Cal. 2011)). Therefore, to "avoid [further] repetitive motion practice, delay, and ambush tactics" in accordance with purpose of Rule 12(g), the Court decides the motion on the merits. *Id.* at 318.

### i.   Professional Corporation Defendants

Defendants argue that Plaintiff's defamation and IIED claims against the individual partners' corporations (Michael W. De Vries, P.C., Adam R. Alper, P.C., and Akshay Deoras, P.C., or "PC Defendants") must be dismissed because Plaintiff "fails to allege any specific wrongful conduct by the Individual Partner PCs." Mot. at 8. Relying *on Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000), Defendants state that a corporation is a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations such that Plaintiff's failure to distinguish individual Defendants Adam Alper, Michael De Vries, and Akshay Deoras from their respective professional corporations is fatal to her claims against the corporations. *See id*. But Plaintiff's amended complaint does not assert that the individual corporations engaged in wrongful acts separate and distinct from those of their partner-owners. Instead, the complaint alleges that each of the individual partners committed tortious conduct acting as agents of their professional corporations, of which they are each the

"sole owner, director, and officer," *see* FAC ¶ 20, and in turn, the professional corporations engaged in the tortious conduct through their relationship or partnership with Defendant Kirkland to "engage in the profession of law."[1]  The Court finds that these allegations support the "reasonable inference" that a relationship existed between the partners, the professional corporations, and Kirkland such that the PC Defendants may be liable for the partners' acts on behalf of Kirkland.  *See Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *4 (S.D. Cal. July 9, 2024) ("Though the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.").  To the extent discovery reveals a basis for seeking summary judgment as to these entities, Defendants can raise their arguments at that stage.

The Court **DENIES** the motion to dismiss the PC Defendants from Plaintiff's defamation and IIED causes of action.[2]

### ii.   Defamation

#### a.   Statute of Limitations

Defendants next argue Plaintiff's defamation claim should be dismissed as time-barred under California law.  According to Defendants, the one-year deadline for Plaintiff to bring her claim began to accrue on August 16, 2021, the date Plaintiff alleges Defendants shared the purportedly defamatory performance reviews at a firm meeting, but Plaintiff did not file her

---

[1] *See, e.g.*, FAC ¶¶ 26 ("Defendant Akshay S. Deoras, P.C. is a partner of Kirkland. Akshay S. Deoras, P.C. is a professional corporation organized under the laws of the State of California…[T]he purpose of Akshay S. Deoras, P.C. is 'to engage in the profession of [l]aw and any other lawful activities . . . .'"), 27 ("Defendant Akshay Deoras is the president, chief executive officer, secretary, chief financial officer, and sole director of Akshay S. Deoras, P.C. Akshay Deoras and Akshay S. Deoras, P.C. (collectively, 'Mr. Deoras') share the aforementioned place of business located at Kirkland's Bay Area office in San Francisco.  Akshay Deoras acted as an agent and/or authorized representative of and/or formed a partnership, association, joint venture, agency, and/or other instrumentality with Kirkland or with Kirkland and any one or more of its co-Defendants. At all relevant times, Mr. Deoras supported Mr. Alper's and Mr. De Vries' subset of the Firm's IP litigation practice, e.g., by managing cases and other matters for and reporting to Mr. Alper and Mr. De Vries. Plaintiff reported to Mr. Deoras on most of her work at Kirkland.").

[2] However, because the Court dismisses Plaintiff's defamation claim against all Defendants on other grounds, only her IIED claim survives against the PC Defendants.

original complaint until October 12, 2022. *See* Mot. at 11 (citing FAC ¶ 210). Plaintiff counters that because she had no way of knowing about of the publication of the performance reviews until they were shared with her on October 11, 2021, the discovery rule applies, making the accrual date October 11, 2021. *See* Opp. at 14. Plaintiff thus contends that she timely filed her complaint on October 12, 2022, within a year of the accrual date. *Id.* at 15.

As an initial matter, because Defendants fail to offer any facts to counter Plaintiff's discovery rule argument, *see* Mot. at 12, the Court finds Plaintiff has adequately pled the application of the discovery rule and that the accrual date of her defamation claim is October 11, 2021. *See Shively v. Bozanich*, 31 Cal. 4th 1230, 1237 (2003), *as modified* (Dec. 22, 2003) (discovery rule may apply "when the defamatory statement is made in secret or is inherently undiscoverable"). But the Court agrees with Defendants that Plaintiff's one-year filing deadline based on this accrual date was October 11, 2022, not October 12, 2022. California law requires that a claim for defamation "be filed within one year of accrual of the cause of action." *Shively*, 31 Cal. 4th at 1246. Plaintiff is correct that in California, "[t]he time in which any act provided by law is to be done is computed by excluding the first day, and including the last," Cal. Civ. Proc. Code § 12, and that one "year" means 365 days, Cal. Gov't Code § 6803, yet her application of these rules is incorrect. Here, Plaintiff's deadline for filing is calculated by excluding the first day (i.e. the accrual date), October 11, 2021, and counting 365 days starting with October 12, 2021, as the first day. The 365th day, which is included and marks the deadline, is October 11, 2022.[3] Thus, Plaintiff's defamation claim, originally filed on October 12, 2022, was one day late.

Plaintiff argues, however, that even if she missed the deadline, her defamation claim is automatically subject to equitable tolling because she had to exhaust administrative remedies before filing suit in court. *See* Opp. at 15. The Court disagrees that the application of equitable tolling to her state law claims is "automatic" given that there is no exhaustion requirement for these claims. *See Rojo v. Kliger*, 52 Cal. 3d 65, 88 (1990) ("[A]lthough an employee must exhaust the FEHA administrative remedy before bringing suit on a cause of action under the act or seeking

---

[3] The Court finds that Defendants' math on this issue reflects the correct calculation. *See* Dkt. No. 111 ("Reply") at 9, fn. 8.

the relief provided therein, exhaustion is not required before filing a civil action for damages alleging nonstatutory causes of action.").  But even so, equitable tolling might still apply if Plaintiff makes "a showing of three elements: timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff."  *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88 (internal quotation marks omitted).

Relying on *Arnold v. United States*, 816 F.2d 1306 (9th Cir. 1987), Defendants claim that Plaintiff cannot meet the second element of the test (lack of prejudice) as a matter of law.  *See* Reply at 11, 12.  In *Arnold*, the Ninth Circuit held that equitable tolling based on the plaintiff's Title VII claims would not apply to her state law tort claims, which included an IIED claim, because the wrongs underlying the types of claims were too "distinct."  *Arnold*, 816 F.2d at 1312.  The Court held that the plaintiff's state law claims, which sought to vindicate "her right to be free from bodily or emotional injury caused by another person," were too "different" from her Title VII claims, which sought to vindicate "her right to be free from discrimination in the workplace."  *Id.* at 1306.  Defendants maintain that *Arnold* would thus preclude tolling as to Plaintiff's IIED claim based on her Title VII and FEHA claims as a matter of law, and that it also bars equitable tolling of Plaintiff's defamation claim for the same reason.  *See* Reply at 12.

The Court agrees that *Arnold* bars tolling of Plaintiff's defamation claim based on her administrative complaints under Title VII and FEHA.  Plaintiff's amended complaint states that in February 2022, she filed complaints with the EEOC and DFEH alleging "sex discrimination because of sex/gender, harassment constituting a hostile work environment because of sex/gender, and retaliation."  *See* FAC ¶ 31.  As alleged on the face of the amended complaint, the Court finds nothing in these administrative complaints would have notified Defendants of Plaintiff's intent to bring a defamation claim based on the statements in her performance review.  *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (facts of the two claims must be "'at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second'") (quoting *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 925 (1983)).  Plaintiff's assertion that she previously discussed with Kirkland the alleged "falsehoods" in the reviews before filing her administrative complaints, *see* FAC ¶ 17, cannot overcome the fact that

8

1    "the wrong underlying a defamation claim—injury to reputation—is distinct from '[Plaintiff's]

2    right to be free of discrimination in the workplace,'" making tolling unavailable as a matter of law.

3    *See Belete v. Oaks Corner*, No. 16-CV-04850-JCS, 2016 WL 6393510, at *7 (N.D. Cal. Oct. 28,

4    2016) (quoting *Arnold*, 816 F.2d at 1318).  Accordingly, the Court **GRANTS** the motion to

5    dismiss Plaintiff's defamation claim as time-barred.

6                    **b.  Defamation Claim Against De Vries Defendants**

7          Having dismissed Plaintiff's defamation claim as time-barred, the Court does not need to

8    address Defendants' separate arguments regarding the defamation claim against Defendant De

9    Vries.  Nevertheless, the Court emphasizes that many of these arguments attempt to relitigate

10   issues the Court clearly addressed in its prior Order.[4]  Defendants make little effort to hide this fact

11   considering that Defendant De Vries raises these arguments in essentially identical form in the

12   motion for leave to file a motion for reconsideration.  *Compare* Mot. 16–20 *with* Dkt. No. 98 at

13   5–7.  This is not a proper basis for a motion to dismiss (or, for that matter, a motion for

14   reconsideration), and wastes judicial resources.

15          **iii.   Intentional Infliction of Emotional Distress**

16                    **a.  Statute of Limitations**

17         Defendants argue that Plaintiff's IIED claim should also be dismissed as time-barred

18   because it is "dependent" on her untimely filed defamation claim, which the Court's Order

19   ostensibly "made clear" by "holding that Plaintiff's pleading of deliberately falsified performance

20   reviews is enough to allege extreme and outrageous conduct."  Mot. at 12, citing Order at 19–21.

21   Defendants misconstrue the Court's discussion of the performance reviews in relation to

22   Plaintiff's IIED claim.  The Court did find that Plaintiff's allegations regarding the falsified

23   performance reviews were *enough* to make out her IIED claim, but these were not the only facts

24   pled supporting the determination that the IIED claim could proceed.  As is apparent from the

25   Order, the Court ruled more generally that "workplace discrimination and retaliation in violation

26

27   ─────────────────────────
     [4] For example, Defendants claim that the Court failed to "consider the special treatment
     performance reviews receive under California law," citing *Jensen v. Hewlett-Packard Co.*, 14 Cal.
28   App. 4th 958 (1993).  *See* Mot. at 17.  This argument is plainly wrong, as the Order directly cited
     and applied the *Jensen* rule.  *See* Order at 15–17.

United States District Court
Northern District of California

of FEHA" can support an IIED claim, citing *Light v. Dep't. of Parks & Recreation*, 14 Cal. App. 5th 75, 101.  Order at 22.  The amended complaint includes several other allegations of discrimination and harassment beyond the performance reviews that the Court finds sufficient to plead an IIED claim, including, for example: intentionally and knowingly assigning work to Plaintiff during her vacation to avoid disturbing a male associate's vacation; giving her an extreme and unreasonable workload compared to male associates, escalating the amount of work when she complained, then freezing her out of work completely; and terminating her without the customary probationary period.  FAC ¶¶ 116, 131–132, 147–149, 168, 187.  *See Light*, 14 Cal. 5th at 102 (reversing grant of summary adjudication in favor of supervisor on IIED claim where "a reasonable trier of fact could find [supervisor] ostracized [plaintiff] in the workplace…and the trier of fact could conclude this conduct was extreme and outrageous"); *see also Webber v. Nike USA, Inc.*, No. 12-CV-00974 BEN WVG, 2012 WL 4845549, at *3 (S.D. Cal. Oct. 9, 2012) (allegation that supervisor set goals for plaintiff that the supervisor "understood to be unattainable" sufficiently pled IIED claim).  And, as stated previously in the Order, the question of whether the alleged conduct fell within regular business and management practices is appropriately resolved at a later stage.  *See* Order at 21–22.  Plaintiff's IIED claim is therefore subject to the two-year personal injury statute of limitations, Cal. Civ. Proc. Code § 335.1, and the Court **DENIES** Defendants' motion to dismiss it as time-barred.[5]

### b.  IIED Claims Against Individual Defendants and Defendant Alper

Doubling down on their argument that Plaintiff's IIED claim is wholly derivative of her defamation claim, Defendants seek dismissal of Plaintiff's IIED claim against the Individual Defendants, on the grounds that the amended complaint fails to allege specific facts to plausibly plead that each Defendant deliberately falsified Plaintiff's performance reviews.  Mot. at 15–16.  Defendants also make an identical yet separate request as to the claim against Defendant Alper.  *Id.* at 19–20.  These arguments similarly fail.  As discussed, the Court finds that the amended

---

[5] Defendants also argue that *Arnold* precludes the equitable tolling of Plaintiff's IIED claim.  *See* Mot. at 11–12.  Because the Court finds that the IIED claim is not derivative of the defamation claim and is timely, the Court does not address this argument.

complaint adequately alleges discriminatory and retaliatory conduct as to each Individual Defendant (and Defendant Alper), including *but not limited to* the falsification of performance reviews, so as to make out an IIED claim at this stage. *See* discussion *supra*, pp. 9–10; *see also* FAC ¶¶ 25 (alleging Defendant Alper deliberately assigned Plaintiff additional work during vacation), 31–32 (alleging Defendant Alper told Plaintiff she had done excellent work, but deliberately failed to communicate this feedback to partners evaluating Plaintiff's performance on Defendant's cases), 43-44 (alleging Defendant Alper deliberately excluded Plaintiff from all-male charter flight). Moreover, Plaintiff specifically alleges that all Defendants played a role in the falsification, and not just the actual writing, of the reviews, including Defendant Alper.[6] The Court therefore **DENIES** Defendants' motion to dismiss Plaintiff's IIED claim against the Individual Defendants and Defendant Alper.

### c. Preemption

Finally, Defendants argue that Plaintiff's IIED claims against the Individual Defendants should be dismissed because they are preempted by the workers' compensation law. According to Defendants, because the Court previously ruled that an exception to the worker's compensation scheme applies only where the complaint states a viable FEHA claim, Plaintiff's IIED claim against the Individual Defendants is preempted given that the Court has dismissed Plaintiff's FEHA claims against them. Mot. at 13–14. Defendants once again mischaracterize the Court's Order. The Court held that workers' compensation will not preempt a plaintiff's IIED claim

---

[6] *See* FAC ¶ 204 ("In addition, Ms. Schmidt's "evaluation" demonstrated that she, Mr. Deoras, and Mr. Fahey coordinated with Mr. Alper and Mr. De Vries in discriminating, harassing, retaliating, and defaming Plaintiff. For example, Ms. Schmidt's "evaluation" further alleged that Plaintiff 'does not produce usable work," which 'has required us to cut a substantial amount of her time' on the ITC Investigation. In or around June 2021, Mr. Fahey told Plaintiff he handled billing for the ITC Investigation and met weekly with the client regarding the same. Accordingly, on information and belief, Mr. Fahey coordinated with Ms. Schmidt and Mr. Deoras to cut Plaintiff's hours on the ITC Investigation, in order to fabricate ex post facto support for their defamatory evaluations of Plaintiff. In addition, because Mr. De Vries and Mr. Alper were lead counsel on the ITC Investigation, they had knowledge of Plaintiff's good work on the same. In addition, Mr. Alper and Mr. De Vries knew or reasonably should have known about Ms. Schmidt's and Mr. Fahey's discriminatory and retaliatory write-off(s) because at all relevant times Mr. Alper and Mr. De Vries were on the Firm's Finance Committee, which 'reviews' 'client write-offs.' Mr. Alper and Mr. De Vries sanctioned, or, at minimum, intentionally overlooked, the unlawful conduct.").

where "the *conduct* at issue violates FEHA and also satisfies the elements of the claim." Order at 20, quoting *Light*, 14 Cal. App. 5th at 101 (emphasis added). While the Court did dismiss the Individual Defendants from the FEHA claims because they are not "employers" subject to liability under the statute, *see* Order at 12, the Court also ruled that Plaintiff's amended complaint sufficiently alleges that all Defendants, including the Individual Defendants, engaged in conduct a reasonable trier of fact could find both in violation of FEHA and sufficient to allege an IIED claim. *See id.* at 21; *supra* discussion at pp. 9–11. Accordingly, Plaintiff's IIED claim against the Individual Defendants is not preempted by workers' compensation. *See Light*, 14 Cal. App. 5th at 101.[7]

### iv. Title VII and FEHA Retaliation Claims Against Kirkland

Defendants argue that Plaintiff's Title VII and FEHA retaliation claims, and her failure to prevent retaliation under FEHA claim, against Defendant Kirkland must be dismissed because none of the complaints Plaintiff alleges she made in various communications to her employer amounted to a "protected activity" under the statutes. *See* Mot. at 20; *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (setting out Title VII retaliation standard); *Kelley v. The Conco Cos.*, 196 Cal. App. 4th 191, 209 (2011) (similar FEHA retaliation standard). Defendants attack the sufficiency of each of the incidents in which Plaintiff alleges she complained about discrimination and harassment, but their disputes essentially boil down to the same argument: Plaintiff's

---

[7] Defendants cite several cases in support of their argument that workers' compensation preempts an IIED claim against individuals not considered "employers" subject to a FEHA retaliation or discrimination statutes, but in all of these cases, the courts applied the same principle from *Light* that this Court applied and which Defendants misrepresent: whether "the conduct at issue violates FEHA" determines the preemption of IIED claims by workers' compensation. *Light*, 14 Cal. App. 5th at 101. *See Voellger v. Dignity Health*, No. 19-CV-07089-RS, 2020 WL 13505420, at *6 (N.D. Cal. July 27, 2020) (dismissing FEHA retaliation claim against supervisor but allowing plaintiff opportunity leave to amend complaint to revive IIED claim against supervisor by showing his conduct was beyond the scope of personnel management); *Kennedy v. MUFG Union Bank*, No. E070775, 2020 WL 218521, at *11-12 (Cal. Ct. App. Jan. 15, 2020) (IIED claim dismissed because plaintiff failed to show conduct in violation of FEHA); *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3358 EMC/TEH, 2015 WL 1348503, at *12 (N.D. Cal. Mar. 25, 2015) (IIED claim dismissed because " no reasonable jury could conclude" that the supervisor likely retaliated against plaintiff); *Vargas v. Vons Companies, Inc.*, No. B315167, 2022 WL 17685801, at *14 (Cal. Ct. App. Dec. 15, 2022) (IIED claim failed because undisputed evidence showed plaintiff suffered no adverse employment action sufficient to state FEHA discrimination or retaliation claim against employer, and because plaintiff failed to sufficiently plead extreme or outrageous conduct by employer).

retaliation claims fail because she did not explicitly allege gender-based discrimination in any of her complaints.  *See, e.g.,* Mot. at 21 (Plaintiff "did not raise gender discrimination"), 22 (Plaintiff did not state "plainly" that she "was being treated differently because she was a woman," and complained about matters that "had nothing to do with gender"), 23 (Plaintiff failed to "make her (alleged) belief known that she was being treated unfairly because of her gender").

The Court rejects this argument and finds Plaintiff has adequately pled that her complaints to Kirkland amounted to protected activity for Title VII and FEHA purposes.  Plaintiff engaged in a protected activity if she "alerted [her] employer to [her] belief that discrimination, not merely unfair personnel treatment, had occurred."  *See Gutierrez v. Kaiser Found. Hosps., Inc.*, No. C 11-3428 CW, 2012 WL 5372607, at *6 (N.D. Cal. Oct. 30, 2012).  However, "an employee is not required to use legal terms or buzzwords when opposing discrimination.  The court will find opposing activity if the employee's comments, when read in their totality, oppose discrimination."  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1047, 116 P.3d 1123, 1134 (2005) (citation omitted); *see also E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) (noting that "[c]ourts have not imposed a rigorous requirement of specificity in determining whether an act constitutes 'opposition'" under Title VII).

Under this standard, the Court finds that Plaintiff has adequately plead that her complaints to Kirkland's employees put it on notice of her belief that she was subject to gender discrimination at the firm, so as to constitute protected activity.  Plaintiff's amended complaint alleges that in two April 23, 2021 meetings with Defendant Deoras, Plaintiff "made clear" that she was suffering "due to her being subjected to unfair treatment and having to deal with a disproportionate workload at trial," and more specifically, that she "complained about her unfair treatment, particularly with respect to Ms. Schmidt's lies as to whether Plaintiff had been subjected to disparate treatment at trial."  FAC ¶ 121.  Similarly, it alleges that during a July 23, 2021 phone call with Defendant Deoras, she again "complained of unfair treatment with respect to workload—i.e., having an inordinately larger workload than male associates, let alone any other associate" and "raised concerns regarding being asked to take on work for male associates (including those who were able to observe their vacation to the detriment of Plaintiff)."  *Id.* ¶ 168.  Accepting these

allegations as true and construing them in the light most favorable to Plaintiff, these statements create a reasonable inference that Plaintiff put Kirkland on notice of her discriminatory treatment. Defendant Kirkland's factual disputes about the true nature of these conversations, what Plaintiff really said to Defendants, and whether her complaints of unfair treatment did alert or should have alerted Kirkland to her allegations of discrimination, are properly resolved at summary judgment or trial. The Court therefore **DENIES** Defendants' motion to dismiss Plaintiff's Title VII and FEHA retaliation claims and failure to prevent retaliation under FEHA claim against Defendant Kirkland.

> ### v.   Equal Pay Act

Defendants also argue that Plaintiff's Equal Pay Act ("EPA") claim against Defendant Kirkland should be dismissed on two grounds.

First, Defendants assert that Plaintiff has failed to plead she performed "equal work" as to any of the five male associates included in her amended complaint as alleged comparators because she does not identify enough "common" tasks between their jobs. *See* Mot. at 25 (citing *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073–74 (9th Cir. 1999)). The Court disagrees. The two-part test for equal work asks first "whether a significant portion of the two jobs is identical," then whether "any additional tasks, incumbent on one job but not the other, make the two jobs substantially different." *Stanley*, 178 F.3d at 1074 (internal citations and quotations omitted). Plaintiff has alleged that the male comparators received higher pay, bonuses, and benefits than she did, even though they were at a similar experience level (all graduated from law school within one year of Plaintiff), worked on the same litigation team as she did (IP Litigation), and were assigned to some of the same IP matters as she was. FAC ¶¶ 57–62, 277. These allegations sufficiently plead that Plaintiff and the comparators performed substantially similar work at the firm. While Defendants argue that the specific assignments Plaintiff describes as sharing with the comparators are insufficiently numerous to adequately plead equal work, *see* Mot. at 26, the Court finds it reasonable to infer that Plaintiff more likely included these projects as examples of similar assignments to help illustrate that her allegations of equal work are not conclusory, rather than to provide an exhaustive list of all similar tasks Plaintiff and the male associates ever performed in

their jobs.  More importantly, a finding of "equal work" does not require a one-to-one match between all tasks performed by a plaintiff and alleged comparators.  *See Stanley*, 178 F.3d at 1074 (holding that jobs shared "common core of tasks" based on finding that they had the same "basic responsibilities"); *see also Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1222 (9th Cir. 2021) (reversing summary judgment on EPA claim because a reasonable jury could find that professors shared the same "overall job" even if they performed different tasks).  Looking at the "basic responsibilities" of the jobs Plaintiff and the male comparator associates performed as alleged in the amended complaint, the Court finds that Plaintiff has sufficiently pled that a significant portion of the jobs was identical.  *See Sangster v. Hewlett Packard Enter. Co.*, No. 23-CV-05438-HSG, 2024 WL 3408216, at *7 (N.D. Cal. July 11, 2024) (plaintiff sufficiently pled equal work by alleging she "was a salesperson" and that "her male sales counterparts were given lighter sales goals that enabled them to earn greater pay").  In addition, Defendants do not point to any facts showing that additional tasks outside general shared job duties made Plaintiff's and the male associates' roles at Kirkland substantially different.  Thus, the Court finds Plaintiff's amended complaint meets the EPA's "equal work" requirement for pleading purposes.  *See Freyd*, 990 F.3d at 1222 (describing equal work analysis as "one fraught with judgment, not law" and thereby holding that the court "[did] not have the tools to resolve [such a] dispute without intruding on the civil jury's function").

Second, Defendants argue Plaintiff's complaint fails to meet the EPA's "single establishment" requirement because she does not plead that Kirkland is a distinct physical place of business, or that exceptional circumstances apply such that Kirkland should nonetheless be considered a "single establishment."  Mot. 21–22.  The Court also finds that this argument does not warrant dismissal of Plaintiff's EPA claim.  "[G]eographically separate offices may be treated as a single establishment where they are operationally interrelated."  *Davis v. Inmar, Inc.*, No. 21-CV-03779 SBA, 2022 WL 3722122, at *5, fn. 2 (N.D. Cal. Aug. 29, 2022) (citing *Foster v. Arcata Associates, Inc.*, 772 F. 2d 1453, 1459 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048, 106 (1986), *overruled on other grounds by, Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262 (9th Cir. 1991)).  Plaintiff alleges Kirkland & Ellis is a single establishment because it is centrally managed

15

by teams comprised of partners across separate offices, as evidenced by her experience working with IP partners and male comparators based in various offices in different locations and her allegations of firm-wide policies and practices that ostensibly applied across distinct offices. *See* FAC ¶¶ 187, 252. The Court finds that these allegations are sufficient to plead that Kirkland is operationally interrelated and should be treated as a "single establishment" for the purposes of Plaintiff's EPA claim. *See Davis*, 2022 WL 3722122, at *5, fn. 2 ("Thus, the fact Davis and her comparator work in different offices/cities does not itself warrant dismissal of the claims.") As with the bulk of Defendants' other arguments, "[w]hether admissible evidence supports this assertion is more appropriately addressed on summary judgment." *See Williams v. Robert Half Int'l Inc.*, No. 4:20-CV-03989-KAW, 2021 WL 5414307, at *2 (N.D. Cal. Oct. 5, 2021).

Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiff's EPA claim against Defendant Kirkland.

## IV.   MOTION FOR RECONSIDERATION

Defendants De Vries and Alper and their professional corporations also bring a motion for leave to file a motion for reconsideration of parts of the Order on the previous motions to dismiss. *See* Dkt. No. 98. Defendant De Vries asks the Court to reconsider the portion of the Order denying the motion to dismiss Plaintiff's defamation claim, while Defendant Alper seeks reconsideration of the denial of the motion to dismiss the IIED claim. *See id.* at 4. Both assert grounds for reconsideration under Civil Local Rule 7–9(b)(3): "A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." *See id.* at 2; Civ. L.R. 7–9(b)(3).

As noted, the Court's order on Defendants' motion to dismiss the amended complaint already addresses all of the arguments Defendants assert in their entirely duplicative motion for reconsideration. *Compare* Dkt. No. 98 at 5–7 *with* Mot. 16–20. Moreover, Defendants appear to have repackaged some of these arguments from those they asserted in their previous motions to dismiss and which the Court rejected in its prior Order. *See supra* pp. 9–11; Order at 15–16, 20–21. Defendants are thus asking the Court to rule on several issues for a third time. The Court stresses that a "motion for reconsideration is not an appropriate vehicle by which to relitigate

United States District Court
Northern District of California

arguments made on a motion to dismiss." *Chaiwong v. Hanlees Fremont, Inc.*, No. 16-CV-04074-HSG, 2019 WL 1960340, at *2 (N.D. Cal. May 2, 2019) (internal quotations and citation omitted). There already has been more than enough ink spilled on aggressive pleading litigation in this case, and it is past time to proceed to the merits. For the reasons discussed, *see supra* pp. 9–11, Defendants De Vries and Alper have not come close to showing that the Court failed to consider material facts or dispositive legal arguments, and their motion for leave to file a motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

Dated:   9/10/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge