1  Zoya Kovalenko (Cal. SBN 338624)
   13221 Oakland Hills Blvd., Apt. 206
2  Germantown, MD 20874
   (678) 559-4682
3  zoyavk@outlook.com
   *Plaintiff Zoya Kovalenko*
4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11  ZOYA KOVALENKO,                    Case No. 4:22-cv-05990-HSG

12          *Plaintiff*,              **PLAINTIFF'S MOTION TO NOTICE**
                                      **TERMINATION OF FILIPPATOS PLLC**
13      v.                            **FOR CAUSE, TO REQUIRE**
                                      **FILIPPATOS PLLC TO PROVIDE**
14  KIRKLAND & ELLIS LLP, MICHAEL     **CLIENT FILE TO PLAINTIFF, AND TO**
    DE VRIES, MICHAEL W. DEVRIES,     **REQUIRE FURTHER BRIEFING *EX***
15  P.C., ADAM ALPER, ADAM R. ALPER,  ***PARTE***
    P.C., AKSHAY DEORAS, AKSHAY S.
16  DEORAS, P.C., AND MARK FAHEY,     Hearing noticed for Thursday, March 20, 2025,
                                      at 2:00 pm, before the Honorable Haywood S.
17          *Defendants*.            Gilliam, Jr., United States District Judge, at
                                      1301 Clay Street, Fourth Floor, Courtroom 2,
18                                    Oakland, California 94612

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PLAINTIFF'S MOTION TO NOTICE TERMINATION OF FILIPPATOS PLLC FOR
CAUSE, TO REQUIRE FILIPPATOS PLLC TO PROVIDE CLIENT FILE TO
PLAINTIFF, AND TO REQUIRE FURTHER BRIEFING *EX PARTE* ............................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF ISSUES TO BE DECIDED ......................................................... 2

II.   STATEMENT OF RELEVANT FACTS ................................................................... 2

III.  ARGUMENT ........................................................................................................ 6

    A.  The Court Should Order Any Additional Briefing Related to This Motion or
       Plaintiff's Termination of Filippatos PLLC to Be Submitted *Ex Parte* to Avoid
       Prejudicing Plaintiff Due to the Ongoing Status of Her Lawsuit ........................... 6

    B.  The Court Should Notice Termination of Filippatos PLLC for Cause ................. 7

       1.  New York Law Applies to Determining Whether Plaintiff Terminated Her
           Counsel for Cause ..................................................................................... 7

       2.  Legal Standard for Determining Whether Counsel Has Been Terminated
           for Cause ................................................................................................... 8

       3.  The Court Should Notice Termination for Cause Because Filippatos PLLC
           Improperly Threatened to Withdraw and Interfered with Plaintiff's Right
           to Settle ................................................................................................... 10

       4.  The Court Should Notice Termination for Cause Because Filippatos
           PLLC's Failure to Provide Legal Services Bargained for Under the
           Retainer and Extreme Lack of Diligence Constituted Additional
           Independent Bases to Terminate for Cause ................................................. 16

5.   The Court Should Notice Termination for Cause Because Filippatos

PLLC's Abusive and Unprofessional Conduct Constituted an Additional

Independent Basis to Terminate for Cause ...................................................... 19

C.  Court Should Require Filippatos to Promptly Provide Plaintiff with Her Client

File Because Litigation in This Action Is Ongoing................................................ 21

CONCLUSION.................................................................................................................... 21

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>**                                                                                                                                **<u>Page</u>**

*1-800-Got Junk? LLC v. Superior Court,*

   189 Cal. App. 4th 500 (2010) .................................................................................... 5

*Affordable Builders of America, Inc. v. Thomas,*

   No. 2:22-CV-01381-KJM-DB, 2023 WL 3342746 (E.D. Cal. May 10, 2023) .................. 5, 6

*Beard v. County of Stanislaus,*

   No. 1:21-cv-00841-ADA-SAB, 2022 WL 12073987 (E.D. Cal. Oct. 20, 2022) ................... 6

*Board of Trustees of the Kern County Electrical Workers Pension Fund v.*

   *Measurement Instrumentation and Controls, Inc.,*

   No. 1:23-CV-00744-CDB, 2024 WL 2700810 (E.D. Cal. May 24, 2024)........................ 8 n.6

*Brooks v. Lewin,*

   853 N.Y.S.2d 286 (App. Div. 1st Dep't 2008) ....................................................... 12

*Compton v. Kittleson,*

   171 P.3d 172 (Alaska 2007)..................................................................................... 16

*Doe v. City of Modesto,*

   No. 1:12-cv-1255 LJO GSA, 2013 WL 4828706 (E.D. Cal. Sept. 6, 2013) ........................ 21

*Evony, LLC v. Aeria Games & Entertainment, Inc.,*

   No. C 11-0141 SBA, 2012 WL 12930714 (N.D. Cal. Sept. 28, 2012)............................ 10 n.8

*In re Food Management Group, LLC,*

   484 B.R. 574 (S.D.N.Y. 2012)..................................................................................... 6

*Farb v. Baldwin Union Free School District,*

   No. 05–CV–0596, 2011 WL 4465051 (E.D.N.Y. Sept. 26, 2011) ......................................... 6

*Garcia v. Teitler,*

   443 F.3d 202 (2d Cir. 2006)..................................................................................... 7, 18 n.17

*Garcia v. Teitler,*

   No. 04 CV 832 (JG), 2004 WL 1636982 (E.D.N.Y. July 22, 2004) ......... 7, 13, 17, 18 & n.17

*Guzik v. Albright,*

No. 16-CV-2257 (JPO), 2019 WL 3334487 (S.D.N.Y. July 25, 2019)............................ 8, 12

*Hawkins v. Christensen*,

No. 1:13-CV-00321-BLW, 2020 WL 1518623 (D. Idaho Mar. 30, 2020).............................. 6

*Holcombe v. Matsiborchuk*,

No. 17-2758, 747 Fed. App'x 875 (2d Cir. 2018) ....................................... 7, 8, 11, 13, 18, 19

*Holcombe v. US Airways Group, Inc.*,

No. 08-CV-1593 (SLT) (JO), 2017 WL 1184104 (E.D.N.Y. Mar. 29, 2017)............... 7, 8, 13

*Jay Deitz & Associates of Nassau County, Ltd. v. Breslow & Walker, LLP*,

59 N.Y.S.3d 443 (App. Div. 2017) ............................................................................. 7

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,

880 F. Supp. 2d 1029 (N.D. Cal. 2012) ...................................................................... 6

*Kovalenko v. Kirkland & Ellis LLP*,

No. 4:22-cv-05990-HSG, 2024 WL 664691 (N.D. Cal. Feb. 16, 2024),

Discovery Order, Dkt. No. 128 ........................................................................... 3 n.4

*Lat Long Infrastructure, LLC v. Gold Crest Cap., LLC*,

No. 23-CV-955 (NRM)(MMH), 2024 WL 5118606 (E.D.N.Y. Jan. 25, 2024).................... 21

*Lauro v. State*,

No. CV 12-00637 DKW-BMK, 2015 WL 5031236 (D. Haw. Aug. 24, 2015)........... 6, 11–12

*McDaniel v. Daiichi Sankyo, Inc.*,

343 F. Supp. 3d 427 (D.N.J. 2018) ...................................................................... 13

*McGhee v. Chavez*,

No. CV-23-08041-PCT-DWL, 2023 WL 2708765 (D. Ariz. Mar. 30, 2023)......................... 7

*Nehad v. Mukasey*,

535 F.3d 962 (9th Cir. 2008) ........................................................... 8, 10, 11, 15, 16

*Sabre Int'l Security v. Torres Advanced Enterprise Solutions, LLC*,

219 F. Supp. 3d 155 (D.D.C. 2016) ...................................................................... 7

*Schreiber v. Friedman*,

No. 15-CV-6861 (CBA) (CLP), 2022 WL 669461 (E.D.N.Y. Mar. 7, 2022).................. 7, 14

1  *Schreiber v. Friedman*,

2       No. 15-CV-6861 (CBA) (JO), 2020 WL 5549082 (E.D.N.Y. Sept. 16, 2020) ........... 7, 14, 17

3  *Stinson v. City of New York*,

4       No. 18-CV-0027 (LAK) (BCM),

5       2018 WL 11257424 (S.D.N.Y. Nov. 26, 2018) .................................................... 7, 8, 11, 13

6  *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*,)

7       464 F.Supp.2d 164 (E.D.N.Y. 2006) .................................................................................. 7

8  *United States v. Corona-Garcia*,

9       210 F.3d 973, 977 (9th Cir. 2000) ..................................................................................... 6

10 *Universal Acupuncture Pain Services, P.C. v. Quadrino & Schwartz, P.C.*,

11      370 F.3d 259 (2d Cir. 2004) ............................................................................................... 6

12 *Washington Mutual Bank, FA v. Superior Court*,

13      24 Cal. 4th 906 (2001) ....................................................................................................... 5

14 *Welch v. Niagara Falls Gazette*,

15      No. 98-CV-0685E(M), 2000 WL 1737947 (W.D.N.Y. Nov. 17, 2000) ........................... 6, 12

16

17 **Statutes and Other Authorities**                                                                                              **Page**

18 California Rules of Professional Conduct ........................................................................... 10 n.8

19 California Rule of Professional Conduct 1.2(a) .................................................................... 8 n.6

20 California Rule of Professional Conduct 1.3(a) ................................................................. 14 n.13

21 California Rule of Professional Conduct 1.3(b) ................................................................. 14 n.13

22 Civil Local Rule 7-1(b) ............................................................................................................... 1

23 New York Rule of Professional Conduct 1.16(e) ................................................................ 10 n.8

24 Standing Order for Civil Cases Before

25      District Judge Haywood S. Gilliam, Jr. (July 9, 2024) ........................................................ 1

26

27

28

**PLAINTIFF'S MOTION TO NOTICE TERMINATION OF FILIPPATOS PLLC FOR CAUSE, TO REQUIRE FILIPPATOS PLLC TO PROVIDE CLIENT FILE TO PLAINTIFF, AND TO REQUIRE FURTHER BRIEFING *EX PARTE***

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:  PLEASE TAKE NOTICE THAT on Thursday, March 20, 2025, at 2:00 pm, before the Honorable Haywood S. Gilliam, Jr., United States District Judge, at 1301 Clay Street, Fourth Floor, Courtroom 2, Oakland, California 94612, Plaintiff Zoya Kovalenko ("Plaintiff") will and hereby does respectfully move the Court (i) to enter notice of termination of Plaintiff's former counsel, Filippatos PLLC ("Filippatos"), for cause; (ii) to require Filippatos to promptly provide Plaintiff with her client file; and (iii) to require any further briefing related to this motion or to Plaintiff's termination of Filippatos to be submitted *ex parte* to avoid prejudicing Plaintiff due to the ongoing status of her lawsuit.  This motion is based on this notice of motion and the memorandum of points and authorities below; the Declaration of Zoya Kovalenko in Support of Plaintiff's Motion to Notice Termination of Filippatos PLLC for Cause, to Require Filippatos PLLC to Provide Client File to Plaintiff, and to Require Further Briefing *Ex Parte* ("Kovalenko Declaration") attached hereto and filed herewith, along with attachments thereto; any other papers filed in support; any other filings in this case; facts of which the Court may or must take judicial notice; and such other evidence or arguments presented by Plaintiff at any hearing on this motion.  Plaintiff respectfully requests the Court determine this motion without oral argument.  *See* Civil L.R. 7-1(b); Standing Order for Civil Cases Before District Judge Haywood S. Gilliam, Jr. (July 9, 2024) ¶ 10.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On January 23, 2025, Plaintiff terminated Filippatos[1] for cause.  Plaintiff respectfully

---

[1] As far as Plaintiff is aware, local counsel who has appeared on her behalf has not contributed to the case beyond filing a notice of appearance in order to allow Tanvir Haque Rahman to apply to appear *pro hac vice*. Not. Appearance, Dkt. No. 107; Mr. Rahman's Appl. Admis. Att'y *Pro Hac Vice*, Dkt. No. 108; Kovalenko Decl. ¶ 5.  Moreover, Plaintiff does not (and did not) have a retainer (or any other) agreement with local counsel.  Kovalenko Decl. ¶ 5.  Plaintiff's former counsel, Filippatos, entered into a retainer agreement with local counsel, to which agreement Plaintiff was not a party.  Kovalenko Decl. ¶ 5.  Plaintiff has never spoken to or communicated

1    moves the Court to enter notice of termination of Filippatos for cause, to order Filippatos to

2    promptly provide Plaintiff with her client file, and to order that any additional briefing related to

3    this motion or to Plaintiff's termination of Filippatos be submitted *ex parte* to avoid prejudicing

4    Plaintiff due to the ongoing status of her lawsuit.[2]

5    **II.    STATEMENT OF ISSUES TO BE DECIDED**

6    Whether the Court should order any additional briefing related to this motion or

7    termination of counsel to be filed *ex parte* to protect disclosure of attorney-client privileged or

8    work-product information.

9    Whether the Court should notice termination of Filippatos for cause because Filippatos

10   improperly threatened to withdraw and interfered with Plaintiff's right to settle, failed to provide

11   legal services bargained for under the retainer and acted with an extreme laxity in litigating this

12   case on behalf of Plaintiff, and/or acted abusively toward Plaintiff.

13   Whether the Court should require Filippatos to promptly provide Plaintiff with her client

14   file because litigation in this action is ongoing.

15   **III.    STATEMENT OF RELEVANT FACTS**

16   Plaintiff terminated Filippatos for cause on January 23, 2025.  On this date, Plaintiff sent

17   an email to Parisis (Gerry) Filippatos ("Mr. Filippatos") and Mr. Rahman notifying them of their

18   immediate for-cause termination and setting forth various bases for the termination ("Termination

19   Email"), consistent with this motion and the facts in the attached Kovalenko Declaration.

20   Kovalenko Decl. ¶ 6 & Attach. C (Termination Email and Response) at 3.  That same day,

21   Filippatos responded to the Termination Email, encouraging Plaintiff to reconsider her

22   termination of Filippatos.  Kovalenko Decl. ¶ 6 & Attach. C (Termination Email and Response)

23   at 2.  Plaintiff responded to Filippatos on January 24, 2025, unmistakably reaffirming her

24   ─────────────────

25   with local counsel. Kovalenko Decl. ¶ 5. Mr. Rahman was Plaintiff's attorney of record in this
     action since November 2023 until Plaintiff terminated Filippatos as her counsel on January 23,
     2025. Kovalenko Decl. ¶¶ 3, 6; *see* Order Granting [108] Mr. Rahman's Appl. Admis. Att'y *Pro*
26   *Hac Vice* (Nov. 9, 2023), Dkt. No. 109. Mr. Rahman is and during all relevant times has been a
     partner at Filippatos. Kovalenko Decl. ¶ 3.
27   [2]

28   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

1   immediate termination of Filippatos as her counsel and responding to various falsehoods and
2   misstatements made by Filippatos in response to the Termination Email.  Kovalenko Decl. ¶ 6 &
3   Attach. C (Termination Email and Response) at 1–2.  On January 28, 2025, Filippatos responded
4   to Plaintiff's January 24 email and claimed that Filippatos was firing Plaintiff as a client despite
5   Plaintiff having already terminated Filippatos as her counsel.  Kovalenko Decl. ¶ 6.

6     Plaintiff's lawsuit against Kirkland & Ellis LLP ("Kirkland") is doing well, despite
7   Defendants' efforts to have her claims dismissed.  The present value and strength of the lawsuit
8   is evidenced by, among other things, the eight causes of action that survived seven motions to
9   dismiss and other ancillary motions attacking the complaint, the broad panoply of available
10  damages, including compensatory, equitable, and punitive damages, and the two pending motions
11  before the Court that present only upside for Plaintiff from the status quo.  Plaintiff is also well
12  positioned with respect to numerous privilege and discovery disputes, including challenges to
13  Defendants' privilege log, requests for natives and metadata, and requests to compel production
14  of highly relevant discovery from Defendants.[3]  In October 2024, the parties agreed to participate
15  in Court-mandated, private mediation, which was held in New York, New York on November 22,
16  2024.  Stip. & Order Selecting ADR Process, Dkt. No. 161.  ███████████████

17  ████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████
19  ████████████████████████████████████████████████████████
20  ████████████████████████  In response, ████████████████████, Mr. Filippatos
21  sent Plaintiff a threatening email stating the firm would terminate its attorney-client relationship
22  with Plaintiff by close of business that same day and promptly file withdrawal papers if she did
23  not "change course" with respect to ████████████████  Kovalenko Decl. ¶ 15.
24  ████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████

---

[3] This includes compelling discovery on male comparators.  Kovalenko Decl. ¶ 23.  Filippatos
has failed to propound any interrogatories and has made no cognizable effort to compel
production of various materials withheld by Defendants in their June 19, 2024 responses to
Plaintiff's requests for production.  Kovalenko Decl. ¶ 23.

1   ████████████████   In connection with Filippatos's threats to withdraw, Plaintiff had a brief

2   call with Filippatos in which Mr. Filippatos made thinly veiled threats to embroil Plaintiff in a

3   "colossal" conflict with his firm if she did not immediately ████████████████████████

4   ████████████   Kovalenko Decl. ¶ 16.  Filippatos, through its repeated and improper threats to

5   withdraw ████████████████████████ placed Plaintiff in between a rock and a hard place by

6   pitting Filippatos's short-term financial interests against Plaintiff's interests in continuing to

7   litigate the lawsuit.  Kovalenko Decl. ¶¶ 17–18.  Because of Filippatos's threats to publicly seek

8   to withdraw and ensnare Plaintiff in a public spat with her "attorneys" due to disagreement over

9   settlement, Plaintiff felt she was left with no practical avenue for redress other than ███████████

10  ███   Kovalenko Decl. ¶ 18.  As a result, Plaintiff reluctantly reversed course ████████████████

11  ████████████████████████████   Kovalenko Decl. ¶ 18.  Firing Plaintiff's counsel was a

12  last resort that Plaintiff did not undertake lightly, and Plaintiff accepts the unfortunate reality that

13  fighting a two-front war with her purported counsel and well-resourced opposing counsel is an

14  uphill battle.  Kovalenko Decl. ¶¶ 18–19.

15      Plaintiff brought this lawsuit and effectively litigated it for around nine months prior to

16  retaining Filippatos.  Kovalenko Decl. ¶¶ 1–4, 20.  Prior to and since filing her lawsuit, Plaintiff

17  searched far and wide for a single law firm or lawyer who would be willing to act as her advocate

18  and take on her high-profile, potentially high-value case against the world's largest law firm by

19  revenue.  Kovalenko Decl. ¶ 20.  When Filippatos told Plaintiff that it was willing to inherit her

20  lawsuit in July 2023, she was ecstatic because she thought she would finally have a fierce advocate

21  to litigate her case.  Kovalenko Decl. ¶ 20.  This expectation could not have been further from the

22  sad reality that would follow.  Kovalenko Decl. ¶ 20.  Since retaining Filippatos, Plaintiff has

23  continued to serve as the de facto lead attorney on the lawsuit and through her own efforts has

24  been responsible for the staying power and sustained success of the lawsuit.  *E.g.*, Kovalenko

25  Decl. ¶¶ 21, 22.  Filippatos has contributed nothing or next to nothing from a substantive legal

26  standpoint to advance Plaintiff's claims before the Court.  However, Filippatos has been more

27  than happy to enjoy the positive results of Plaintiff's substantive work from the shadows with

28

Filippatos taking presumptive public credit for any successful outcomes.[4] It has become painfully clear over time that Filippatos had no real interest in expending vital energy to actually litigate this case and put Plaintiff in a position to go to and possibly win at trial. *See* Kovalenko Decl. ¶ 18. Instead, Filippatos' actions and conduct were dedicated to securing a settlement as quickly as possible while doing as little work as possible because such an approach inures directly to the financial benefit of Filippatos. Kovalenko Decl. ¶¶ 18, 25. In lieu of providing the litigation services that Plaintiff expected to receive when she agreed to retain Filippatos, the firm has engaged in a pattern of abusive and unethical conduct that is incompatible with their fiduciary duties to Plaintiff as her purported attorneys. Kovalenko Decl. ¶¶ 12, 25; *see* Kovalenko Decl. Attach. B (Retainer Agreement) at 1 (stating scope of Plaintiff's engagement of Filippatos included its "representation of [Plaintiff] in the litigation of [her] employment-based claims against the Defendants through a trial"); *see also* Kovalenko Decl. ¶¶ 16, 27. As discussed herein, such conduct, includes, among other things: (1) improper threats to withdraw as Plaintiff's counsel because Plaintiff did not want to settle the lawsuit or disagreed over settlement approach; (2) performing de minimis legal work in the case, consisting primarily of light back-end edits to briefs and filings that Plaintiff had individually researched and drafted, communicating with opposing counsel,[5] attending a few hearings on issues that Plaintiff had researched and briefed, and otherwise being unduly lax in litigating Plaintiff's lawsuit, including a seemingly allergic

---

[4] Mr. Rahman promoted the Court's order, Dkt. No. 128, *Kovalenko v. Kirkland & Ellis LLP*, No. 22-cv-05990-HSG (TSH), 2024 WL 664691 (N.D. Cal. Feb. 16, 2024), granting Plaintiff's motion to quash subpoenas and for protective order, Dkt. No. 113, as a significant win and consequential ruling not just for Plaintiff but for plaintiffs' firms more broadly. David Thomas, *Kirkland loses bid to subpoena other law firms in bias lawsuit*, Reuters (Feb. 20, 2024), https://www.reuters.com/legal/litigation/kirkland-loses-bid-subpoena-other-law-firms-bias-lawsuit-2024-02-20/ ("Tanvir Rahman, a lawyer representing Kovalenko, praised the decision, saying it could deter other employers from using 'inappropriate, heavy-handed discovery tactics meant only to harass and annoy and deter other victims of discrimination from coming forward with their stories.'"), attached to Kovalenko Decl. as Attachment E; Kovalenko Decl. ¶ 30. Mr. Rahman's implicit message was that Filippatos was positively shaping the landscape of legal precedent in employment cases when in reality this fantastic outcome was obtained through the legal research and drafting completed by Plaintiff in her individual capacity. Kovalenko Decl. ¶¶ 21, 30; *see* Kovalenko Decl. Attach. E (Reuters Article Regarding Order Granting Motion to Quash).

[5] Filippatos has refused to provide Plaintiff with many of its communications with opposing counsel despite Plaintiff requesting her client file multiple times. Kovalenko Decl. ¶ 21.

reaction to conducting offensive discovery; and (3) verbal abuse and other misconduct, including

without limitation insulting Plaintiff's intelligence and screaming at Plaintiff on January 9, 2024

and November 22, 2024 when Plaintiff disagreed with Filippatos' views on mediation and

settlement, and for which conduct Filippatos apologized to Plaintiff.  Each of the above categories

of abusive and unethical misconduct is individually sufficient to conclude Plaintiff terminated

Filippatos for cause.  Accordingly, this Court has ample grounds to conclude that Plaintiff

terminated Filippatos for cause.

## IV.  ARGUMENT

### A.  The Court Should Order Any Additional Briefing Related to This Motion or Plaintiff's Termination of Filippatos to Be Submitted *Ex Parte* to Avoid Prejudicing Plaintiff Due to the Ongoing Status of Her Lawsuit

Generally, courts find *ex parte* submissions are warranted where "at least one of the

following situations is applicable: (1) there is a threat of immediate or irreparable injury/prejudice

if the underlying motion is heard according to regular noticed motion procedures; (2) there is

danger that notice to the other party may result in the destruction of evidence or the party's flight;

or (3) the party seeks a routine procedural order that cannot be obtained through a regularly

noticed motion (*i.e.,* to file an overlong brief or shorten the time within which a motion may be

brought)."  *Beard v. Cnty. of Stanislaus*, No. 1:21-cv-00841-ADA-SAB, 2022 WL 12073987, at

*4 (E.D. Cal. Oct. 20, 2022).  Here, there is a clear threat of immediate or irreparable injury to

Plaintiff if the Court were to permit additional briefing, including any filing(s) by Filippatos, not

to be submitted *ex parte* and under seal.  Kovalenko Decl. ¶ 7.  In particular, given the extreme

hostility Filippatos has displayed toward Plaintiff, including following her termination of

Filippatos on January 23, 2025, there is a legitimate risk of Filippatos making incendiary and even

potentially false statements in a public filing to undermine Plaintiff and prejudice her lawsuit.

This could include, among other things, Filippatos inappropriately seeking to reveal attorney-

client privileged or otherwise protected information and communications or assailing the merits

of Plaintiff's case (albeit baselessly) as a retaliatory measure for Plaintiff firing Filippatos for

cause.  Kovalenko Decl. ¶ 7.  Further, Plaintiff's standard request for this Court to enter notice of

termination of Filippatos as well as a finding that such termination was for cause might not be attainable through ordinary procedures to the extent the Court deems it necessary for Plaintiff and her counsel to submit additional evidence to enable the Court to conclude whether Filippatos was terminated for cause. Kovalenko Decl. ¶ 7. It is highly likely that such evidence, if requested by the Court, would implicate, if not reveal, sensitive information, including attorney-client communications and work-product protected information and materials. Kovalenko Decl. ¶¶ 7, 20–24. Accordingly, requiring any additional briefing and related submissions to the Court to be provided *ex parte* and under seal is warranted and appropriate under the circumstances. Kovalenko Decl. ¶ 7. Such a ruling would also be consistent with the approach courts often take when dealing with disputes between clients and their attorneys, especially when the case is ongoing. *McGhee v. Chavez*, No. CV-23-08041-PCT-DWL, 2023 WL 2708765, at *2 (D. Ariz. Mar. 30, 2023) (citing *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC*, 219 F. Supp. 3d 155, 158-59 (D.D.C. 2016); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F.Supp.2d 164, 165-66 (E.D.N.Y. 2006)) (requiring counsel to submit *ex parte* and under seal affidavit in support of withdrawal motion and allowing plaintiff to respond *ex parte* and under seal to ensure "the Court can gain the information it needs to appropriately balance the withdrawal factors while ensuring that no communications assertedly protected by attorney-client privilege are disclosed to the public or to Defendants"); *Hawkins v. Christensen*, No. 1:13-CV-00321-BLW, 2020 WL 1518623, at *46 (D. Idaho Mar. 30, 2020) (stating that disagreements with counsel should "properly should be heard ex parte as an attorney-client privileged matter"); *see also United States v. Corona-Garcia*, 210 F.3d 973, 977 (9th Cir. 2000) (discussing *ex parte* hearing that was held to discuss party moving for substitution of counsel).

### B.    The Court Should Notice Termination of Filippatos PLLC for Cause

#### 1.    New York Law Applies to Determining Whether Plaintiff Terminated Her Counsel for Cause

Here, the Court should apply New York law in assessing whether Plaintiff terminated Filippatos for cause (i.e., whether Filippatos engaged in some form of misconduct warranting termination). Plaintiff and Filippatos agreed in their retainer agreement that "[t]he laws of the

1    State of New York shall govern the interpretation of this agreement, including all rules or codes

2    of ethics that apply to the provision of legal services in New York." Kovalenko Decl. ¶ 4 &

3    Attach. B (Retainer Agreement) at 3. Under California law, "a freely and voluntarily agreed-

4    upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial

5    relationship to the parties or the transaction or any other reasonable basis exists for the parties'

6    choice of law.'" *Affordable Builders of Am., Inc. v. Thomas*, No. 2:22-CV-01381-KJM-DB, 2023

7    WL 3342746, at *2 (E.D. Cal. May 10, 2023) (quoting *1-800-Got Junk? LLC v. Super. Ct.*, 189

8    Cal. App. 4th 500, 513–15 (2010)). A choice of law provision will not be enforced if it is

9    established "'both that the chosen law is contrary to a fundamental policy of California *and* that

10   California has a materially greater interest in the determination of the particular

11   issue.'" *Id.* (quoting *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 917 (2001)) (emphasis

12   in original). Here, there is a substantial relationship between New York and Plaintiff and

13   Filippatos's agreement for legal services. As far as Plaintiff knows, Filippatos entered into the

14   retainer agreement in New York and has provided all or substantially all of its de minimis legal

15   services from New York and as licensed New York attorneys. Kovalenko Decl. ¶ 4. Further,

16   New York law and ethical rules governing attorney-client relationships, including terminating

17   counsel for cause, do not contravene a fundamental public policy of California, and California

18   does not have an obviously greater interest in the determination of this matter.[6] Accordingly, the

19   Court should apply New York law in assessing whether Plaintiff terminated Filippatos for cause.

20   *See, e.g.*, *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1036 (N.D. Cal.

21   2012) (concluding New York law applied to attorney-client dispute falling within the scope of the

22   parties' written agreement "selecting New York law" as governing law); *Affordable Builders of*

23   *Am.*, 2023 WL 3342746, at *2 (concluding Texas law applied to dispute arising from contract

24   stating laws of Texas would govern performance under the agreement).

25                    **2.      Legal Standard for Determining Whether Counsel Has Been**

26                            **Terminated for Cause**

27

28   ----
     [6] California law and rules of professional conduct for attorneys are generally consistent with the parallel rules and standards governing attorney conduct in New York.

1    "It is well settled that only the client has the authority to define the objectives of the

2    representation." *Nehad v. Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008); *Welch v. Niagara Falls*

3    *Gazette*, No. 98-CV-0685E(M), 2000 WL 1737947, at *2–3 (W.D.N.Y. Nov. 17, 2000) ("A

4    client's retention of an attorney is not necessarily an agreement by the client to follow the

5    attorney's advice in every instance, nor is the agreement by the attorney to represent the client

6    conditioned on the client's acceptance of all of the attorney's recommendations.") (citation

7    omitted); *see also Lauro v. State*, No. CV 12-00637 DKW-BMK, 2015 WL 5031236, at *4 (D.

8    Haw. Aug. 24, 2015) ("Attorneys have an ethical obligation to put forth their best efforts to

9    zealously represent their clients, regardless of any differences in opinion regarding settlement.").

10    Further, "[u]nder New York law, an attorney may be dismissed by a client *at any time*

11    with or without cause. If an attorney is discharged for cause, the attorney has no right to

12    compensation or a retaining lien, notwithstanding a specific retainer agreement." *In re Food*

13    *Mgmt. Grp., LLC*, 484 B.R. 574, 592 (S.D.N.Y. 2012) (quoting *Farb v. Baldwin Union Free Sch.*

14    *Dist.*, No. 05–CV–0596, 2011 WL 4465051, at *9 (E.D.N.Y. Sept. 26, 2011)) (collecting cases);

15    *see Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263

16    (2d Cir. 2004) ("If a lawyer is discharged for cause, he or she is not entitled to legal fees.").

17    "Regardless of whether, *when*, or why a client chooses to exercise his right discharge counsel for

18    cause, '[a]n attorney who violates a disciplinary rule may be discharged for cause and is not

19    entitled to fees for services rendered.'" *Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (JO),

20    2020 WL 5549082, at *10 (E.D.N.Y. Sept. 16, 2020) (emphasis added) (quoting *Jay Deitz &*

21    *Assocs. of Nassau Cnty., Ltd. v. Breslow & Walker, LLP*, 59 N.Y.S.3d 443, 447 (App. Div.

22    2017)), *objections sustained in part and overruled in part*, No. 15-CV-6861 (CBA) (CLP), 2022

23    WL 669461 (E.D.N.Y. Mar. 7, 2022).    Under New York law, the weight of precedent

24    demonstrates that discharging an attorney for "cause" means that "the attorney has engaged in

25    some kind of misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise

26    improperly handled the case." *Garcia v. Teitler*, No. 04 CV 832 (JG), 2004 WL 1636982, at *5

27    (E.D.N.Y. July 22, 2004) (collecting cases), *aff'd*, 443 F.3d 202 (2d Cir. 2006). Examples of

28    attorney misconduct that support a finding of termination for cause include:

(1) the attorney's failure to perform under the employment contract; (2) his lack of diligence in so performing; (3) his lack of ordinary skill or care in so performing; (4) his making of demands on the client which violate the terms or exceed the scope of the contract; (5) his taking of actions contrary to the client's interests or objectives; (6) his indulging in some sort of unprofessional conduct while handling the client's affairs; (7) his venting of personal or economic hostility toward the client; and (8) his loss of the client's trust and confidence.

*Schreiber*, 2020 WL 5549082, at *10 (citing *Garcia*, 2004 WL 1636982, at *6).

The rule allowing clients to terminate attorneys for cause "is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential." *Garcia*, 2004 WL 1636982, at *5. Further, a lawyer "may not withdraw merely because a client refuses to settle." *Nehad*, 535 F.3d at 970 (collecting cases); *see, e.g.*, *Stinson v. City of N.Y.*, No. 18-CV-0027 (LAK) (BCM), 2018 WL 11257424, at *4 (S.D.N.Y. Nov. 26, 2018) ("It is well-settled that an attorney who seeks to withdraw because her client refuses to accept a settlement offer does not have 'good cause' for the withdrawal and therefore is not entitled to a charging lien.") (collecting cases). Relatedly, "attorney misconduct, which includes . . . improper threats to withdraw" and "interference with the client's right to settle" are sufficient to warrant discharge for cause and forfeiture of counsel's fee. *Stinson*, 2018 WL 11257424, at *4 (quoting *Holcombe v. US Airways Grp., Inc.*, No. 08-CV-1593 (SLT) (JO), 2017 WL 1184104 (E.D.N.Y. Mar. 29, 2017) & *Holcombe v. Matsiborchuk*, No. 17-2758, 747 Fed. App'x 875 (2d Cir. 2018)). "An attorney may not act coercively by 'threaten[ing] to withdraw [his] services from [the client] without good cause and for [the attorney's] own economic benefit." *Guzik v. Albright*, No. 16-CV-2257 (JPO), 2019 WL 3334487, at *9 (S.D.N.Y. July 25, 2019) (citation omitted and internal quotation marks omitted).[7]

> **3.      The Court Should Notice Termination for Cause Because Filippatos PLLC Improperly Threatened to Withdraw and Interfered with Plaintiff's Right to Settle**

---

[7] The California Rules of Professional Conduct require a lawyer to "abide by a client's decision whether to settle a matter." Cal. R. Prof. Conduct 1.2(a). "A lawyer is not authorized merely by virtue of the lawyer's retention to impair the client's substantive rights or the client's claim itself." *Bd. of Trs. of Kern Cnty. Elec. Workers Pension Fund v. Measurement Instrumentation & Controls, Inc.*, No. 1:23-CV-00744-CDB, 2024 WL 2700810, at *2 (E.D. Cal. May 24, 2024).

1    A client has the right to fire their attorney for cause if the attorney interferes with the

2    client's settlement decision(s) or threatens to withdraw if the client does not follow the attorney's

3    settlement advice. *E.g., Stinson v. City of N.Y.*, No. 18-CV-0027 (LAK) (BCM), 2018 WL

4    11257424, at *4–6 (S.D.N.Y. Nov. 26, 2018) (holding attorney improperly withdrew "because of

5    [client's] refusal to accept a settlement [recommendation]" and therefore relinquished attorney's

6    right to lien on any recovery); *Holcombe v. Matsiborchuk*, 747 F. App'x 875, 878 (2d Cir. 2018)

7    (affirming district court's determination that client discharged attorney for cause due to attorney

8    misconduct where attorney threatened to withdraw); *Holcombe v. US Airways Grp., Inc.*, No. 08-

9    CV-1593 (SLT) (JO), 2017 WL 1184104, at *7 (E.D.N.Y. Mar. 29, 2017) (holding attorney's

10   "multiple threats to abandon his representation of [client] if she did not comply with his dictates

11   constitute misconduct warranting discharge for cause"); *see also Nehad v. Mukasey*, 535 F.3d

12   962, 970 (9th Cir. 2008) (stating a lawyer "may not withdraw because a client refuses to settle")

13   (collecting cases). Here, Filippatos' multiple improper threats to withdraw because it disagreed

14   with Plaintiff over her willingness to settle or approach on settlement terms, including threatening

15   to withdraw immediately ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ provide a compelling,

16   independent basis to terminate Filippatos for cause. Kovalenko Decl. ¶ 15.

17   Filippatos improperly threatened to withdraw as Plaintiff's counsel following the court-

18   mandated mediation held on November 22, 2024, in direct response to Plaintiff ███████

19   ▨▨▨▨▨▨▨▨▨▨ Kovalenko Decl. ¶¶ 14–15. ▨▨▨▨▨▨▨▨▨▨▨

20   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

21   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

22   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

23   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

24   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

25   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

26   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

27   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

28   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

1 ███████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████

9 ███████████████████████████████████████████████████████

10      On November 25, 2024, at around 1:30 pm (ET), Plaintiff sent Filippatos an email saying

11 she had carefully considered ███████████████████. Kovalenko Decl. ¶ 14. Less

12 than 45 minutes later, Mr. Filippatos sent a threatening email stating the firm would formally

13 terminate its attorney-client relationship with Plaintiff by *close of business that same day* and

14 promptly file withdrawal papers if she did not █████████████████ Kovalenko Decl.

15 ¶ 15.

> [Y]ou have now chosen to issue a unilateral edict [by declining the mediator's proposal] less than four hours prior to the deadline you've been aware of since last Friday evening. This is unacceptable and constitutes an irreparable breach of our attorney-client relationship. **Unless you change course** — there are still over two hours to discuss your putative decision to reject the Mediator's Proposal and I for one will make myself immediately available — **we will issue a formal notice to you that we have terminated our attorney client relationship with you (subject to the court's approval and reserving all rights and liens by us against you) effective COB today.** We will then file all necessary motion papers in that regard forth with and upon notice to opposing counsel.

22 Kovalenko Decl. ¶ 15 (emphases added).

23      Despite not being home at the time she received this threatening email, Plaintiff

24 responded, making clear that it was her prerogative to decide whether ⬛⬛⬛⬛⬛⬛⬛⬛⬛

25 and that it was entirely inappropriate for Filippatos to threaten to withdraw as counsel because

26

27

28

1    she did not want to be strong-armed into ███████████████████████████[8]

2    Kovalenko Decl. ¶ 16.  However, out of immediate concern that Filippatos would file public

3    papers seeking to withdraw in a matter of hours, Plaintiff agreed to briefly talk with Mr. Filippatos

4    that same day despite Plaintiff having told him she was not home.  Kovalenko Decl. ¶¶ 14, 16.

5    On the call that ensued, Mr. Filippatos made thinly veiled threats intimating that Filippatos would

6    call Plaintiff a liar in open court and claimed that she would face a "colossal conflict" with

7    Filippatos if she did not agree to rescind her ██████████████████████████████

8    ████████████████████████████████████ Kovalenko Decl. ¶ 16.[9]  In light

9    of these threats, Plaintiff agreed to comply with the demands of Mr. Filippatos to avoid facing

10   immediate prejudice from Filippatos seeking to withdraw based on mischaracterizations of the

11   events at mediation and to avoid being put in a clearly disadvantageous position to continue

12   litigating her lawsuit against Defendants while simultaneously defending a baseless motion to

13   withdraw by Filippatos.  Kovalenko Decl. ¶ 16.[10] More recently, Filippatos threatened to fire

14   Plaintiff as a client if she did not agree ███████████████████████████████

15   ████████████████████ Kovalenko Decl. ¶ 27.

16        Filippatos' explicit threat to withdraw in direct response to Plaintiff's ████████████

17   provides a clear basis to terminate Filippatos for cause.   *Holcombe*, 2017 WL 1184104, at *6

18

19   [8] Even if Filippatos had cause to withdraw, which it did not, Filippatos' threat to immediately
20   withdraw as counsel without taking any measures to enable Plaintiff to seek alternative counsel
     is another violation of New York (and California) professional rules.  *See, e.g.,* N.Y. R. Prof.
21   Conduct 1.16(e); *Evonv. LLC v. Aeria Games & Ent., Inc.,* No. C 11-0141 SBA, 2012 WL
     12930714, at *3 (N.D. Cal. Sept. 28, 2012) ("In sum, the Court finds that withdrawal is not
22   appropriate because the Newman Firm . . . failed to submit evidence establishing that written
     notice of their intent to withdraw was given reasonably in advance to its client, and that they took
23   all reasonable steps to avoid reasonabl  foreseeable  re udice to the ri hts of its . . . client." .
     [9] Durin  this call ███████████████████████████████████████████████
24   █████████████████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████████████████
25   Kovalenko Decl. ¶ 16.
     [10] After being pressured into ███████████████████████ Plaintiff had a nearly five-hour
26   call with Mr. Filippatos and Mr. Rahman on November 27, 2024, to discuss the pros and cons of
     declinin  the settlement  ro osal.  Kovalenko Decl.  17. Durin  this call ██████████████
27   ███████████████████████████████████████████████████████████████████████
28   ███████████████████████████████████████████████ Kovalenko Decl. ¶ 17.

1    (E.D.N.Y. Mar. 29, 2017) (finding client had "independent basis" to "terminate [attorney] for

2    cause" due to attorney's "interference in [client's] right to settle the case," which included email

3    in which attorney threatened to withdraw if client "refuse[d] to settle"); *Stinson*, 2018 WL

4    11257424, at *6 (holding that "the settlement-related emails between [plaintiff] and her former

5    attorneys make plain the cause-and-effect relationship between the client's refusal and the

6    lawyers' withdrawal" and concluding that "withdraw[ing] because of [plaintiff's] refusal to

7    accept a settlement [recommendation]," the plaintiff's former attorneys "forfeited [their] right

8    under New York law to a lien on any eventual recovery in this action"); *see also Lauro v. State*,

9    No. CV 12-00637 DKW-BMK, 2015 WL 5031236, at *4 (D. Haw. Aug. 24, 2015) (affirming

10   magistrate judge order concluding attorney did not have basis to withdraw for cause because

11   "princip[al] difference between Plaintiff and Counsel is regarding how to resolve this case in

12   terms of settlement"). Accordingly, this Court should hold that Filippatos's demonstrable

13   misconduct undermining Plaintiff's authority to make settlement decisions about her lawsuit

14   provided Plaintiff with a for-cause basis for firing Filippatos.

15        Relatedly, by pressuring Plaintiff into ██████████ and its efforts to interfere with

16   Plaintiff's settlement authority, Filippatos unethically placed the firm's own financial interest

17   above that of Plaintiff's ███████████████████████████████████.

18   Filippatos's decision to exalt its own financial interests and greed above their client's desire to

19   keep litigating, constitutes attorney misconduct providing yet another basis to terminate Filippatos

20   for cause. *See, e.g.*, *Guzik v. Albright*, No. 16-CV-2257 (JPO), 2019 WL 3334487, at *9

21   (S.D.N.Y. July 25, 2019) ("An attorney may not act coercively by 'threaten[ing] to withdraw [his]

22   services from [the client] without good cause and for [the attorney's] own economic benefit.'"

23   (alteration in original) (quoting *Brooks v. Lewin*, 853 N.Y.S.2d 286, 288 (App. Div. 1st Dep't

24   2008)). Moreover, an attorney cannot withdraw from representation because the client's lawsuit

25   is weaker than the attorney's initial evaluation or because the attorney believes the cost-benefit

26   analysis of continuing to litigate favors settling the lawsuit.[11] *E.g.*, *Welch v. Niagara Falls*

27

28   _____

[11] For clarity, Plaintiff wholeheartedly disagrees with Filippatos' purported assessment of her

1    *Gazette*, No. 98-CV-0685E(M), 2000 WL 1737947, at *2 (W.D.N.Y. Nov. 17, 2000) ("An

2    attorney may not withdraw simply because he later comes to believe that his client's case is

3    weaker than his evaluation when he first took the case" or "where counsel believes that the amount

4    of potential recovery does not warrant the effort of a trial . . . [,] the obligation undertaken by

5    counsel in accepting a retainer might require counsel to proceed to trial especially when, as here,

6    counsel wishes to withdraw before trial"). Here, Filippatos knowingly agreed to inherit Plaintiff's

7    lawsuit on a contingency basis and assumed the inherent risks in doing so. Filippatos cannot

8    justify its unethical withdrawal threats and direct undermining of Plaintiff's right to make

9    settlement decisions because, in Filippatos's view, it did not make economic sense to continue

10   litigating. *See, e.g.*, *McDaniel v. Daiichi Sankyo, Inc.*, 343 F. Supp. 3d 427, 433–34 (D.N.J. 2018)

11   (explaining that counsel's professional obligations and "duty of zealous of representation to

12   [their] client" do not "disappear because the case becomes more difficult or the outcome less

13   profitable or predictable than originally anticipated"). In sum, Filippatos's coercive threats to

14   withdraw caused by ▨▨▨▨▨▨▨▨▨▨ and its constant interference with Plaintiff's

15   settlement authority provide ample grounds to easily conclude that Filippatos was terminated for

16   cause. *Stinson v. City of N.Y.*, No. 18-CV-0027 (LAK) (BCM), 2018 WL 11257424, at *4–6

17   (S.D.N.Y. Nov. 26, 2018); *Holcombe v. Matsiborchuk*, 747 F. App'x 875, 878 (2d Cir. 2018)

18   (affirming district court's determination that client discharged attorney for cause due to attorney

19   misconduct where attorney threatened to withdraw); *Holcombe v. US Airways Grp., Inc.*, No. 08-

20   CV-1593 (SLT) (JO), 2017 WL 1184104, at *7 (E.D.N.Y. Mar. 29, 2017) (holding attorney's

21   "multiple threats to abandon his representation of [client] if she did not comply with his dictates

22   constitute misconduct warranting discharge for cause"); *see also Nehad v. Mukasey*, 535 F.3d

23   962, 970 (9th Cir. 2008) (stating a lawyer "may not withdraw because a client refuses to settle")

24   _____

25   claims. ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨

26   ▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨▨ Sadly, Filippatos' idea of standing

27   up for clients means aggressively parroting arguments raised by opposing counsel and being
     wholly dismissive of sound counter-arguments based in law and logic to ensure it gets paid as

28   quickly as possible. Apparently gaslighting and demeaning comments is good business for
     Filippatos, not expending vital energy to serve as advocates for their clients.

(collecting cases).

Any attempt by Filippatos to contend that its unethical and unlawful behavior was excused due to the terms of the retainer agreement should be squarely rejected by this Court. A lawyer cannot eliminate their professional and fiduciary duties to clients by contracting around them. For example, the Ninth Circuit has stated that "it is generally held that the lawyer may not burden the client's ability to make settlement decisions by structuring the representation agreement so as to allow the lawyer to withdraw, or to ratchet up the cost of representation, if the client refuses an offer of settlement." *Nehad v. Mukasey,* 535 F.3d 962, 971 (9th Cir. 2008). As such, courts and ethics opinions have ruled that it is impermissible for a retainer or fee agreement to permit a lawyer to withdraw if the client refuses the lawyer's settlement advice or to convert a contingent fee to an hourly fee if the client rejects a settlement offer that the lawyer deems reasonable. *Id.* (citing *Compton v. Kittleson,* 171 P.3d 172, 173 (Alaska 2007); *Jones v. Feiger, Collison & Killmer,* 903 P.2d 27, 34 (Colo. Ct. App. 1994) (holding retainer provision allowing lawyer to withdraw if client rejected settlement offer the lawyer deemed reasonable was impermissible), *rev'd on other grounds,* 926 P.2d 1244 (Colo.1996); Conn. Bar Ass'n Comm. on Prof'l Ethics, Informal Op. 99–18 (1999) (concluding fee agreement may not provide that amount due converts from contingent to hourly fee if client rejects settlement offer the lawyer deems reasonable); Conn. Bar Ass'n Comm. on Prof'l Ethics, Informal Op. 95–24 (1995) (concluding retainer provision that lawyer may withdraw if client refuses settlement offer the lawyer deems reasonable impermissibly impinges on client's right to decide whether to settle)); *see also McDaniel v. Daiichi Sankyo, Inc.*, 343 F. Supp. 3d 427, 433 (D.N.J. 2018) (holding "[t]he retainer agreement does not supersede counsel's obligations under the Rules of Professional Conduct").

### 4. The Court Should Notice Termination for Cause Because Filippatos PLLC's Failure to Provide Legal Services Bargained for Under the Retainer and Extreme Lack of Diligence Constituted Additional Independent Bases to Terminate for Cause

Under New York law, examples of attorney misconduct warranting termination for cause include: (1) "an attorney's failure to perform under the employment contract; (2) his lack of

diligence in so performing; (3) his lack of skill or care in so performing; . . . and (8) his loss of the client's trust and confidence." *See Garcia*, 2004 WL 1636982, at *6 (listing examples in which courts have found for-cause termination appropriate). Here, Filippatos' extreme lack of diligence in litigating Plaintiff's lawsuit and reliance on Plaintiff to perform effectively all substantive legal work after being retained provide yet another basis to conclude Plaintiff terminated Filippatos for cause. *See Schreiber v. Friedman*, No. 15CV6861CBAJO, 2020 WL 5549082, at *10 (E.D.N.Y. Sept. 16, 2020), objections sustained in part and overruled in part, No. 15CV6861CBACLP, 2022 WL 669461 (E.D.N.Y. Mar. 7, 2022)  (stating under New York case law termination for cause "means that the attorney has engaged in some kind of misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise improperly handled the case").[12]

Since retaining Filippatos, Plaintiff has acted as the sole workhorse attorney performing essentially all (if not all) the substantive legal work necessary to overcome Defendants' various motions and advance Plaintiff's claims, including continuing to position Plaintiff to prevail on summary judgment and at trial (if the case were to proceed that far). As summarized below, Plaintiff's substantive contributions since retaining Filippatos include:

- First, Plaintiff has researched and analyzed all pertinent case law[13] and drafted every material brief,[14] including: (1) the motion to quash and for protective order and the reply, Dkt. Nos. 113 & 123; (2) the opposition to Defendants' seventh motion to dismiss, Dkt. No. 110; (3) the opposition to Defendants' motion for leave to move for reconsideration, Dkt. No. 101; (4) the motion for reconsideration of

---

[12] *See also* Cal. R. Prof. Conduct 1.3(a)-(b) (requiring lawyer to act with "reasonable diligence," which means acting "with commitment and dedication to the interests of the client" and not "neglect[ing] or disregard[ing], or unduly delay[ing] a legal matter entrusted to lawyer").

[13] Plaintiff is unaware of Filippatos identifying a single relevant case via its own research to support an argument in a material brief in this action. Kovalenko Decl. ¶ 21.

[14] Although unnecessary for the Court to rule in Plaintiff's favor on this motion, Plaintiff has significant email correspondence showing that she has drafted each of the listed substantive briefs in significant fashion. Kovalenko Decl. ¶ 21. If, however, the Court concludes that reviewing such documentation is necessary to rule in Plaintiff's favor, Plaintiff would be willing provide such corroborating documentation, provided such documentation could be submitted *ex parte* for the Court's review.  Plaintiff intends to open her own law firm following conclusion of this lawsuit and reasonably desires to avoid potential public disclosure of her own material legal impressions and analyses.  Kovalenko Decl. ¶ 21; *see supra* pp. 6–7 and citations therein.

this Court' September 10, 2024 order dismissing Plaintiff's defamation claims as time-barred, Dkt. No. 162; (5) the motion to strike Defendants' answer and affirmative defenses and the reply, Dkt. Nos. 158 & 167.  Kovalenko Decl. ¶ 21.[15]

- Second, Plaintiff has completed the lions' share of legal work to prepare responses and objections to Kirkland's interrogatories and requests for production, including amended and supplemental responses.  Kovalenko Decl. ¶ 22.

- Third, Filippatos has put forth extremely minimal effort to conduct and advance offensive discovery.  For example, Filippatos has not prepared any interrogatories.  Kovalenko Decl. ¶ 23.  Of note, the failure to prepare interrogatories is flatly inconsistent with Mr. Rahman's statement to the Honorable Judge Hixson at a hearing on February 15, 2024, that Filippatos would serve interrogatories within a week or so after the hearing.  Kovalenko Decl. ¶ 23 & Attach. D (Tr. Feb. 15, 2024 Hr'g) at 6:4–7.  Moreover, despite receiving Defendants' responses to requests for production on June 19, 2024, Filippatos has failed to conduct any meaningful follow-up with Defendants regarding relevant discovery they withheld.  Kovalenko Decl. ¶ 23.  Filippatos also refused to reach out to potential fact witnesses who Plaintiff had identified as individuals who should have knowledge of facts and circumstances supporting Plaintiff's various claims.  Kovalenko Decl. ¶ 23.  Further, to Plaintiff's knowledge, Filippatos never attempted to set up a meet and confer with Defendants regarding their withholding of relevant information and materials based on broad claims of privilege, work-product and confidentiality

---

[15] Following Plaintiff's termination of Filippatos, Plaintiff sent an email on January 24, 2025, responding to Filippatos's email claiming Plaintiff did not have cause to terminate Filippatos as counsel.  Kovalenko Decl. ¶¶ 6, 28 & Attach. C (Termination Email and Response) at 1–2.  In this January 24 response, Plaintiff described other instances of Filippatos's unethical as well as contradictory statements and behavior and expressly invited Filippatos to "provide me with a single example where you or anyone at your firm has researched, prepared, and first sent a remotely close to final substantive brief as opposed to merely providing back-end edits to briefs that I individually researched and drafted."  Kovalenko Decl. ¶¶ 6, 28 (emphasis in original email from Plaintiff to Filippatos) & Attach. C (Termination Email and Response) at 1.  Despite sending a subsequent response on January 28, 2025, Filippatos did not even attempt to offer a single example of Filippatos researching, preparing, and first sending to me a remotely close to final substantive brief.  Kovalenko Decl. ¶ 28.

asserted in Defendants' original privilege log. Kovalenko Decl. ¶ 24. Filippatos had almost half a year to follow up with Defendants regarding their privilege log as Filippatos sent a letter—that was researched and drafted by Plaintiff—to Defendants on or around June 12, 2024. Kovalenko Decl. ¶ 24. To Plaintiff's knowledge, Filippatos never once followed up with Defendants regarding these privilege issues, thereby enabling Defendants to serve a modified second privilege log in the end of October 2024. Kovalenko Decl. ¶ 24. Due to Filippatos' extreme laxity in pursuing discovery issues, Plaintiff has been deprived of the opportunity to obtain potentially favorable responsive documents withheld by Defendants.

- Fourth, Plaintiff has been responsible for drafting lesser filings, including: (1) stipulations or requests to extend deadlines in the case; (2) Plaintiff's portion of the joint discovery letter regarding Kirkland's efforts to compel complete responses to discovery requests, Dkt. No. 139; and (3) the overwhelming bulk of Plaintiff's portion of the joint case management statement, Dkt. No. 149. Kovalenko Decl. ¶ 21.

Accordingly, Filippatos' extreme laxity and disinterest in providing the type of litigation services that Plaintiff engaged them to provide (and that any reasonable attorney would render) provides a compelling basis for the Court to conclude that Plaintiff terminated Filippatos for cause. *See, e.g.*, *Garcia*, 2004 WL 1636982, at *6 (listing examples of attorney misconduct warranting termination for cause including: (1) "an attorney's failure to perform under the employment contract; (2) his lack of diligence in so performing; (3) his lack of skill or care in so performing; . . . and (8) his loss of the client's trust and confidence."); *Schreiber v. Friedman*, No. 15CV6861CBAJO, 2020 WL 5549082, at *10 (E.D.N.Y. Sept. 16, 2020) (stating under New York case law termination for cause "means that the attorney has engaged in some kind of misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise improperly handled the case"). Allowing Filippatos to receive any public credit for a case that they did not attempt to advance on behalf of Plaintiff would be grossly inequitable and would reward extreme

1    professional indolence and neglect.[16]

2            **5.      Filippatos' Abusive and Unprofessional Conduct Constituted an**
3                      **Additional Independent Basis to Terminate for Cause**

4            Adding insult to injury, Filippatos has also treated Plaintiff with disrespect and disdain at

5    multiple points throughout its purported representation of Plaintiff. Such unprofessional conduct

6    is exemplified by Filippatos personally insulting Plaintiff, including by insulting her intelligence

7    as well screaming and cursing at Plaintiff during calls and the only time they met in-person.

8    Kovalenko Decl. ¶ 25. Filippatos' contemptuous and demoralizing treatment of Plaintiff is further

9    reflected in written correspondence between Plaintiff and Filippatos, which includes two

10   instances in which Filippatos apologized to Plaintiff for unprofessional behavior.     In January

11   2024, Plaintiff sent an email to Mr. Rahman stating that she did not appreciate being demeaned

12   and belittled during a phone call. Saliently, in response, Mr. Rahman admitted that his treatment

13   of Plaintiff was inappropriate and apologized, stating: "I apologize if I made you feel belittled or

14   demeaned. I let my frustration get the best of me, and for that I am sorry." Kovalenko Decl. ¶

15   25. Filippatos's abusive treatment of Plaintiff continued to rear its ugly head during the

16   November 22, 2024 mediation. Kovalenko Decl. ¶ 25. ████████████████████████

17   ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ██████████████████████████████ Kovalenko Decl. ¶ 25. Although Mr. Filippatos

20   has tried to dilute his unconscionable conduct at mediation, he still apologized to Plaintiff for his

21   aggressive behavior at mediation and affirmed this in recent email correspondence. The repeated

22   unprofessional and abusive conduct by Filippatos—a law firm that claims to "combine[] decades

23   of legal experience with patience and compassion"—is the epitome of professional misconduct

24   warranting for-cause termination. *E.g., Holcombe v. Matsiborchuk*, 747 Fed. App'x 875, 877 (2d

25   Cir. 2018) (stating "verbal abuse of a client can constitute misconduct" warranting discharge for

---

26

27   [16] Filippatos's undue laxity in advancing Plaintiff's claims does not take into account the significant legal work that Plaintiff performed before retaining Filippatos. This included, among

28   other things, researching, analyzing and preparing brief responding to Defendants' initial 10 or so motions attacking the complaint and preparing the complaint.

1    cause); *see also Garcia*, 2004 WL 1636982, at *6 (citing factors such as "indulging in . . .

2    unprofessional conduct while handling the client's affairs; . . . venting of personal or economic

3    hostility toward the client; and . . . loss of the client's trust and confidence" as constituting just

4    cause for termination); Kovalenko Decl. ¶ 29.

5        In fact, a court has found that arguably less abusive and hostile treatment of a client has

6    provided "substantial support" for the contention that a lawyer was discharged for cause because

7    they treated their client "in a rude and obnoxious manner." *Marten v. BOCES, Bd. of Co-op.*

8    *Educ. Servs.*, No. 97 CIV 0684 (DC), 1999 WL 294801, at *1 (S.D.N.Y. May 11, 1999)

9    (referencing email in which attorney complained about plaintiff and her husband cancelling

10   weekend meeting, stating "You [sic] husband said you cannot come this weekend because you

11   have 3 children. I presume you will have three children for quite a while"); *id.* (also referencing

12   email in which attorney threatened to withdraw as counsel and assert attorney lien on case "[i]f I

13   do not have your cooperation by the end of this weekend").

14       **C.    The Court Should Require Filippatos to Promptly Provide Plaintiff with Her**

15           **Client File Because Litigation in This Action Is Ongoing**

16       The Court should require Filippatos to promptly provide Plaintiff with her client file

17   because litigation in this action is ongoing. *See, e.g.*, *Lat Long Infrastructure, LLC v. Gold Crest*

18   *Cap., LLC*, No. 23-CV-955 (NRM)(MMH), 2024 WL 5118606, at *1 (E.D.N.Y. Jan. 25, 2024)

19   (discussing court directive requiring former counsel to provide case file to plaintiffs); *see also*

20   *Doe v. City of Modesto*, No. 1:12-cv-1255 LJO GSA, 2013 WL 4828706, at *3 (E.D. Cal. Sept.

21   6, 2013) (directing plaintiff's former attorney "to provide Plaintiff with a copy of her complete

22   case file" within a week of order). Here, Plaintiff has requested her client file from Filippatos

23   numerous times, including on January 24, 2025, as well as prior to Plaintiff's termination of

24   Filippatos for cause. Kovalenko Decl. ¶ 25. When Plaintiff requested her client file from

25   Filippatos on January 24, 2025, she provided the above-cited authority to support her request.

26   Kovalenko Decl. ¶ 25. In Filippatos's January 28, 2025 response to this January 24 request, Mr.

27   Filippatos refused to provide Plaintiff with her client file. Kovalenko Decl. ¶ 25.

28                            **CONCLUSION**

PLAINTIFF'S MOTION TO NOTICE TERMINATION OF FILIPPATOS PLLC FOR CAUSE,
NO. 4:22-CV-05990-HSG (TSH)                                                    21

In conclusion, Plaintiff respectfully requests the Court enter notice of termination of Filippatos for cause, order Filippatos to promptly provide Plaintiff with her client file, and order that any additional briefing related to this motion or to Plaintiff's termination of Filippatos be submitted *ex parte* to avoid prejudicing Plaintiff due to the ongoing status of her lawsuit, and grant any other and further relief as the Court deems just and proper.

Respectfully submitted this 29th day of January 2025.

By:  /s/ *Zoya Kovalenko*

Zoya Kovalenko (Cal. SBN 338624)
13221 Oakland Hills Blvd., Apt. 206
Germantown, MD 20874
Tel.: 678 559 4682
zoyavk@outlook.com
Plaintiff Zoya Kovalenko