1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Thomas S. Hixson, Magistrate Judge

4

5   KOVALENKO,                     )
                                   )
6            Plaintiff,            )
                                   )
7   vs.                            )   No. C 22-05990-HSG
                                   )
8   KIRKLAND AND ELLIS, LLP,       )
                                   )
9            Defendant.            )
    _____)

10

11                                 Oakland, California
                                   Thursday, February 15, 2024
12

13    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 10:08 - 10:55 = 45 MINUTES
14

15  APPEARANCES:

16  For Plaintiff:
                                   Filippatos, PLLC
17                                 199 Main Street, Suite 800
                                   White Plains, New York 10601
18                         BY:     TANVIR H. RAHMAN, ESQ.

19  For Defendant:
                                   Orrick, Herrington &
20                                   Sutcliffe, LLP
                                   1000 Marsh Road
21                                 Menlo Park, California 94025
                           BY:     JOSEPH CHARLES LIBURT, ESQ.

22

23

24

25              (APPEARANCES CONTINUED ON NEXT PAGE)

2

1 <u>APPEARANCES</u>:  (Cont'd.)

2 For Defendant:

                          Orrick, Herrington &
3                           Sutcliffe
                          355 South Grand Avenue
4                         Suite 2700
                          Los Angeles, California 90071
5                    BY:  KATE ELSA JUVINALL, ESQ.

6 Transcribed by:          Echo Reporting, Inc.
                          Contracted Court Reporter/
7                         Transcriber
                          echoreporting@yahoo.com
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Thursday, February 15, 2024</u>                    <u>10:08 p.m.</u>

2                      P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4          THE CLERK:  Okay, everyone.  Good morning.  We are

5  here in Civil Action 22-5990, Kovalenko versus Kirkland and

6  Ellis, LLP, et al.  The Honorable Thomas S. Hixson

7  presiding.

8      Counsel, please state your appearances for the record.

9  Let's start with Plaintiff's counsel.

10         MR. RAHMAN:  Good morning.  For the Plaintiff,

11  this is Tanvir Rahman of Filippatos, PLLC.

12         THE COURT:  Good morning.

13         MR. RAHMAN:  Good morning.

14         MR. LIBURT:  And good morning, your Honor.  For

15  the Defendants, Kirkland and Ellis, LLP, as well as the

16  remaining individual Defendants and remaining PC's, Joe

17  Liburt on behalf of all of them.

18         THE COURT:  Good morning.

19         MS. JUVINALL:  Good morning, your Honor.  This is

20  Kate  Juvinall from Orrick on behalf of the Defendants as

21  well.

22         THE COURT:  Good morning.

23         THE CLERK:  And, Judge, I have two reporters on

24  the line listing as well.

25         THE COURT:  Okay.  Thank you for letting me know.

4

1       Before we turn to the subpoena, I have a question about

2   the overall state of discovery in this matter.  The

3   subpoenas are directed to Plaintiff's former employers.

4   They won't have information about what happened during

5   Plaintiff's employment at Kirkland and Ellis or whether she

6   performed well or poorly at Kirkland or whether there was

7   discrimination or retaliation at Kirkland, and what I didn't

8   get a sense from the parties is the state of discovery into

9   the core relevant allegations, namely, what happened at

10  Kirkland and the firm's reasons for its actions or whether

11  there are disputes about those actions.  And maybe the

12  reason why I didn't get a sense of that is just because the

13  parties didn't brief it because the briefing was about the

14  subpoenas.  But I want to make sure that the focus of

15  discovery is in the correct place.

16      So, let me first turn to defense counsel.  Can you give

17  me an update on Kirkland's discovery efforts focused on the

18  events that happened at Kirkland?

19          MR. LIBURT:  Yes, your Honor.  We have propounded

20  document requests.  We have not gotten back anything that

21  really relates to the core allegations in -- in the lawsuit.

22  No depositions have been taken yet.  We have -- there's a --

23  a motion to dismiss that is pending before Judge Gilliam

24  that addresses many of the claims in the case, but in terms

25  of discovery, what the Defendants have done is one round of

5

1  -- one -- one set of requests for documents which basically

2  for the most part tracks the allegations in the complaint

3  with some additional categories and these two prior employer

4  subpoenas.

5          THE COURT:  I see.  And I think you attached the

6  Plaintiff's discovery responses to your opposition brief

7  indicating --

8          MR. LIBURT:  Yes.

9          THE COURT:  -- that she had declined to produce

10 anything.  Is that correct?

11         MR. LIBURT:  Yes, that's correct.

12         THE COURT:  And are you planning to raise that

13 issue in a joint discovery letter brief?

14         MR. LIBURT:  Yes, we are.

15         THE COURT:  I see.  Well, then let me turn to

16 Plaintiff's counsel.

17     What discovery have you taken or attempted to take

18 about the core allegations concerning the Plaintiff's time

19 at Kirkland?

20         MR. RAHMAN:  Your Honor, as you might know, you

21 know, my firm somewhat recently, you know, was retained on

22 this matter, a couple of months ago.  And since then, we've

23 -- you know, we've had to -- to oppose the motion to dismiss

24 that the Defendant just mentioned, and we had to brief this

25 motion to compel.

6

1       But, in short, you know, we've been working on -- we've

2   met and conferred with opposing counsel on -- on

3   Plaintiff's, you know, responses for at the time pro se.  We

4   are in the midst of propounding our own requests and

5   interrogatories which we intend to issue in the next week or

6   so, but we haven't I guess formally taken any -- or worked

7   with any -- any offensive discovery.  Again, I've been --

8   I've been trying to catch up on the matter.  I know there

9   were -- quite a bit of discovery responses were propounded.

10  I'm trying to get -- get ahold of sort of what's been

11  produced and what hasn't been produced.

12      There has been some production.  So, I'm not quite sure

13  why defense counsel is saying there's been no production.

14  There has been some production.  But there's obviously going

15  to be more production.  We're not -- we're not saying that

16  that was it.  So, I'm trying to work with my clients on --

17  on seeing what's -- what's out there, what she has, what we

18  need to produce and also what we need to request from the

19  Defendants.

20          THE COURT:  I see.  Well, I appreciate the update

21  from both sides.  I guess that still leaves me wondering why

22  there's a major discovery fight about prior employment

23  records which are at best marginally relevant, yet there

24  seems to have been very little discovery into the core

25  allegations that seem to be most relevant to this case.

7

1    But, in any event, we can turn to the subpoenas to Fish

2    and to Paul Hastings.

3    Let me pose a question to Kirkland.  Category one --

4    there were six categories, document categories, in the

5    subpoenas.  Category one looks very broad.  It's -- it

6    includes things like garnishment notices or her letter

7    accepting a job offer or interview notes and applicant

8    evaluations, which presumably would be favorable to her

9    because they both gave her a job.

10    Why would things like garnishment notices or offer

11    letters or acceptance letters or interview notes or

12    applicant evaluations, why would those be relevant?

13            MR. LIBURT:  Well, your Honor, those -- those -- I

14    can certainly address category one at some length.  I was

15    actually planning to focus my -- my comments on that, but

16    specifically, those things go to the terms and conditions of

17    her prior employment.  They go specifically to things like

18    what was -- what was the job that she had there.  So, for

19    example, Kirkland hired her as an IP litigation associate,

20    but she didn't spend all of her time in -- at Fish and at

21    Paul Hastings doing IP litigation.  She spent a significant

22    portion of her time doing things in front of the U.S. Patent

23    Office and doing something different.  I'm not saying all of

24    it was, but there is a significant portion that didn't

25    overlap with what she was being hired to do.

8

1    And, so, because Plaintiff has specifically alleged in

2 the complaint that it was discriminatory based on her gender

3 to place her in the Class of 2017 rather than 2016, among

4 other things, these types of documents are relevant to

5 showing, well, what was she hired to do and what did she

6 actually do at these prior employers, and that -- that

7 relates to legitimate reasons why Kirkland placed her in the

8 Class of 2017 rather than 2016 as opposed to her claim that

9 it was because of her gender.

10    So, and the -- you know, the interview notes and

11 evaluations from prior employers, again, also go to what

12 representations was she making to them about her experience.

13 As -- as you'll read -- as you read the complaint in this

14 case, there -- the complaint has -- extensively has -- has

15 extensive allegations comparing the Plaintiff's

16 qualifications and performance to what she characterizes as

17 comparator male associates at Kirkland.  And, so, the -- the

18 -- the documents from prior employers that are relevant to

19 showing, well, what were her qualifications, what was her

20 experience, what was her performance, et cetera, are

21 directly relevant to her claim that she was more qualified

22 than and had better experience than the male associates at

23 Kirkland that she is expressly comparing herself to.

24    So, I -- I can -- if you'd like, I can certainly

25 address more broadly subpoena category one or as you wish,

9

1  your Honor.

2          THE COURT:  Okay.  Well, why don't you go ahead

3  and do that.  And, in particular, my concern is that

4  documents that Kirkland wasn't aware of and that Kirkland

5  still isn't aware of couldn't have provided -- been any

6  basis for its decision about what class to put her in or how

7  -- or what else to do.  The firm could only have acted based

8  on information that was known to it.

9      So, it sounds like you've got some remarks you would

10  like to make about category number one.  So, why don't you

11  go ahead and do that, and if you can make sure to address my

12  concern in the course of remarks, that would be helpful.

13          MR. LIBURT:  I would be happy to do that, your

14  Honor.  Thank you.

15      So, as to category one, so -- so, as noted, so, before

16  Kirkland, Plaintiff worked at Fish and Richardson for less

17  than two years and at Paul Hastings for two years.  She came

18  to Kirkland as a mid-level IP litigation associated and was

19  terminated for -- for poor performance less than a year

20  later.

21      The performance issues that Kirkland noted were varied,

22  but they included writing, analysis, judgment, difficulty

23  communicating her analysis, substantial rewriting of work

24  product, time management issues, inability to meet

25  deadlines, preparation, unusual hours, and -- and more.

1    Plaintiff -- now, Plaintiff disputes all of this,
2 including the reason for her termination.  And, so, the --
3 the former employer subpoenas seek documents that are
4 directly relevant both to Plaintiff's claims and Kirkland's
5 defenses.  While we have cited in our opposition cases that
6 say generally this -- personnel file documents are
7 discoverable in this type of case, there are many specific
8 reasons why the subpoenaed documents are directly relevant
9 to the claims and defenses here that go beyond a general
10 proposition.
11    So, first, as to her discrimination, retaliation, and
12 harassment claims, the subpoenaed documents from her two
13 recent prior employers are relevant.  Plaintiff has placed
14 in issue her skills, experience, and performance.  Her
15 performance evaluation and termination documents from recent
16 prior employers will reflect the types of work she performed
17 and her skills, experience, and performance.
18    Moreover, any specific criticisms of Plaintiff's
19 performance at prior recent employers are relevant to
20 specific criticisms from Kirkland, again, whether Kirkland
21 knew about it or not.
22    For example, if her prior employers commented on poor
23 writing, poor analysis, poor judgment, not meeting
24 deadlines, unreliability, et cetera, that's directly
25 relevant to similar criticisms from Kirkland.  The

11

1  applicable law for the discrimination and retaliation claims

2  means that Plaintiff is necessarily alleging that Kirkland's

3  stated reason for her termination, poor performance, was a

4  pretext and that discrimination and retaliation were the

5  real reasons.

6      But prior recent employers, having made similar

7  criticisms of her performance and/or terminated her poor

8  performance, is -- is probative of a central issue in this

9  case.  What was Kirkland's reason for terminating her.

10      Similarly, if Plaintiff's two recent prior employers

11  noted her unusual behavior, such as working strange hours,

12  being unreachable or disappearing during a trial, that would

13  be relevant to Kirkland's observations of the same or

14  similar issues.  And, again, she alleges she was more

15  qualified than specific male Kirkland associates whom she

16  discusses at length in her complaint.  Her work history and

17  experience, including her performance in termination

18  documents, are directly relevant to her qualifications, and

19  in comparison to male associates that she's alleging are

20  comparators.

21      Regarding her Equal Pay Act claim, her skills, effort,

22  and responsibilities at prior employers are squarely

23  relevant, again, including the allegation that Kirkland

24  discriminated against her by hiring her as a 2017 rather

25  than 2016 class member.

12

1    As I mentioned, and I won't repeat it, but it's a

2 legitimate reason if her work experience, as we believe, was

3 not entirely congruent for all of those four years with what

4 Kirkland was hiring her to do.  So, that's a legitimate

5 reason.

6    The complaint tries at some length to compare

7 Plaintiffs to several male associates, and she specifically

8 alleges that she and those male associates' jobs "involved

9 similar levels of skill, i.e., similar levels of experience,

10 ability, education and training".  That's paragraph 63 of

11 the amended complaint.

12    Since Plaintiff is comparing herself to other fourth or

13 fifth-year associates in these respects, she can't prove and

14 Kirkland cannot fairly defend her allegations of similar

15 skill, experience, ability and training without obtaining

16 discovery of that from her first two employers covering her

17 first four years as an attorney before coming to Kirkland.

18    The subpoenaed documents are directly relevant to

19 showing whether she had similar levels of skill, experience,

20 ability and training as these male associates and are

21 plainly relevant to her claims of disparate treatment in

22 various respects.

23         THE COURT:  But for the male comparators, unless

24 you subpoena their prior employers, Kirkland wouldn't have

25 similar information about what they did before the came to

1    -- to Kirkland.  And I guess I'm still struggling with his

2    question of whether Kirkland treated her fairly or unfairly

3    as compared to male employees would seem to depend on what

4    the firm knew about her and the male comparators.  The firm

5    didn't have any of this information about her prior

6    employers.  Nor did her firm have information about the male

7    comparators at their prior firms, if there were any prior

8    firms.

9         So, it would seem like the discrimination claim would

10   have to hinge on information that was known to Kirkland.

11   So, maybe you could speak to that issue.

12            MR. LIBURT:  Yes.  Well, for many of the male

13   associates, they -- they started at Kirkland.  So, there

14   aren't any prior employers.  I can't -- I can't say  that

15   that's true for all of them, but I believe for most of them

16   that's the case.  But it -- where -- Kirkland is not limited

17   to what it knew because it's -- it's in -- the law regarding

18   an Equal Pay Act claim, a foundational -- a foundation that

19   Plaintiff needs to establish, and it's her burden to

20   establish that -- that these comparators did have similar

21   skills, efforts, and -- and responsibility.  And that's just

22   part of the claim.  And she was -- she was only working at

23   Kirkland for seven months.  She was -- she was terminated

24   after 10, but three of that was on a Bar leave.  So, she had

25   about seven months of actual work there.

14

1     And, so, it's -- you know, Kirkland -- their -- the
2 central dispute is Plaintiff saying she wonderful and her
3 performance was excellent, as she says in her complaint
4 repeatedly.  Kirkland disagrees with that assessment.
5     Plaintiff has the burden of showing that she had
6 similar skills, experience, et cetera, with these other
7 associates.  Well, the only way that Kirkland can reliably
8 find out what she was doing for the first four years of her
9 career as a lawyer is to get that from prior employers.
10 And, so, it doesn't -- it doesn't matter that Kirkland
11 didn't know it at the time.  It's -- it's necessary to the
12 -- the claims that she is bringing and to Kirkland's ability
13 to fairly have the fair and due process consistent
14 opportunity to defend itself to have discovery of matters
15 that bear on her burden and on Kirkland's defenses, whether
16 -- whether it knew it or not.
17     This is not a unique -- it's not a unique situation
18 where a Defendant is entitled to discovery of things that it
19 didn't know at the time.  For example, I mean, there was all
20 kinds of things that defendants get discovery of, for
21 example, medical and psychological information.  But the
22 mere fact that it doesn't know certain things is -- does not
23 mean that it can't -- it's not entitled to discovery of it.
24     If I may address the -- in relation to category one,
25 the defamation claim, the -- these personnel file documents

15

1  are directly relevant to that claim.  Plaintiff has
2  specifically alleged that Defendants damaged her
3  professional reputation by publishing statements regarding
4  her performance and their evaluations.  As noted in our
5  brief, she's also seeking reputational damages on her
6  discrimination, retaliation and harassment claims.
7       But she alleges that Kirkland's evaluations of her
8  performance were "tantamount to an assassination on
9  Plaintiff's professional reputation and livelihood."  That's
10  paragraph 13 of her complaint.  Whether Plaintiff
11  experienced similar assassinations from her prior employers
12  is directly relevant to her claim that Kirkland harmed her
13  professional reputation and livelihood.
14       Evidence of Plaintiff's preexisting professional
15  reputation is necessary to assess whether anything Kirkland
16  did harmed her professional reputation.  And the most
17  relevant documents --
18            THE COURT:  Let me ask you about that.  When she
19  applies to other law firms for jobs and she alleges that she
20  has been unable to get an interview, those -- those other
21  firms aren't going to know what's in her personnel records
22  at Fisher, Paul Hastings because the records are
23  confidential.
24       So, how would confidential personnel records that the
25  firms are declining to turn over to you in discovery be

16

1  evidence of her professional reputation if people don't know

2  about them?

3            MR. LIBURT:  Well, because as a junior and mid-

4  level associate, Plaintiff's professional reputation is

5  mainly with her prior firms, and her prior firms are aware

6  of her performance.  So -- so, she's claiming that Kirkland

7  is harming her reputation and that she has an excellent

8  reputation.  So, Kirkland is entitled to discovery of, Well,

9  what is her professional reputation with her prior firms,

10 which are the -- part of the legal profession that is

11 plainly most likely to be aware of what her profession is,

12 because they're the ones who employed her and evaluated her.

13     So, the most relevant documents bearing on her

14 preexisting professional reputation are from her two prior

15 employers, and that would be most obviously performance

16 evaluation documents and termination documents.

17            THE COURT:  Is your theory of causation that when

18 she applies to a new law firm, that firm will call up Fish

19 or Paul Hastings and will say --

20            UNIDENTIFIED SPEAKER:  Judge --

21            THE COURT:  -- and will say they're evaluating

22 the --

23            UNIDENTIFIED SPEAKER:  We can barely hear you,

24 Judge.

25            THE COURT:  Oh, sorry.  Is that any better?

17

1          UNIDENTIFIED SPEAKER:  A little bit.

2          THE COURT:  Is the idea that when she applies to a

3  new law firm for a job, that the new law firm would call up

4  Fish or Paul Hastings and say, you know, is she any good?

5  And they would provide the new firm information from her

6  personnel file?

7          MR. LIBURT:  I -- oh, I don't know if they would

8  do that or not, but it doesn't -- it doesn't -- it doesn't

9  matter whether that's what would happen because she's

10  claiming in this case that -- that she has an excellent

11  professional reputation, and Kirkland is entitled to test

12  that by obtaining discovery of, well, what is -- what was

13  her reputation before Kirkland allegedly harmed it?

14          THE COURT:  I see.  Okay.  Well, I would like to

15  give Plaintiffs some time to respond.  We're still dealing

16  with category one right now.  We'll turn to the other

17  categories later.

18     But let me hear from Plaintiff's counsel for your

19  arguments with respect to category one.

20          MR. RAHMAN:  Thanks, your Honor.  No, I think your

21  Honor nailed it on the head in terms of, you know, how the

22  relevant issues are, what Kirkland knew at the time it made

23  decisions, not any -- any preexisting decisions from prior

24  employers who we're not sure whether they're comparable or

25  actually what kind of work she might have done for them.

18

1  We're not sure what -- how they evaluated performance.
2  Basically, if -- if we did introduce, you know, these prior
3  records, we'd have to introduce -- it would essentially
4  create a -- a trial within a trial, because then we would
5  have to obviously respond to criticisms, why was she
6  criticized, was there -- what she's criticized about, were
7  there any underlying reasons for the criticisms that may not
8  be -- may put that in question.
9      So, it just opens up a huge can of worms so to speak.
10 And -- and, again, I'm -- I just don't see the relevancy in
11 any of the adverse decisions in this case what -- you know,
12 what occurred prior -- prior to her joining Kirkland and
13 Ellis.
14     And -- and, essentially, you know, she's -- she's
15 claiming she's a better -- better performer than most --
16 most comparators while she's working there.  She's not
17 claiming that she had -- you know, did more trials than
18 them.  She's -- she's just comparing what she did at -- at
19 Kirkland, the work she did at Kirkland compared to the work
20 that other male comparators did at Kirkland.  You know, and
21 -- and, frankly, you know, again, there was no -- it wasn't
22 as if Kirkland asked her when she joined, Hey, what did you
23 do at Fish and Richardson?  What did you do at -- at
24 (indiscernible), and based on that, We're going to pay you
25 this amount or we're going to classify you as the class of

1  this year.  That wasn't -- that didn't happen, and we're not

2  hearing any evidence that that took place or that was ever

3  considered.

4      And, you know, I'll just stop there.  If your Honor has

5  any questions that you want me to answer, I can certainly do

6  that, and I think we -- we do go into detail about these

7  issues in our -- in our briefs.

8          THE COURT:  I see.  As far as the six categories,

9  four and five are a little bit similar to one.  So, let me

10  turn to Kirkland if you would like to address categories

11  four and five.

12          MR. LIBURT:  Yes, your Honor.  So -- so, I would

13  -- I would like to mention, your Honor, if I might just one

14  last thing that, you know, throughout her complaint,

15  Plaintiff alleges that the performance evaluations by

16  Kirkland were malicious, motivated by hatred or ill will,

17  and she even goes so far as to allege that no Defendant had

18  a good faith belief in the truth of any of the statements

19  included in their evaluations.  That's paragraph 207.

20      And, so, I just want to say that whether prior

21  employers had any similar criticisms to any of the

22  statements in the Kirkland evaluations is directly relevant

23  to her allegations that Kirkland acted with malice or hatred

24  or ill will or had no good faith belief.

25      On -- on categories four and five, comp and benefits,

20

1  so, Plaintiff alleges that she has -- that Kirkland has

2  harmed her future earnings potential.  And, as the Gregosian

3  case says, it's -- you know, what -- what -- what happened

4  at a prior employer is relevant to earning potential, you

5  know, what did she do, how did she perform, is -- is

6  relevant to her future prospect.  It's not as if her future

7  prospects are entirely divorced from a significant part of

8  her career in terms of what skills and experiences she has.

9      So, the Fish and Paul Hastings documents are squarely

10  relevant to her allegation of harmed future earning

11  potential.

12      It's -- it's also relevant to she's alleged financial

13  and emotional distress and physical injuries.  And, so, if

14  there were -- for example, if there were claims of -- if she

15  had disability claims at prior employers for ongoing

16  conditions, those would be relevant to her future earning

17  potential as well as her claims that it was Kirkland that

18  caused whatever symptoms she's alleging, and she alleges

19  certain symptoms in the complaint.  So -- so, the benefits

20  -- the benefits documents would -- would show that and also,

21  of course, her -- her pay and prior employers is relevant to

22  her future earning potential as -- as well.

23          THE COURT:  I have a question about the emotional

24  distress damages.  From the briefing and from the second

25  amended complaint, it was hard for me to figure out what

21

1  exactly the alleged damages are.  I couldn't tell, for
2  example, if she alleges that the discrimination or the
3  alleged discrimination and retaliation and defamation caused
4  her distress, which is something that plaintiffs in
5  employment cases often allege, or whether it was something
6  more serious than that that amounted or a disability or
7  required medical treatment, and Kirkland's desire to get
8  prior medical documents seems like it would be stronger or
9  more justified if the emotional distress claim actually
10 relates to a medical condition or something similar to it,
11 but it would seem to be more attenuated if it's -- she's
12 just claiming the ordinary level of distress that a
13 plaintiff who's suffered an adverse employment action would
14 experience.

15      Do you have any insight into what type of distress -- I
16 mean, maybe you don't if you haven't deposed her, but do you
17 have any insight into the level or degree of emotional
18 distress that the Plaintiff is claiming?

19           MR. LIBURT:  Well, yes, your Honor.  She does
20 specifically allege severe emotional distress in -- in
21 various places.  She alleges severe emotional, psychological
22 and physical harm and injury.  And if you look at the
23 complaint, paragraphs 206 and 222, she's -- so, she's -- she
24 uses the word "severe".  She's clearly not claiming garden
25 variety, and the other reason you know that is because she

1 has an intentional infliction of an emotional distress

2 claim.

3      So, it's -- it's -- as a matter of law, in order to be

4 asserting an intentional infliction of emotional distress

5 claim, she is necessarily alleging severe and ongoing

6 emotional distress.

7      So, this -- you know, this is not -- this is simply not

8 as pled, a just garden variety, you know, normal run of the

9 mill distress.  She's gone out of her way to allege both --

10 to assert an IIED claim and to specifically allege severe

11 emotional distress.  And she -- so, that's the answer.

12            THE COURT:  Okay.  On categories four and five,

13 let me hear from Plaintiff's counsel.  And if you would like

14 to respond with any information that you may have about the

15 nature of the Plaintiff's emotional distress claim, that

16 would be helpful.

17            MR. RAHMAN:  Sure.  My understanding is that

18 Plaintiff has been in treatment, in terms of -- regarding

19 her emotional health, I believe she was seeing a therapist.

20 I'm not aware of any kind of medical diagnosis or anything

21 severe in that -- in that sense.  And, you know, typically,

22 while there is -- you know, I understand there is some basis

23 for an employer to, you know, delve into or ask about, you

24 know, other stressors, again, that's usually done through a

25 deposition or maybe a discovery request, not usually fishing

23

1 through prior -- prior employers' records, especially where
2 there's no basis to believe or allege that there was any
3 kind of disability claim or anything of that nature.
4      In terms of compensation, I mean, I don't -- I don't
5 see how whatever information Kirk -- I guess Kirkland was
6 asking for what she was paid at -- at the employers, which
7 we could certainly provide through a W-2 form.  That
8 shouldn't be an issue.
9      But then when you get into other issues about, you
10 know, trying to find out about, you know, comparing her pay
11 at that -- those employers to other individuals there,
12 again, we're just creating this whole separate side show
13 which, again, if the issue is how much was she paid prior to
14 -- prior to Kirkland, was she paid at -- was she paid at
15 Kirkland and what is her earning potential, that -- that
16 potentially will be provided through a W-2 form.  It doesn't
17 require, you know, a subpoena from prior -- from prior
18 employer.  So, that's how I'd respond to those, those two
19 requests.  (Telephonic glitch.)
20          THE COURT:  And then let me turn to Kirkland for
21 the -- the remaining categories, two of which are the
22 investigations, and then there's the medical documents.  So,
23 categories two, three, and six.
24          MR. LIBURT:  Thank you, your Honor.
25      Yeah, I would note that we did serve an interrogatory

24

1  asking about treatment, and we got back nothing, but where I

2  -- I strongly disagree with counsel's argument that somehow

3  we are limited to obtaining information only through the

4  Plaintiff as opposed to obtaining information from neutral

5  third parties, and as to -- you know, there's -- there's a

6  -- there's a serious due process issue with allowing

7  Plaintiff to make various assertions that she's making and

8  Kirkland's -- you know, if Kirkland is not allowed to engage

9  in third party discovery to test these assertions.

10       As to, let's see, category two, so, that's leaves of

11  absence, medical restrictions, disabilities, et cetera, I

12  think that's similar to what we've just been discussing,

13  your Honor.  She -- again, she's claiming severe emotional,

14  psychological, physical harm and injury.  And to the extent

15  that such documents would show alternative stressors or

16  preexisting conditions that would impact emotional distress

17  or physical harm or injury, Kirkland's entitled to those.

18       I mean, I would note that it's all -- you know, these

19  aren't -- you know, we have not yet crossed the bridge of --

20  of subpoenaing actual medical providers here, and I -- I

21  heard -- I think I heard counsel say that he's not aware of

22  any.  But, regardless, you know, this is -- this is -- you

23  know, this is a prior -- these are prior employers.

24       So, other -- frankly, other than having benefits

25  documents and potentially leave or -- or leave requests

1  relating to disabilities, you know, it's presumably a

2  limited universe.  We don't know, but so that's category

3  two.

4      Category -- so, categories three and six -- so, that's

5  basically complaints, investigations or litigation against

6  former employers, and, to be clear, Kirkland's not seeking

7  privileged documents from -- from these prior inquiries.

8  For example, we're not seeking -- we're not seeking work

9  product on cases that Plaintiff worked on.  I just want to

10 make that very clear.  That's not what we're asking for.

11     What we're asking for is basically whether Plaintiff

12 made similar complaints to what's in the lawsuit against

13 Kirkland, was she claiming discrimination or retaliation or

14 harassment or intentional infliction of emotional distress

15 or defamation, did she make such complaints, were there any

16 investigations, what were the outcome of the investigations,

17 did she -- did she sue any prior employers or threaten to

18 sue prior employers relating to similar claims and that such

19 -- such evidence would -- although -- would potentially be

20 admissible under Federal Rule of Evidence 404(b) and/or 406,

21 but, of course, in discovery, admissibility is not the test,

22 but that's where it would ultimately be going, but this is

23 discovery, and I'm aware -- we're aware that Plaintiff

24 argues that this is nothing but character evidence.  It's

25 not character evidence.  It's for the reasons that we  said

26

1   that's not character evidence.  Although I do note that

2   Plaintiff has actually placed her character in issue because

3   she actually alleges harm to her character in paragraphs 265

4   and 291.

5       So -- so, you know, she does that.  But, like I said,

6   this is -- this is 404(b) and 406 evidence rather than

7   inadmissible character evidence.

8           THE COURT:  One question I have about topics -- or

9   categories three and six is that there doesn't --

10          MR. LIBURT:  Yes.

11          THE COURT:  -- seem to be a subject matter

12  limitation.  So, just to make up some hypotheticals, if the

13  Plaintiff had a divorce proceeding that the employer knew

14  about or had information about or if she filed a complaint

15  with OSHA that the floor was slippery, it would seem like

16  the subpoenas would sweep in those things as well or really

17  any complaint about anything.  Is that right?

18          MR. LIBURT:  That is accurate, your Honor.  As

19  drafted, these categories would sweep that in.  You know, as

20  I said, the main -- I mean, you know, if she -- if she did

21  have a divorce  proceeding, then certainly that would likely

22  be relevant to her emotional distress allegations and

23  alternative stressors and so on and so forth.

24      But the -- certainly, the -- the primary thrust of

25  these categories is -- is what I just mentioned.

27

1          THE COURT:  Okay.  Thank you.  Understood.

2     Plaintiff's counsel, would you like to respond

3 concerning categories two, three, and six?

4          MR. RAHMAN:  Sure.  As -- as to three and six, I

5 mean, we -- to us, that's clearly propensity evidence that

6 -- that is inadmissible.  And, again, there's been no

7 showing or any evidence or any proof or anything to infer

8 you then that there's -- that these type of documents may

9 exist.  Again, this is, again, just clearly to us a fishing

10 expedition, and -- and it is, like your Honor said, very

11 broad.  It encompasses, you know, any type of litigation.

12 And it's not even clear specifically, you know.  It says

13 involving Plaintiffs, but what does that even mean?  Does

14 she have to be party?  Its just indecipherable, frankly,

15 which is another reason why it should be quashed.  And, so

16 -- so, I think three and six, again, are improper.  And,

17 again, for category two, similarly, again, no showing

18 whatsoever that there weren't prior leaves of absences or

19 anything taken by -- of that nature taken by Plaintiff at

20 her prior employers.  And, again, if -- if there's -- you

21 know, while there's, of course, you know, some leeway that

22 employers have to look -- to ask about other structures or

23 other causes of emotional distress, it doesn't give

24 employers unfettered -- just because she alleges, you know,

25 emotional distress doesn't give an employer -- you know,

28

1  again, like your Honor said, you know, it's pled in

2  virtually every employment case, you know, unfettered access

3  to prior employment records.  So, again, we think two is

4  improper as well.

5          THE COURT:  Okay.  Well, thank you, Counsel.

6     Kirkland, let me turn to you.  Are there any other

7  points that you wanted to make at this hearing that so far

8  you have not gotten to?

9          MR. LIBURT:  Yes.  Thank you, your Honor.  So,

10  regarding -- regarding Plaintiff's alleged privacy, I do

11  want to note that there will be a protective order in the

12  case, and lots of cases have held that a protective order is

13  adequate to address any privacy issues.

14     And I -- I want to reiterate that in -- as we all read

15  the various cases that the parties have cited in this

16  briefing, what comes through loud and clear is that what's

17  discoverable is really tied quite directly to what are the

18  claims and what are the defenses in the particular case, and

19  so in this case, this is not one of those cases, for

20  example, that Plaintiff cited where it's a wage and hour

21  case or where -- or, for example, where the subpoena to a

22  former employer was, you know, solely relating to

23  credibility or there are several cases where it was a

24  defense of after acquired evidence or something like that,

25  and the courts took, you know, a fairly dim view of those as

29

the bases.

This is a case where Plaintiff has placed in issue her prior employment records because of the claims she's alleged, the -- the equal pay claim and what's necessary to prove or disprove that claim, the discrimination and the retaliation claims, the defamation claim, what is necessary to prove and disprove the elements of those claims. And -- and Kirkland is entitled to a fair due process ability to discovery that is potentially going to rebut the assertions that she is making. And, so -- so, I -- so, Defendant's request that the Court deny the motion. If -- if the Court is inclined to grant the motion to some extent, then I would ask that that be without prejudice to Kirkland serving subpoenas later after further discovery if that is appropriate.

Thank you.

THE COURT:  All right.  Thank you, Counsel.

Plaintiff's counsel, let me turn to you.  Are there any points that you wish to make that you haven't gotten to or any responses that you would like to make to what Kirkland just said?

MR. RAHMAN:  Thank you, your Honor.  The only thing I would like to add is, you know, again, if -- if -- if the -- the standard was that any time an employee (telephonic glitch) into issue their performance or

30

1  (indiscernible) an Equal Pay Act, that that opens up

2  discovery into prior employers, that would have a huge, you

3  know, chilling effect on -- on these kinds of cases in terms

4  of Plaintiffs.  It just can't be the standard.  There's got

5  to be some -- some showing.  And I think, frankly, counsel's

6  acknowledging that -- that there's no basis by -- by noting

7  that, you know -- that perhaps there's a -- there should be

8  a without prejudice ruling where the -- where this can be

9  reraised, which, you know, I think is -- you know, it makes

10 more sense than issuing a subpoena at this -- at this

11 junction -- juncture when there's no basis for any -- to

12 conclude there's anything relevant or responsive of the

13 files of Plaintiff's prior employers.

14      So, your Honor, you know, again, we -- as we laid out

15 in our -- in our brief, we believe that the improper

16 harassing meant to annoy subpoenas and should be -- and

17 should be quashed.

18          THE COURT:  Thank you, Counsel.  I appreciate the

19 arguments from both sides.  I will issue a written order on

20 the motion.  And, with that, we're adjourned for the day.

21      (Proceedings adjourned at 10:55 a.m.)

22

23

24

25

31

1                    CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9        I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16

17            Echo Reporting, Inc., Transcriber

18               Friday, February 23, 2024

19

20

21

22

23

24

25