1    Zoya Kovalenko (Cal. SBN 338624)
     13221 Oakland Hills Blvd., Apt. 206
2    Germantown, MD 20874
     (678) 559-4682
3    zoyavk@outlook.com
     *Plaintiff Zoya Kovalenko*
4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11   ZOYA KOVALENKO,                      Case No. 4:22-cv-05990-HSG

12              *Plaintiff,*              **PLAINTIFF'S OPPOSITION AND
                                          REPLY TO FILIPPATOS PLLC AND
13        v.                              HENNIG KRAMER LLP'S CROSS-
                                          MOTIONS TO WITHDRAW AND
14   KIRKLAND & ELLIS LLP, MICHAEL        COMPEL ARBITRATION,
     DE VRIES, MICHAEL W. DEVRIES,        "PRELIMINARY STATEMENT IN
15   P.C., ADAM ALPER, ADAM R. ALPER,     OPPOSITION," AND REQUEST FOR
     P.C., AKSHAY DEORAS, AKSHAY S.       EVIDENTIARY HEARING**
16   DEORAS, P.C., AND MARK FAHEY,
                                          Re: Dkt. Nos. 177, 171
17              *Defendants.*
                                          Hearing noticed for Thursday, March 20, 2025,
18                                        at 2:00 pm, before the Honorable Haywood S.
                                          Gilliam, Jr., United States District Judge, at
19                                        1301 Clay Street, Fourth Floor, Courtroom 2,
                                          Oakland, California 94612
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

PLAINTIFF'S OPPOSITION AND REPLY TO FILIPPATOS AND HENNIG KRAMER'S CROSS-MOTIONS TO WITHDRAW AND COMPEL ARBITRATION, "PRELIMINARY STATEMENT IN OPPOSITION," AND REQUEST FOR EVIDENTIARY HEARING ................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ........................................ 3

III.  STATEMENT OF RELEVANT FACTS ................................................. 4

IV.   ARGUMENT ............................................................................................ 5

    A.  The Court Should Decline Filippatos's Attempt to Compel Arbitration over a Non-Fee Dispute ....................................................................... 5

       1.  Legal Standard ............................................................................... 5

       2.  Filippatos Woefully Fails to Demonstrate That Plaintiff Voluntarily Consented to Arbitrate a Decision to Fire Her Counsel for Misconduct Based on a Narrow Arbitration Clause Limited to "Fee or Billing" Disputes. ........................................................................................ 6

          i)   Allegations of Attorney Misconduct Nullify Filippatos's Demand to Arbitrate. ..................................................................................... 7

          ii)  The Court Must Narrowly Construe the Arbitration Language Relied on by Filippatos and Consequently the For-Cause Termination of Filippatos Is Not Subject to Binding Arbitration Even If Deemed Collateral to a Fee Dispute. ...................................................... 9

PLAINTIFF'S OPPOSITION AND REPLY TO FILIPPATOS AND HENNIG KRAMER'S CROSS-MOTIONS TO WITHDRAW AND "PRELIMINARY STATEMENT IN OPPOSITION," DKT. NO. 177 NO. 4:22-CV-05990-HSG

i

       3.    **Plaintiff's Request for Her Client File is Not a Fee or Billing Dispute As Filippatos Has Refused to Provide Plaintiff with Her Client File Prior to Any Contrived Fee Dispute and the Retaining Lien's Validity Is Nullified by Filippatos's Misconduct.** ................................................... 14

  B.  **The Court Should Deny Filippatos's Motion to Withdraw Because Plaintiff Had Previously Terminated It as Counsel and Notified the Court of the Same.** .................................................................... 17

  C.  **The Court Should Conclude That Plaintiff Had Adequate Basis to Terminate Filippatos for Cause Without Requiring an Evidentiary Hearing.** ................................................................. 19

       1.    **There Are No Issues of Fact or Law That Preclude the Court from Determining that Plaintiff Terminated Filippatos for Cause Because It Interfered with Her Settlement Authority**................................. 20

       2.    **Filippatos's Failure to Rebut Plaintiff's Assertions of Extreme Laxity and Abusive Conduct Further Support Ruling in Plaintiff's Favor, Although the Court Need to Reach These Issues to Conclude Plaintiff Terminated Filippatos for Cause.**................................ 22

  D.  **The Court Should Prohibit Filippatos from Submitting Another Opposition to Plaintiff's Motion to Notice Termination of Filippatos PLLC for Cause.** ....................................................... 24

**CONCLUSION** ............................................... 25

Plaintiff's Opposition and Reply to Filippatos and Hennig Kramer's Cross-Motions to Withdraw and "Preliminary Statement in Opposition," Dkt. No. 177
No. 4:22-cv-05990-HSG

ii

1

**TABLE OF AUTHORITIES**

2    **Cases**                                                                                        **Page**

3    *Alvarado v. FedEx Corp.*,

4        No. C 04-0098 SI, 2011 WL 4708133 (N.D. Cal. Sept. 30, 2011).........................................18

5    *AT&T Technologies, Inc. v. Communications Workers of America*,

6        475 U.S. 643 (1986)..........................................................................................................5

7    *Bell Atlantic Corp. v. CTC Communications Corp.*,

8        59 F.3d 1345 (2d. Cir. 1998)...........................................................................................13

9    *Cape Flattery Ltd. v. Titan Maritime, LLC*,

10       647 F.3d 914 (9th Cir. 2011) ....................................................................................5, 12

11   *Chiron Corp. v. Ortho Diagnostic System, Inc.*,

12       207 F.3d 1126 (9th Cir. 2000) .......................................................................................10

13   *Concrete Flotation Systems, Inc. v. Tadco Const. Corp.*,

14       No. CV-07-319 ARR/VVP, 2009 WL 1209141 (E.D.N.Y. May 2, 2009)..........................16

15   *Cornell Univ. v. UAW Local 2300*,

16       942 F.2d 138 (2d Cir. 1991).............................................................................................6

17   *Countryman v. Watertown Housing Authority*,

18       820 N.Y.S. 2d 757, 13 Misc. 3d 632 (N.Y. Sup. Ct. 2006) ...................................................3

19   *Cox v. Ocean View Hotel Corp.*,

20       533 F.3d 1114 (9th Cir. 2008) .........................................................................10 & n.11, 11

21   *Curry v. Del Priore*,

22       941 F.2d 730 (9th Cir. 1991) ...........................................................................................7

23   *Eatoni Ergonomics, Inc. v. Research in Motion Corp.*,

24       633 F. Supp. 2d 109 (S.D.N.Y. 2009)..............................................................................6, 14

25   *Gardner-Alfred v. Federal Reserve Bank of New York*,

26       No. 22-CV-01585 (LJL), 2022 WL 17961594 (S.D.N.Y. Dec. 27, 2022) ..............16, 17 n.17

27   *Gerling Global Reinsurance Corp. v. Home Insurance Co.*,

28

302 A.D.2d 118 (N.Y. App. Div. 2002)) ............................................................ 13

*Guzik v. Albright*,

No. 16-CV-2257 (JPO), 2019 WL 3334487 (S.D.N.Y. July 25, 2019) ................................ 20

*hiQ Labs, Inc. v. LinkedIn Corp.*,

639 F. Supp. 3d 944 (N.D. Cal. 2022) ................................................................ 21

*Holcombe v. Matsiborchuk*,

747 Fed. App'x 875 (2d Cir. 2018) ................................................................ 2, 20

*Holcombe v. U.S. Airways Group, Inc.*,

No. 08-CV-1593 (SLT) (JMA), 017 WL 1184104 (E.D.N.Y. Mar. 29, 2017) .................... 20

*Holcombe v. U.S. Airways Group, Inc.*,

Nos. 03-CV-4785 & 08-CV-1593 (SLT) (JMA),

2014 WL 4907141 (E.D.N.Y. Sept. 30, 2014) .......................................... 16 n.16

*Ji Dong Cheng v. HSBC Bank USA, N.A.*,

467 F. Supp. 3d 46 (E.D.N.Y. 2020) ........................................................ 6, 13

*Kovalenko v. Kirkland & Ellis LLP*,

No. 4:22-cv-05990-HSG (TSH) (N.D. Cal. Oct. 2, 2024),

Minute Entry Disc. Hr'g, Dkt. No. 146 ............................................................ 24

*Kovalenko v. Kirkland & Ellis LLP*,

No. 4:22-cv-05990-HSG (TSH) (N.D. Cal. Feb. 15, 2024),

Minute Entry Disc. Hr'g, Dkt. No. 126 ............................................................ 24

*Kovalenko v. Kirkland & Ellis LLP*,

No. 4:22-cv-05990-HSG (N.D. Cal.),

Order Granting Mr. Rahman's Appl. Admis. *Pro Hac Vice*, Dkt. No. 109 .................... 24

*Larrison v. Scarola Reavis*,

11 Misc. 3d 572 (N.Y. Sup. Ct. 2005),

*available at* https://casetext.com/case/larrison-v-scarola-reavis ............................ 14

*Lauro v. State*,

No. CV 12-00637 DKW-BMK, 2015 WL 5031236 (D. Haw. Aug. 24, 2015)....................20

*Lawrence v. Walzer & Gabrielson*,

    207 Cal. App. 3d 1501 (1989) ..................................................................................12

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*,

    363 F.3d 1010 (9th Cir. 2004) .........................................................................11 n.12

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,

    252 F.3d 218 (2d Cir. 2001).............................................................................5, 14

*Luchini v. Carmax, Inc.*,

    No. CV F 12-0417 LJO DLB, 2012 WL 2995483 (E.D. Cal. July 23, 2012) ..............10 n.11

*Marrero v. Christiano*,

    575 F. Supp. 837 (S.D.N.Y. 1983)........................................................................2

*Marzocchi v. Tara Tiger, Inc.*,

    No. 12-CV-4433 JSC, 2013 WL 1191232 (N.D. Cal. Mar. 21, 2013) ...................................5

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,

    514 U.S. 52 (1995)......................................................................................6, 13

*McDaniel v. County of Schenectady*,

    No. 1:04 CV 757 GLS/RFT, 2005 WL 1745566 (N.D.N.Y. July 21, 2005))........................7

*McDonnell Douglas Financial Corp. v. Pennsylvania Power & Light Co.*,

    858 F.2d 825 (2d Cir. 1988)...........................................................................5, 9, 13

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*,

    708 F.2d 1458 (9th Cir. 1983) ........................................................................11, 12

*Misek-Falkoff v. International Business Machines Corp.*,

    829 F. Supp. 660 (S.D.N.Y. 1993).................................................................16–17, 24

*Molina v. Scandinavian Designs, Inc.*,

    2014 U.S. Dist. LEXIS 55863, 2014 WL 1615177 (N.D. Cal. Apr. 21, 2014)....................11

*Navarro v. Data*,

    No. 2:20-CV-07370-SVW-SK, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022) ...................25

PLAINTIFF'S OPPOSITION AND REPLY TO FILIPPATOS AND HENNIG KRAMER'S CROSS-
MOTIONS TO WITHDRAW AND "PRELIMINARY STATEMENT IN OPPOSITION," DKT. NO. 177
No. 4:22-CV-05990-HSG

v

*Negoce v. Blystad Shipping and Trading, Inc.*,

    534 U.S. 1020 (2001) .................................................................................. 5

*Nehad v. Mukasey*,

    535 F.3d 962 (9th Cir. 2008) ............................................................... 2, 20

*Novak v. Fay*,

    236 Cal. App. 4th 329 (2015) .................................................................. 8

*Pacific Dawn LLC v. Pritzker*,

    831 F.3d 1166 (9th Cir. 2016) ............................................................... 21

*Peters v. Florentino*,

    85 N.Y.S.2d 231 (N.Y. App. Div. 2014) ................................................. 8

*Pomerantz v. Schandler*,

    704 F.2d 681 (2d Cir. 1983) ............................................................ 15, 16

*Resolution Trust Corp. v. Elman*,

    949 F.2d 624 (2d Cir.1991) .................................................................... 17

*Simula, Inc. v. Autoliv, Inc.*,

    75 F.3d 716 (9th Cir. 1999) .................................................................... 11

*Stern v. Westerman Ball Ederer Miller & Sharfstein, LLP*,

    No. 1:17-CV-34 (FJS/DEP), 2017 WL 3130415 (N.D.N.Y. July 24, 2017) .......................... 8

*Stinson v. City of New York*,

    No. 18-CV-0027 (LAK) (BCM), 2018 WL 11257424 (S.D.N.Y. Nov. 26, 2018) .............. 20

*United States v. Moss*,

    No. 2:03-cr-0550-WBS-EFB P (E.D. Cal. Jun. 28, 2018),

    https://casetext.com/case/united-states-v-moss-95 ...................................... 18–19

*Weeks v. Union Pacific Railroad Co.*,

    2018 U.S. Dist. LEXIS 42158 (E.D. Cal. Mar. 14, 2018) ............................... 18, 20

*Welch v. Niagara Falls Gazette*,

    No. 98-CV-0685E(M), 2000 WL 1737947 (W.D.N.Y. Nov. 17, 2000).................................. 3

PLAINTIFF'S OPPOSITION AND REPLY TO FILIPPATOS AND HENNIG KRAMER'S CROSS-MOTIONS TO WITHDRAW AND "PRELIMINARY STATEMENT IN OPPOSITION," DKT. NO. 177
No. 4:22-CV-05990-HSG

vi

*West v. Secretary of Department of Transportation*,

    206 F.3d 920 (9th Cir. 2000) ................................................... 17

*Willamette Biomass Processors, Inc. v. Perdue Agribusiness LLC*,

    No. 3:19-CV-01677-AC, 2020 WL 2535047 (D. Or. Apr. 13, 2020) ............................. 6, 14

*Willamette Biomass Processors, Inc. v. Perdue Agribusiness LLC*,

    No. 3:19-CV-01677-AC, 2020 WL 2529614 (D. Or. May 18, 2020) ............................. 6, 14

*Yumul v. Smart Balance, Inc.*,

    No. CV-10-00927 MMM AJWX, 2010 WL 4352723 (C.D. Cal. Oct. 8, 2010) .................. 18


**Statutes and Other Authorities**                               **Page**

22 N.Y.C.R.R. part 137 ................................................................................. 8

22 N.Y.C.R.R. § 137.1(b)(2) ........................................................................ 8

22 N.Y.C.R.R. § 137.1(b)(3) ........................................................................ 8

22 N.Y.C.R.R. § 137.1(b)(4) ........................................................................ 8

42 U.S.C. § 2000e-5(k) ............................................................................... 16

California Rules of Professional Conduct ................................................... 17

Civil Local Rule 5-1(c)(2)(C) ..................................................................... 18

Civil Local Rule 11-5 ................................................................................. 17

New York Judiciary Law Section 475 ..................................................... 7, 8

Title VII, 42 U.S.C. § 2000e *et seq.* ................................................... 16 n.16

Title VII, 42 U.S.C. § 2000e-5(k) ............................................................. 16

1    **PLAINTIFF'S OPPOSITION AND REPLY TO FILIPPATOS AND HENNIG**

2    **KRAMER'S CROSS-MOTIONS TO WITHDRAW AND COMPEL ARBITRATION,**

3    **"PRELIMINARY STATEMENT IN OPPOSITION," AND REQUEST FOR**

4    <u>**EVIDENTIARY HEARING**</u>

5         Plaintiff respectfully submits this opposition and reply to Filippatos PLLC ("**Filippatos**")

6    and Hennig Kramer LLP ("**Hennig Kramer**")'s Cross-Motions to Withdraw as Counsel and to

7    Compel Arbitration, Preliminary Statement in Opposition, and Request for Evidentiary Hearing,

8    Dkt. No. 177 (the "**Motion**" or "**Filippatos's Motion**"), and respectfully requests the Court deny

9    all relief requested therein.

10   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

11   **I.    INTRODUCTION**

12        As an initial matter, Plaintiff congratulates Filippatos on drafting its first brief in this

13   lawsuit since being retained.  Dkt. No. 177.  It is unfortunate that the apparent remedy to

14   Filippatos' allergic reaction to providing litigation services is a dire need to defend itself, not

15   satisfying its professional obligations to advance and safeguard its client's interests.  Filippatos

16   seeks to evade public accountability for its misconduct through its baseless effort to compel

17   arbitration in its Motion.  Plaintiff's Motion to Notice Termination of Filippatos for Cause, Dkt.

18   No. 171 ("**Motion to Notice Termination**"),[1] does not request the Court to determine or reduce

19   to a judgment the amount of fees or costs owed to Filippatos and is plainly not a fee dispute.[2]

20   Filippatos's prior threat to embroil Plaintiff in a "colossal conflict" if Plaintiff refused to

21   relinquish her settlement authority is exactly what Filippatos now sets out to do by effectively

22   arguing without support that this Court must hold a trial before it can rule that Filippatos was

23   terminated for cause.  Filippatos's Mot. at 16.[3]  However, Filippatos's improper interference with

24   Plaintiff's settlement authority presents a straightforward issue both legally and factually.  First,

25

---

26   [1] *Accord* Unredacted Mot. Notice Termination, Dkt. No. 176-3 (filed under seal as attachment to
     Declaration of Zoya Kovalenko in Support of Administrative Motion for Partial Sealing, Dkt. No.
27   176-1).
     [2] *See generally* Unredacted Mot. Notice Termination, Dkt. No. 176-3; Pl.'s [Proposed] Order
28   Granting Mot. Notice Termination at 1, Dkt. No. 171-7.
     [3] Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶ 16, Dkt. No. 176-4.

1   it is well-established doctrine that a client has absolute authority to decide whether to settle and

2   that an attorney cannot withdraw due to a client refusing to follow their settlement advice. *E.g.,*

3   *Marrero v. Christiano*, 575 F. Supp. 837, 839 (S.D.N.Y. 1983) ("It is the client who controls the

4   decision as to whether a settlement offer is to be accepted. . . . This decision is binding upon the

5   attorney even though not in accordance with his advice. Certainly, *a refusal to accept a*

6   *settlement,* even though favored by an attorney, *is not just cause for withdrawal by the attorney.*");

7   *Nehad v. Mukasey*, 535 F.3d 962, 970–71 (9th Cir. 2008) (stating lawyer "may not withdraw

8   because a client refuses to settle" and recognizing general tenet that "lawyer may not burden the

9   client's ability to make settlement decisions"); *Holcombe v. Matsiborchuk*, 747 Fed. App'x 875,

10  877–78 (2d Cir. 2018) (holding improper threats to withdraw representation, including

11  threatening to withdraw to obtain "control over settlement" constitute attorney misconduct

12  warranting for-cause termination).   Second, Plaintiff has provided written evidence, which

13  Filippatos has not refuted, showing that Filippatos threatened to immediately withdraw in direct

14  response to Plaintiff ███████████████████. Unredacted Kovalenko Decl. ISO Mot.

15  Notice Termination ¶¶ 14–15, Dkt. No. 176-4; *see also* Unredacted Mot. Notice Termination at

16  12, Dkt. No. 176-3;[4] *see generally* Filippatos's Mot., Dkt. No. 177 (no direct challenge to factual

17  assertion that Filippatos threatened to immediately withdraw in direct response to Plaintiff

18  ██████████████████) & Tanvir Rahman Decl. ISO Filippatos's Mot. ¶¶ 1–9

19  ("**Rahman Declaration**"), Dkt. No. 177-1 (same).   Accordingly, the Court already has ample

20  legal and factual support to readily conclude that Plaintiff terminated Filippatos for cause without

21  needing to reach judgment on the other claims of misconduct by Filippatos (e.g., not providing

22  legal services and abusive treatment of Plaintiff).   Filippatos intimates in its Motion that

23  threatening to immediately withdraw because Plaintiff ████████ was justified because

24  Plaintiff's views on the value and merits of her case differed from that of Filippatos.  Filippatos's

25  Mot. at 8, 9–10, 11, 15–16 (claiming without explanation that Plaintiff did not carefully consider

26  legal advice in ███████████ and strongly implying defense to Plaintiff's assertions is

27  centered on Filippatos's "honest assessment of Ms. Kovalenko's claims").   However, a lawyer

28  

---

[4] *Accord* Kovalenko Decl. ISO Mot. Notice Termination ¶¶ 14–15, Dkt. No. 171-1.

cannot override a client's settlement authority because the lawyer views the client's decision as unreasonable or even irrational. *E.g.*, *Countryman v. Watertown Housing Authority*, 820 N.Y.S. 2d 757, 13 Misc. 3d 632, 633, (N.Y. Sup. Ct. 2006) ("hold[ing] that the fact that a lawsuit is of questionable liability, limited damages, and a likely unfavorable trial result is not the type of impairment of the attorney-client relationship that permits withdrawal of counsel"); *Welch v. Niagara Falls Gazette*, No. 98-CV-0685E(M), 2000 WL 1737947, at *2 (W.D.N.Y. Nov. 17, 2000) ("An attorney may not withdraw simply because he later comes to believe that his client's case is weaker than his evaluation when he first took the case" or "where counsel believes that the amount of potential recovery does not warrant the effort of a trial . . . ."). Accordingly, indulging Filippatos's request for extensive proceedings is wholly unnecessary, and allowing Filippatos to create a show trial to try to masquerade its documented misconduct via needless oral arguments and bloviation would be a waste of Court resources. Written evidence and case law make clear that Filippatos violated its professional obligations to Plaintiff by invading and impinging upon her settlement authority. Further, as discussed herein, such a finding of misconduct would also enable the Court to resolve the non-fee dispute over Filippatos's improper withholding of Plaintiff's client file.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should decline Filippatos's attempt to compel arbitration over a dispute regarding Filippatos's misconduct before this Court based on a narrow arbitration provision limited to fee and billing disputes.

Whether the Court should deny Filippatos's illogical motion to withdraw when Filippatos has already admitted that Plaintiff terminated it as counsel prior to its current attempt to withdraw and where Plaintiff is and has been an attorney of record in this action.

Whether the Court should conclude that Plaintiff had adequate basis to terminate Filippatos for cause without requiring an evidentiary hearing.

Whether the Court should require Filippatos to promptly provide Plaintiff with her client file because litigation in this action is ongoing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    STATEMENT OF RELEVANT FACTS

On January 23, 2025, Plaintiff sent an email to Filippatos notifying Filippatos that it was terminated for cause effective immediately.   Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶ 6, Dkt. No. 176-4; Unredacted Mot. Notice Termination at 2, Dkt. No. 176-3; Unredacted Attach. C (Termination Email and Filippatos Resp.) to Kovalenko Decl. ISO Mot. Notice Termination at 3, Dkt. No. 176-5.[5]  Parisis (Gerry) Filippatos responded to the termination email that same day, urging Plaintiff to reconsider their termination.  Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶ 6, Dkt. No. 176-4; Unredacted Mot. Notice Termination at 2, Dkt. No. 176-3; Unredacted Attach. C to Kovalenko Decl. ISO Mot. Notice Termination at 2, Dkt. No. 176-5.  Early on January 24, 2025, Plaintiff replied to Mr. Filippatos's email, unmistakably reaffirming that they had been terminated for cause and that they had no authority to speak on her behalf.  Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶ 6; Unredacted Mot. Notice Termination at 2–3; Unredacted Attach. C to Kovalenko Decl. ISO Mot. Notice Termination at 1–2.  On January 28, 2025, Mr. Filippatos emailed Plaintiff a purported "Termination Letter" and "Attorney Lien and Bill of Costs."  Declaration of Zoya Kovalenko in Support of Plaintiff's Opposition and Reply to Filippatos PLLC and Hennig Kramer LLP's Cross-Motions to Withdraw and Compel Arbitration, Preliminary Statement in Opposition, and Request for Evidentiary Hearing ("**Kovalenko Declaration**"), attached hereto and filed herewith, at ¶ 4 & Attachments A–C attached thereto (Attachment A is the January 28, 2025 email from Filippatos to Plaintiff; Attachments B and C are the purported "Termination Letter" and "Attorney Lien and Bill of Costs," respectively, which Filippatos attached to its January 28, 2025 email).  Then, on January 29, 2025, Plaintiff filed a motion requesting that, *inter alia*, the Court formally notice her prior termination of Filippatos for cause.  Unredacted Mot. Notice Termination at 1–2, 7–21, 22, Dkt. No. 176-3; Pl.'s [Proposed] Order Granting Mot. Notice Termination at 1, Dkt. No. 171-7.  Tanvir Rahman filed an improper letter brief in response to the Motion to Notice Termination, and subsequently refiled the same letter as an opposition/response to Plaintiff's Motion to Notice

---

[5] *Accord* Attach. C to Kovalenko Decl. ISO Mot. Notice Termination, Dkt. No. 171-4; *see also* Redacted Attach. C to Kovalenko Decl. ISO Mot. Notice Termination, Dkt. No. 176-6.

1    Termination. Dkt. Nos. 173–175. On January 31, 2025, Mr. Rahman filed the instant motion and

2    preliminary opposition. Dkt. No. 177.[6]

3    **IV.    ARGUMENT**

4       **A.    The Court Should Decline Filippatos's Attempt to Compel Arbitration over a**

5            **Non-Fee Dispute.**

6            **1.    Legal Standard**

7            The mere invocation of the Federal Arbitration Act ("**FAA**") does not operate to convert

8    a non-arbitrable claim into an arbitrable one. *Louis Dreyfus Negoce S.A. v. Blystad Shipping &*

9    *Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001), *cert. denied sub nom. Negoce v. Blystad Shipping*

10   *and Trading, Inc.*, 534 U.S. 1020 (2001). "As arbitration is a matter of contract, a party cannot

11   be required to submit to arbitration any dispute it has not agreed is subject to this alternative

12   means of resolving disputes." *E.g.*, *Marzocchi v. Tara Tiger, Inc.*, No. 12-CV-4433 JSC, 2013

13   WL 1191232, at *5 (N.D. Cal. Mar. 21, 2013) (citing *AT&T Techs., Inc. v. Commc'ns Workers*

14   *of Am.*, 475 U.S. 643, 648–50 (1986)). Accordingly, while federal policy may generally favor

15   arbitration, "the obligation to arbitrate remains a creature of contract." *Louis Dreyfus Negoce*

16   *S.A.*, 252 F.3d at 224. The Ninth Circuit has held that "arising under" or similar language signifies

17   a narrow arbitration provision. *E.g.*, *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924

18   (9th Cir. 2011) (discussing the court's narrow interpretation of "arising under" language); *see*

19   *also McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988)

20   ("In construing arbitration clauses, courts have at times distinguished between 'broad' clauses

21   that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that

22   limit arbitration to specific types of disputes."). Under a narrow arbitration clause, a dispute will

23   only be subject to arbitration if "the dispute is an issue that 'is on its face within the purview of

24

25   [6] As far as Plaintiff is aware, local counsel has not contributed to the case beyond filing a notice
     of appearance in order to allow Tanvir Haque Rahman to apply to appear *pro hac vice*. Not.
26   Appearance, Dkt. No. 107; Mr. Rahman's Appl. Admis. Att'y *Pro Hac Vice*, Dkt. No. 108;
     Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶ 5. Moreover, Plaintiff does not (and
27   did not) have a retainer (or any other) agreement with local counsel. Unredacted Kovalenko Decl.
     ISO Mot. Notice Termination ¶ 5. Filippatos entered into a retainer agreement with local counsel,
28   to which agreement Plaintiff was not a party. *Id.* Plaintiff has never spoken to or communicated
     with local counsel. *Id.*

the clause.'" *Eatoni Ergonomics, Inc. v. Research. in Motion Corp.*, 633 F. Supp. 2d 109, 116 (S.D.N.Y. 2009). "[I]f the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 52 (E.D.N.Y. 2020) (citing *Cornell Univ. v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir. 1991)); *Willamette Biomass Processors, Inc. v. Perdue Agribusiness LLC*, No. 3:19-CV-01677-AC, 2020 WL 2535047, at *6 (D. Or. Apr. 13, 2020) (stating same), *report and recommendation adopted*, 2020 WL 2529614 (D. Or. May 18, 2020). Further, any ambiguity in an arbitration clause must be construed against the drafter (here, Filippatos). *E.g., Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (applying common-law contract principles to interpret arbitration clause, including principle that ambiguity interpreted "against the interest of the party that drafted it"); Kovalenko Decl. ¶ 14.

> **2.    Filippatos Woefully Fails to Demonstrate That Plaintiff Voluntarily Consented to Arbitrate a Decision to Fire Her Counsel for Misconduct Based on a Narrow Arbitration Clause Limited to "Fee or Billing" Disputes.**

Filippatos seeks to avoid public accountability by incorrectly asserting that Plaintiff's motion requesting the Court notice her prior for-cause termination of Filippatos is "*essentially . . . a dispute over legal fees*" that must be arbitrated subject to the allegedly "clear and express terms of the Retainer Agreement." Filippatos's Mot. at 12 (emphasis added). This assertion is neither supported by case law nor the plain terms of the Retainer Agreement. In fact, by arguing Plaintiff's allegations of misconduct by Filippatos are "essentially" a fee dispute, Filippatos implicitly concedes that its for-cause termination is not a clear fee dispute.[7]

Retaining jurisdiction over and adjudicating Plaintiff's motion noticing Filippatos's termination for cause is well within the Court's authority, and doing so is necessary to "render

---

[7] It is false for Filippatos to claim that Plaintiff "tacitly acknowledges this Court is not the proper forum" to adjudicate her Motion to Notice Termination merely because she requested further briefing be done *ex parte*. The sole and express reason for such a request was to avoid potential public disclosure of attorney-client communications and work-product, given the lawsuit is ongoing with no guarantee of settlement. Unredacted Mot. Notice Termination at 1, 2, 6–7, 17 n.14, 22, Dkt. No. 176-3; Unredacted Kovalenko Decl. ISO Mot. Notice Termination at ¶¶ 1, 7, 21 (requesting order that further briefing be done *ex parte* and discussing potential harm).

complete justice." *See, e.g.*, *Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991) (stating "court may decide collateral matters necessary to render complete justice" and that "[a]ncillary jurisdiction encompasses motions to withdraw"); *see also McDaniel v. Cnty. of Schenectady*, No. 1:04 CV 757 GLS/RFT, 2005 WL 1745566, at *5 (N.D.N.Y. July 21, 2005) ("Federal courts have always had the inherent power to manage their own proceedings and to control the conduct of those who may appear before them"). Because of Filippatos's misconduct, including its threats to abandon Plaintiff's case if ███████████████, Filippatos has undermined Plaintiff's express interest ████████████████████████, thereby breaching and betraying its duty to Plaintiff as its client. If attorneys such as Filippatos are allowed to subvert the principles of the judicial system and professional ethics without public reproach, especially in high-profile cases such as that here, the integrity of the judicial system is unlikely to retain vitality as a vehicle of truth seeking and justice. Accordingly, the Court should not shunt its important role as a modulator of misconduct by officers of the court by refusing to exercise jurisdiction over Plaintiff's decision to terminate Filippatos for cause.

> i)   Allegations of Attorney Misconduct Nullify Filippatos's Demand to Arbitrate.

Although the issues before the Court are not a fee dispute, Filippatos has failed to even establish the existence of any actionable or arbitrable fee dispute. At present, the maximum amount of any alleged outstanding fees/costs owed to Filippatos is the $9,414.09 in costs, which Filippatos first notified Plaintiff of in its January 28, 2025 in its Notice of Lien and Bill of Costs. Kovalenko Decl. ¶ 4 & Attachs. B & C thereto (Notice of Lien and Bill of Costs, respectively). The purported lien Filippatos has asserted against Plaintiff is for a percentage of a hypothetical, undetermined amount ████████████████████. Notice of Charging Lien at 1, Dkt. No. 178 (asserting lien pursuant to New York "Judiciary Law Section 475"). However, given there is ████████████████████ or any monetary judgment in the case, Filippatos's purported fee dispute over its lien is currently valued at zero dollars and is unenforceable. *Stern v. Westerman Ball Ederer Miller & Sharfstein, LLP*, No. 1:17-CV-34 (FJS/DEP), 2017 WL 3130415, at *9 (N.D.N.Y. July 24, 2017) ("The plain language of

1  [New York Judiciary Law Section 475] reveals that there are two elements that a party must

2  successfully prove to have a charging lien: (1) that the attorney appeared on behalf of the party;

3  and (2) *that the party received a judgment and proceeds in that action*." (emphasis added)); *see*

4  *also Novak v. Fay*, 236 Cal. App. 4th 329, 336 (2015) ("When an attorney's lien is tied to the

5  client's contingent recovery, the lawyer cannot enforce it until the contingency (settlement and

6  probate court approval in our case) occurs.").  Thus, the maximum amount of any potential fee

7  dispute between Filippatos and Plaintiff, assuming arguendo that any such dispute is ripe and

8  actionable, is $9,414.09 in costs, and consequently would be covered by the New York City

9  Attorney Fee Dispute Resolution Program.[8]  *See* 22 N.Y.C.R.R. § 137.1(b)(2) (applying to

10  disputes "involving a sum of less than $1,000 or more than $50,000"); Kovalenko Decl. ISO Mot.

11  Notice Termination Attach. B at 3–4, Dkt. No. 171-3 ("**Retainer Agreement**"); Unredacted

12  Kovalenko Decl. ISO Mot. Notice Termination ¶ 3, Dkt. No. 176-4 (authenticating Retainer

13  Agreement).  Given any purported fee dispute would be covered by the mandatory jurisdiction of

14  the New York City Attorney Fee Dispute Resolution Program, any attempt to compel arbitration

15  for a fee dispute would fail as a matter of law because allegations of attorney misconduct such as

16  those here are expressly excluded from arbitrability under this New York arbitration program.  22

17  N.Y.C.R.R. § 137.1(b)(3), (4); *Peters v. Florentino*, 985 N.Y.S.2d 231, 232 (N.Y. App. Div.

18  2014) ("In any event, the claims and counterclaims asserted in this dispute involve 'substantial

19  legal questions, including professional malpractice or misconduct,' and 'claims against an

20  attorney for damages or affirmative relief other than adjustment of the fee,' which are not subject

21  to arbitration under 22 NYCRR part 137 (22 NYCRR 137.1[b][3], [4] ).").  Therefore, based on

22  the foregoing, the Court can dispose of Filippatos's baseless request to compel arbitration without

23  further interpretation of the arbitration language in the Retainer Agreement.

24

25

26

27

28  _____

[8] Filippatos does not address the applicability of the New York City Attorney Fee Dispute Resolution Program and assumes—without explanation—that the portion of the arbitration provision applying this law is inapplicable.

1

ii)    The Court Must Narrowly Construe the Arbitration Language

2                       Relied on by Filippatos and Consequently the For-Cause

3                       Termination of Filippatos Is Not Subject to Binding Arbitration

4                       Even If Deemed Collateral to a Fee Dispute.

5        After reading out the first portion of the arbitration clause, Filippatos incorrectly suggests

6 that a court has no discretion to determine whether a dispute is subject to mandatory arbitration

7 because the Federal Arbitration Act generally favors arbitration. *See* Filippatos's Mot. at 13. In

8 that vein, Filippatos erroneously asserts that any "doubts concerning the scope of arbitrable issues

9 should be resolved in favor of arbitration." *Id.* However, Filippatos's heavy reliance on general

10 statements in case law falls well short of proving their argument and ignores the key tenet that

11 arbitration clauses are ultimately a creature of contract.[9]

12        Filippatos misapplies and misstates case law by dishonestly contending that the narrow

13 arbitration clause at issue here must be construed broadly because arbitration clauses that apply

14 to "any dispute" or "relate to" an agreement are interpreted broadly. Filippatos Mot. at 14. This

15 argument misses the mark by a wide margin for several reasons. First, the narrow arbitration

16 clause in the Retainer Agreement does not apply to "any dispute," and instead narrowly applies

17 to "fee disputes" covered by the New York City Attorney Fee Dispute Resolution Program and

18 "[a]ll other fee or billing disputes that may arise between" Plaintiff and Filippatos under the

19 Retainer Agreement. Retainer Agreement at 3–4. To be clear, nowhere does the arbitration clause

20 in the Retainer Agreement require arbitration of "any dispute" under the agreement as Filippatos

21 incorrectly contends. *Id.*; Filippatos's Mot. at 14. Instead, the arbitration clause is explicitly

22 limited to a specific subject matter, thereby supporting narrow interpretation. *McDonnell*

23 *Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (distinguishing

24 between "'broad' clauses that purport to refer all disputes arising out of a contract to arbitration

25

26

27 [9] Filippatos assumes that Ninth Circuit case law governs interpretation of the arbitration provision of the Retainer Agreement. Although Plaintiff does not concede the propriety of applying Ninth Circuit over Second Circuit law, the result would be the same under either jurisdiction: case law

28 in each circuit demonstrates that the arbitration clause must be construed narrowly and cannot be used to compel arbitration here.

and 'narrow' clauses that limit arbitration to specific types of disputes").[10]  Second, and similarly, the arbitration clause at issue here is devoid of the language courts in the Ninth Circuit have concluded may support a broad scope of arbitration—namely, language requiring arbitration of a claim "arising in connection with" or "relating to" the respective agreement.  Filippatos conveniently ignores this fatal flaw in its specious reasoning and instead contends the narrow clause limited to "fee or billing disputes" miraculously "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."  Filippatos Mot. at 14.  Third, the case law Filippatos relies on to support its erroneous and expansive interpretation of the narrow arbitration clause here is unpersuasive and easily distinguishable from the facts here.

For example, the far-reaching arbitration language in *Chiron Corp. v. Ortho Diagnostic System, Inc.*, 207 F.3d 1126 (9th Cir. 2000), is in no way analogous to the narrow arbitration language here.  In *Chiron* the arbitration provision required the parties to arbitrate "[a]ny dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance" of the agreement.  *Chiron Corp.*, 207 F.3d at 1130.   Conversely, the arbitration language here narrowly applies to "fee or billing disputes" arising between Plaintiff and Filippatos, which is in no way comparable to language requiring arbitration of "***any dispute, controversy or claim arising out of or relating to***" the agreement.  *Compare* Retainer Agreement at 3–4 *with Chiron Corp.*, 207 F.3d at 1130 (emphasis added).[11]  The broad arbitration language in *Cox v. Ocean View Hotel Corp.*, which applied to "***[a]ny disputes*** between Employer and Employee ***arising out of*** the employment relationship," is also plainly distinguishable from language here that merely requires arbitration of "fee or billing disputes" arising under the

---

[10] Filippatos does not cite a single case supporting its request to compel arbitration based on interpretation of an arbitration provision that was limited to a specific subject matter.  *See generally* Filippatos's Mot.

[11] *Luchini v. Carmax, Inc.,* involved extremely broad arbitration language similar to the clause in *Cox*, which is plainly distinguishable from the narrow language in dispute here.  *Luchini,* No. CV F 12-0417 LJO DLB, 2012 WL 2995483, at *1 (E.D. Cal. July 23, 2012) (arbitration clause stating parties "agree to settle any and all previously unasserted claims, disputes, or controversies arising out of or relating to my application or candidacy for employment").

1    Retainer Agreement.  *Cox*, 533 F.3d 1114, 1117 (9th Cir. 2008).[12]   In that vein, *Simula, Inc. v.*

2    *Autoliv, Inc.*, is demonstrably distinguishable and carries no persuasive heft as the arbitration

3    clause there broadly applied to "*[a]ll disputes arising in connection with* this Agreement," which,

4    again, at the risk of being trite, is not analogous to a narrow arbitration clause expressly limited

5    to "fee or billing" disputes between Plaintiff and Filippatos.  *Simula, Inc.*, 175 F.3d 716, 720 (9th

6    Cir. 1999) (emphasis added).  Further, *Molina v. Scandinavian Designs, Inc.*, is inapplicable for

7    multiple reasons. *Molina*, 2014 U.S. Dist. LEXIS 55863, 2014 WL 1615177, at *1, *3 (N.D. Cal.

8    Apr. 21, 2014).  First, the parties in *Molina* did not dispute that the claims at issue fell "within the

9    scope of the Arbitration Agreement." *Id.* at *1, *3.  Second, in *Molina*, the plaintiff agreed to a

10   significantly broader arbitration language, stating that "any dispute" the employee had "*relating*

11   *to* [their] employment or its termination" was subject to arbitration "to the fullest extent allowed

12   by law." *Id.* at *1 (emphasis added).  In sum, Filippatos cannot transform the narrow arbitration

13   clause that they drafted and included in the Retainer Agreement into a broad provision by

14   misapplying case law and then speciously claiming that the clause "is broad and clearly

15   encompasses the [non-fee] disputes" Plaintiff has raised in her Motion to Notice Termination of

16   Filippatos. *See* Filippatos's Mot. at 14.

17        With Filippatos's clearly inapplicable case law eliminated, the weight of analogous and

18   on-point California and New York case law, including cases before the Ninth and Second Circuit,

19   clearly demonstrate that the arbitration clause at issue here must be construed narrowly, thereby

20   dooming Filippatos's attempt to compel arbitration.  For starters, the Ninth Circuit has repeatedly

21   held that "arising under" or similar language in an arbitration clause is to be construed narrowly.

22   For instance, in *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir.

23   1983), the Ninth Circuit held that an arbitration clause covering "any disputes arising hereunder"

24   was narrow, explaining that due to the absence of "relating to" language in the provision, it had

25   "no difficulty" finding the arbitration clause was a narrow clause. *Id.* at 1463–64.  Similarly,

26

27   [12]In *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, the parties agreed to submit their dispute to
     arbitration, and it dealt with apportionment of fees to pay for arbitration. *Lifescan*, 363 F.3d 1010,
28   1011–13 (9th Cir. 2004).  The arbitration clause in *Lifescan* was also extremely broad and applied
     to "any and all unresolved disputes between the parties relating to th[e] agreement." *Id.* at 1012.

1    here, the Retainer Agreement is entirely devoid of any "relating to" or similarly broad language

2    in the arbitration provision and thus the "arising between" language applying only to "fee and

3    other billing disputes" must be narrowly construed consistent with Ninth Circuit precedent.

4    Kovalenko Decl. ISO Mot. Notice Termination Attach. B (Retainer Agreement) at 3–4, Dkt. No.

5    171-3; *Mediterranean*, 708 F.2d at 1463–64; *see also Cape Flattery Ltd. v. Titan Mar., LLC*, 647

6    F.3d 914, 921 (9th Cir. 2011) (concluding case not arbitrable where agreement "provides for

7    arbitration of '[a]ny dispute arising under this Agreement'" because clause should be interpreted

8    narrowly).   Further, the Ninth Circuit has rejected the notion that the general federal policy

9    favoring arbitration overrides principles of contractual interpretation, including when interpreting

10   narrow arbitration provisions.  *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 923 (9th

11   Cir. 2011).  Other case law in California further supports Plaintiff's position that her decision to

12   fire Filippatos for cause is not swallowed by a narrow arbitration clause expressly limited to fee

13   or billing disputes.  For instance, in *Lawrence v. Walzer & Gabrielson*, 207 Cal. App. 3d 1501

14   (1989), the court held that a much broader arbitration provision than the one at issue here was

15   limited to fee and cost disputes and did not apply to a client-plaintiff's claims involving attorney

16   misconduct and neglect.  *Id.* at 1504, 1506 (interpreting an arbitration clause stating: "In the event

17   of a dispute between us regarding fees, costs or any other aspect of our attorney-client

18   relationship, the dispute shall be resolved by binding arbitration" as not encompassing the client-

19   plaintiff's malpractice claims against their lawyer because it appeared that the client was only

20   agreeing to arbitrate cost-and-fee disputes).  Despite the broader language of the arbitration clause

21   in *Lawrence*, the court concluded the arbitration clause had to be narrowly construed and that any

22   ambiguity had to be construed in favor of the client-plaintiff because the attorney-defendant had

23   drafted the agreement.  *Id.* at 1507.  If a more expansive arbitration provision applying to "***fees,***

24   ***costs or any other aspect of our attorney-client relationship***" does not apply to claims of attorney

25   misconduct or neglect then it would be illogical (and contrary to case law) to conclude that the

26   narrow clause at issue here, which applies only to "fees or billing" disputes and does not apply to

27   any other aspect of the attorney-client relationship, somehow requires arbitration of Plaintiff's

28   decision to fire Filippatos for cause due to professional misconduct.

Second Circuit precedent further demonstrates that the arbitration provision here, which is limited to a specific subject matter (i.e., fee disputes), must be construed narrowly. *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (distinguishing between "'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes"); *see also Bell Atl. Corp. v. CTC Commc'ns Corp.*, 159 F.3d 1345 (2d. Cir. 1998) (upholding district court decision denying arbitration where arbitration clause was ambiguous and consequently ambiguity was construed against the drafter of the agreement).  New York federal and state court precedent further reinforce the need to construe the arbitration clause here narrowly and deny Filippatos's pitiful attempt to compel arbitration of Plaintiff's decision to fire it for professional misconduct.  *See e.g.*, *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 52 (E.D.N.Y. 2020) (concluding arbitration clause beginning with broad "any dispute or disagreement" was narrow because it was limited to specific type of dispute); *Gerling Glob. Reinsurance Corp. v. Home Ins. Co.*, 302 A.D.2d 118, 119 (N.Y. App. Div. 2002) (holding arbitration clause applying to "any right of action" that "arise as to the interpretation of [the] Contract" constituted a narrow arbitration clause and did not apply to "collateral issues" connected to the main agreement containing the arbitration clause); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (contractual principle that ambiguity construed against drafter applies to interpretation of arbitration clause).

The above corpus of favorable precedent easily shreds Filippatos's paper-thin argument that Plaintiff's for-cause termination of Filippatos is subject to mandatory arbitration because it could "directly impact[]" Filippatos's entitlement to fees as such an argument runs directly counter to analogous and authoritative case law.  Filippatos's Mot. at 14.  Adopting this specious argument would also require the Court to ignore plain language of the arbitration clause itself— which is limited to "fee or billing disputes"—not, for example, "*any claims relating to* fee or billing disputes" or "*any claims arising in connection with any* fee or billing dispute."[13]  Further, as established herein, because the arbitration clause here must be construed narrowly and due to

---

[13] Filippatos ignores the fact that it could have included broader language in the Retainer Agreement that might have actually supported its baseless effort to compel arbitration.

the requirement that any ambiguity be construed against Filippatos as the attorney who drafted the provision, even if the Court were to view Plaintiff's for-cause termination of Filippatos as collateral to a fee dispute, it would still fall outside the scope of mandatory arbitration under the Retainer Agreement. *Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*, 633 F. Supp. 2d 109, 116 (S.D.N.Y. 2009) (explaining that under narrow arbitration clause, a dispute will only be subject to arbitration if "the dispute is an issue that 'is on its face within the purview of the clause.'" (quoting *Louis Dreyfus*, 252 F.3d at 225)); *Louis Dreyfus*, 252 F.3d at 225 ("Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview."); *Willamette Biomass Processors, Inc. v. Perdue Agribusiness LLC*, No. 3:19-CV-01677-AC, 2020 WL 2535047, at *6 (D. Or. Apr. 13, 2020), *report and recommendation adopted*, 2020 WL 2529614 (D. Or. May 18, 2020) (stating "courts have held that where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview" (internal citations omitted)).

Finally, allowing Filippatos to dodge public accountability for its professional misconduct by broadly construing an arbitration provision drafted by Filippatos in Filippatos's favor would undermine public policy and vitiate Plaintiff's right to only be bound to arbitrate disputes to which she has freely consented. *See, e.g.*, *Larrison v. Scarola Reavis*, 11 Misc. 3d 572, 579–80 (N.Y. Sup. Ct. 2005) (stating arbitration clause designed "not for the client's benefit but to protect and advance the lawyer's interest in a forum of the lawyer's choosing" will "only serve to further undermine the public's confidence in the profession" and holding such an arbitration clause "must be viewed as inherently unenforceable and against public policy").

### 3. Plaintiff's Request for Her Client File Is Not a Fee or Billing Dispute As Filippatos Has Refused to Provide Plaintiff with Her Client File Prior to Any Contrived Fee Dispute and the Retaining Lien's Validity Is Nullified by Filippatos's Misconduct.

Plaintiff's request for her client file from Filippatos is squarely not a fee dispute: it is a mere request for records that are in the possession of Filippatos. Further, for the same reasons discussed above, the narrow scope of the arbitration clause in the Retainer Agreement cannot be

1    capaciously construed to encompass a mere request for records.  Filippatos cannot expand the

2    scope of the narrow arbitration clause by now asserting a retaining lien on Plaintiff's client file,

3    and Filippatos offers no persuasive case law to support to support this position.  *See* Filippatos's

4    Motion at 15 (claiming request for client file is subject to arbitration clause limited to fee/billing

5    disputes because "this is a dispute ***stemming from*** Ms. Kovalenko's [alleged] failure to pay her

6    legal expenses") (emphasis added).   The impropriety of Filippatos's retaining lien is also

7    demonstrated by Filippatos's failure to provide Plaintiff with her client file when she requested

8    the same well before Filippatos asserted its baseless retaining lien.  Kovalenko Decl. ¶ 5.[14]

9            Filippatos proffers two inapplicable cases as weak support for its claim that it can withhold

10   Plaintiff's client file pursuant to its recent retaining lien. *Pomerantz v. Schandler*, 704 F.2d 681

11   (2d Cir. 1983), is distinguishable on multiple grounds.  First, *Pomerantz* was a criminal case, and

12   the court held that there was no need to order immediate production of the client file because there

13   was no active or imminently pending case creating a need for the withheld files.  *See id.* at 683

14   ("However, there is no evidence . . . that the papers are urgently needed to defend against a

15   criminal prosecution of the defendants. At the time of argument no indictment or information had

16   been filed and we have not been advised of any change in the situation since then.").   Here,

17   conversely, the case is active and there are looming discovery deadlines that create a need for

18   Plaintiff to have her complete client file, so she is in a position to fully advance her claims.

19   Kovalenko Decl. ¶ 6; Scheduling Order, Dkt. No. 152 (scheduling close of all discovery for May

20   2025).  Second, *Pomerantz* explicitly states that a fired lawyer's ability to assert a retaining lien

21   and withhold a client's case file does not apply if there is "evidence of misconduct on the part of

22   former counsel."  *Pomerantz*, 704 F.2d at 683.  It is indisputable that Plaintiff has provided

23

24   ---

   [14] Prior to January 28, 2025, Plaintiff had not been notified of any costs due or payable to
25   Filippatos. Kovalenko Decl. ¶ 4.  Filippatos notified Plaintiff of these purported costs in the same
   email transmittal in which Filippatos also asserted its purported retaining lien on January 28,
26   2025. Kovalenko Decl. ¶ 4 & Attachs. A & C thereto.  However, Filippatos grossly misrepresents
   the relevant facts and timeline by claiming that it "asserted" a retaining lien "due to [Plaintiff's]
27   failure to pay her outstanding legal expenses."  Filippatos's Mot. at 9.  In representing this to the
   Court, Filippatos dishonestly made it seem as if the retaining lien was based on Plaintiff's prior
28   failure to pay outstanding legal costs, but Plaintiff was never even afforded the opportunity to pay
   any purported costs prior to the assertion of said lien.  Filippatos's Mot. at 9; Kovalenko Decl. ¶
   4.  This perversion of facts by Filippatos speaks to its mendacity (and that of Mr. Filippatos and
   Mr. Rahman) and should undermine its (and their) credibility before the Court.

evidence of misconduct by Filippatos.  *E.g.*, Kovalenko Decl. Attach. F at 2 (January 11, 2024 email from Mr. Rahman to Plaintiff apologizing for mistreating Plaintiff); Kovalenko Decl. Kovalenko Decl. Attach. D at 1 (December 18, 2024 email from Mr. Filippatos admitting to prior apology for unprofessional conduct at mediation); Kovalenko Decl. Attach. A at 5–6, 9 (January 23, 2025 emails from Mr. Filippatos making improper threats to terminate attorney-client relationship if Plaintiff did not acquiesce to Filippatos dictates over ███████████ and making inappropriate statements toward Plaintiff); Kovalenko Decl. Attach. A at 14 (hurling insults at Plaintiff in January 16, 2025 email); Kovalenko Decl. ¶¶ 11, 13; Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶¶ 11–16, 21–25, Dkt. No. 176-4.  *Concrete Flotation Systems* is distinguishable as the retaining lien asserted in that case was based on a "claim for outstanding fees having been reduced to a judgment in state court."[15]  *Concrete Flotation Sys., Inc. v. Tadco Const. Corp.*, No. CV-07-319 ARR/VVP, 2009 WL 1209141, at *1 (E.D.N.Y. May 2, 2009). Additionally, as stated in *Pomerantz*, a fired attorney loses any purported ability to withhold their former client's client file based on a retaining lien if there is evidence of misconduct on the part of former counsel.  *Pomerantz*, 704 F.2d at 683'; *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-01585 (LJL), 2022 WL 17961594, at *2 (S.D.N.Y. Dec. 27, 2022) (stating same).

Finally, and saliently, courts have held that "[i]n federal question cases [providing for fee-shifting under federal statute], retention of files should rarely if ever be permitted" by a former attorney asserting a retaining lien under state law.  *See, e.g.*, *Misek-Falkoff v. Int'l Bus. Machines Corp.*, 829 F. Supp. 660, 664 (S.D.N.Y. 1993); 42 U.S.C. § 2000e-5(k) (providing for fee-shifting under Title VII).[16]  All told, for the reasons herein, the Court should require Filippatos to provide Plaintiff with her client file as the assertion of the baseless retaining lien conflicts with important federal principles and consequently "must be relinquished when balanced against considerations of public policy."  *See Misek-Falkoff*, 829 F. Supp. at 663–64 (refusing to enforce retaining lien

---

[15] Here, there is no such judgment, and Filippatos has not demonstrated that its purported fee dispute is even ripe for adjudication.

[16] *See also Holcombe v. U.S. Airways Grp., Inc.*, Nos. 03-CV-4785 & 08-CV-1593 (SLT) (JMA), 2014 WL 4907141, at *4–5 (E.D.N.Y. Sept. 30, 2014) (following the "general rule against awarding retaining liens in matters [that] involve fee-shifting statutes"); Am. Compl. ¶¶ 258–68, 271–83, 288–94 (Title VII causes of action for sex discrimination, retaliation and sex-based harassment constituting hostile work environment), Dkt. No. 94.

1    and stating that "[c]ontroversies between parties and their attorneys should not hold federal

2    litigation hostage") (citing *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir.1991)

3    (discussing how the public interest in cases arising under federal law outweighs purely private

4    interest of law firm withholding files)).[17]

5         **B.**    **The Court Should Deny Filippatos's Motion to Withdraw Because Plaintiff**

6             **Had Previously Terminated It as Counsel and Notified the Court of the Same.**

7        Filippatos (and local counsel) make the baseless argument that the cross motions to

8    withdraw as counsel—after admitting to already being terminated by Plaintiff—would somehow

9    make "moot" Plaintiff's Motion to Notice Termination of Filippatos for Cause. Filippatos's Mot.

10    at 8, 10 (citing no case law in support). This argument makes no sense, and Filippatos does not

11    cite a single authority supporting this "mootness" argument. *Cf. West v. Sec'y of Dep't of Transp.*,

12    206 F.3d 920, 924 (9th Cir. 2000) ("The burden of demonstrating mootness is a heavy one.").

13        Filippatos claims that "permission for termination of employment" as counsel for Plaintiff

14    is required by California Rules of Professional Conduct, which is incorrect. Filippatos's Mot. at

15    10. It is indisputable that Plaintiff has plenary authority to fire her counsel at any time and for

16    any reason, and thus does not require "permission" from the Court in order to fire Filippatos or

17    for the Court to notice Filippatos's termination as counsel on the docket. Filippatos asserts in

18    conclusory fashion that "permission for withdrawal" is required under Civil Local Rule 11-5, but

19    this rule does not apply because Filippatos is not the "sole remaining" counsel who has made an

20    appearance on Plaintiff's behalf. Filippatos's Mot. at 10. Plaintiff is and has been an attorney

21    of record in this case (long before Filippatos was retained) and is licensed to practice in California

22    and authorized to appear before this Court as an attorney in good standing. Kovalenko Decl. ISO

---

24 [17] It is also inappropriate for Filippatos to withhold Plaintiff's client file due to a contrived fee

25 dispute because "special circumstances" exist. *Gardner-Alfred*, 2022 WL 17961594, at *2 (listing three special circumstances, which if present, defeat former counsel's retaining lien on

26 client file). Here: (1) Plaintiff has a "need" for the documents as the litigation is ongoing, and she does not have all of Filippatos's prior correspondence with opposing counsel or prior

27 productions made on her behalf; (2) prejudice would result from denying Plaintiff access to these materials as she would not be able to refer to Bates numbering for all prior productions, confirm

28 what was previously produced, or understand and be able to address prior statements that Filippatos conveyed to opposing counsel; and (3) Plaintiff would suffer financial hardship if forced to pay the purported outstanding legal costs or post a bond, given she has been unemployed since being terminated in 2021. *See id.*; Kovalenko Decl. ¶¶ 5–7.

1    Mot. Notice Termination ¶ 2 & Attach. A, Dkt. Nos. 176-4 & 171-2.  In fact, Filippatos concedes

2    that Plaintiff managed the case fine on her own before Filippatos was retained. *See* Filippatos's

3    Mot. at 11. Accordingly, now that Filippatos's (and by extension local counsel's) participation in

4    the case has ceased, all that is required is for Filippatos to e-file a "Notice of Change in Counsel."

5    *See* Civil L. R. 5-1(c)(2)(C) ("If a particular counsel ceases to be involved with a case when the

6    party is still represented by other counsel, a Notice of Change in Counsel must be e-filed.");

7    Kovalenko Decl. ISO Mot. Notice Termination ¶ 2, Dkt. No. 171-1 (citing Notice of Appearance,

8    Dkt. No. 11, filed by, on behalf of, and for Zoya Kovalenko) (explaining Zoya Kovalenko, the

9    plaintiff in this action, noticed her appearance as an attorney in this action and did not file any

10   notice to withdraw her appearance in this action); *accord* Unredacted Kovalenko Decl. ISO Mot.

11   Notice Termination, Dkt. No. 176-4; *see also* Pl.'s Mot. Notice Termination at 4 (citing

12   Kovalenko Decl. ISO Mot. Notice Termination ¶ 2).

13        Filippatos concedes that Plaintiff terminated Filippatos as counsel on January 23, 2025,

14   and subsequently filed her motion asking the court to formally notice such termination ***prior to***

15   Filippatos (and local counsel) filing their belated cross motions to withdraw.  Filippatos's Mot. at

16   8.  Filippatos cannot withdraw from a relationship that Plaintiff has already killed, and

17   Filippatos's ability to withdraw (with or without cause) ended as soon as Plaintiff terminated

18   Filippatos as her disgraced counsel. A client's right to fire their attorney at any time is absolute

19   and takes effect as soon as the attorney is informed of the client's decision to fire them as counsel.

20   *E.g.*, *Yumul v. Smart Balance, Inc.*, No. CV-10-00927 MMM AJWX, 2010 WL 4352723, at *2

21   (C.D. Cal. Oct. 8, 2010) ("The court agrees that Beck & Lee was effectively discharged as soon

22   as the firm was made aware of Yumul's decision to terminate its services."); *see also id.* at *2 n.7

23   & *5 (striking former counsel's post-termination filings, including opposition to plaintiff's notice

24   of termination).  Further, it is not uncommon for courts to enter a notice of termination on the

25   docket to record a client's decision to terminate their counsel.  *E.g.*, *Alvarado v. FedEx Corp.*,

26   No. C 04-0098 SI, 2011 WL 4708133, at *2 (N.D. Cal. Sept. 30, 2011) (noting Court had entered

27   orders on docket to reflect plaintiffs' terminations of counsel); *Weeks v. Union Pac. R.R. Co.*,

28   2018 U.S. Dist. LEXIS 42158, at *4–5 & 5 n.1 (E.D. Cal. Mar. 14, 2018) (stating "[b]ecause it is

clear that [the client] terminated [counsel] as of March 5, 2018, the Court will overrule objections to the notice of termination and order the clerk to terminate [counsel] as attorney of record," while noting that terminated counsel "has cited no authority in support of her objections to termination or her request for a hearing"); *United States v. Moss*, No. 2:03-cr-0550-WBS-EFB P, 2 (E.D. Cal. Jun. 28, 2018), https://casetext.com/case/united-states-v-moss-95 (directing clerk to terminate attorney of record pursuant to notice of termination filed by client).  Here, Plaintiff informed Filippatos via email on January 23, 2025 that it was terminated for cause effective immediately. Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶ 6, Dkt. No. 176-4; Unredacted Attach. C (Termination Email and Resp.) to Kovalenko Decl. ISO Mot. Notice Termination at 3, Dkt. No. 176-5; *see also* Unredacted Mot. Notice Termination at 2, Dkt. No. 176-3.  On the same day, Filippatos acknowledged receipt of the notice of termination by responding thereto. Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶ 6; Unredacted Attach. C to Kovalenko Decl. ISO Mot. Notice Termination at 2; *see also* Unredacted Mot. Notice Termination at 2.  Accordingly, Filippatos's firing was effective as of January 23, 2025, and the Court should deny all relief requested in Filippatos's post-termination filings (Dkt. Nos. 173, 175, 177, 177-1, 177-2, 178), enter a docket entry noticing Filippatos's termination for cause as counsel of record and remove Filippatos (and local counsel) as counsel of record in the case.

C.    **The Court Should Conclude That Plaintiff Had Adequate Basis to Terminate Filippatos for Cause Without Requiring an Evidentiary Hearing.**

The Court has received ample legal and factual support to readily conclude that Plaintiff had at least one independent basis to terminate Filippatos for cause.  This is especially true with respect to Plaintiff's argument, as corroborated by contemporaneous email communications with Filippatos, that she terminated Filippatos for cause because it impermissibly sought to (and did in fact) interfere with her settlement authority.  Moreover, Filippatos's soft-bellied and essentially non-existent rebuttal to Plaintiff's assertions that she terminated it for cause due to its failure to perform legal work and its abusive, unprofessional treatment of Plaintiff should provide the Court with further repose in reaching a swift ruling here.  Accordingly, the Court has no need, factually or legally, to hold protracted hearings to resolve this dispute and should issue a prompt ruling

1  affirming Plaintiff's decision to fire Filippatos for cause, thereby enabling Plaintiff to continue to

2  litigate her case ▮▮▮▮▮▮▮▮▮▮▮▮ unencumbered by Filippatos's misconduct.

3    **1.  There Are No Issues of Fact or Law That Preclude the Court from**

4    **Determining That Plaintiff Terminated Filippatos for Cause Because**

5    **It Interfered with Her Settlement Authority.**

6    Filippatos provides no case law or evidentiary support for its desperate demand that the

7  court must hold a separate trial in order to conclude whether Filippatos was terminated for cause.

8  Filippatos's Mot. at 5–6, 15–16 (claiming, without support, that "discovery, [additional] briefing,

9  and an evidentiary hearing on the merits . . . would need to be scheduled," *id.* at 6, in order to

10  address allegedly "complicated and nuanced issues," *id.* at 10).   Contrary to this baseless

11  assertion, the limited issues before the Court are straightforward and ripe for a swift resolution

12  without needlessly wasting judicial resources. *See Weeks v. Union Pac. R.R. Co.*, 2018 U.S. Dist.

13  LEXIS 42158, at *4–5 & 5 n.1 (E.D. Cal. Mar. 14, 2018) (overruling terminate counsel's

14  objections to the notice of termination and noting in support of ruling that terminated counsel

15  "has cited no authority in support of her objections to termination or her request for a hearing").

16  It is clear that Filippatos has no cognizable arguments, under the law or based on

17  contemporaneous evidence, to refute Plaintiff's contention that Filippatos impermissibly

18  interfered with her settlement authority.   Filippatos did not even attempt to address or distinguish

19  the various, on-point cases cited in Plaintiff's Motion to Notice Termination establishing that

20  Filippatos's threat to withdraw in direct response to Plaintiff ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  provided Plaintiff with a standalone basis to terminate Filippatos for cause.   *See generally*

22  Filippatos's Mot.; *cf.* Pl.'s Mot. to Notice Termination at 10–11, 13–16 (citing, among other cases,

23  *Holcombe v. Matsiborchuk*, 747 F. App'x 875, 878 (2d Cir. 2018); *Holcombe v. US Airways Grp.,*

24  *Inc.*, No. 08- CV-1593 (SLT) (JO), 2017 WL 1184104, at *7 (E.D.N.Y. Mar. 29, 2017); *Stinson*

25  *v. City of N.Y.*, No. 18-CV-0027 (LAK) (BCM), 2018 WL 11257424, at *4–6 (S.D.N.Y. Nov. 26,

26  2018); *Guzik v. Albright*, No. 16-CV-2257 (JPO), 2019 WL 3334487, at *9 (S.D.N.Y. July 25,

27  2019). *Nehad v. Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008); *Lauro v. State*, No. CV 12-00637

28  DKW-BMK, 2015 WL 5031236, at *4 (D. Haw. Aug. 24, 2015)).   Nor has Filippatos disputed

the authenticity of the email exchange between Plaintiff and Filippatos corroborating the same. *See generally* Filippatos's Mot. & Rahman Decl.; *cf.* Kovalenko Decl. ISO Motion to Notice Termination, ¶ 15 (excerpt of Mr. Filippatos's email stating Filippatos will terminate attorney-client relationship "effective COB today" if Plaintiff does not "change course" ███████████ ██████████████████); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 639 F. Supp. 3d 944, 964–65 (N.D. Cal. 2022) (finding party waived argument because it did not oppose the same in its brief) (citing *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016)). This robust legal support combined with irrefutable supporting facts and evidence provide the Court with more than sufficient grounds to conclude that Plaintiff terminated for Filippatos for cause because of its direct interference with her ████████████████ as the client. Unredacted Mot. Notice Termination at 2–4, 9–16, Dkt. No. 176-3; Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶¶ 6, 14–17, 19, Dkt. No. 176-4.

If that is not enough, additional support for concluding Filippatos was terminated for cause is found in Plaintiff's correspondence with Filippatos in the weeks leading up to her decision to terminate it for cause. Such correspondence demonstrates a concerted effort by Filippatos to rush and force Plaintiff into ████████████████████████████████████████████n ████████████████████████████████. Kovalenko Decl. ¶¶ 8–11; Kovalenko Decl. Attach. A at 5–9, 12–16, 18–20; Kovalenko Decl. Attach. D at 2, 4–7, 9. As but one example, on January 23, 2025, Mr. Filippatos said outright that either it would fire Plaintiff or Plaintiff would have to fire Filippatos if Plaintiff did not █████████████████████████████████ ████████████. Kovalenko Decl. ¶ 11 & Attach. A at 5–6. This is another black-and-white example of Filippatos improperly invading Plaintiff's settlement authority by using express threats to withdraw as a club to beat Plaintiff into relinquishing her right ████████████ ████████. *Id.*; Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶¶ 12, 14–17, 19, Dkt. No. 176-4. Based on the evidence and law before the Court, there are no material issues of fact or law precluding the Court from concluding that Plaintiff terminated Filippatos for cause because

it repeatedly and unlawfully interfered with Plaintiff's settlement authority.[18]

Ironically, and worse yet for Filippatos is the fact that Filippatos's Motion undermines any already baseless argument that they were not fired for cause because Plaintiff caused the breakdown in the attorney-client relationship. This is because Filippatos contends, to its own detriment, that the "attorney-client relationship between Filippatos PLLC and Zoya Kovalenko became irretrievably broken beyond repair due to Ms. Kovalenko's" purported refusal to cooperate by not following Filippatos's legal advice provided during ███████████ ███████████████████████ Rahman Decl. ¶ 4; Filippatos's Mot. at 8, 11 (stating same). In other words, Filippatos has conceded that any alleged strain on the attorney-client relationship caused by Plaintiff was based on her alleged refusal to cooperate and follow its advice on ██████ █████████████████████████████ However, Plaintiff has proffered extensive, on-point, and even controlling precedent showing that a lawyer cannot threaten to withdraw as counsel because a client chooses not to follow their ████████████ regardless of whether such client decision is rational or reasonable.[19] So, even if the Court were to assume what Filippatos claims is true about Plaintiff's unwillingness to follow its ████████████ advice, it would in no way weaken Plaintiff's straightforward contention that she had cause to terminate Filippatos as her counsel because it interfered with her settlement authority. Rather, Filippatos's own assertions on how Plaintiff allegedly damaged the attorney-client relationship only supports a ruling that Filippatos was terminated for cause because, per Filippatos's own statements, its termination indisputably flowed from Plaintiff's unwillingness to ███████████████████ ████████████████ which is something Plaintiff is allowed to do as the client.

---

[18] As explained above, Filippatos's view on the value of Plaintiff's case is wholly irrelevant to determining whether Filippatos interfered with Plaintiff's settlement authority. *See supra* at 2–3.
[19] Filippatos offers. no authority supporting the proposition that an attorney can withdraw (or threaten to withdraw) for cause because a client disagreed with its ████████████ *See generally* Filippatos's Mot.

1

2.     **Filippatos's Failure to Rebut Plaintiff's Assertions of Extreme Laxity**

2           **and Abusive Conduct Further Support Ruling in Plaintiff's Favor,**

3           **Although the Court Need Not Reach These Issues to Conclude**

4           **Plaintiff Terminated Filippatos for Cause.**

5           Although there is clear and convincing evidence to conclude that Plaintiff appropriately

6 fired Filippatos for cause due to its interference with her settlement authority, Filippatos's inability

7 and failure to push back on Plaintiff's detailed account of its "extreme laxity" in litigating her case

8 should provide the Court with further comfort in concluding Filippatos was fired for cause.  Other

9 than conclusory claims that Filippatos has "dutifully and zealously" litigated this matter and

10 "steadfastly" represented Plaintiff's interests, Filippatos fails to address (or even concern itself)

11 with Plaintiff's specific and supported assertions that it has done almost no substantive legal work

12 in this case since being retained.  *See* Filippatos's Mot. at 7; Rahman Decl. ¶ 3; Mot. Notice

13 Termination at 4–5, 16–19; Kovalenko Decl. ISO Mot. Notice Termination ¶¶ 21–24, 28.  For

14 instance, Filippatos did not directly refute (nor can it refute) Plaintiff's statement that she has

15 researched and drafted every substantive brief and discovery letter in this case since hiring

16 Filippatos with it only providing back-end edits.  *See generally* Filippatos's Mot. & Rahman Decl.;

17 Mot. Notice Termination at 17–18; Kovalenko Decl. ISO Mot. Notice Termination ¶ 21.

18 Filippatos's reticence and failure to directly push back on this assertion inferentially supports the

19 validity of this statement as counsel should have no hesitation refuting such a claim if it actually

20 researched and prepared the briefs and discovery letters.  Further, the noticeably different style

21 and prose and depth of case law support used in Filippatos's Motion relative to the other filed

22 briefs since they have appeared in this case offers further clarity as to who has actually been doing

23 the legal work in this lawsuit, i.e., Plaintiff.  In addition, Filippatos has not specifically refuted or

24 even attempted to challenge Plaintiff's assertion that it has "put forth extremely minimal effort to

25 conduct and advance offensive discovery," including not contacting fact witnesses, not attempting

26 to meet and confer with Defendants over privilege issues, or propounding interrogatories.  This

27 includes the documented and damaging fact that Tanvir Rahman lied to the Court during the

28 February 15, 2024 hearing when he claimed that Filippatos would propound interrogatories "in

the next week or so." Kovalenko Decl. ISO Mot. Notice Termination ¶ 23–24 & Attach. D at 6:4–7; Mot. Notice Termination at 18. Again, no interrogatories have been propounded by Filippatos to a single Defendant in this case nearly a year after this false remark was made to the Court. Unless Filippatos can provide contemporaneous evidence to demonstrate Plaintiff's well-supported assertions of extreme laxity are false, it is impossible factually for Filippatos to contend that it has "dutifully and zealously" litigated this matter, given written substantive briefs, written discovery letters, and efforts to advance discovery likely comprise nearly all of the meaningful legal work completed since it was retained. The amount of substantive non-written legal work required in the case to date has been minimal to say the least, which is evidenced by the fact that there have only been two brief hearings that have taken place since Filippatos appeared on Plaintiff's behalf. Minute Entry Disc. Hr'g (Oct. 2, 2024), Dkt. No. 146; Minute Entry Disc. Hr'g (Feb. 15, 2024), Dkt. No. 126; *see also* Order Granting Mr. Rahman's Appl. Admis. *Pro Hac Vice*, Dkt. No. 109.

Finally, Filippatos offers a similarly concerning, feeble rebuttal to Plaintiff's assertion that it has treated Plaintiff in a hostile and abusive manner on numerous occasions. Most notably, Filippatos cannot refute the established fact—as shown in emails from Filippatos—that Filippatos apologized to Plaintiff on two separate occasions for its unprofessional behavior.[20] Kovalenko Decl. ¶ 13; Kovalenko Decl. Attach. F at 2 (January 11, 2024 email from Mr. Rahman apologizing to Plaintiff, stating: "Zoya – I apologize if I made you feel belittled or demeaned. I let my frustration get the best of me, and for that I am sorry."); Kovalenko Decl. Attach. D at 1 (December 18, 2024 email from Mr. Filippatos to Plaintiff admitting to unprofessional conduct ████████████ ██████████ and prior apology for same, even despite Mr. Filippatos grossly diluting and aggressively rewriting ███████████████); *accord* Unredacted Kovalenko Decl. ISO Mot. Notice Termination ¶¶ 12–13, 25, Dkt. No. 176-4.

If for some reason the Court remains unsure as to whether an evidentiary hearing is

---

[20] Like every other example of misconduct that Plaintiff proffered in the Unredacted Motion to Notice Termination, Dkt. No. 176-3, Filippatos has not directly refuted the documented fact that it has apologized to Plaintiff multiple times for professional misconduct. *See generally* Filippatos's Mot. & Rahman Decl.

needed, Plaintiff respectfully requests that the Court allow Magistrate Judge Hixson to issue a report and recommendation on the termination for cause filings, which would obviate the need for any separate and subsequent proceeding by the Court. *See Misek-Falkoff v. Int'l Bus. Machines Corp.*, 829 F. Supp. 660, 665 n.9 (S.D.N.Y. 1993) ("It is contemplated that the magistrate judge's report and recommendation will permit me to reach a complete adjudication with respect to the claims of the moving attorney, thus making any separate subsequent proceeding unnecessary.").

### D. <u>The Court Should Prohibit Filippatos from Submitting Another Opposition to Plaintiff's Motion to Notice Termination of Filippatos PLLC for Cause.</u>

Due to the infirmity of Filippatos's multiple filings, the Court should disregard Filippatos's improper attempt to file cross motions to withdraw in its opposition to Plaintiff's Motion to Notice Termination and should only consider the feeble arguments Filippatos makes in opposition to the same. *See Navarro v. Data*, No. 2:20-CV-07370-SVW-SK, 2022 WL 18280359, at *1 (C.D. Cal. Dec. 7, 2022) (declining to consider party's "so-called cross motion" because party improperly "attempted to make a cross-motion . . . in their opposition papers").

### CONCLUSION

In conclusion, Plaintiff respectfully requests the Court deny all relief requested by Filippatos and Hennig Kramer in the Motion, Dkt. No. 177, and instead enter notice of termination of Filippatos for cause, order Filippatos to promptly provide Plaintiff with her client file and grant any other and further relief as the Court deems just and proper.

Respectfully submitted this 14th day of February 2025.

By:  /s/ *Zoya Kovalenko*
Zoya Kovalenko (Cal. SBN 338624)
13221 Oakland Hills Blvd., Apt. 206
Germantown, MD 20874
Tel.: 678 559 4682
zoyavk@outlook.com
Plaintiff Zoya Kovalenko