1  Zoya Kovalenko (SBN 338624)
   13221 Oakland Hills Blvd., Apt. 206
2  Germantown, MD 20874
   +1 678 559 4682
3  zoyavk@outlook.com
   *Attorney for Plaintiff Zoya Kovalenko*
4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION

11 | ZOYA KOVALENKO,                          | Case No. 4:22-cv-05990-HSG (TSH)

12 |              *Plaintiff*,                 | **PLAINTIFF'S OPPOSITION TO**
                                                **FILIPPATOS PLLC'S MOTION TO**
13 |         v.                                | **QUASH SUBPOENA AND FOR**
                                                **PROTECTIVE ORDER AND**
14 | KIRKLAND & ELLIS LLP, MICHAEL DE          | **SANCTIONS**
      VRIES, MICHAEL W. DEVRIES, P.C.,
15 | ADAM ALPER, ADAM R. ALPER, P.C.,          | Re: Dkt. No. 221
      AKSHAY DEORAS, AKSHAY S.
16 | DEORAS, P.C., AND MARK FAHEY,             | Assigned to the Honorable Haywood S.
                                                Gilliam, Jr., United States District Judge for the
17 |              *Defendants*.                | United States District Court for the Northern
                                                District of California, Oakland Division
18
                                                Referred to the Honorable Thomas S. Hixson,
19                                              United States Magistrate Judge for the United
                                                States District Court for the Northern District of
20                                              California, San Francisco Division

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO FILIPPATOS PLLC'S MOTION TO QUASH
No. 4:22-CV-05990-HSG (TSH)

1

## TABLE OF CONTENTS

2

pp.

TABLE OF CONTENTS ..........................................................................................................i

TABLE OF AUHORITIES ......................................................................................................ii

**PLAINTIFF'S OPPOSITION TO FILIPPATOS PLLC'S MOTION TO QUASH**..........1

I.    **INTRODUCTION**............................................................................................................1

II.   **STATEMENT OF RELEVANT FACTS**.......................................................................2

III.  **STATEMENT OF ISSUES TO BE DECIDED**............................................................4

IV.   **ARGUMENT**....................................................................................................................4

      A.    **Filippatos Does Not Have Standing and Has Not Shown It Has a**
           **Cognizable Privilege or Personal Right in the Sought Information.** ............4

          1.    **Filippatos Lacks Standing to Move to Quash on Relevance,**
              **Overbreadth, Undue Burden, and Timing Grounds.**.......................5

          2.    **The Conclusory and Vague Statements in the Motion Do Not**
              **Satisfy Filippatos's Burden to Establish It Has a Cognizable**
              **Privilege or Personal Right in the Basic Banking-Identifying**
              **Information Sought.** ...............................................................................6

              i)    Filippatos Has Not Demonstrated the Subpoena Invades
                   Any Privacy Interests or the Attorney-Client Privilege of
                   Its Other Clients and Makes Only Conclusory Statements
                   to Support Such Position. .........................................................8

              ii)   Filippatos's Speculation That Compliance with the
                   Subpoena "Would" Expose Filippatos to "Potential"
                   and "Significant Security Risks" Does Not Warrant
                   Quashing and Is Baseless. .........................................................9

3. Filippatos's Cobbling of Unpersuasive and Easily Distinguishable

Case Law to Support Standing Is Unhelpful to the Motion

and Underscores the Frivolity of Filippatos's Arguments...............10

B. The Court Should Order K&E to Comply with the Narrow Subpoena

Seeking Information ███████████████████████ As

Filippatos's Weak Arguments Do Not Support Any of Its Requested

Relief..................................................................................................12

1. The Timing of Subpoena Was Reasonable Under the

Circumstances.............................................................................12

2. The Court Has Jurisdiction to Order Compliance with the

Subpoena. ...................................................................................13

i) The Court Has Ancillary Jurisdiction over the Subpoena

Dispute.......................................................................13

ii) This Court's Narrow Ruling Declining to Adjudicate the

Merits of Plaintiff's Decision to Fire Filippatos for Cause

and the Narrow Stipulated Dismissal Do Not Strip This

Court of Jurisdiction..................................................15

3. The Location and Control of █████████████████

████ Is Discoverable, Relevant and Proportional to the Needs

of the Case, Including Complete Resolution of Plaintiff's

Underlying Lawsuit, and to Her Pending Collateral Disputes with

Filippatos.....................................................................................17

i) It Is Not Improper for Discovery to Yield Information

That May Be Relevant to a Potential Judgment and/or

████████████████████████████ ................19

4. Sanctions Are Unwarranted as The Subpoena Was Not Issued

in Bad Faith..................................................................................22

5.      Filippatos's Request for a Protective Order Should Be Denied,
        and Any Purported Privacy Interest Is Assuaged by
        Production of the Requested Information Subject to the
        Protective Order Entered in This Case. ...............................................24

CONCLUSION...........................................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2 **Cases** **pp.**

3 *Acosta v. Wellfleet Communications, LLC*,

4   No. 2:16-cv-02353-GMN-GWF, 2017 WL 5180425 (D. Nev. Nov. 8, 2017)........................... 6

5 *Allen v. Keese*,

6   No. CV 14-2721 MWF (FFMx), 2015 WL 14094845 (C.D. Cal. July 13, 2015)...................... 9

7 *Appel v. Wolf*,

8   Nos. 21-cv-1466-L-BGS, 21-cv-1536-L-BGS, 21-cv-1557-L-BGS, 2021 WL 5234424 (S.D.

9   Cal. Nov. 9, 2021).................................................................................................................. 10

10 *Arias-Zeballos v. Tan*,

11   No. 06 Civ. 1268(GEL)(KNF), 2007 WL 210112 (S.D.N.Y. Jan. 25, 2007)..................... 11, 12

12 *Automobile Inspection Services, Inc. v. Flint Auto Auction, Inc.*,

13   No. 06-15100, 2007 WL 3333016 (E.D. Mich. Nov. 9, 2007).................................................. 23

14 *Avaya Inc. v. Pearce*,

15   No. 19-cv-00565-SI, 2019 WL 13413358 (N.D. Cal. Aug. 20, 2019 ........................................ 4

16 *Bishop v. Baldwin*,

17   No. 20-CV-61254-SINGHAL/VALLE, 2020 WL 7320932 (S.D. Fla. Dec. 10, 2020)........... 20

18 *Black v. Wrigley*,

19   No. 18-CV-2367 GPC-BGS, 2019 WL 1877070 (S.D. Cal. Apr. 26, 2019)............................. 23

20 *Board of Trustees of South Nevada Joint Management & Culinary & Bartenders Training Fund*

21   *v. Fava*,

22   No. 2:18-cv-00036-JCM-DJA, 2019 WL 11093817 (D. Nev. Oct. 31, 2019)......................... 24

23 *Clark v. Trans Union, LLC*,

24   No. 2:24-cv-00783 WBS CKD, 2025 WL 359314 (E.D. Cal. Jan. 31, 2025)........................ 5, 7

25 *Coalview Centralia, LLC v. Transalta Centralia Mining LLC*,

26   No. 3:18-CV-05639-RBL, 2019 WL 2563851 (W.D. Wash. Mar. 21, 2019)............................ 7

27 *Commodity Futures Trading Commission v. Saffron*,

28   No. 2:19-cv-01697-JAD-DJA, 2020 WL 8172990 (D. Nev. Dec. 18, 2020)........................... 17

*Cooter & Gell v. Hartmarx Corporation*,

  496 U.S. 384 (1990)............................................................................................................... 14

*Crispin v. Christian Audigier, Inc.*,

  717 F. Supp. 2d 965 (C.D. Cal. 2010) .................................................................................. 11

*Curry v. Del Priore*,

  941 F.2d 730 (9th Cir. 1991) ............................................................................................... 14

*Diamond State Ins. Co. v. Rebel Oil Co., Inc.*,

  157 F.R.D. 691 (D. Nev. 1994) ............................................................................................. 6

*Eitzen Bulk A/S v. Bank of India*,

  827 F. Supp. 2d 234 (S.D.N.Y. 2011) ................................................................................. 21

*EVOX Productions, LLC v. Yahoo, Inc.*,

  No. 2:20-cv-02907-MEMF-SSC, 2023 WL 6192716 (C.D. Cal. Aug. 8, 2023)...................... 23

*Federal Deposit Insurance Corporation v. Lewis*,

  No. 2:10-cv-439-JCM-VCF, 2014 WL 7330931 (D. Nev. Dec. 18, 2014).............................. 20

*Federal Savings and Loan Insurance Corporation v. Ferm,*

  909 F.2d 372 (9th Cir.1990) .................................................................................................. 9

*Federal Savings and Loan Insurance Corporation v. Ferrante*,

  364 F.3d 1037 (9th Cir. 2004) ............................................................................................. 14

*Federal Trade Commission v. Grand Canyon Education Inc.*,

  2024 WL 4870505 (D. Ariz. Nov. 22, 2024).......................................................................... 18

*FemtoMetrix Inc. v. Huang*,

  No. 23-mc-80332-TSH, 2024 WL 396186 (N.D. Cal. Feb. 1, 2024)...................................... 5, 6

*Foltz v. State Farm Mutual Automobile Insurance Company*,

  331 F.3d 1122 (9th Cir. 2003) ............................................................................................. 22

*Fujikura Ltd. v. Finisar Corporation*,

  No. 15-mc-80110-HRL (JSC), 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015)........................... 24

*Garlow v. State Bar*,

  44 Cal. 3d 689 (1988) .......................................................................................................... 22

1    *Glass Egg Digital Media v. Gameloft, Inc.*,
2     No. 17-cv-04165-MMC (RMI), 2019 WL 2499710 (N.D. Cal. June 17, 2019) ...................... 11
3    *Handloser v. HCL America, Inc.*,
4     No. 19-cv-01242-LHK (VKD), 2020 WL 4700989 (N.D. Cal. Aug. 13, 2020) ........................ 5
5    *Harris v. United States*,
6     413 F.2d 316 (9th Cir. 1969) ................................................................................................... 6
7    *Hausauer v. City of Mesa*,
8     No. CV-15-02796(PHX)(ROS), 2017 WL 6515963 (D. Ariz. Apr. 5, 2017) .......................... 20
9    *HCA-Healthone LLC v. Susan Lou Sparks Trust*,
10    No. 06-cv-01198-MSK-MEH, 2007 WL 781570 (D. Colo. Mar. 13, 2007)...................... 21, 22
11   *Huzhou Chuangtai Rongyuan Investment Management Partnership v. Qin*,
12    No. 21 Civ. 9221 (KPF), 2024 WL 262741 (S.D.N.Y. Jan. 24, 2024)...................................... 20
13   *In re Barney*,
14    No. 22-mc-80154-HSG, 2022 WL 17813142 (N.D. Cal. Dec. 19, 2022) ................................ 19
15   *In re Cathode Ray Tube (CRT) Antitrust Litigation*,
16    281 F.R.D. 531 (N.D. Cal. 2012)........................................................................................... 2, 14
17   *In re Eagan Avenatti, LLP*,
18    No. 8:18-cv-01644-VAP-KESx, 2019 WL 3017683 (C.D. Cal. Apr. 18, 2019)...................... 19
19   *In re Elias*,
20    188 F.3d 1160 (9th Cir. 1999) ................................................................................................. 14
21   *In re Feit & Drexler, Inc.*,
22    760 F.2d 406 (2d Cir. 1985) ................................................................................................... 21
23   *In re Heritage Bond Litigation*,
24    No. CV 02-1475-DT(RCX), 2004 WL 1970058 (C.D. Cal. July 23, 2004) ............................ 25
25   *In re Itel Securities Litigation*,
26    596 F. Supp. 226 (N.D. Cal. 1984)................................................................................. 2, 14, 15
27   *In re Itel Securities Litigation*,
28    791 F.2d 672 (9th Cir. 1986) ............................................................................................. 2, 15

*In re Rhodes Companies, LLC*,

    475 B.R. 733 (D. Nev. 2012) ................................................................................................... 12

*In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, North America*,

    319 F.R.D. 132 (S.D.N.Y. 2016) ........................................................................................... 7, 9

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp. Dated July 23, 2020*,

    337 F.R.D. 639 (N.D. Cal. 2020) .............................................................................................. 23

*In re Suzuki*,

    Civ. No. 14-00516 JMS, 2014 WL 6908384 (D. Haw. Dec. 5, 2014) ...................................... 18

*In re Trinh*,

    No. 2:18-bk-11475-RK, 2022 WL 1769135 (Bankr. C.D. Cal. May 31, 2022)........................ 12

*In re Yassai*,

    225 B.R. 478 (Bankr. C.D. Cal. 1998)..................................................................................... 6, 7

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,

    123 F. Supp. 3d 1215 (N.D. Cal. 2015) .................................................................................... 19

*Kenneally v. Bosa California LLC*,

    No. 09-CV-2039 WQH JMA, 2011 WL 1045136 (S.D. Cal. Mar. 22, 2011).......................... 14

*Kenney, Becker LLP v. Kenney*,

    No. 06 Civ. 2975(JSR), 2008 WL 681452 (S.D.N.Y. Mar. 6, 2008) ................................. 22, 23

*Knoll, Inc. v. Moderno, Inc.*,

    No. 12-mc-80193-SI, 2012 WL 4466543 (N.D. Cal. Sept. 26, 2012)................................. 11, 17

*Kovalenko v. Filippatos, PLLC*,

    No. 25-1995 (9th Cir.) ............................................................................................................. 16

*Kovalenko v. Kirkland & Ellis LLP*,

    No. 22-cv-05990-HSG (TSH), 2024 WL 664691 (N.D. Cal. Feb. 16, 2024) .......................... 10

*Law Offices of Bruce Altschuld v. Wilson*,

    632 F. App'x 321 (9th Cir. 2015)............................................................................................. 14

*M.D. v. County of San Bernardino*,

    No. 5:22-cv-01357-SP, 2025 WL 819648 (C.D. Cal. Feb. 10, 2025) ................................. 17, 19

1  *Marti v. Baires,*

2  No. 1:08-cv-00653-AWI-SKO (PC), 2014 WL 1747018 (E.D. Cal. May 1, 2014)................. 25

3  *Martinez v. Garsha,*

4  No. 1:09-cv-00337-LJO-SKO PC, 2013 WL 3744172 (E.D. Cal. July 15, 2013)................... 10

5  *Mattel, Inc. v. Walking Mountain Productions,*

6  353 F.3d 792 (9th Cir. 2003) ................................................................................................. 25

7  *Matter of Agola,*

8  128 A.D. 3d 78 (App. 4th N.Y. 2015) ................................................................................... 22

9  *Mirana v. Battery Tai-Shing Corporation,*

10  No. C08-80142MISC JF (HRL), 2009 WL 1635936 (N.D. Cal. June 8, 2009)....................... 22

11  *Misch v. Zee Enterprises, Inc.,*

12  879 F.2d 628 (9th Cir. 1989) ................................................................................................. 13

13  *Mishkin v. Kenney & Branisel, Inc.,*

14  609 F. Supp. 1254 (S.D.N.Y. 1985) ...................................................................................... 21

15  *Moore v. Permanente Medical Group, Inc.,*

16  981 F.2d 443 (9th Cir. 1992) ................................................................................................. 13

17  *Mount Hope Church v. Bash Back!,*

18  705 F.3d 418 (9th Cir. 2012) ............................................................................................. 6, 24

19  *Niemeyer v. Ford Motor Company,*

20  No. 2:09-CV-2091 JCM PAL, 2012 WL 6644622 (D. Nev. Dec. 20, 2012)........................... 16

21  *Ocean Garden Products Inc. v. Blessings Inc.,*

22  No. CV-18-00322-TUC-RM, 2020 WL 4933646 (D. Ariz. Aug. 24, 2020)............................ 25

23  *Oppenheimer Fund, Inc. v. Sanders,*

24  437 U.S. 340 (1978).............................................................................................................. 17

25  *Painters Joint Commission v. Employee Painters Trust Health & Welfare Fund,*

26  No. 2:10-cv-01385-JCM-PAL, 2011 WL 4573349 (D. Nev. Sept. 29, 2011) ......................... 17

27  *Paws Up Ranch, LLC v. Green,*

28  No. 2:12-cv-01547-GMN-NJK, 2013 WL 6184940 (D. Nev. Nov. 22, 2013) ........................ 25

*Phillips ex rel. Estates of Byrd v. General Motors Corporation*,

    307 F.3d 1206 (9th Cir. 2002) ................................................................................................. 24

*Rabin v. Google LLC*,

    702 F. Supp. 3d 880 (N.D. Cal. 2023) ............................................................................... 24, 25

*Richmark Corporation v. Timber Falling Consultants, Inc.*,

    767 F. Supp. 213 (D. Or. 1991) ................................................................................................ 9

*Rivera v. NIBCO, Inc.*,

    364 F.3d 1057 (9th Cir. 2004) ............................................................................................... 24

*Sanchez Ritchie v. Sempra Energy*,

    No. 10cv1513-CAB(KSC), 2015 WL 12912316 (S.D. Cal. Apr. 6, 2015) ............................... 20

*Schmulovich v. 1161 Rt. 9 LLC*,

    Civ. No. 07-597 (FLW), 2007 WL 2362598 (D.N.J. Aug. 15, 2007) ...................................... 11

*Securities and Exchange Commission v. Richman*,

    No. 21-cv-01911-CRB (LB), 2021 WL 4951484 (N.D. Cal. Oct. 25, 2021) ........................... 21

*Sepulveda v. Zhou*,

    No. 20-cv-08136-HSG (RMI), 2021 WL 5123610 (N.D. Cal. Nov. 4, 2021) .................. 17, 19

*Solis v. Forever 21, Inc.*,

    No. CV 12-09188 MMM, 2013 WL 1319769 (C.D. Cal. Mar. 7, 2013) ................................. 25

*Third Degree Films, Inc. v. Does 1-178*,

    No. C 12-3858 EMC (MEJ), 2012 WL 12925674 (N.D. Cal. Dec. 6, 2012) .............................. 5

*Valdez v. Travelers Indemnity Company of Connecticut*,

    No. 12-04307-SBA (KAW), 2013 WL 3989583 (N.D. Cal. Aug. 2, 2013)............................... 19

*Villarreal v. County of Monterey*,

    No. 16-cv-06672-LHK (SVK), 2017 WL 6271602 (N.D. Cal. Oct. 12, 2017)........................ 10

*Wells Fargo and Company v. ABD Insurance*,

    No. C 12-03856 PJH (DMR), 2012 WL 6115612 (N.D. Cal. Dec. 10, 2012) ..................... 7, 10

**Statutes**

Federal Rule of Civil Procedure 26(b)(1) ................................................................................ 17, 18

Federal Rule of Civil Procedure 45 ............................................................. 7, 10, 12, 13, 17, 23, 24

Federal Rule of Civil Procedure 45(d)(1) ...................................................................... 24

Federal Rule of Civil Procedure 45(d)(2)(B) ................................................................. 12

Federal Rule of Civil Procedure 45(d)(3)(A)(i) .............................................................. 12

Federal Rule of Civil Procedure 5.2(a)(4) ...................................................................... 8

1    **PLAINTIFF'S OPPOSITION TO FILIPPATOS PLLC'S MOTION TO QUASH**

2    Plaintiff Zoya Kovalenko ("**Plaintiff**") respectfully submits this opposition to non-party

3    Filippatos PLLC ("**Filippatos**")'s Motion to Quash Subpoena of Filippatos's Banking-Identifying

4    Information and for Protective Order and Sanctions, Dkt. No. 122 ("**Motion**"), which Plaintiff

5    respectfully requests the Court deny in its entirety.

6    **I.      INTRODUCTION**

7    Filippatos is Plaintiff's former counsel.  Plaintiff terminated Filippatos as her counsel in the

8    underlying lawsuit for professional misconduct and its abject failure to act as her advocate in her lawsuit,

9    which Filippatos agreed to inherit nearly one year after the lawsuit was brought by Plaintiff.  As a result

10   of this for-cause termination of Filippatos, Plaintiff and Filippatos have been locked in a contentious

11   battle regarding its misconduct and its right ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

12   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ with Kirkland and Ellis LLP ("**K&E**") and the other

13   defendants in the lawsuit (collectively, "**Defendants**").  At present, Plaintiff has an appeal pending

14   before the Ninth Circuit regarding her termination of Filippatos, and Filippatos has an active charging

15   lien against Plaintiff's ▇▇▇▇ from this lawsuit that was filed in this Court.  Filippatos's Notice of

16   Charging Lien (Jan. 31, 2025), Dkt. No. 178 ("**Charging Lien**").  Although Plaintiff desires to move on

17   with her life, she has worked far too hard over the past three plus years in connection with her lawsuit

18   against Defendants to not take reasonable steps to ensure that this lawsuit reaches a complete and final

19   resolution, which includes her collateral disputes with Filippatos, and protect the ▇▇▇▇▇▇▇

20   The incredibly narrow subpoena Plaintiff served on K&E (the "**Subpoena**") seeks basic banking-

21   identifying information ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

22   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ myriad claims against Defendants ▇▇▇▇▇▇▇▇ The

23   Subpoena was issued after Plaintiff tried to obtain such information from K&E's counsel, who informed

24   her that Filippatos was contractually restricting it from sharing any such information with her.  Despite

25   Filippatos's attempt to cast the narrow Subpoena as an unchartered fishing expedition to reel in invasive

26   and sprawling financial information, the targeted Subpoena merely seeks basic banking-identifying

27   information regarding the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Filippatos cannot

28   establish a cognizable privilege or privacy interest in the anodyne and unprotected information that

1  Plaintiff reasonably seeks.  It is common practice for courts to permit discovery into bank and financial

2  information related to the ████████████████████████ and this Court has on multiple occasions

3  retained jurisdiction and permitted discovery regarding collateral attorney-client disputes following

4  conclusion of the underlying action.[1]  But for Filippatos's recalcitrance, the current Subpoena dispute

5  should have never set sail in judicial waters.  Accordingly, the Court should see through Filippatos's

6  wasteful effort to chummy the waters of this dispute and order compliance with the Subpoena.

7  **II.     STATEMENT OF RELEVANT FACTS**

8          This dispute concerns a narrow and targeted Subpoena Plaintiff served on April 9, 2025, on K&E,

9  seeking de minimis banking-identifying information regarding the ████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████ were the culmination of ████████████████████████████████

12  ████████████ after Filippatos was fired as Plaintiff's counsel for, among other things, trying to force

13  Plaintiff ████████████████████████████████ and abusive treatment of Plaintiff.

14          After Filippatos was fired, Plaintiff had discussions with opposing counsel about different

15  restrictions Filippatos was demanding ████████████████ as a condition of Filippatos signing a

16  release of lien specifically with respect to K&E ("**Release of Lien with K&E**" or "**Release of Lien**"),

17  not Plaintiff.   On April 2, 2025, opposing counsel sent Plaintiff an email stating that Filippatos ████

18  ████████████ from sharing banking-identifying information with Plaintiff as a contractual

19  requirement in its Release of Lien and shared a current version of the Release of Lien, which ████████

20  ████ from sharing with Plaintiff any banking-identifying information ████████████████████

21  and required K&E to promptly notify Filippatos of any subpoena it received requesting any banking

22  information ████████████████████.  Kovalenko Decl. ¶¶ 6–8.[2]  Plaintiff informed

23  opposing counsel that she would require at least some identifying information about the ████████ ch

24  ████████████████████████  Id. ¶ 8.  In response, opposing counsel told Plaintiff that she did

25  not believe Filippatos would agree to provide such information, even if Plaintiff agreed to not share the

26

27  _____

[1] *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533–34 (N.D. Cal. 2012); *In*
28  *re Itel Sec. Litig.*, 596 F. Supp. 226, 232 (N.D. Cal. 1984), *aff'd*, 791 F.2d 672 (9th Cir. 1986).
[2] The earlier version of the release of lien from opposing counsel received by Plaintiff on February 12, 2025 did not include such language.

1   information with third parties, and that Defendants "need [Filippatos] to sign the release

2   ▮▮▮▮▮" *Id.* ¶ 8 & Ex. A at 9. After realizing that K&E would not provide the requested information

3   voluntarily and that it would be futile to ask Filippatos to provide the information it was contractually

4   precluding K&E from sharing with her, Plaintiff asked opposing counsel if they would accept service of

5   a subpoena to obtain such information. Kovalenko Decl. ¶ 11 & Ex. A at 14. Opposing counsel

6   confirmed on April 9, 2025 that it was authorized to accept service of the subpoena on behalf of K&E,

7   and Plaintiff prepared and served the Subpoena that same day. Kovalenko Decl. ¶ 11 & Ex. A at 14–15.

8       On April 11, 2025, Filippatos emailed Plaintiff objecting to the Subpoena. Filippatos said it

9   would "consider" providing Plaintiff with the ▮▮▮▮ date on which ▮▮▮▮

10  Kovalenko Decl. ¶ 12 & Ex. A at 18. In under 24 hours, Plaintiff sent Filippatos an email response with

11  case law rebutting its unfounded grievances with the narrow and noninvasive Subpoena, explaining the

12  subpoenaed information is relevant to her ongoing dispute with Filippatos and the complete resolution

13  of her underlying lawsuit against Defendants. *Id.* ¶ 12 & Ex. A at 16–17. Plaintiff also noted her

14  legitimate concerns about Filippatos's ▮▮▮▮ after becoming aware of Parisis ("Gerry")

15  Filippatos's record of financial insolvency and delinquency and attached public records regarding the

16  same. *Id.* ¶ 12 & Ex. A at 16, 19–26. Plaintiff offered as a compromise to withdraw the narrow Subpoena

17  if Filippatos provided: (1) the name and address of the branch of the financial institution ▮▮▮▮

18  ▮▮▮▮ (2) the legal name ▮▮▮▮ ; (3) last

19  four digits ▮▮▮▮ and (4) confirmation of date ▮▮▮▮

20  ▮▮▮▮ *Id.* ¶ 12 & Ex. A at 17.

21      Filippatos sent an email response that did not address any of Plaintiff's arguments, stating only

22  "Zoya - we will call you at 1pm tomorrow." *Id.* ¶ 13 & Ex. A at 27. On April 14, 2025, Plaintiff and

23  Filippatos had a brief call to discuss the Subpoena. However, during the call, Filippatos only briefly

24  permitted a discussion about the Subpoena and made clear that it would not accept Plaintiff's

25  compromise to resolve the dispute. Kovalenko Decl. ¶ 13. Filippatos did not address any of the cases

26  or arguments raised by Plaintiff in her April 12, 2025 email. *Id.* The call quickly devolved into Mr.

27  Filippatos demeaning and threatening Plaintiff, which included baselessly threatening to sue Plaintiff for

28  defamation if she did not withdraw her Subpoena, further stating that he intended to get ▮▮▮▮

1    ████████████████████████████████████████████████ to "teach [her] a

2    lesson." *Id.*; *see* Ex. A at 27.  Shortly after the call, Plaintiff sent an email to Filippatos memorializing

3    in detail what unfolded during this call, and Filippatos never contested or even responded to the email.

4    Kovalenko Decl. ¶ 14; Ex. A at 27.  That same day, Filippatos emailed the Court asking it to intervene.

5    Kovalenko Decl. ¶ 14.  On April 14, 2025, opposing counsel sent Plaintiff the executed Release of Lien

6    between K&E and Filippatos and provided a heavily redacted screenshot listing only a █████████

7    date and time█████████████████████.  Kovalenko Decl. ¶ 6 & Ex. A at 7–8.  Plaintiff has

8    never received evidence or documented confirmation that Filippatos was the entity that █████

9    ████████████ any information about the ████████████████ including the name of the

10   ████████████████ or any information about the ████████████████

11   Kovalenko Decl. ¶ 6.  Plaintiff has also requested an accompanying declaration from K&E regarding the

12   ██████████████████ but has not received any declaration.  *Id.* ¶ 7.

13        On April 18, 2025 Plaintiff filed a stipulated dismissal as to her claims against Defendants.

14   Notice of Voluntary Dismissal as to Defs. at 1, Dkt. No. 220 ("**Stipulated Dismissal**"); Kovalenko Decl.

15   ¶ 16.  The Stipulated Dismissal did not encompass Plaintiff's collateral disputes with Filippatos.  *Id.*;

16   *accord* Joint Case Management Statement (Apr. 1, 2025) at 2, Dkt. No. 210 (stating "[t]he anticipated

17   stipulation of dismissal would not encompass Plaintiff's dispute with her former counsel or the related

18   appeal pending before the Ninth Circuit, No. 25-1995"). This opposition is timely. Dkt. No. 229, 8:7–8.

19   **III.   STATEMENT OF ISSUES TO BE DECIDED**

20        Whether the Court should order compliance with the targeted Subpoena seeking unprotected

21   banking-identifying information ████████████████████

22        Whether Filippatos has standing to move to quash and seek a protective order to preclude

23   discovery of basic information that is not protected by any federal privilege or privacy right.

24   **IV.   ARGUMENT**

25        **A.   Filippatos Does Not Have Standing and Has Not Shown It Has a Cognizable**

26             **Privilege or Personal Right in the Sought Information.**

27        "The party moving to quash a subpoena bears the burden of persuasion." *Avaya Inc. v. Pearce*,

28   No. 19-cv-00565-SI, 2019 WL 13413358, at *1 (N.D. Cal. Aug. 20, 2019) (citation omitted).  "[A] party

1   has no standing to move to quash or for a protective order on the grounds that a subpoena seeks irrelevant

2   information or would impose an undue burden on the non-party." *Handloser v. HCL Am., Inc.*, No. 19-

3   cv-01242-LHK (VKD), 2020 WL 4700989, at *4 (N.D. Cal. Aug. 13, 2020) (citations omitted), *quoted*

4   *with approval in FemtoMetrix Inc. v. Huang*, No. 23-mc-80332-TSH, 2024 WL 396186, at *6 (N.D. Cal.

5   Feb. 1, 2024). "[A] party has no standing to quash a subpoena served upon a third party, except as to

6   claims of privilege relating to the documents being sought." *Cal. Sportfishing Prot. Alliance v. Chico*

7   *Scrap Metal, Inc.*, 299 F.R.D. 638, 643 (E.D. Cal. 2014).

### 1.   Filippatos Lacks Standing to Move to Quash on Relevance, Overbreadth, Undue Burden, and Timing Grounds.

10   Filippatos argues the Subpoena should be quashed because it allegedly seeks irrelevant

11   information, is not proportional discovery, would impose an undue burden, and because the timing was

12   allegedly improper. Mot. at 9, 11, 13–17. However, Filippatos does not have standing to move to quash

13   on such grounds. *E.g.*, *FemtoMetrix*, 2024 WL 396186, at *6 (concluding entity not subject to subpoenas

14   lacked standing to quash "on the grounds that they are overbroad, allow insufficient time for compliance,

15   . . . or are otherwise burdensome to the subpoenaed parties or seek irrelevant information"); *see Cal.*

16   *Sportfishing*, 299 F.R.D. at 643 (explaining general rule that person not subject to subpoena only has

17   standing to quash based on "claims of privilege relating to the documents being sought").

18   Filippatos argues at length that the Subpoena seeking information about ▮▮▮▮▮▮▮▮▮▮ is

19   irrelevant discovery but does not establish the threshold issue of standing to assert such an objection.

20   Mot at 11, 13–17. Rather, case law establishes that Filippatos lacks standing to quash or object to the

21   Subpoena on relevancy grounds. *E.g.*, *Clark v. Trans Union, LLC*, No. 2:24-cv-00783 WBS CKD, 2025

22   WL 359314, at *6 (E.D. Cal. Jan. 31, 2025) ("Here, OneMain is not subject to the subpoena, therefore,

23   it does not have standing to bring this motion [to quash] based on relevancy."); *FemtoMetrix*, 2024 WL

24   396186, at *6 (no standing to quash subpoena on relevance grounds). Further, Filippatos does not have

25   standing or any basis to object to the Subpoena on burden or timing grounds because it is not the entity

26   subject to the Subpoena. *Third Degree Films, Inc. v. Does 1-178*, No. C 12-3858 EMC (MEJ), 2012 WL

27   12925674, at *2 (N.D. Cal. Dec. 6, 2012) (finding that party "is not faced with an undue burden because

28   the subpoena is directed at the ISP and not the [objecting party]"); *FemtoMetrix*, 2024 WL 396186, at

1    *6 (concluding entity not subject to subpoenas lacked standing to quash subpoenas on grounds that they

2    were overbroad, burdensome, or allow insufficient time for compliance); *see also Mount Hope Church*

3    *v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012) (stating "the 'undue burden' language is limited to

4    harms inflicted by complying with the subpoena").

5         In order to have standing, Filippatos must demonstrate it has a cognizable privilege or personal

6    right in the information sought by the Subpoena. *E.g.*, *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*,

7    157 F.R.D. 691, 695 (D. Nev. 1994) ("Because [entity] was not the recipient of the subpoenas, it has

8    standing to challenge them only where its challenge asserts that the information is privileged or protected

9    to itself."). Filippatos's threadbare, erroneous, and conclusory statements that the Subpoena allegedly

10   seeks "sensitive" and "confidential financial information" of Filippatos and unidentified third parties are

11   demonstrably insufficient to show a cognizable privilege or personal right in the limited bank-identifying

12   information regarding the                              Mot. at 2, 3, 6–9, 10, 14, 18.

13              **2.    The Conclusory and Vague Statements in the Motion Do Not Satisfy**

14                   **Filippatos's Burden to Establish It Has a Cognizable Privilege or Personal**

15                   **Right in the Basic Banking-Identifying Information Sought.**

16         Filippatos's repeated, conclusory statements that the Subpoena seeks allegedly "sensitive" and

17   "confidential" financial and banking information and/or "confidential and protected business"

18   information fall well short of establishing a legally cognizable privilege or personal right in the

19   subpoenaed information. Mot. at 2, 3, 5–9, 18.[3]  Besides their conclusory nature, such statements ignore

20   the established rule that banking and financial information is not subject to any federal privilege or

21   privacy right. *See, e.g.*, *In re Yassai*, 225 B.R. 478, 483 (Bankr. C.D. Cal. 1998) (explaining "Ninth

22   Circuit has stated that it knew 'of no authority which recognizes a privilege for communications between

23   bank and depositor' and has 'decline[d] to create such a privilege'" or "limit the holding" of cases

24   showing that "'depositors have no rights in the records of their bank'" (quoting and citing *Harris v.*

25   *United States*, 413 F.2d 316, 318–19 (9th Cir. 1969))); *Acosta v. Wellfleet Commc'ns, LLC*, No. 2:16-

26   cv-02353-GMN-GWF, 2017 WL 5180425, at *6 (D. Nev. Nov. 8, 2017) (stating no "legally protected

27

28   [3] *See also id.* at 10 (making conclusory statement that Filippatos "clearly has a personal right in the sensitive and confidential banking and financial-related information requested in the Subpoena").

1    privacy interest in [parties'] bank account records"); *see also In re Rule 45 Subpoena Issued to JP*

2    *Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 134 (S.D.N.Y. 2016) (noting "sensitive financial information

3    is generally discoverable in federal court"). Further, although Filippatos does not assert a specific

4    privacy right, any hypothetical state law "right to privacy in financial records" does "not preclude

5    discovery" of banking information "in a federal court suit." *See In re Yassai*, 225 B.R. at 483 (citations

6    and quotation marks omitted) (denying request to quash subpoenas "because Movants assert no privilege

7    or privacy interest in the information sought pursuant to the subpoenas recognizable under federal law").

8    The vague and scant evidence Filippatos offers to establish an actionable privilege or personal right in

9    the requested information consists of two general statements in its declaration characterizing the sought

10   information as "sensitive financial information" and "confidential and protected" information of

11   Filippatos.[4] However, simply parroting in its declaration the generalized claims that the Subpoena seeks

12   allegedly sensitive, confidential, and protected financial and business information, without providing

13   supporting facts, cannot erase countervailing case law or magically create an actionable privilege or

14   privacy right. *E.g.*, *Clark*, 2025 WL 359314, at *7 (concluding statement that requested information

15   involves "confidential and proprietary commercial records" insufficient to identify personal right or

16   privilege in subpoenaed information and declining to quash subpoenas); *Coalview Centralia, LLC v.

17   Transalta Centralia Mining LLC*, No. 3:18-CV-05639-RBL, 2019 WL 2563851, at *3 (W.D. Wash. Mar.

18   21, 2019) (declining to quash subpoena seeking banking and financial records and concluding movant

19   "fail[ed] to meet its burden of showing the subpoena impedes on any protected right or privilege" on

20   grounds it sought "'disclosure of confidential information,' including 'financial' and 'sensitive

21   commercial information'"); *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 WL

22   6115612, at *3 (N.D. Cal. Dec. 10, 2012) (holding movant to quash lacked standing under Rule 45

23   because they failed to show "their confidential proprietary information is at risk").

24            Despite Filippatos apparently viewing the name of the

---

26   [4] Mot. at 9 (characterizing Subpoena as seeking "sensitive financial information" (citing Tanvir Rahman
27   Decl., Dkt. No. 221-3 ("**Rahman Decl.**"), ¶ 24, which makes identical conclusory claim that information
     is "sensitive financial information" without factual or evidentiary support)); Mot. at 5 (stating Subpoena
28   "request[s] confidential and protected business and financial information of Filippatos" (citing Rahman
     Decl. ¶ 8, which provides no factual support for such claim and simply restates legal conclusion that
     information sought is "confidential and protected business and financial information of Filippatos")).

1    ██████████      as sensitive and confidential financial information, it appears that Filippatos might have

2    revealed the name ████████████████████████ in its Motion. Mot. at 6, 15 (stating K&E

3    "█████████████████████████████████████████████████████████████████

4    ██████████████████████████████████████████ (emphasis added).

5    However, Plaintiff has not received information showing or evidence confirming that "Filippatos PLLC"

6    is in fact the legal entity that █████████████████████████████████ rently

7    ███ Kovalenko Decl. ¶¶ 6–7. The ██████████████████████ Plaintiff received from

8    K&E on April 14, 2025 does not provide the name of the relevant ████████, redacts the

9    ██████████████ and provides no information regarding the individual or entity ████████

10   █████████████████████████████████ *Id.* If "Filippatos PLLC" is truly

11   the legal name █████████████████████████████████████████████████

12   ██████ then this Court should order K&E (or Filippatos) to provide Plaintiff with documentation

13   corroborating the same. Further, assuming the legal name of the ████████████ will be

14   provided to Plaintiff, then under the compromise offered Filippatos on April 12, 2025, the only

15   information that would remain in dispute is: (1) "Name(s) and address(es) of ████████████

16   █████████████████████████████ including the address

17   of the specific ████████████████████████ and (2) "Last four digits of the

18   ███████████████████████████████████████" Kovalenko

19   Decl. ¶ 12 & Ex. A at 17. Despite Filippatos having no valid reason for preventing Plaintiff from

20   obtaining basic information about the █████████████████████████████████

21   ██████████████████████ the Release of Lien between Filippatos and K&E explicitly

22   ████████████ providing Plaintiff with any "identifying information about the ████████

23   █████████ to Kovalenko, including the name or address of the ████████████████

24   ███████████████████████████████████████████ Mot. at 6;

25   Kovalenko Decl. ¶¶ 8–9 & Ex. A at 3 (emphasis added). Moreover, the last four digits of a financial-

26   account number are not protected under Federal Rule of Civil Procedure 5.2(a)(4). *See* Kovalenko Decl.

27   Ex. A at 17 (conveying same to Filippatos).

28            i)    Filippatos Has Not Demonstrated the Subpoena Invades Any Privacy

1                      Interests or the Attorney-Client Privilege of Its Other Clients and Makes

2                      Only Conclusory Statements to Support Such Position.

3        Filippatos incorrectly contends without explanation that the Subpoena would invade the privacy

4 interests of its clients and seemingly the attorney-client privilege of such clients.[5] However, Filippatos's

5 speculative argument is factually unsupported, and federal courts routinely reject similar arguments to

6 quash subpoenas. *E.g.*, *In re Rule 45 Subpoena Issued to JP Morgan*, 319 F.R.D. at 134 (rejecting

7 argument that "subpoena impermissibly violates his and his clients' privacy interests" and denying

8 motion to quash). The Subpoena does not seek the identities of other clients or any fee or other client

9 banking information as Filippatos falsely contends, and even if the Subpoena incidentally implicated

10 such information, this still would not confer standing on Filippatos to object or a basis to quash. *Allen*

11 *v. Keese*, No. CV 14-2721 MWF (FFMx), 2015 WL 14094845, at *3 (C.D. Cal. July 13, 2015) ("As a

12 general rule, the identity of an attorney's client does not fall within the scope of matters protected by the

13 attorney-client privilege. . . . Defendants do not explain what manner of personal, confidential

14 information regarding their clients would be betrayed by the revelation of their clients' identities or fee

15 arrangements."); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 767 F. Supp. 213, 214 (D. Or.

16 1991) (citing *Fed. Sav. & Loan Ins. Corp. v. Ferm,* 909 F.2d 372, 374 (9th Cir. 1990)) (permitting

17 discovery of attorney fee information and noting that "[f]ee information is generally not privileged").

18 Filippatos's bid to use its clients as props to quash the Subpoena utterly fails.

19                 ii)      Filippatos's Speculation That Compliance with the Subpoena "Would"

20                       Expose Filippatos to "Potential" and "Significant Security Risks" Does

21                       Not Warrant Quashing and Is Baseless.

22        Filippatos speculates that providing the sought information to Plaintiff "would" expose it to

23 "potential" and "significant security risks." Mot. at 14, 18. Filippatos neither explains how the

24 Subpoena would create such "significant security" risks nor identifies a single example of a security

25 risk. Unsupported speculation about general security risks in no way confers standing or supports

26

27    [5] Mot. at 6 (claiming Subpoena is "concerning as it requests detailed information about a joint trust account that contains ▆▆▆▆ belonging to multiple clients of Filippatos PLLC, not just those that may be

28 related to Plaintiff's matter" (citing Rahman Decl. ¶ 11, which merely restates this false claim without any factual support or further explanation)); *accord* Mot at 18.

1   quashing the narrow Subpoena. *Wells Fargo*, 2012 WL 6115612, at *3 (holding movant to quash lacked

2   standing under Rule 45 because it failed to show confidential proprietary information was at risk);

3   *Martinez v. Garsha*, No. 1:09-cv-00337-LJO-SKO PC, 2013 WL 3744172, at *7 (E.D. Cal. July 15,

4   2013) (stating "vague assertions of safety and security concerns do not shield the production of

5   discoverable documents"). Accordingly, Filippatos's speculative appeal to unidentified and imaginary

6   security risks lends zero support for standing or quashing the Subpoena.

7           3.   **Filippatos's Cobbling of Unpersuasive and Easily Distinguishable Case Law**

8                **to Support Standing Is Unhelpful to the Motion and Underscores the**

9                **Frivolity of Filippatos's Arguments.**

10          The aforementioned standing issues are fatal to the Motion and preclude Filippatos from having

11  an ability to quash the Subpoena, and Filippatos's patchwork string-cite of unpersuasive and

12  distinguishable cases to allegedly support standing does not save the Motion. Mot. at 9–10 (arguing

13  Filippatos has standing to quash). Filippatos feebly attempts to bootstrap off this Court's prior order in

14  which it found Plaintiff had standing to quash invasive and far-reaching subpoenas that K&E served on

15  Plaintiff's prior employers in a clear fishing expedition. Mot. at 10. Specifically, Filippatos appears to

16  assert standing to quash on relevance grounds by copying verbatim—without attribution—two cases

17  (*Appel* and *Villareal*) and accompanying parentheticals cited in this Court's order quashing K&E's

18  subpoenas. Mot. at 10; Order at 5, Dkt. No. 128, *Kovalenko v. Kirkland & Ellis LLP*, No. 22-cv-05990-

19  HSG (TSH), 2024 WL 664691, at *3 (N.D. Cal. Feb. 16, 2024). However, *Appel* and *Villareal* are

20  unavailing as neither case specifically addresses the issue of standing to quash nor do the cases rebut the

21  authorities cited in this opposition showing that Filippatos lacks standing to object on relevance or other

22  grounds.[6] Further, this Court's prior conclusion that Plaintiff had standing to quash K&E's invasive

23  subpoenas is inapplicable to the facts here, given the Subpoena is not seeking information in employment

24  records over which Filippatos "clearly has a personal right." *Kovalenko*, 2024 WL 664691, at *3.[7]

25          The remaining cases cited by Filippatos to allegedly support standing merely support the general

26

27  ───────────────
    [6] Mot. at 10 (citing *Villarreal v. Cnty. of Monterey*, 2017 WL 6271602, at *2–3 (N.D. Cal. Oct. 12, 2017) & *Appel v. Wolf*, 2021 WL 5234424 (S.D. Cal. Nov. 9, 2021)).

28  [7] Filippatos cites a few other cases to support quashing, which are clearly inapplicable because they involve broader subpoenas seeking employment records and are in no way analogous to the facts here, Mot. at 11–12 (citing *Newman*; *Baker v. Santa Clara Univ. & Carroll v. Wells Fargo & Co.*).

1   proposition that a person not subject to a subpoena has standing to quash if they have a cognizable

2   privilege or personal right in the information sought, but Filippatos has not established that is the case

3   here. Mot. at 9–10. Further, Filippatos fails to connect the cases it generally cites to specific information

4   sought in the Subpoena, and such cases are inapposite. Mot. at 9–10; *Knoll, Inc. v. Moderno, Inc.*, No.

5   12-mc-80193-SI, 2012 WL 4466543 (N.D. Cal. Sept. 26, 2012) is distinguishable because the subpoena

6   was much broader and sought "potentially trade-sensitive or confidential" sales-related documents and

7   communications. *Id.* at *1. Further the Court denied the motion to quash and found that the protective

8   order in effect would be sufficient to address any privacy interest in the requested materials. *Id.* at *3.

9       *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 WL 2499710

10   (N.D. Cal. June 17, 2019), is unhelpful to Filippatos. Mot. at 9–10. Saliently, *Glass Egg* held that the

11   movants "have not identified the exact nature of their claims of personal right or privilege with respect

12   to the documents requested by the subpoenas, or explained why those rights are not adequately protected

13   under the existing protective order in this case." *Id.* at *5.[8] *Crispin v. Christian Audigier, Inc.*, 717 F.

14   Supp. 2d 965 (C.D. Cal. 2010), is unpersuasive and distinguishable because it involved subpoenas issued

15   to four separate businesses seeking, among other things, subscriber information and communications

16   between various individuals and entities under the Stored Communications Act, which subpoenas were

17   substantially broader than the narrow Subpoena here. *Id.* at 968–69, 973–74. Further, *Crispin* only

18   vaguely mentioned the ability to quash subpoenas requesting bank records in passing, but the holding

19   itself did not involve a request for bank or financial information. *Id.* at 973–74, 991 (showing subpoenas

20   centered on private user communications, comments, and postings). The next two cases Filippatos cites

21   along with the accompanying parentheticals—*Schmulovich v. 1161 Rt. 9 LLC* and *Arias-Zeballos v.*

22   *Tan*—are lazily copied verbatim (again without attribution) from *Crispin*, 717 F. Supp. 2d at 974. Mot.

23   at 10. *Schmulovich* is unhelpful to Filippatos *because the motion to quash was denied* despite the

24   considerable breadth of the subpoenas served on multiple banks, which subpoenas sought "all

25   documents associated with any business and personal bank accounts held by" several defendants.

26   *Schmulovich*, 2007 WL 2362598, at *4–5 (D.N.J. Aug. 15, 2007). *Schmulovich* also found that the

27

28     [8] *Glass Egg* also dealt with discovery to establish jurisdiction and involved subpoenas served on 11 non-
parties seeking substantially more information than the narrowly tailored Subpoena here. *Id.* at *1, 4.

1   requested financial records were "not privileged" under state law and not subject to an "expectation of

2   privacy" under federal law. *Id.* at *3. *Arias-Zeballos* is unpersuasive and distinguishable because it

3   involved three subpoenas (not one subpoena), and, unlike the facts here, it found that quashing was

4   justified primarily because the subpoenas sought "information regarding matters that have been stricken

5   from the plaintiff's complaint." *Arias-Zeballos*, 2007 WL 210112, at *1–2 (S.D.N.Y. Jan. 25, 2007).

6          Accordingly, the Motion should be denied in full because Filippatos has failed to meet its burden

7   to establish a legally cognizable privilege or personal right in the minimal bank identifying information

8   requested by Plaintiff

9   ██████    *See, e.g.*, *In re Rhodes Cos., LLC*, 475 B.R. 733, 741 (D. Nev. 2012) (holding court "did not

10  err when it found that Rhodes lacked standing to challenge the subpoenas because Rhodes did not carry

11  his burden of establishing a personal right or privilege in the documents sought").

12      **B.     The Court Should Order K&E to Comply with the Narrow Subpoena Seeking**

13              **Information on** ████████████████████  **As Filippatos's Weak**

14              **Arguments Do Not Support Any of Its Requested Relief.**

15                  **1.  The Timing of Subpoena Was Reasonable Under the Circumstances.**

16          Filippatos's contention that "the timing of this subpoena is particularly troubling and warrants

17  sanctions" is meritless and ignores the relevant circumstances that led to the timing of the Subpoena.

18  Mot. at 2–3. The timing to comply with the Subpoena does not violate the black letter of Federal Rule

19  of Civil Procedure 45, which expressly contemplates "the time specified for compliance" being fewer

20  than "14 days" and only requires "a reasonable time to comply" with the subpoena. Fed. R. Civ. P.

21  45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14

22  days after the subpoena is served.") & 45(d)(3)(A)(i) (permitting court to modify subpoena if it "fails to

23  allow a reasonable time to comply"); *see also In re Trinh*, No. 2:18-bk-11475-RK, 2022 WL 1769135,

24  at *4 (Bankr. C.D. Cal. May 31, 2022) (citation and internal quotation marks omitted) (explaining "Rule

25  45(d)(3)(A)(i) does not specify what constitutes a reasonable length of time for compliance with a

26  subpoena" and that reasonableness is "related to the extent of the materials requested and the other

27  underlying circumstances of the particular case," thereby "afford[ing] the district judge considerable

28  flexibility and discretion"). To avoid a potential ripeness issue, Plaintiff had to wait to issue the

1  Subpoena until [REDACTED], which [REDACTED] did

2  not occur before April 11, 2025. Kovalenko Decl. ¶ 21. Plaintiff also exhausted any reasonable avenues

3  to obtain this information from K&E and by extension Filippatos without resorting to a subpoena. *Id.* ¶

4  21; *see id.* ¶¶ 6–12. Additionally, the extremely limited information the Subpoena seeks should be

5  readily obtainable by K&E (or Filippatos) and could be easily provided to Plaintiff through email. *Id.* ¶

6  21. Further, the scope of the Subpoena is indisputably narrow as it only requests basic banking-account

7  identifying information [REDACTED] and K&E did not request an extension of time to serve

8  objections. *Id.* ¶ 23; Dkt. No. 221-1. Accordingly, the timing of the Subpoena and window to comply

9  was eminently reasonable based on the facts and circumstances here. *See Bonzani v. Shinseki*, No. 2:11-

10  CV-00007-EFB, 2014 WL 2521849, at *4 (E.D. Cal. June 4, 2014) (explaining "Rule 45 specifically

11  contemplates circumstances where the response time might be less [than 14 days]," and holding "[g]iven

12  the limited amount of documents requested and the absence of a request by the responding party to

13  extend the time period, the response time provided is reasonable"). Finally, for similar reasons,

14  Filippatos's contention that reasonable timing of the Subpoena supports imposition of sanctions is of no

15  moment. *See infra* pp. 22–24.[9]

16  **2.    The Court Has Jurisdiction to Order Compliance with the Subpoena.**

17  After rejecting Plaintiff's good-faith attempt to resolve the Subpoena dispute through

18  compromise, Filippatos unilaterally emailed the Court asking it to intervene. Kovalenko Decl. ¶¶ 13–

19  14. By doing so and then submitting its Motion, Filippatos has voluntarily submitted to the jurisdiction

20  of the Court, thereby waiving any argument that jurisdiction is lacking here. *See Misch v. Zee Enters.,*

21  *Inc.*, 879 F.2d 628, 631–32 (9th Cir. 1989) (noting that filing motion may constitute "a tactic admission

22  on the part of the movant that the court" has jurisdiction); Mot. at 11–12, 18, 20 (arguing no jurisdiction).

23  i)    The Court Has Ancillary Jurisdiction over the Subpoena Dispute.

24  It is well-established that courts have ancillary jurisdiction to adjudicate collateral disputes

25  following the termination of the underlying action, especially attorney-client disputes. *E.g., Moore v.*

26  *Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992) (quoting *Cooter & Gell v. Hartmarx*

27

28  [9] Filippatos has also suffered no prejudice given it was anticipating a subpoena, promptly received notice of the Subpoena, and has been afforded the opportunity to file its Motion. Kovalenko Decl. ¶¶ 8–12.

1    *Corp.*, 496 U.S. 384, 395–96 (1990)) ("It is well established that a federal court may consider collateral

2    issues after an action is no longer pending," such as impositions of costs, motions for attorneys' fees or

3    sanctions.); *Curry v. Del Priore*, 941 F.2d 730, 731 (9th Cir. 1991) (stating "court may decide collateral

4    matters necessary to render complete justice" and "[a]ncillary jurisdiction encompasses motions to

5    withdraw" and related disputes (citations omitted)).[10]   Thus, the mere fact that Plaintiff filed the

6    Stipulated Dismissal following the Subpoena, dismissing with prejudice her claims against Defendants,

7    in no way negates this Court's ability to adjudicate collateral disputes between Plaintiff and Filippatos

8    that relate to the underlying action, including the

9           *See, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Ferrante*, 364 F.3d 1037, 1041 (9th Cir. 2004)

10    (showing it is well established that federal courts retain ancillary jurisdiction over disputes affecting

11    attorneys' entitlement to payment, which are collateral to underlying litigation) (collecting cases); *In re*

12    *Elias*, 188 F.3d 1160, 1164 (9th Cir. 1999) (stating the "district court's ruling on attorney's fees may

13    occur at a point substantially beyond the entry of final judgment" (citation omitted)).   Retaining

14    jurisdiction to order compliance with a subpoena seeking basic identifying information regarding

15    is further supported by Filippatos's active

16    Charging Lien that it filed in this Court. *See Kenneally v. Bosa Cal. LLC*, No. 09-CV-2039 WQH JMA,

17    2011 WL 1045136, at *3 (S.D. Cal. Mar. 22, 2011) (exercising ancillary jurisdiction over attorney-client

18    dispute that "arose during the course of [underlying] action with respect to work performed" and stating

19    "Court exercises ancillary jurisdiction over the charging lien as it relates to the settlement in this action").

20        Further, it is perfectly permissible for a court to allow discovery into a collateral dispute

21    following the conclusion of the underlying proceeding, which this Court has allowed multiple times.

22    *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533–34 (N.D. Cal. 2012)

23    (concluding court retained jurisdiction to protect integrity of settlement in underlying lawsuit pending

24    an appeal and ordering attorney accused of misconduct to appear for deposition and expressly permitting

25    plaintiffs to "serve [such attorney] with a further subpoena and document request"); *id.* at 533 (citing

26    and quoting *In re Itel Sec. Litig.*, 596 F. Supp. 226, 232 (N.D. Cal. 1984), *aff'd,* 791 F.2d 672 (9th Cir.

27

28    [10] *See also Law Offices of Bruce Altschuld v. Wilson*, 632 F. App'x 321, 322–323 (9th Cir. 2015)
      (showing ancillary jurisdiction over attorney disputes exists after underlying litigation has concluded).

1    1986), in which "[o]ver the attorney's objection that the Court lacked jurisdiction, the Court permitted

2    extensive post-judgment proceedings against the objector and the attorney—including discovery and

3    motion practice—reasoning that 'a federal court of equity has jurisdiction [over ancillary matters] ... to

4    secure or preserve the fruits and advantages of a judgment or decree rendered therein'").[11] Accordingly,

5    it is clear that this Court has authority to and should retain jurisdiction to order compliance with the

6    Subpoena seeking banking related information pertaining ████████████████████████

7    in order to preserve and protect the integrity of ████████████████████████

8                           ii)      This Court's Narrow Ruling Declining to Adjudicate the Merits of

9                                    Plaintiff's Decision to Fire Filippatos for Cause and the Narrow

10                                   Stipulated Dismissal Do Not Strip This Court of Jurisdiction.

11          In an attempt to breathe life into its anemic Motion, Filippatos misrepresents (i) this Court's

12   narrow March 6, 2025 ruling in which it simply declined to adjudicate the merits of Plaintiff's decision

13   to terminate Filippatos for cause (Dkt. Nos. 197 and 201), and (ii) the scope of the Stipulated Dismissal

14   "as to Defendants" filed on April 18, 2025 (Dkt. No. 220). *See* Mot. at 5, 7, 12–13, 18. Filippatos wildly

15   overstates the limited scope of such ruling incorrectly claiming that this Court "explicitly" ruled that it

16   would not entertain any "issues concerning [Plaintiff and Filippatos's] attorney-client relationship and

17   legal fees" or any "disputes between Plaintiff and Filippatos." *See* Mot. at 5, 7, 12–13; *id.* at 18 (claiming

18   falsely that "Judge Gilliam has already explicitly ruled that disputes between Plaintiff and Filippatos

19   PLLC are not properly before this court"). The March 7, 2025 order simply "DENIED" Plaintiff's

20   "Motion to terminate Filippatos LLC for cause," and the hearing transcript shows that the Court's

21   declination of jurisdiction was limited to Plaintiff's request that the Court find she had cause to terminate

22   Filippatos as her counsel. Mins., Dkt. No. 197; *see* 3/6/25 Hr'g Tr. at 6:11–7:9, Dkt. No. 201. The Court

23   simply refused to exercise jurisdiction over a single "issue," i.e., a "finding from [the Court] that the

24   termination of [Filippatos] was for cause." 3/6/25 Hr'g Tr. at 6:12–17. Thus, Filippatos has no basis to

25   claim that Judge Gilliam's prior ruling expressly held or even reasonably implied that the declination to

26   adjudicate whether Plaintiff had cause to terminate Filippatos more broadly encompassed any other

27

28   _____
     [11] In *In re Itel Sec. Litig.*, the attorney objecting to this Court's ancillary jurisdiction was accused of
     misconduct to "undermine a class action settlement in a securities matter." 596 F. Supp. at 231–32.
     PLAINTIFF'S OPPOSITION TO MOTION TO QUASH. NO. 4:22-CV-05990-HSG (TSH)                    15

1   issues "concerning [Plaintiff and Filippatos's] attorney-client relationship and legal fees" or any

2   collateral "disputes between Plaintiff and Filippatos." *See id.*; Mot. at 5, 7, 12–13, 18. Further, at the

3   time of this ruling ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and the ruling did not involve any discovery

4   disputes between Plaintiff of Filippatos, including with respect to ▮▮▮▮▮▮▮▮▮▮▮▮.[12]

5        Filippatos erroneously contends that the Stipulated Dismissal strips this Court of any ancillary

6   jurisdiction over this dispute or any other collateral disputes between Plaintiff and Filippatos. Mot. at

7   2, 9 (claiming Stipulated Dismissal renders Subpoena "moot" because "there is no pending action" or

8   "litigation"); *accord id.* at 3, 15 (making similar, incorrect arguments). The plain language of the

9   Stipulated Dismissal was limited to Plaintiff's claims against "Defendants," and Filippatos cannot point

10  to any information showing it was intended to cover Plaintiff's collateral disputes with Filippatos.

11  Stipulated Dismissal at 1. Rather, as the Joint Case Management Statement states, the Stipulated

12  Dismissal does "not encompass Plaintiff's dispute with her [Filippatos] or the related appeal pending

13  before the Ninth Circuit, No. 25-1995." Joint CMS at 2:10–11, Dkt. No. 210; Kovalenko Decl. ¶ 16.

14       Filippatos's reliance on *Niemeyer* is misplaced and unavailing. Mot. at 2. In *Niemeyer*, subpoena

15  was issued "after the jury verdict and judgment" and after discovery closed. *Niemeyer v. Ford Motor

16  Co.*, No. 2:09-CV-2091 JCM PAL, 2012 WL 6644622, at *1 (D. Nev. Dec. 20, 2012). Here, conversely,

17  there is active litigation regarding Plaintiff's collateral disputes with Filippatos, including a pending

18  appeal before the Ninth Circuit, and Plaintiff served the Subpoena before the Stipulated Dismissal and

19  the discovery deadline on June 11, 2025.[13] Further, unlike *Niemeyer*, Filippatos has filed a charging

20  lien in this Court, which is still active and has yet to be extinguished. Dkt. No. 178. There is also no

21  indication in *Niemeyer* that the plaintiff who issued the subpoena made any relevance argument.

22

---

23  [12] Filippatos's generic appeal to the "law of the case" doctrine does not save its failing argument. As
    explained above, this Court never held that it would not entertain any "ancillary disputes between
24  Plaintiff and Filippatos." Mot. at 12–13. Moreover, the narrow Subpoena seeking basic, unprotected
    information regarding the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25  cannot be reasonably characterized as an attempt to abuse the "discovery processes in this action to
    gather information for a separate dispute that Judge Gilliam has determined should not be adjudicated
26  here." *Id.* at 13. The Court's declination of jurisdiction was limited to the merits of Plaintiff's decision
    to terminate Filippatos for cause, and Filippatos has no basis to contend that Plaintiff seeks the requested
27  information to demonstrate she fired Filippatos for cause.
    [13] Scheduling Order, Dkt. No. 152 (setting discovery cut off for May 12, 2025); Mins. 3/6/25 Hr'g, Dkt.
28  No. 197 (extending discovery deadline by 30 days). Filippatos's claim that this Court lacks ancillary
    jurisdiction because there is no "pending action" or "pending litigation" is defeated by Plaintiff's active
    appeal over Filippatos's termination. *Kovalenko v. Filippatos, PLLC*, No. 25-1995 (9th Cir.).

1    All told, Filippatos's contrived claim that this Court lacks any ancillary jurisdiction to compel
2    compliance with the narrow Subpoena is defeated by well-established precedent conferring courts with
3    authority to rule on collateral disputes after the underlying action has ended, the narrow scope of Judge
4    Gilliam's March 6, 2025 ruling, and given the Stipulated Dismissal does not encompass Plaintiff's
5    collateral disputes with Filippatos.

6         3.    **The**                                                                      **Is**
7               **Discoverable, Relevant and Proportional to the Needs of the Case, Including**
8               **Complete Resolution of Plaintiff's Underlying Lawsuit, and to Her Pending**
9               **Collateral Disputes with Filippatos.**

10    "The party moving to quash a subpoena bears the burden of persuasion." *Knoll*, 2012 WL
11   4466543, at *1. "'It is well established that the scope of discovery under a subpoena issued pursuant to
12   Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1).'" *Commodity Futures*
13   *Trading Comm'n v. Saffron*, No. 2:19-cv-01697-JAD-DJA, 2020 WL 8172990, at *2 (D. Nev. Dec. 18,
14   2020) (quoting *Painters Joint Comm'n v. Emp. Painters Trust Health & Welfare Fund*, No. 2:10-cv-
15   01385-JCM-PAL, 2011 WL 4573349 at *5 (D. Nev. Sept. 29, 2011)). Discovery sought must be
16   proportional, Fed. R. Civ. P. 26(b)(1), and relevance has generally been construed broadly to include
17   "any matter that 'bears on, or that reasonably could lead to other matters that could bear on, any issue
18   that is or *may be* in the case.'" *M.D. v. Cnty. of San Bernardino*, No. 5:22-cv-01357-SP, 2025 WL
19   819648, at *3 (C.D. Cal. Feb. 10, 2025) (emphasis added) (quoting *Oppenheimer Fund, Inc. v. Sanders*,
20   437 U.S. 340, 351 (1978)) (citing Fed. R. Civ. P. 26(b)(1). District courts have broad discretion in
21   determining relevance, and "the scope of discovery should be liberally construed to ensure full and fair
22   resolution of disputes." *Sepulveda v. Zhou*, No. 20-cv-08136-HSG (RMI), 2021 WL 5123610, at *2
23   (N.D. Cal. Nov. 4, 2021) (internal quotations and citations omitted).

24    Although Filippatos does not have standing to object to the Subpoena on relevance grounds (*see*
25   *supra* pp. 5–6), to the extent the Court concludes it does, the narrow Subpoena satisfies the broad
26   standard of relevance under Rule 26(b)(1), and it is proportional to the gravity of the underlying lawsuit
27   and collateral disputes between Plaintiff and Filippatos. *See* Kovalenko Decl. ¶¶ 5–6. First, the sought
28   banking-identifying information regarding the

1   ████████████████████████████ is relevant because it directly relates to the disposition of and
2   is necessary to afford complete resolution of Plaintiff's lawsuit against Defendants. *See In re Suzuki*,
3   No. 14-00516 JMS, 2014 WL 6908384, at *4 (D. Haw. Dec. 5, 2014) (declining to quash subpoenas
4   seeking bank records because information "is relevant to the claims, remedies, and resolution of the
5   underlying action"). Filippatos cannot reasonably contend that information about ████████████
6   ████████████████████████████████████ do not bear on the ultimate resolution of the lawsuit
7   or "any material fact or issue" in Plaintiff's pending collateral dispute with Filippatos, which impacts
8   ████████████████████████████. *See FTC v. Grand Canyon Educ. Inc.*, 2024 WL 4870505, at
9   *2 (D. Ariz. Nov. 22, 2024) (explaining "'courts define relevance broadly, stating that information is
10  relevant if it bears on or might reasonably lead to information that bears on any material fact or issue in
11  the action'" (citation omitted)); *see* Kovalenko Decl. ¶¶ 5–6, 17, 22. Further, given the Subpoena only
12  seeks information about ██████████████████████████████████, the sought
13  information is inherently relevant and inextricably related to her "claims" in this case, thereby
14  constituting permissible discovery under Rule 26(b)(1), which defines the scope of discovery as
15  including "any nonprivileged matter that is relevant to any party's claim[s]."
16      Second, besides directly bearing on the complete and fair resolution of Plaintiff's lawsuit against
17  Defendants, the sought information bears on Plaintiff's ability to ████████████████████
18  ████████████████████████████ Dkt. No. 178. Absent the requested information,
19  Plaintiff's is handicapped, if not precluded, from being able to extinguish such lien because she lacks
20  basic identifying information to ██████████████████████████. Third, and similarly, the
21  requested banking-identifying information relates to Plaintiff's pending appeal before the Ninth Circuit
22  regarding her for-cause termination of Filippatos, the outcome of which ██████████████
23  ████████████████████████████████████████████████████████████████
24  ████████████████████ Kovalenko Decl. ¶¶ 3–5, 17, 22. In fact, Filippatos has stated that "the issue
25  of whether or not Ms. Kovalenko had 'cause' to terminate Filippatos PLLC directly impacts [its]
26  ████████████████ [de minimis] legal work in this matter." *See* Filippatos's Cross-Mot. Withdraw
27  & Compel Arbitration at 14, Dkt. No. 177. Accordingly, the sought information is necessary to ensure
28  "full and fair resolution of [the collateral] disputes" between Plaintiff and Filippatos and the full and

1    complete resolution of Plaintiff's underlying lawsuit against Defendants and clearly bears on "any issue

2    that is or may be in the case." *Sepulveda*, 2021 WL 5123610, at *2; *M.D.*, 2025 WL 819648, at *3.

3        The innocuous information sought also satisfies the proportionality standard under Rule

4    26(b)(1), given it is specifically tailored to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and given

5    compliance would only require de minimis effort by K&E (or Filippatos) to provide such information.

6    *In re Barney*, No. 22-mc-80154-HSG, 2022 WL 17813142, at *3 (N.D. Cal. Dec. 19, 2022) (concluding

7    subpoenas not unduly burdensome or intrusive where subpoenas were "limited" to "seek only

8    information sufficient to identify the user(s) of the accounts at issue"); *Nike, Inc. v. Wu*, 349 F. Supp. 3d

9    310, 336 (S.D.N.Y. 2018) (finding specificity of subpoena weighed in favor of denying motion to quash

10   where subpoena was "only about" debtor bank accounts and where there was "evidence that such

11   accounts exist and that the Banks have facilitated the transfer of funds into those accounts"). Kovalenko

12   Decl. ¶¶ 6–8, 21. K&E has not objected to the Subpoena on undue burden grounds.[14] *Id.* ¶ 23.

13       The propriety of the Subpoena is further underscored by case law regularly allowing discovery

14   into banking and financial information that relates to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which

15   includes permitting significantly broader discovery than the extremely narrow Subpoena at issue here.

16   *See, e.g.*, *In re Eagan Avenatti, LLP*, No. 8:18-cv-01644-VAP-KESx, 2019 WL 3017683, at *2–3 (C.D.

17   Cal. Apr. 18, 2019) (denying motion to quash and declining to issue protective order over subpoena

18   seeking bank records to "assist in locating . . . assets"); *Valdez v. Travelers Indem. Co. of Conn.*, No.

19   12-04307-SBA (KAW), 2013 WL 3989583, at *8 (N.D. Cal. Aug. 2, 2013) (concluding subpoenas to

20   obtain financial information from non-party trusts were appropriate in part because such information

21   would help identify assets tied to fees of underlying action); *see infra* p. 20 (citing additional cases).

22                  i)    It Is Not Improper for Discovery to Yield Information That May Be

23                        Relevant to a Potential Judgment and/or ▮▮▮▮▮▮▮▮▮▮▮▮

24                        ▮▮▮▮▮▮▮▮▮▮

25       Case law defeats Filippatos's naked contention that a subpoena seeking information relevant to

26

---

27   [14] *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215 (N.D. Cal. 2015), is
28   wholly inapposite because the quashed subpoena was seeking supplemental deposition testimony
     covering expansive topics regarding documents that were already produced and admissible. *Id.* at 1217–
     18; Mot. at 11. Conversely, Plaintiff has not received the minimal information she seeks.

1    the ███████████████████████████████████████, including the ████████████████

2    ███████████ in order to aid in satisfying a potential judgment and/or ██████████████ somehow

3    constitutes a bad-faith abuse of the judicial process. *See* Mot. at 19, 21; *see, e.g.*, *Huzhou Chuangtai*

4    *Rongyuan Inv. Mgmt. P'ship v. Qin*, No. 21 Civ. 9221 (KPF), 2024 WL 262741, at *2 (S.D.N.Y. Jan.

5    24, 2024) (compelling compliance with broader subpoena "directed at uncovering information

6    surrounding the existence, transfer, location, or source of [individual's] assets" and noting that another

7    individual's "banking records, for instance, could reveal as-yet-undisclosed transfers of money")

8    (collecting cases); *Bishop v. Baldwin*, No. 20-CV-61254, 2020 WL 7320932, at *4 (S.D. Fla. Dec. 10,

9    2020) (denying motions for protective orders regarding subpoenas seeking account statements and other

10   financial information pre-judgment); *FDIC v. Lewis*, No. 2:10-cv-439-JCM-VCF, 2014 WL 7330931,

11   at *1, 4–5 (D. Nev. Dec. 18, 2014) (granting motion to compel discovery seeking location of assets held

12   by shell corporations and bank transactions relevant to securing judgment); *see also Sanchez Ritchie v.*

13   *Sempra Energy*, No. 10cv1513-CAB(KSC), 2015 WL 12912316, at *6 (S.D. Cal. Apr. 6, 2015)

14   (declining to quash discovery on attorneys' fees and payments, including deposition of attorney).

15        Plaintiff's indisputable interest █████████████████████ amplifies the relevance and

16   proportionality of the requested information to her collateral disputes with Filippatos and her right to

17   discover the subpoenaed information. Besides its relevance to complete resolution of Plaintiff's lawsuit

18   and pending Ninth Circuit appeal bearing on ██████████████████████████ the subpoenaed

19   information is necessary to enable her to take appropriate steps to █████████████████████

20   ███████ or, at minimum, to disincentivize Filippatos from frustrating Plaintiff's ██████████

21   ███████ as appropriate.[15] For example, in light of Filippatos's extreme acts of professional misconduct

22   prior to its termination, Plaintiff harbors unfortunate, but legitimate concerns that Filippatos may seek

23   to thwart or complicate her ████████████████████████████████████ and for which

24   the Subpoena seeks basic banking-identifying information. Kovalenko Decl. ¶¶ 3, 17. Such concerns

25

26   [15] Filippatos incorrectly contends that "financial information of a firm and its partners is particularly
     sensitive and requires a specific showing of relvance [sic] before discovery is permitted." *See* Mot. at

27   12 (citing *Hausauer v. City of Mesa*, No. CV-15-02796(PHX)(ROS), 2017 WL 6515963, at *1–2 (D.
     Ariz. Apr. 5, 2017)). *Hausauer* does not support this manufactured heightened, "specific" relevance

28   standard, and it is also plainly distinguishable because from the facts here as it involved numerous
     subpoenas to multiple non-party employees, seeking broad personal financial information not relevant
     to plaintiff's claims. *Hausauer*, 2017 WL 6515963, at *1–2.

1    are further corroborated by: (1) Mr. Filippatos's documented record of financial insolvency and

2    delinquency, including filing for bankruptcy to support discharging up to allegedly $600,000 in child

3    support and alimony and not paying around $136,000 in legal fees; and (2) Filippatos's concerted effort

4    to hide basic, unprotected information, such as the ████████████████████████

5    █████ and the ████████████████████████████████ Kovalenko Decl. ¶¶

6    12, 17; *see, e.g., In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) (upholding preliminary

7    injunction to protect interest in potential judgment based on evidence that individual had engaged in

8    "efforts to hide and secrete assets"); *Mishkin v. Kenney & Branisel, Inc.*, 609 F. Supp. 1254, 1256

9    (S.D.N.Y. 1985) (noting "past fraudulent conduct and . . . current actions indicate an intent to defeat and

10   . . . impede" efforts to "enforce any judgment [individual] *might obtain*" supported preliminary

11   injunctive relief) (emphasis added); *see also Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 238

12   (S.D.N.Y. 2011) (explaining pre-judgment attachment "reaches only property within the court's

13   territorial jurisdiction" which excludes bank accounts/branches located outside such territory).

14        It is neither an abuse of the judicial process to use discovery as a tool to assess whether further

15   legal action or relief is warranted nor is discovery improper simply because the information sought may

16   also be useful in a separate proceeding. *E.g., SEC v. Richman*, No. 21-cv-01911-CRB (LB), 2021 WL

17   4951484, at *1 (N.D. Cal. Oct. 25, 2021) (denying motion to quash where information was relevant to

18   party's determination of whether "additional relief may be appropriate, including a potential pre-

19   judgment asset freeze"); *HCA-Healthone LLC v. Susan Lou Sparks Trust*, No. 06-cv-01198-MSK-

20   MEH, 2007 WL 781570, at *1 (D. Colo. Mar. 13, 2007) (permitting discovery of "accounting of . . .

21   Trust assets" over objection that "Plaintiff is entitled to this information only if it prevails on its claim

22   of entitlement to Trust resources," explaining that such information was relevant "especially

23   considering the inefficiency of completely separate proceedings on the merits of Plaintiff's claim *and

24   the ability of the Trust to pay any potential judgment*") (emphasis added). Putting aside the fact that the

25   subpoenaed information is relevant, proportional to, and directly related to the complete resolution of

26   Plaintiff's claims in her lawsuit against Defendants and her active collateral disputes with Filippatos

27   over its professional misconduct, ordering compliance with the Subpoena is further warranted as it

28   advances judicial economy by obviating the need for a separate, duplicative request to obtain the same

1    information through a distinct proceeding. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122,

2    1131 (9th Cir. 2003) ("This court strongly favors access to discovery materials to meet the needs of

3    parties engaged in collateral litigation. Allowing the fruits of one litigation to facilitate preparation in

4    other cases advances the interests of judicial economy by avoiding the wasteful duplication of

5    discovery." (citations omitted)), *quoted with approval in Mirana v. Battery Tai-Shing Corp.*, No. C08-

6    80142MISC JF (HRL), 2009 WL 1635936, at *1 (N.D. Cal. June 8, 2009); *see also HCA-Healthone*,

7    2007 WL 781570, at *1 (noting judicial economy favored discovery of accounting of trust assets).[16]

8            **4.    Sanctions Are Unwarranted as The Subpoena Was Not Issued in Bad Faith.**

9            The Court should deny Filippatos's frivolous request for sanctions.  The three cases Filippatos

10   cites to support sanctions, which it claims are "similar" to the circumstances here, are unavailing and

11   clearly inapposite as they all involve a variety of aggravating factors supporting a finding of bad faith,

12   none of which are present here. Mot. at 16, 19, 21.  For example, in *Kenney, Becker LLP v. Kenney*, the

13   sanctioned party had been ordered to arbitrate their dispute and then filed a second action in court to

14   litigate the same dispute, the court had previously stayed the entire case pending arbitration, and the

15   subpoena was served without prior notice to any party. *Kenney*, 2008 WL 681452, at *1–3 (S.D.N.Y.

16   Mar. 6, 2008).  Here, no order has compelled arbitration of Plaintiff's dispute against K&E or her

17   collateral dispute against Filippatos (Judge Gilliam denied Filippatos's prior motion to compel

18   arbitration, Dkt. No. 197; 3/6/25 Hr'g Tr. pp. 6–7, Dkt. No. 201; Kovalenko Decl. ¶ 24 & Ex. A at 29–

19   32), Plaintiff has not filed any duplicative proceeding following compelled arbitration, and she provided

20   prior notice to Defendants of her intent to issue the Subpoena and received opposing counsel's consent

21   to accept the Subpoena on K&E's behalf (and Filippatos clearly anticipated and received a copy of the

22   Subpoena). Kovalenko Decl. ¶¶ 10–11, 18–21.  *Kenney* is further distinguishable because the arbitrator

23   in the dispute subject to compelled arbitration previously ruled that some of the subpoenaed documents

24

25   [16] Filippatos's desire to keep Plaintiff entirely in the dark is not only facially suspect but is inconsistent
     with its professional obligations to ▮▮▮▮▮▮▮▮▮▮▮▮▮

26   ▮▮▮▮▮▮     *See, e.g., Matter of Agola*, 128 A.D. 3d 78 (App. 4th N.Y. 2015) (concluding lawyer violated
     New York Rules of Professional Conduct by failing to provide accounting of trust funds to clients and

27   not maintaining required records related to the same); *Garlow v. State Bar*, 44 Cal. 3d 689, 690 (1988)
     (noting state bar "recommended that an attorney be disbarred . . . for professional misconduct,"

28   including, but not limited to, attorney's "refus[al] to provide an accounting for the property" transferred
     to him as security for payment of legal fees); *see also* ABA Model R. of Prof. Conduct 1.15(a), (d)–(e).

1   "were not discoverable." *Kenney*, 2008 WL 681452, at \*3. *Automobile Inspection Services, Inc. v. Flint*

2   *Auto Auction, Inc.* is similarly and materially distinguishable because the sanctioned party had admitted

3   to violating Rule 45, had not provided prior notice of the subpoena *to any person*, and his conduct

4   showed a bad-faith intent to access clearly confidential information without affording an opportunity to

5   object. *Auto. Inspection*, 2007 WL 3333016, at \*2–3, 5–6 (E.D. Mich. Nov. 9, 2007).  Conversely,

6   Plaintiff indisputably provided prior notice to the parties in this lawsuit of her intent to serve the

7   Subpoena via correspondence with opposing counsel (and Filippatos anticipated such Subpoena),

8   Plaintiff has not violated Rule 45 and certainly has not admitted to doing so, and the innocuous

9   identifying information Plaintiff seeks is not remotely analogous to the extensive confidential

10  information that the sanctioned party in *Automobile Inspection* copied from multiple computers before

11  the objecting party learned of the subpoena. Kovalenko Decl. ¶¶ 6–11, 18–22. Finally, *Black v. Wrigley*

12  is plainly distinguishable because the subpoena was served on the closing date of fact discovery, and the

13  party serving the subpoena neither responded to numerous emails requesting the authority for serving

14  the subpoena on the close of fact discovery nor attempted to explain his behavior. *Black*, No. 18-CV-

15  2367 GPC-BGS, 2019 WL 1877070, at \*1–2, 7–8 (S.D. Cal. Apr. 26, 2019).  None of these aggravating

16  circumstances is even partially present here.  In fact, it is Filippatos who has failed to respond in

17  substance to Plaintiff's emails demonstrating the propriety of the narrow Subpoena and the baselessness

18  of Filippatos's positions. Kovalenko Decl. ¶¶ 12–14 & Ex. A at 16–18, 27.

19          Plaintiff's actions, which included, among other things, repeatedly trying to obtain the requested

20  information from opposing counsel, informing Defendants of the Subpoena prior to its issuance, and

21  offering to materially narrow the scope of the Subpoena as a compromise during her meet and confer

22  with Filippatos are the exact opposite of bad-faith conduct.  *E.g.*, Kovalenko Decl. ¶¶ 6–14, 18–22 &

23  Ex. A at 9–11; *EVOX Prods., LLC v. Yahoo, Inc.*, No. 2:20-cv-02907-MEMF-SSC, 2023 WL 6192716,

24  at \*4 (C.D. Cal. Aug. 8, 2023) ("The Court declines to award costs or fees to Defendant. Plaintiff did

25  not act carelessly or in bad faith in issuing the subpoena [and] Plaintiff narrowly tailored its subpoena

26  request after conferring with Defendant[.]"); *see also In re Rule 45 Subpoenas Issued to Google LLC &*

27  *LinkedIn Corp. Dated July 23, 2020*, 337 F.R.D. 639, 652 (N.D. Cal. 2020) (declining request for

28  sanctions because "the Court is not persuaded that [party] acted unreasonably or in bad faith in pursuing

1    the subpoenas"). Further, the narrow and targeted nature of the Subpoena further showcases the frivolity

2    of Filippatos's petty request for sanctions. *See, e.g.*, *Bd. of Trs. of S. Nev. Joint Mgmt. & Culinary &*

3    *Bartenders Training Fund v. Fava*, No. 2:18-cv-00036-JCM-DJA, 2019 WL 11093817, at *3 (D. Nev.

4    Oct. 31, 2019) (declining to award sanctions despite subpoena seeking "five and a half years of

5    Defendant's bank records" and "finding off the lack of relevance of the [subpoenaed] records").

6    Moreover, as previously explained, the timing of the Subpoena in no way supports a finding of bad faith.

7    *See supra* pp. 12–13. Filippatos's prior threat and current request for sanctions is nothing more than a

8    frivolous intimidation tactic, constituting a waste of judicial resources.[17]

9         It is also frivolous to contend that the extremely narrow Subpoena regarding

10   constitutes a "paradigmatic fishing expedition." Mot. at 14. Plaintiff is not fishing for random financial

11   and banking information about Filippatos, the firm's partners, or individual clients, she is simply and

12   reasonably requesting limited, innocuous information that directly pertains to

13

14            **5.    Filippatos's Request for a Protective Order Should Be Denied, and Any**

15                 **Purported Privacy Interest Is Assuaged by Production of the Requested**

16                 **Information Subject to the Protective Order Entered in This Case.**

17        A party moving for a protective order ("**PO**") bears the burden "'to show good cause' by

18   demonstrating harm or prejudice that will result from the discovery." *Rabin v. Google LLC*, 702 F.

19   Supp. 3d 880, 881 (N.D. Cal. 2023) (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir.

20   2004)). "'For good cause to exist, the party seeking protection bears the burden of showing specific

21   prejudice or harm will result if no protective order is granted.'" *Id.* (quoting *Phillips ex rel. Estates of*

22   *Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)).

23        Filippatos's vague and conclusory privacy and confidentiality concerns are insufficient to

24   established a cognizable privilege or privacy right in the narrow request for banking-identifying

25

26   [17] Filippatos's request for "reasonable attorneys' fees" is also inappropriate as sanctions under Rule
     45(d)(1) are "primarily to reimburse a non-party's costs incurred in complying with a subpoena, not
27   merely litigating a motion to quash." *Fujikura Ltd. v. Finisar Corp.*, No. 15-mc-80110-HRL (JSC),
     2015 WL 5782351, at *8 (N.D. Cal. Oct. 5, 2015) ("'Our only Rule 45 [ ] sanction-specific case
28   interprets 'undue burden' as the burden associated with compliance . . . . The burdens of complying with
     the subpoena are the ones that count.'" (quoting *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 427
     (9th Cir. 2012) (citation omitted))).

1    information, and it cannot manufacture a need for a PO through entirely conclusory and false statements

2    that disclosure of the anodyne information sought would subject Filippatos "to significant security risks

3    and potentially compromise the confidentiality of other clients." *See* Mot. at 18–19; *supra* pp. 9–10;

4    *Marti v. Baires*, No. 1:08-cv-00653-AWI-SKO (PC), 2014 WL 1747018, at *5 (E.D. Cal. May 1, 2014)

5    (declining request for PO because "vague claim of third party privacy rights is insufficient to

6    demonstrate the existence of any legitimate privacy concerns weighing against disclosure"); *Solis v.*

7    *Forever 21, Inc.*, No. CV 12-09188 MMM, 2013 WL 1319769, at *7 (C.D. Cal. Mar. 7, 2013) (declining

8    request for PO, explaining that "[a]side from blanket assertions" movant "provides no specific details

9    regarding which subpoenaed items constitute trade secrets or why there is a risk" of public disclosure).

10   Further, Filippatos lacks even a colorable argument that the Subpoena seeking unprotected information

11   regarding the                                                    was brought for an improper purpose. *See*

12   Mot. at 17–18; *supra* pp. 12–13, 22–24. Filippatos also has no cognizable basis to contend the Subpoena

13   would impose an undue or any burden on Filippatos or that such imaginary burden "substantially

14   outweighs" Plaintiff's need for the information. Mot. at 18; *see Rabin*, 702 F. Supp. 3d at 882 (declining

15   to grant PO where assertion of potential prejudice and harm "is couched in speculation").[18]

16          If the Court concludes Filippatos has a cognizable privilege or privacy interest in the innocuous

17   banking-identifying information, any privacy interest can be addressed by producing the information

18   subject to the PO entered in the case, Dkt. No. 151. *Paws Up Ranch, LLC v. Green*, No. 2:12-cv-01547-

19   GMN-NJK, 2013 WL 6184940, at *3 (D. Nev. Nov. 22, 2013) (citing *In re Heritage Bond Litig.*, No.

20   CV 02-1475-DT(RCX), 2004 WL 1970058, *5 n.12 (C.D. Cal. July 23, 2004)) (concluding that

21   subpoena for significantly broader and more invasive request could be addressed through stipulated PO

22   and declining motion to quash); *Ocean Garden Products Inc. v. Blessings Inc.*, No. CV-18-00322-TUC-

23   RM, 2020 WL 4933646, at *3 (D. Ariz. Aug. 24, 2020) (finding that privacy interests in bank records

24   sought by subpoena were adequately addressed by PO). In sum, Plaintiff respectfully requests the Court

25   fully deny with prejudice Filippatos's requested relief and order full compliance with the Subpoena.

26

27   [18] Filippatos's reliance on *Mattel* is wildly off the mark because the Subpoena here is incredibly narrow
28   and targeted, Plaintiff has a bona fide interest in the information, and Plaintiff is not issuing
     "*oppressive* subpoena requests" to pressure witnesses to not testify. *Mattel, Inc. v. Walking Mountain*
     *Prods.*, 353 F.3d 792, 813–14 (9th Cir. 2003); Mot. at 14; *e.g.*, Kovalenko Decl. ¶¶ 18–22.

1    Date:   May 5, 2025                        Respectfully submitted,

2

3                                               By:   /s/*Zoya Kovalenko*
                                                      Zoya Kovalenko (SBN 338624)
                                                      13221 Oakland Hills Blvd., Apt. 206
4                                                     Germantown, MD 20874
                                                      +1 678 559 4682
5                                                     zoyavk@outlook.com

6                                               *Attorney for Plaintiff Zoya Kovalenko*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28