Zoya Kovalenko (SBN 338624)
13221 Oakland Hills Blvd., Apt. 206
Germantown, MD 20874
+1 678 559 4682
zoyavk@outlook.com

*Attorney for Plaintiff Zoya Kovalenko*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZOYA KOVALENKO,<br><br>    *Plaintiff,*<br><br>v.<br><br>KIRKLAND & ELLIS LLP, MICHAEL DE VRIES, MICHAEL W. DEVRIES, P.C., ADAM ALPER, ADAM R. ALPER, P.C., AKSHAY DEORAS, AKSHAY S. DEORAS, P.C., AND MARK FAHEY,<br><br>    *Defendants.* | Case No. 4:22-cv-05990-HSG (TSH)<br><br>**DECLARATION OF ZOYA KOVALENKO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO FILIPPATOS PLLC'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER AND SANCTIONS**<br><br>Assigned to the Honorable Haywood S. Gilliam, Jr., Oakland Division, United States District Court for the Northern District of California<br><br>Referred to the Honorable Thomas S. Hixson, San Francisco Division, United States District Court for the Northern District of California |

KOVALENKO DECLARATION ISO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH
No. 4:22-CV-05990-HSG (TSH)

**DECLARATION OF ZOYA KOVALENKO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO FILIPPATOS PLLC'S MOTION TO QUASH**

I, Zoya Kovalenko, declare as follows:

1. I am the plaintiff in this action. I submit this declaration in support of Plaintiff's Opposition to Filippatos PLLC's Motion to Quash Subpoena of Filippatos's Bank Records and for Protective Order and Sanctions, Dkt. No. 122 ("**Motion**").

2. I am an attorney duly licensed to practice in the state of California and am admitted to practice before this Court. I represent myself in this action. I am familiar with the facts and circumstances of this litigation. I know the facts set forth in this declaration to be true of my own personal knowledge. If called as a witness, I could and would testify competently to the matters set forth in this declaration.

3. Filippatos PLLC ("**Filippatos**") is my former counsel in my lawsuit against Kirkland and Ellis LLP ("**K&E**") and its co-defendants in the lawsuit (collectively, "**Defendants**"). Filippatos was retained as my counsel roughly one year after I filed the lawsuit. I terminated Filippatos for cause on January 23, 2025 for repeated acts of professional misconduct, which includes directly interfering with my settlement authority, including trying to force me ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, abusive conduct, and litigating my lawsuit with extreme laxity. Following my termination of Filippatos as my counsel, we have been locked in a contentious battle regarding its misconduct and its right ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

4. After being fired, Filippatos filed in this Court a charging lien against any proceeds that I may obtain from my lawsuit against Defendants ("**Charging Lien**"). The Charging Lien is active and has yet to be extinguished. However, Filippatos has executed a written release of specifically with respect to K&E ("**Release of Lien with K&E**" or "**Release of Lien**") in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. A true and correct copy of the Release of Lien with K&E is attached hereto at pages 2–6 of Exhibit A to this declaration.

5. I have an active and pending appeal before the Ninth Circuit regarding my for-cause termination of Filippatos, Case No. 25-1995. On April 30, 2025, the Ninth Circuit issued

an order denying Filippatos's opposition to my motion to seal the excerpts of record filed with my opening appellate brief. The order further indicated that my appeal has been assigned to a merits panel, and the Ninth Circuit has requested that I file paper copies of my opening brief and excerpts of record by Thursday, May 8, 2025.

6. This dispute concerns a narrow and targeted subpoena that I served on April 9, 2025, on K&E (the "**Subpoena**") seeking basic banking-identifying information regarding the ▇▇▇▇▇▇▇▇▇▇▇▇. The ▇▇▇▇▇▇ were the culmination ▇▇▇ ▇▇▇▇▇▇▇▇ after I fired Filippatos. To date, I have received essentially no information regarding the ▇▇▇▇▇▇▇▇▇▇▇. On April 14, 2025, Defendants' counsel ("**OC**") sent me the executed Release of Lien between K&E and Filippatos and provided a heavily redacted screenshot listing only a ▇▇▇, date and time ▇▇▇▇▇▇▇ Filippatos ▇▇▇▇ ▇▇▇▇. A true and correct copy of this April 14, 2025 email correspondence with OC is attached hereto at page 7 of Exhibit A to this declaration, and a true and correct copy of the screenshot from OC is attached hereto at page 8 of Exhibit A to this declaration (and reproduced below). I have never received evidence or documented confirmation that Filippatos was the entity that ▇▇▇▇▇▇▇▇▇, any information about the ▇▇▇▇▇▇▇▇, including ▇▇▇▇▇▇▇▇▇▇, or any information ▇▇▇▇▇ ▇▇▇ including the name or address. Below is a true and correct copy of the purported ▇▇▇▇▇▇▇▇:



7. I have requested an accompanying declaration from K&E regarding the ▇▇▇▇ ▇▇▇ but have not received any such declaration.

8. In connection ▇▇▇▇▇▇▇ and related discussions, I have had oral and written discussions with OC about different restrictions that Filippatos demanded ▇▇▇▇▇▇▇

as a condition of Filippatos signing the Release of Lien with K&E. The restrictions Filippatos demanded included ▇▇▇ and an ▇▇▇. On April 2, 2025, OC sent me an email stating that Filippatos was prohibiting ▇▇▇ banking-identifying information with me as a contractual requirement in the Release of Lien and shared a current version of the Release of Lien, which prohibited ▇▇▇ with me any such information and required K&E to promptly notify Filippatos of any subpoena it received requesting any ▇▇▇. I informed OC that I would require at least some identifying information about the ▇▇▇. In response, OC told me that she did not believe Filippatos would agree to provide such information, even if I separately agreed to not share the information with third parties, and that Defendants ▇▇▇." A true and correct copy of this April 2, 2025 email correspondence with OC is attached hereto at pages 9–10 of Exhibit A to this declaration. Of note, ▇▇▇ OC informed me that Filippatos threatened to sue K&E for defamation ▇▇▇. OC indicated that they viewed the threat by Filippatos as baseless but that their clients did not want to risk dealing with a frivolous lawsuit. OC (specifically Ms. Hermle) has also told me that she finds it difficult to communicate with Filippatos because of Mr. Filippatos's "obstreperous" behavior.

9. The April 2, 2025 email from OC is the first time I recall being informed of Filippatos's desire to contractually ▇▇▇ from providing me with ▇▇▇ The earlier version of the draft Release of Lien that I received from OC on February 12, 2025 did not include language restricting ▇▇▇ regarding ▇▇▇ or include language requiring K&E to notify Filippatos of a subpoena seeking any such information. Specifically, the version of the Release of Lien between Filippatos and K&E that I

received on April 2, 2025 explicitly ▓▓▓▓▓ from providing me with any "identifying information about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and [states that K&E] will give prompt notice to Filippatos in the event it receives a subpoena or other lawful process requesting any such identifying information." Based on my communications with OC, I understood that Filippatos intended and was going to sign the Release of Lien provided to me on April 2, 2025. However, OC did not provide me with a copy of the executed Release of Lien between K&E and Filippatos until April 14, 2025, despite an electronic signature date of April 8, 2025. The executed version included identical language to that quoted above from the version I received on April 2, 2025.

10. As a result of the change in the language to the draft Release of Lien that was shared with me in February 2025 relative to the Release of Lien provided to me on April 2, 2025, and based on discussions I had with OC, I fully believed and understood that Filippatos knew I ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ sought in the Subpoena and also believed that OC conveyed this to Filippatos well before the Subpoena was issued to K&E. It is also my reasonable belief that Filippatos absolutely anticipated and knew that I would serve a subpoena if it restricted ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ based on my communications with OC, which is why Filippatos included specific subpoena carve-out language in the Release of Lien that I received on April 2, 2025. As a result, when I served the Subpoena on K&E, I fully expected and understood that Filippatos would receive prompt notice of the Subpoena in light of the contractual provision in the Release of Lien requiring K&E to promptly notify Filippatos of any such subpoena. I also understand that Filippatos received a copy of the Subpoena on or around April 10, 2025 and in any event no later than April 11, 2025.

11. After realizing that K&E would not provide the information sought in the Subpoena voluntarily and that it would be futile to ask Filippatos to provide such information, given it was contractually precluding K&E from sharing such information with me, I asked OC on multiple occasions if they would accept service of a subpoena to obtain such information. OC

confirmed on April 9, 2025 that it was authorized to accept service of the Subpoena on behalf of K&E. The same day, I prepared and served the Subpoena on OC. A true and correct copy of my April 9, 2025 email correspondence with OC is attached hereto at pages 14–15 of Exhibit A to this declaration.

12. On April 11, 2025, I received an email from Filippatos objecting to the Subpoena. Filippatos said it would "consider" providing me with [REDACTED] In under 24 hours, I prepared and sent Filippatos a detailed email response with case law rebutting its grievances with the extremely narrow and noninvasive Subpoena, explaining that the subpoenaed information is relevant to my ongoing dispute with Filippatos and the complete resolution of my underlying lawsuit against Defendants. I also noted my legitimate concerns about [REDACTED] in light of recently becoming aware of Parisis Gerasimos ("Gerry") Filippatos's: (1) documented record of financial insolvency and delinquency, including filing for bankruptcy to support discharging up to allegedly $600,000 in child support and alimony and not paying around $136,000 in legal fees; and (2) Filippatos's concerted effort to hide basic, unprotected information, such as the [REDACTED] I also attached to the email public records regarding the same, and Filippatos never disputed the authenticity of such records. Additionally, in the email, I offered what I view as an eminently reasonable compromise to withdraw the narrow Subpoena if Filippatos provided: (1) the [REDACTED] (2) the legal name [REDACTED]; (3) last four digits of the [REDACTED]; and (4) confirmation of date on which [REDACTED]. A true and correct copy of my April 11 and 12, 2025 email correspondence with Filippatos is attached hereto at pages 16–18 of Exhibit A to this declaration. A true and correct copy of excerpts of the public documents I provided to Filippatos as attachments to my April 12, 2025 email are attached hereto at pages 19–26 of Exhibit A to this declaration.

13. On April 13, 2025 Filippatos sent me email response that did not address any of my arguments, stating only "Zoya - we will call you at 1pm tomorrow." A true and correct copy

of this April 13, 2025 email from Filippatos is attached hereto at page 27 of Exhibit A to this declaration. On April 14, 2025, I and Filippatos had a brief call to discuss the Subpoena in dispute. The call lasted around six minutes. For roughly two to three minutes at the beginning of the call, I attempted to speak with Tanvir Rahman (a partner at Filippatos) about a potential compromise to the Subpoena. However, during this portion of the call, Filippatos did not, in my opinion, engage in a good-faith discussion regarding potential compromise and did not evince any interest in seeking an amicable resolution to the Subpoena, and it expressly stated that it would not accept my proposed compromise to resolve the dispute. Filippatos also did not address any of the cases or arguments that I raised in my April 12, 2025 email. I tried on multiple occasions to initiate substantive discussions about the merits or alleged demerits of the Subpoena but was consistently rebuffed by Filippatos who made clear to me that they had no interest in having such discussions on the call. After the roughly two to three minutes of trying to substantively engage Filippatos regarding the Subpoena and a possible compromise, Mr. Rahman said he was turning the floor over to Parisis (Gerry) Filippatos (the name partner of Filippatos) who had something he wanted to say to me. The call, through no fault of my own, quickly devolved into Mr. Filippatos demeaning, ridiculing, and threatening me, which included baselessly threatening to sue me for defamation for two purported statements I made about Filippatos in connection with this lawsuit, telling me that I had 24 hours to withdraw the Subpoena and fully concede ███████████
███████████████████████████████████████████████████████████
███, including withdrawing my pending appeal before the Ninth Circuit. During this tirade, Mr. Filippatos repeatedly insulted my intelligence, told me that I should not have a license to practice law, and stated that he was going to ███████████████████████ with Defendants because he wants to "teach [me] a lesson." A true and correct copy of this April 14, 2025 email I sent to Filippatos is attached hereto at page 27 of Exhibit A to this declaration.

14.  Shortly after the call, I sent an email to Filippatos memorializing in detail what unfolded during this call. Filippatos never contested the summary of the events that I memorialized in the email or even responded to the email. That same day, Filippatos sent an email to the Court asking it to intervene in the Subpoena dispute.

15. Filippatos has not indicated any interest in signing a release with me to extinguish the Charging Lien it has filed in this Court ███████████████████████████.

16. I filed a stipulated dismissal as to my claims against Defendants on April 18, 2025 ("**Stipulated Dismissal**"). The plain language of the Stipulated Dismissal does not dismiss my collateral disputes with Filippatos. I had zero intent for the Stipulated Dismissal to encompass any of my collateral disputes with Filippatos and clearly explained this to the Court in the Joint Case Management Statement filed on April 1, 2025 (Dkt. No. 210) by stating that "[t]he anticipated stipulation of dismissal would not encompass Plaintiff's dispute with her former counsel or the related appeal pending before the Ninth Circuit, No. 25-1995". I repeatedly tried to include in the Stipulated Dismissal jurisdictional language stating that the Stipulated Dismissal did not encompass any of my collateral disputes with Filippatos but was precluded from doing so because Filippatos was refusing to sign the Release of Lien ████████████████████ ██████████████████████████ if any such language was included in the Stipulated Dismissal filed with the Court.

17. I have been baselessly and repeatedly abused, demeaned, and mocked by Filippatos prior to and following its termination as my counsel and in connection with the present Subpoena dispute. I firmly believe that Filippatos has and will continue to engage in bad-faith, petty conduct to erect as many obstacles as possible to prevent me from obtaining a full and complete resolution of my claims against Defendants and related collateral disputes with Filippatos regarding its professional misconduct. I have a legitimate concern that Filippatos may or already has ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ given there is a provision in my retainer agreement with Filippatos stating that "based on its contribution to the prosecution of your claims, Wigdor LLP, is entitled to ████████████████████ ██████████████████████████████████████. Dkt. No. 171-3 at 2. Wigdor LLP has, to my knowledge, performed absolutely zero work in my lawsuit and has not signed any statement assuming joint responsibility and/or representation over my lawsuit. I also believe that Filippatos has an axe to grind me with because I chose to terminate them as my counsel and do so

in a public manner, and that it will do everything in its power to obfuscate and obstruct my ability ▓▓▓ to which I am entitled. In that vein, given Filippatos's extreme acts of professional misconduct and breach of duties to me as client prior to its termination as counsel, I harbor unfortunate, but legitimate concerns that Filippatos may seek to thwart my ability ▓▓▓ for which the Subpoena seeks basic banking-identifying information. I believe these concerns are further exacerbated by Mr. Filippatos's record of concerning financial insolvency and delinquency, including but not limited to: (1) filing for bankruptcy to support discharging up to allegedly $600,000 in child support and alimony and not paying around $136,000 in legal fees; and (2) Filippatos's concerted effort to hide basic, unprotected information, such as the ▓▓▓ and the name ▓▓▓ ▓▓▓.

18. I have not issued the Subpoena for any improper purpose, including, but not limited to, to annoy, harass, or unduly burden Filippatos or Defendants.

19. I have not issued the Subpoena to obtain information regarding Filippatos's other clients, and I was never told that ▓▓▓ is ▓▓▓ that Filippatos uses to maintain ▓▓▓ belonging to other clients. The first I learned of this alleged fact was in Filippatos's Motion to Quash Subpoena of Filippatos PLLC's Bank Records and for Protective Order and Sanctions, filed on April 21, 2025.

20. I do not believe the Subpoena violated Federal Rule of Civil Procedure 45. I also believe that my actions in connection with this dispute, including, among other things, repeatedly trying to obtain the requested information from OC, informing Defendants of the Subpoena prior to its issuance, and offering to materially narrow the scope of the Subpoena as a compromise before and during my meet and confer with Filippatos are the exact opposite of bad-faith conduct.

21. To avoid a potential ripeness issue, I reasonably decided to wait to issue the Subpoena until I understood that ▓▓▓ Filippatos, and based on the limited information I have received, I understand that any potential ▓▓▓ did not occur before April 11, 2025. I also exhausted any reasonable avenues to obtain

this information from K&E and by extension Filippatos without resorting to a subpoena. I believe that the extremely limited information the Subpoena seeks should be readily obtainable by K&E (or Filippatos) and could be quickly provided to me (potentially in a matter of minutes) through email.

22. I believe the subpoenaed information is relevant to my pending appeal before the Ninth Circuit related to my for-cause termination of Filippatos, the outcome of which may directly undermine ███████████████████████████████████████████. I do not know whether Filippatos is the █████████████████████████████████████████████ to another individual or entity. I also have not received any information about the name or location █████ █████████████████████████████████████ and do not even know whether the █████████████████████████████ in the United States. I am also considering bringing an █████████████████████████████████████████████ but am unable to ascertain the appropriate forum to do so without the requested information.

23. K&E has not objected to the Subpoena on undue burden grounds. Further, based on my prior correspondence with OC and their statements during the April 18, 2025 hearing before Judge Hixson, I do not believe K&E wants to prevent me from obtaining the requested information but is trying to play both sides and sufficiently appease Filippatos to avoid headaches from Filippatos's unreasonable behavior. K&E did not request an extension of time to serve objections (and neither did Filippatos).

24. A true and correct copy of an excerpt of the transcript of the sealed March 6, 2025 hearing before the Honorable Judge Gilliam, Dkt. No. 201, is attached hereto at pages 29–32 of Exhibit A to this declaration. The Court granted a motion to seal this hearing transcript. Order, Dkt. No 227.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Germantown, Maryland on May 5, 2025.

KOVALENKO DECLARATION ISO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH
No. 4:22-CV-05990-HSG (TSH)

9

Case 4:22-cv-05990-HSG     Document 231-1     Filed 05/05/25     Page 11 of 11

|   |   |
|---|---|
| 1 | /s/ *Zoya Kovalenko* |
| 2 | Zoya Kovalenko (Cal. SBN 338624) |
|   | 13221 Oakland Hills Blvd., Apt. 206 |
| 3 | Germantown, MD 20874 |
|   | (678) 559-4682 |
| 4 | zoyavk@outlook.com |
|   | Plaintiff Zoya Kovalenko |
_/s/ Zoya Kovalenko_
Zoya Kovalenko (Cal. SBN 338624)
13221 Oakland Hills Blvd., Apt. 206
Germantown, MD 20874
(678) 559-4682
zoyavk@outlook.com
Plaintiff Zoya Kovalenko

KOVALENKO DECLARATION ISO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH     10
NO. 4:22-CV-05990-HSG (TSH)